## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-02612-JLK-CBS

LEAH TURNER, ARACELI GUTIERREZ, MARKEITTA FORD,
JOLESSA WADE, DANYA GRANADO, BRETT CHARLES, and
RUBY TSAO

individually and on behalf of others
similarly situated

Plaintiff,

v.

CHIPOTLE MEXICAN GRILL, INC.,

Defendant.

---

### FIRST AMENDED
### COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

---

Class Representative Plaintiffs, LEAH TURNER, ARACELI GUTIERREZ, MARKEITTA FORD, JOLESSA WADE, DANYA GRANADO, BRETT CHARLES, and RUBY TSAO individually and on behalf of all similarly-situated employees,  file this First Amended Complaint against Defendant, CHIPOLTE MEXICAN GRILL, INC. ("Chipotle" or "Defendant"), and state as follows:

### PRELIMINARY STATEMENTS

1. This action is brought to recover damages and equitable relief stemming from violations of the Fair Labor Standards Act of 1938, as amended, 29 USC. §201, *et. seq.* ("FLSA"), and under the laws of the States of Arizona, California, Colorado and New Jersey.  Plaintiffs were classified under the FLSA and relevant state wage and hour statutes as a non-exempt hourly employees, during the relevant periods alleged herein, . During this time, Class Representative Plaintiffs were improperly denied wages and compensation for hours worked pursuant to the FLSA and relevant state statutes by Defendant.

2. Upon information and belief, for at least six years prior to the filing of this action and continuing through the date of this action, Chipotle has devised and implemented general policies and practices to deprive its hourly-paid restaurant employees of the compensation to which they are entitled.  Chipotle routinely


EXHIBIT
B

requires its hourly-paid restaurant employees to work "off the clock," without pay, by various means, including, but not limited to, utilizing centralized, company-wide labor or payroll budgets that Chipotle knows incentivizes managers to understaff restaurants in order to meet those budgets, thereby resulting in the requirement that hourly employees work off-the-clock, and by utilizing timekeeping devices that automatically punch employees off the clock, even if they are still working.

3. Class Representative Plaintiffs, on behalf of themselves and all other similarly situated former and current hourly-paid Chipotle restaurant employees during the applicable time period, seek unpaid overtime, unpaid regular wages, liquidated damages and/or pre-judgment interest, post-judgment interest and attorneys fees and costs.

4. Class Representative Plaintiffs shall request that the Court authorize concurrent notice to all former and current hourly-paid restaurant employees who were employed by Chipotle during the applicable time period, informing them of the pendency of this action and of their right to opt-in to this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b). Class Representative Plaintiffs shall further request that the Court grant class certification under Federal Rule 23(b)(2) and (b)(3) for the state classes alleged herein pursuant to causes of action brought under the state laws of Arizona, California, Colorado and New Jersey.

## JURISDICTION

5. The FLSA authorizes court actions by private parties to recover damages for violation of the FLSA's wage and hour provisions. Jurisdiction over Plaintiff's FLSA claims is based upon 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

6. Subject Matter jurisdiction is conferred on this Court by Title 28 U.S.C. § 1337 and by Title 29 U.S.C. § 216(b). At all times pertinent to this Complaint, Defendant was an enterprise engaged in interstate commerce or in the production of goods for consumers as defined § 3(r) and 3(s) of the FLSA, 29 U.S.C. §§ 203(r) and 203(s). The annual gross sales volume of the Defendant was in excess of $500,000 per annum.

7. Alternatively, Class Representative Plaintiffs and all similarly situated employees, worked in interstate commerce so as to fall within the protections of the FLSA.

8. This Court also has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. §1367 because the state claims are so related to the Fair Labor Standards Act claims that they form part of the same case or controversy.

9. Further, this Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because this is a class action asserting claims on behalf of hourly-paid restaurant employees who worked for

Chipotle in the States of Arizona, California, Colorado, and New Jersey, brought under those states' laws, in which each such class: (1) consists of at least 100 proposed members; (2) involves a matter in controversy that is greater than $5,000,000 after aggregating the claims of the proposed class members, exclusive of interest and costs; and (3) includes (or, with respect to Colorado, is believed to include) at least some members who have a different citizenship from Defendant. 28 U.S.C. § 1332(d)(2), (5)(B).

10. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claim occurred in the District of Colorado.

## PARTIES

11. At all times pertinent hereto, Class Representative Plaintiff Leah Turner was a citizen of the United States of America and a resident of the State of Colorado with a residential address of: 5291 East 123rd Avenue, Thornton, Colorado 80241.

12. At all material times hereto, Class Representative Plaintiff Leah Turner worked at Defendant's corporately-owned location at: 18701 E. Main Street, Parker, Colorado 80134 as a non-exempt hourly Kitchen Manager and Service Manager from March 29, 2010 to May 23, 2011.

13. Class Representative Plaintiff Leah Turner was classified as a non-exempt hourly employee of Defendant working as a Kitchen Manager from March 29, 2010 to June 21, 2010.

14. Class Representative Plaintiff Leah Turner was classified as a non-exempt hourly employee of Defendant working as a Service Manager from June 21, 2010 though May 23, 2011.

15. Thereafter, Class Representative Plaintiff Leah Turner worked as a salaried employee of Defendant working as an Apprentice at 5642 Allen Way, Space 104, Castle Rock, Colorado 80104 commencing May 23, 2011 until August 2011. This work is not at issue in the instant lawsuit.

16. Thereafter, commencing August 2011, Class Representative Plaintiff Leah Turner worked as a salaried employee of Defendant working as a General Manager at 5642 Allen Way, Space 1-4, Castle Rock, Colorado 80104. This work is not at issue in the instant lawsuit.

17. At all times pertinent hereto, Class Representative Plaintiff Araceli Gutierrez was a citizen of the United States of America and a resident of the State of California with a residential address of: 464 N. Col de las Palmas, Los Angelas, CA 90022.

18. At all material times hereto, Class Representative Plaintiff Araceli Gutierrez worked at Defendant's corporately-owned location at: 1945 E. 17th Street, Santa Ana, CA 92705 as a non-exempt hourly Crew Member and/or Service Manager from September 2012 to August 2014.

19. At all material times hereto, Class Representative Plaintiff Markeitta Ford was a citizen of the United States of America and a resident of the State of New Jersey with a residential address of: 102 Carnegie Avenue, East Orange, New Jersey 07018.

20. At all material times hereto, Class Representative Plaintiff Markeitta Ford worked at Defendant's corporately-owned location at 360 Rt. 10 West, East Hanover, New Jersey, 07936, as a non-exempt hourly Crew Member from January 3, 2014 until February 4, 2014.

21. At all times pertinent hereto, Class Representative Plaintiff Jolessa Wade was a citizen of the United States of America and a resident of the State of New Jersey with a residential address of: 168 Clinton Street, Apt. D3, East Orange, New Jersey, 07018.

22. At all material times hereto, Class Representative Plaintiff Jolessa Wade worked at Defendant's corporately-owned location at: 360 Rt. 10 West, East Hanover, New Jersey, 07936 as a non-exempt hourly Crew Member from December 2013 until February 2014.

23. At all times pertinent hereto, Class Representative Plaintiff Danya Granado was a citizen of the United States of America and a resident of the State of Colorado with a residential address of: 2029 S. Fairplay Street, Aurora, CO 80014.

24. At all material times hereto, Class Representative Plaintiff Danya Granado worked at Defendant's corporately-owned location at: 15280 E. Iliff Ave, Aurora, Colorado 80014 as a non-exempt hourly Cashier from April 2013 until October 2013.

25. At all times pertinent hereto, Class Representative Plaintiff Ruby Tsao was a citizen of the United States of America and a resident of the State of Colorado with a residential address of: 11229 Glenmoor Court, Parker, Colorado 80138.

26. At all material times hereto, Class Representative Plaintiff Ruby Tsao worked at Defendant's corporately-owned location at: 18320 Cottonwood Drive, Parker, Colorado 80138 as a non-exempt hourly Crew Member and/or Kitchen Manager-in-Training from June 3, 2013 through September 2014.

27. At all times pertinent hereto, Class Representative Plaintiff Brett Charles was a citizen of the United States of America and a resident of the State of Arizona with a residential address of: 635 S. Ellis Street, Apt. 3121, Chandler, Arizona, 85224.

28. At all material times hereto, Class Representative Plaintiff Brett Charles worked at Defendant's corporately-owned location at 3757 South Gilbert Road, Suite 110, Gilbert, Arizona, 85297 as a non-exempt hourly Crew Member and/or Kitchen Manager-in-Training from May 2010 through July 2013.

29. Upon information and belief, Defendant Chipotle Mexican Grill, Inc. is a Colorado Corporation with a Colorado registered agent, Bryant S. Messner, located at: 1430 Wynkoop Street, Suite 400 Denver, Colorado 80202.


## COVERAGE

30. Class Representative Plaintiffs and others similarly situated incorporate herein by this reference the allegations contained in Paragraphs 1 through 29 of this Complaint as if set forth *verbatim.*

31. At all times material hereto, Class Representative Plaintiffs and others similarly situated were "employees" of Defendant within the meaning of FLSA pursuant to 29 U.S.C. § 203(e)(1).

32. At all times material hereto, Defendant was an "employer" within the meaning of FLSA " pursuant to 29 U.S.C. § 203(d).

33. At all times material hereto, Defendant was an employer because it has the ability to do the following with respect to Class Representative Plaintiffs and others similarly situated: hire and fire, supervise work schedules and conditions of employment, determined rates and methods of payment and were obligated under the law to maintain employment records.

34. At all times material hereto, Defendant was an employer because it had exclusive operational control over Class Representative Plaintiffs and others similarly situated, was solely responsible for the day-to-day operations, *and* had direct responsibility for the supervision of the Class Representative Plaintiffs and those similarly situated.

35. Defendant was, and continues to be, an "employer" within the meaning of FLSA.

36. At all times material hereto, Defendant was, and continues to be, an "enterprise engaged in commerce" within the meaning of FLSA.

37. At all times material hereto, Defendant was, and continues to be, an enterprise engaged in the "production of goods for commerce" within the meaning of the FLSA.

38. Based upon information and belief, the annual gross revenue of Defendant was in excess of $500,000 per annum during the relevant time periods.

39. At all times material hereto, Defendant had two (2) or more employees handling, selling, or otherwise working on goods or materials that had been moved in or produced for commerce.

40. At all times material hereto, Class Representative Plaintiffs and others similarly situated "engaged in commerce" and are subject to individual coverage of the FLSA.

41. At all times material hereto, Class Representative Plaintiffs and others similarly situated were engaged in the "production of goods for commerce" and subject to the individual coverage of the FLSA.

42. At times material hereto, the work performed by the Class Representative Plaintiffs and others similarly situated was directly essential to the business performed by Defendant.

43. Plaintiffs and others similarly situated suffered or were permitted to work by Defendant pursuant to 29 U.S.C. § 203(g).

44. Section 13 of the FLSA, 29 U.S.C. § 213, exempts certain categories of employees from overtime pay obligations. None of the FLSA exemptions apply to Plaintiffs and others similarly situated during all time material hereto. Accordingly, Plaintiffs and all similarly situated employees must be paid overtime pay in accordance with the FLSA.

45. At all times relevant to this action, Defendant, either directly or indirectly had the authority to: (a) hire and fire employees of their facilities; (b) determine the work schedules for the employees or conditions of employment; (c) control the finances and operations of facilities; and (d) determine the rate and method of payment and maintain employment records. By virtue of having regularly exercised that authority on behalf of the grocery stores, the Defendant is an "employer" defined by 29 U.S.C. § 201 *et. seq.*

## GENERAL ALLEGATIONS

46. Class Representative Plaintiffs and others similarly situated incorporate herein by this reference the allegations contained in Paragraphs 1 through 45 of this Complaint as if set forth *verbatim.*

47. Class Representative Plaintiffs and others similarly situated, at all relevant times, were non-exempt hourly-paid Chipotle restaurant employee who held positions including, but not necessarily limited to, Kitchen Manager, Service Manager, Kitchen or Service Manager-in-Training, Crew Member, and Cashier, and

performed the same duties, including but not limited to preparing, selling and serving food products, operating restaurant equipment (including a cash register), maintaining restaurant equipment, and performing other related tasks such as cleaning. They also attended training sessions and meetings.

48. At all times material hereto, Class Representative Plaintiff, Leah Turner, worked at Defendant's corporately-owned location at: 18701 E. Main Street, Parker, Colorado 80134 as a non-exempt hourly Kitchen Manager and Service Manager.

49. Class Representative Plaintiff, Leah Turner, was classified as a non-exempt hourly employee of Defendant working as a Kitchen Manager from March 29, 2010 to June 21, 2010.

50. Class Representative Plaintiff, Leah Turner, was classified as a non-exempt hourly employee of Defendant working as a Service Manager from June 21, 2010 though May 23, 2011.

51. From March 29, 2010 though May 23, 2011, Class Representative Plaintiff, Leah Turner, was required to clock-out after she worked forty hours for Defendant in a work week. However, she would be required by Defendant to continue to work off-the-clock.

52. Class Representative Plaintiff Araceli Gutierrez worked at Defendant's corporately-owned location at: 1945 E. 17th Street, Santa Ana, CA 92705 as a non-exempt hourly Crew Member and/or Service Manager from September, 2012 to August 2014.

53. From September 2012-August 2014, Class Representative Plaintiff, Araceli Gutierrez, was required to clock-out if she was at or close to working forty hours for Defendant in a work week. However, she would be required by Defendant to continue to work off-the-clock.

54. From September 2012-August 2014, Class Representative Plaintiff, Araceli Gutierrez, was required to come in early or stay later for shifts, and work off-the-clock. She was only permitted to be on-the-clock during her scheduled shift, even though she was required to work at other times.

55. Class Representative Plaintiff Markeitta Ford worked at Defendant's corporately-owned location at: 360 Rt. 10 West, East Hanover, New Jersey, 07936 as a non-exempt hourly Crew Member January 3, 2014 through February 4, 2014.

56. From January 3, 2014 through February 4, 2014, Class Representative Plaintiff, Markeitta Ford, was required to clock-out towards the end of her shift and continue working and cleaning.

57. From January 3, 2014 through February 4, 2014, Class Representative Plaintiff, Markeitta Ford, was required to come in early or stay later for shifts, and work off-the-clock. She was only permitted to be on-the-clock during her scheduled shift, even though she was required to work at other times.

58. Class Representative Plaintiff Jolessa Wade worked at Defendant's corporately-owned location at: 360 Rt. 10 West, East Hanover, New Jersey, 07936 as a non-exempt hourly Crew Member December 2013 through February 2014.

59. From December 2013 through February 2014, Class Representative Plaintiff, Jolessa Wade, was required to clock-out towards the end of her shift and continue working and cleaning.

60. From December 2013 through February 2014, Class Representative Plaintiff, Jolessa Wade, was required to come in early or stay later for shifts, and work off-the-clock. She was only permitted to be on-the-clock during her scheduled shift, even though she was required to work at other times. Additionally, there were times when her supervisor would change her time records to show that she clocked out earlier.

61. Class Representative Plaintiff Danya Granado worked at Defendant's corporately-owned location at: 15280 E. Iliff Ave, Aurora, Colorado 80014 as a non-exempt hourly Cashier from April 2013 until October 2013.

62. From April 2013 through October 2013, Class Representative Plaintiff, Danya Granado, was required to clock-out towards the end of her shift and continue working and cleaning.

63. From April 2013 through October 2013, Class Representative Plaintiff, Danya Granado, was required to come in early or stay later for shifts, and work off-the-clock. She was only permitted to be on-the-clock during her scheduled shift, even though she was required to work at other times.

64. Class Representative Plaintiff Brett Charles worked at Defendant's corporately-owned location at: 3757 South Gilbert Road, Suite 110, Gilbert, Arizona 85297 as a non-exempt hourly Crew Member and/or Kitchen Manager-in-Training from May 2010 through July 2013.

65. From May 2010 through July 2013, Class Representative Plaintiff, Brett Charles, was required to clock-out if he was at or close to working forty hours for Defendant in a work week. However, he would be required by Defendant to continue to work off-the-clock.

66. From May 2010 through July 2013, Class Representative Plaintiff, Brett Charles, was required to come in early or stay later for shifts, and work off-the-clock. He

was only permitted to be on-the-clock during his scheduled shift, even though he was required to work at other times.

67. Class Representative Plaintiff Ruby Tsao worked at Defendant's corporately-owned location at: 18320 Cottonwood Drive, Parker, Colorado 80138 as a non-exempt hourly Crew Member and/or Kitchen Manager-in-Training from June 3, 2013 through September 2014.

68. From June 2013 through September 2014, Class Representative Plaintiff, Ruby Tsao, was required to clock-out towards the end of her shift and continue working and cleaning.

69. From June 2013 through September 2014, Class Representative Plaintiff, Ruby Tsao, was required to come in early or stay later for shifts, and work off-the-clock. She was only permitted to be on-the-clock during her scheduled shift, even though she was required to work at other times.

70. Class Representative Plaintiffs were not paid for this off-the-clock work or associated overtime.

71. Due to this off-the-clock work, Class Representative Plaintiffs were, at times, earning below minimum wage for all hours worked.

72. Class Representative Plaintiffs and others similarly situated were required to work on holidays and were not compensated for this work.

73. Class Representative Plaintiffs and others similarly situated were required to work on their days off and were not compensated for this work.

74. Additionally Class Representative Plaintiffs and those similarly situated were required to attend mandatory after-shift meetings, which occurred every night after cleanup was completed and which occurred off-the-clock.

75. Moreover, Class Representative Plaintiffs and those similarly situated who worked the night-shift were automatically clocked-out at 12:30 a.m. even though they had not completed all of the cleaning.

76. After being automatically clocked-out at 12:30 a.m. Class Representative Plaintiffs and those similarly situated were required to complete all cleaning tasks and any other work off-the-clock and were not paid for the straight time or associated overtime for these duties performed on behalf of the Defendant.

77. Class Representative Plaintiffs, and others similarly situated who worked for Chipotle Restaurants throughout the United States, worked unpaid hours and overtime for hours worked in excess of forty in a work week.

78. Class Representative Plaintiffs, and those similarly situated who worked for Chipotle Restaurants throughout the United States were paid below minimum wage for all hours worked.

79. In some instances, Class Representative Plaintiffs' overtime hours were moved to the following work week where they were improperly paid straight time, but not time-and-a-half.

80. At all relevant times, Class Representative Plaintiffs, and others similarly situated, worked unpaid straight hours and/or overtime hours based upon Defendant's custom and practice of requiring them to work off-the-clock, among other violations of the FLSA and state law.

81. At all relevant times, in materials disseminated company-wide by Chipotle to its hourly-paid employees, including, for example, various employee handbooks, Chipotle expressed its formal, written policy purportedly requiring that its hourly employees be paid for all work performed and that no hourly employees may work off-the-clock.

82. Based on this formal, written, expressed policy, hourly-paid employees at all relevant times had a uniform, reasonable expectation that they would be paid for all of their work performed for Chipotle.

83. In practice, however, Chipotle, at all relevant times had, and still has, a single, unwritten, informal company-wide policy of requiring its hourly-paid employees to work off-the-clock without pay, and hourly employees who fail to work off-the-clock without pay are subject to retaliation.

84. Chipotle, a chain of non-franchised Mexican style restaurants, describes itself as "compet[ing] in a category of dining now called 'fast-casual,' the fastest growing segment of the restaurant industry, where customers expect food quality that's more in line   with full-service restaurants, coupled with the speed and convenience of fast food."http://www.chipotle.com/enus/company/about_us.aspx.

85. One of Chipotle's largest expenses is the payroll of its hourly-paid employees.

86. Chipotle creates and controls its labor and payroll budgets from its corporate headquarters in Denver, Colorado, and uses a central computerized system for timekeeping, and various other functions occurring at the individual restaurant level, to further control its labor and payroll costs.

87. Using this centralized system, managers (and, upon information and belief, others within Chipotle in higher level positions than managers) regularly monitor labor and payroll costs throughout the day to track whether, and to ensure that, these budgets are being met and these costs are being minimized.

88. To reduce its labor and payroll expense and to maximize profit, Chipotle maintains a company-wide policy of understaffing its restaurant workforce, and encouraging its general managers to require that their hourly-paid employees perform off-the-clock work without pay.

89. Chipotle implements its policy through a system of reward and punishment. Payroll budgets realistically can be met only if hourly-paid restaurant employees work off-the-clock. General managers are awarded bonuses and other compensation for staying within their payroll budgets. If a payroll budget is exceeded, the general manager's job security is threatened.

90. The pressure of reducing payroll expense and staying within payroll budgets results in general managers grossly understaffing each location.

91. The lack of adequate staff, which is a direct result of Chipotle's policies, causes Chipotle to allow, encourage, and direct its hourly restaurant employees to perform work without proper compensation.

92. One way that Chipotle does this is by routinely requiring hourly-paid restaurant employees to punch out, and then continue working until they are given permission to leave. If an employee does not punch out as required, Chipotle utilizes time clock devices that automatically record an employee as having punched out, even if the employee has not punched out and is still working.

93. Furthermore, Chipotle routinely conducts trainings, meetings, and other activities that hourly-paid restaurant employees are required to attend, but for which they are not allowed to punch in.

94. Chipotle has failed, and continues to fail, to accurately record, report, and/or preserve records of hours worked by its hourly-paid restaurant employees. As a result, Chipotle does not make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions and practices of employment.

95. Chipotle's actions were pursuant to general policies and directives that were issued from its corporate offices in Colorado, and were carried out by general managers at its stores nationwide, both within and outside of Colorado.

96. Chipotle has actual knowledge that work is performed by hourly restaurant employees without compensation.

97. Chipotle's conduct in denying overtime and regular wages to its hourly-paid restaurant employees, and in failing to keep accurate records with respect to hours worked by its hourly-paid employees, was reckless and willful. Indeed, such conduct is consistent with corporate management's view, as stated in Chipotle's 2012 Annual Report (at p.16) to its shareholders, that "complying with the[]

rules[,]" "including [federal and state] wage and hour laws," "subjects us to substantial expense and can be cumbersome...." (A .pdf version of Chipotle's 2012 Annual Report can be found at http://ir.chipotle.com/phoenix.zhtml?c=194775&p=irol-reportsAnnual.)

## COLORADO STATE CLASS ACTION ALLEGATIONS

98. Colorado Plaintiffs Turner, Granado, Tsao and others similarly situated incorporate herein by this reference the allegations contained in Paragraphs 1 through 97 of this Complaint as if set forth *verbatim*.

99. In addition to bringing this lawsuit as a nationwide collective action under the FLSA, Colorado Plaintiffs Turner, Granado and Tsao propose a class on behalf of themselves and all persons who, within three years prior to the filing of this action on January 21, 2015, were employed as a restaurant worker by Chipotle in the State of Colorado and paid on an hourly basis, as follows:

> All current and former hourly-paid restaurant employees of Chipotle Mexican Grill, Inc., who, on or after January 21, 2012, worked "off-the-clock" for Chipotle without payment in the State of Colorado.

100.    The proposed class meets the requirements of Rule 23(a) of the Federal Rules of Civil Procedure, in that:

   a. The members of the Class are so numerous that joinder of all class members would be impracticable.  On information and belief, members of the proposed class number in the thousands, both in and outside of Colorado.

   b. There are numerous common questions of law and fact at issue. These questions include, but are not limited to, the following:

   (i)    whether class members are employees covered by the Colorado Wage Act C.R.S. 8-4-101, *et seq.*, and 7 C.C.R. 1103.

   (ii)   whether Chipotle is an employer covered by the Colorado Wage Act C.R.S. 8-4-101, *et seq.*, and 7 C.C.R. 1103.;

   (iii)  whether Chipotle required class members to work off-the-clock without payment for their work;

   (iv)   whether Chipotle acted pursuant to a systematic practice in requiring off-the-clock work;

(v)     whether Chipotle failed to pay class members the full amount of wages due under the Colorado Wage Act C.R.S. 8-4-101, *et seq.*, and 7 C.C.R. 1103.;

(vi)    whether Chipotle failed to pay wages in the manner prescribed by the Colorado Wage Act C.R.S. 8-4-101, *et seq.*, and 7 C.C.R. 1103.;

(vii)   whether Chipotle withheld or diverted wages from class members in violation of the Colorado Wage Act C.R.S. 8-4-101, *et seq.*, and 7 C.C.R. 1103.;

(viii)  whether Chipotle, failed to furnish class members with an accurate statement of all deductions made from their wages in accordance with the Colorado Wage Act C.R.S. 8-4-101, *et seq.*, and 7 C.C.R. 1103.;

(ix)    whether Chipotle failed to pay class members for all hours worked as required by the Colorado Wage Act C.R.S. 8-4-101, *et seq.*, and 7 C.C.R. 1103.;

(x)     whether Chipotle failed to pay the appropriate rate of wages to class members under the Colorado Wage Act C.R.S. 8-4-101, *et seq.*, and 7 C.C.R. 1103.;

(xi)    whether Chipotle failed to make, keep, record, report, maintain and/or preserve complete, accurate, appropriate records of hours worked by and wages paid to class members under the Colorado Wage Act C.R.S. 8-4-101, *et seq.*, and 7 C.C.R. 1103.;

(xii)   whether Chipotle was unjustly enriched by the conduct alleged by class members and, if so, whether class members may recover under the theory of unjust enrichment;

(xiii)  whether class members are entitled to recover for *quantum meruit*;

(xiv)   whether Chipotle's actions were in good faith or, conversely, whether they were willful and in reckless disregard for class members rights;

(xv)    whether class members were deprived of wages and suffered other economic injury as a result of Chipotle's actions;

(xvi)   whether Chipotle's actions were taken pursuant to a systematic, corporate-wide policy or practice; and

(xvii)   whether class members are entitled to damages, liquidated damages, interest, attorney fees and costs, injunctive relief, and/or any other relief.

c.   The Class Representative Plaintiffs' claims are typical of the claims of all other class members. Plaintiffs' claims arise under the same acts and conduct as the claims of other class members. Plaintiffs also bring the same claims, under the same legal authority, and seek the same relief, as all other class members.

d.   Class Representative Plaintiffs will fully and adequately represent the interests of the class. Plaintiffs have retained counsel who are knowledgeable and experienced in prosecuting class actions. There are no known conflicts with class members that would render Plaintiffs or their counsel inadequate.

101.   The class meets the requirements of Rule 23(b)(2) of the Federal Rules of Civil Procedure, in that Chipotle has acted, or refused to act, on grounds that apply generally to the class as a whole. As alleged herein, all of Chipotle's hourly-paid restaurant employees are subjected to the same treatment by Chipotle, in that they are all required to work off-the-clock without payment, or face retaliation by Chipotle.

102.   The class also meets the requirements of Rule 23(b)(3) of the Federal Rules of Civil Procedure, in that the common questions of law or fact listed above predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Specifically, the benefits of class treatment outweigh class members' interests in individually controlling the prosecution of separate actions; plaintiffs are aware of no other litigation brought under Colorado law concerning the controversy that has already been brought by other class members; the efficiencies to be gained make it desirable to concentrate litigation of the claims in one forum; and there are no particular aspects of the claims that would make a class action unmanageable.

## NEW JERSEY STATE CLASS ACTION ALLEGATIONS

103.   New Jersey Plaintiffs Ford and Wade and others similarly situated incorporate herein by this reference the allegations contained in Paragraphs 1 through 102 of this Complaint as if set forth *verbatim*.

104.     In addition to bringing this lawsuit as a nationwide collective action under the FLSA, New Jersey Plaintiffs Ford and Wade propose a class on behalf of themselves and all persons who, within six years prior to the filing of this action on January 21, 2015, were employed as a restaurant worker by Chipotle in the State of New Jersey and paid on an hourly basis, as follows:

> All current and former hourly-paid restaurant employees of Chipotle Mexican Grill, Inc., who, on or after January 21, 2009, worked "off-the-clock" for Chipotle   without payment in the State of New Jersey.

105.     The proposed class meets the requirements of Rule 23(a) of the Federal Rules of Civil Procedure, in that:

a.   The members of the Class are so numerous that joinder of all class members would be impracticable.   On information and belief, members of the proposed class number in the thousands, both in and outside of New Jersey.

b.   There are numerous common questions of law and fact at issue.  These questions include, but are not limited to, the following:

(i)      whether class members are employees covered by the New Jersey Wage Payment Law ("NJWPL"), N.J.S.A. §§ 34:11-4.1, *et seq.*, and the New Jersey Wage Payment Regulations ("NJWPR"), N.J.A.C. §§ 12:55-1.1, *et seq.*, the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. §§ 34:11-56a, *et seq.*, and the New Jersey Wage and Hour Regulations ("NJWHR"), N.J.A.C. §§ 12:56-1.1, *et seq.*;

(ii)     whether Chipotle is an employer covered by NJWPL, the NJWPR, the NJWHL, and the NJWHR;

(iii)    whether Chipotle required class members to work off-the-clock without payment for their work;

(iv)     whether Chipotle acted pursuant to a systematic practice in requiring off-the-clock work;

(v)      whether Chipotle failed to pay class members the full amount of wages due under the NJWPL and NJWPR;

(vi)     whether Chipotle failed to pay wages in the manner prescribed by the NJWPL and NJWPR;

(vii)    whether Chipotle withheld or diverted wages from class

members in violation of the NJWPL and NJWPR;

(viii) whether Chipotle, failed to furnish class members with an accurate statement of all deductions made from their wages in accordance with the NJWPL and NJWPR;

(ix) whether Chipotle failed to pay class members for all hours worked as required by the NJWHL and NJWHR;

(x) whether Chipotle failed to pay the appropriate rate of wages to class members under the NJWHL and NJWHR;

(xi) whether Chipotle failed to make, keep, record, report, maintain and/or preserve complete, accurate, appropriate records of hours worked by and wages paid to class members under the NJWHL and NJWHR;

(xii) whether Chipotle was unjustly enriched by the conduct alleged by class members and, if so, whether class members may recover under the theory of unjust enrichment;

(xiii) whether class members are entitled to recover for *quantum meruit*;

(xiv) whether Chipotle's actions were in good faith or, conversely, whether they were willful and in reckless disregard for class members rights;

(xv) whether class members were deprived of wages and suffered other economic injury as a result of Chipotle's actions;

(xvi) whether Chipotle's actions were taken pursuant to systematic, corporate-wide policy or practice; and

(xvii) whether class members are entitled to damages, liquidated damages, interest, attorney fees and costs, injunctive relief, and/or any other relief.

b. The Class Representative Plaintiffs' claims are typical of the claims of all other class members. Plaintiffs' claims arise under the same acts and conduct as the claims of other class members. Plaintiffs also bring the same claims, under the same legal authority, and seek the same relief, as all other class members.

c. Class Representative Plaintiffs will fully and adequately represent the interests of the class. Plaintiffs have retained counsel who are knowledgeable and experienced in prosecuting class actions. There are no known conflicts with class members that would render Plaintiffs or their counsel inadequate.

106.     The class meets the requirements of Rule 23(b)(2) of the Federal Rules of Civil Procedure, in that Chipotle has acted, or refused to act, on grounds that apply generally to the class as a whole. As alleged herein, all of Chipotle's hourly-paid restaurant employees are subjected to the same treatment by Chipotle, in that they are all required to work off the clock without payment, or face retaliation by Chipotle.

107.     The class also meets the requirements of Rule 23(b)(3) of the Federal Rules of Civil Procedure, in that the common questions of law or fact listed above predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Specifically, the benefits of class treatment outweigh class members' interests in individually controlling the prosecution of separate actions; plaintiffs are aware of no other litigation brought under New Jersey law concerning the controversy that has already been brought by other class members; the efficiencies to be gained make it desirable to concentrate litigation of the claims in one forum; and there are no particular aspects of the claims that would make a class action unmanageable.

## CALIFORNIA STATE CLASS ACTION ALLEGATIONS

108.     California Plaintiff Gutierrez and others similarly situated incorporate herein by this reference the allegations contained in Paragraphs 1 through 107 of this Complaint as if set forth *verbatim.*

109.     In addition to bringing this lawsuit as a nationwide collective action under the FLSA, California Plaintiff Gutierrez proposes a class on behalf of himself and all persons who, within three years prior to the filing of this action on January 21, 2015, were employed as a restaurant worker by Chipotle in the State of California and paid on an hourly basis, as follows:

> All current and former hourly-paid restaurant employees of Chipotle Mexican Grill, Inc., who, on or after January 21, 2012, worked "off the clock" for Chipotle without payment in the State of California.

110.     The proposed class meets the requirements of Rule 23(a) of the Federal Rules of Civil Procedure, in that:

a. The members of the California State Class are so numerous that joinder of all class members would be impracticable. On information and belief,

members of the proposed class number in the thousands, both in and outside of California.

b.  There are numerous common questions of law and fact at issue.  These questions include, but are not limited to, the following:

     i.  whether class members are employees covered by to Industrial Welfare Commission Order 5-2001, California Code of Regulations, Title 8, Chapter 5, Section 11070, and the California Labor Code,  Sections 200, 218, 226, 500, 510, 1194, 1197, and 1198;

    ii.  whether Chipotle is an employer covered by Industrial Welfare Commission Order 5-2001, California Code of Regulations, Title 8, Chapter 5, Section 11070, and the California Labor Code, Sections 200, 218, 226, 500, 510, 1194, 1197, and 1198;

   iii.  whether Chipotle required class members to work off-the-clock without payment for their work;

   iv.  whether Chipotle acted pursuant to a systematic practice in requiring off-the-clock work;

    v.  whether Chipotle failed to pay class members the full amount of wages due under the California Labor Code;

   vi.  whether Chipotle failed to pay wages in the manner prescribed by the California Labor Code;

  vii.  whether Chipotle withheld or diverted wages from class members in violation of the California Labor Code;

 viii.  whether Chipotle failed to furnish class members with an accurate statement of all deductions made from their wages in accordance with the California Labor Code;

   ix.  whether Chipotle failed to pay class members for all hours worked as required by the California Labor Code;

    x.  whether Chipotle failed to pay the appropriate rate of wages to class members under the California Labor Code;

   xi.  whether Chipotle failed to make, keep, record, report, maintain and/or preserve complete, accurate, appropriate records of hours worked by and wages paid to class members under the California Labor Code;

xii.   whether Chipotle's failure to properly account and pay for off-the-clock work actions constitutes unfair, unlawful, deceptive, or fraudulent business practices in violation of California Business & Professional Code § 17200 et seq;

xiii.   whether Chipotle was unjustly enriched by the conduct alleged by class members and, if so, whether class members may recover under the theory of unjust enrichment;

xiv.   whether Chipotle's actions were in good faith or, conversely, whether they were willful and in reckless disregard for class members rights;

xv.   whether class members were deprived of wages and suffered other economic injury as a result of Chipotle's actions;

xvi.   whether Chipotle's actions were taken pursuant to systematic, corporate-wide policy or practice; and

xvii.   whether class members are entitled to damages, liquidated damages, interest, attorney fees and costs, injunctive relief, and/or any other relief.

c.   The Class Representative Plaintiffs' claims are typical of the claims of all other class members. Plaintiffs' claims arise under the same acts and conduct as the claims of other class members. Plaintiffs also bring the same claims, under the same legal authority, and seek the same relief, as all other class members.

d.   Class Representative Plaintiffs will fully and adequately represent the interests of the class.   Plaintiffs have retained counsel who are knowledgeable and experienced in prosecuting class actions. There are no known conflicts with class members that would render Plaintiffs or their counsel inadequate.

111.   The class meets the requirements of Rule 23(b)(2) of the Federal Rules of Civil Procedure, in that Chipotle has acted, or refused to act, on grounds that apply generally to the class as a whole.   As alleged herein, all of Chipotle's hourly-paid restaurant employees are subjected to the same treatment by Chipotle, in that they are all required to work off the clock without payment, or face retaliation by Chipotle.

112.   The class also meets the requirements of Rule 23(b)(3) of the Federal Rules of Civil Procedure, in that the common questions of law or fact listed above predominate over any questions affecting only individual members, and a class

action is superior to other available methods for fairly and efficiently adjudicating the controversy. Specifically, the benefits of class treatment outweigh class members' interests in individually controlling the prosecution of separate actions; plaintiffs are aware of no other unresolved litigation brought under California law concerning the controversy that has already been brought by other class members; the efficiencies to be gained make it desirable to concentrate litigation of the claims in one forum; and there are no particular aspects of the claims that would make a class action unmanageable.

## ARIZONA STATE CLASS ACTION ALLEGATIONS

113.    Arizona Plaintiff Charles and others similarly situated incorporate herein by this reference the allegations contained in Paragraphs 1 through 112 of this Complaint as if set forth *verbatim*.

114.    In addition to bringing this lawsuit as a nationwide collective action under the FLSA, Arizona Plaintiff Charles proposes a class on behalf of himself and all persons who, within three years prior to the filing of this action on January 21, 2015, were employed as a restaurant worker by Chipotle in the State of Arizona and paid on an hourly basis, as follows:

> All current and former hourly-paid restaurant employees of Chipotle Mexican Grill, Inc., who, on or after January 21, 2012, worked "off the clock" for Chipotle without payment in the State of Arizona.

115.    The proposed class meets the requirements of Rule 23(a) of the Federal Rules of Civil Procedure, in that:

   a.   The members of the Arizona State Class are so numerous that joinder of all class members would be impracticable. On information and belief, members of the proposed class number in the thousands, both in and outside of Arizona.

   b.   There are numerous common questions of law and fact at issue. These questions include, but are not limited to, the following:

      i.   whether class members are employees covered by A.R.S. § 23-355;

      ii.   whether Chipotle is an employer covered by covered by A.R.S. § 23-355;

      iii.   whether Chipotle required class members to work off-the-clock without payment for their work;

iv. whether Chipotle acted pursuant to a systematic practice in requiring off-the-clock work;

v. whether Chipotle failed to pay class members the full amount of wages due under A.R.S. § 23-355;

vi. whether Chipotle withheld or diverted wages from class members in violation of A.R.S. § 23-355;

vii. whether Chipotle failed to pay class members for all hours worked as required by A.R.S. § 23-355;

viii. whether Chipotle failed to pay the appropriate rate of wages to class members under A.R.S. § 23-355;

ix. whether Chipotle was unjustly enriched by the conduct alleged by class members and, if so, whether class members may recover under the theory of unjust enrichment;

x. whether Chipotle's actions were in good faith or, conversely, whether they were willful and in reckless disregard for class members rights;

xi. whether class members were deprived of wages and suffered other economic injury as a result of Chipotle's actions;

xii. whether Chipotle's actions were taken pursuant to a systematic, corporate-wide policy or practice; and

xiii. whether class members are entitled to damages, liquidated damages, interest, attorney fees and costs, injunctive relief, and/or any other relief.

c. The Class Representative Plaintiffs' claims are typical of the claims of all other class members. Plaintiffs' claims arise under the same acts and conduct as the claims of other class members. Plaintiffs also bring the same claims, under the same legal authority, and seek the same relief, as all other class members.

d. Class Representative Plaintiffs will fully and adequately represent the interests of the class. Plaintiffs have retained counsel who are knowledgeable and experienced in prosecuting class actions. There are no known conflicts with class members that would render Plaintiffs or their counsel inadequate.

116. The class meets the requirements of Rule 23(b)(2) of the Federal Rules of

Civil Procedure, in that Chipotle has acted, or refused to act, on grounds that apply generally to the class as a whole. As alleged herein, all of Chipotle's hourly-paid restaurant employees are subjected to the same treatment by Chipotle, in that they are all required to work off the clock without payment, or face retaliation by Chipotle.

117.     The class also meets the requirements of Rule 23(b)(3) of the Federal Rules of Civil Procedure, in that the common questions of law or fact listed above predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Specifically, the benefits of class treatment outweigh class members' interests in individually controlling the prosecution of separate actions; plaintiffs are aware of no other unresolved litigation brought under Arizona law concerning the controversy that has already been brought by other class members; the efficiencies to be gained make it desirable to concentrate litigation of the claims in one forum; and there are no particular aspects of the claims that would make a class action unmanageable.

## FIRST CLAIM FOR RELIEF
### Violation of the Fair Labor Standards Act of 1938

118.     Class Representative Plaintiffs and others similarly situated incorporate herein by this reference the allegations contained in Paragraphs 1 through 117 of this Complaint as if set forth *verbatim*

119.     At all times material herein, Class Representative Plaintiffs and others similarly situated have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201 *et seq.*

120.     Class Representative Plaintiffs and others similarly situated are or were an "employee" pursuant to 29 U.S.C. § 203(e)(1).

121.     Defendant is an "employer" pursuant to 29 U.S.C. § 203(d).

122.     Class Representative Plaintiffs and others similarly situated suffered and/or were permitted to work by Defendant pursuant to 29 U.S.C. § 203(g).

123.     Section 13 of the FLSA, 29 U.S.C. § 213, exempts certain categories of employees from overtime pay obligations. None of the FLSA exemptions apply to Class Representative Plaintiffs and others similarly situated. Accordingly, Class Representative Plaintiffs and all similarly situated employees must be paid overtime pay in accordance with the FLSA.

124.     The FLSA regulates, among other things, payment of regular time wages and overtime pay by employers whose employees are engaged in the alleged activities of the Defendant's restaurants..

125.     Defendant was, and is, subject to the recordkeeping, minimum wage and overtime pay requirements of the FLSA because it is an enterprise engaged in commerce and its employees are engaged in commerce.

126.     Defendant violated the FLSA by failing to pay Class Representative Plaintiffs and all similarly situated employees all of her time worked, including regular time wages and overtime. In the course of perpetrating these unlawful practices, Defendant has also willfully failed to keep accurate records of all hours worked by employees.

127.     Section 13 of the FLSA, 29 U.S.C. § 213, exempts certain categories of employees from overtime pay obligations. None of the FLSA exemptions apply to Class Representative Plaintiffs or similarly situated employees. Accordingly, Class Representative Plaintiffs and all similarly situated employees must be paid overtime pay in accordance with the FLSA.

128.     Class Representative Plaintiffs and all similarly situated employees, as alleged herein, are victims of a uniform compensation policy and practice, which violated the FLSA.

129.     Class Representative Plaintiffs and all similarly situated employees are entitled to damages equal to the unpaid wages and mandated overtime premium pay within the three years preceding the filing of this Complaint, plus periods of equitable and agreed-upon tolling, because Defendant acted willfully and knew, or showed reckless disregard of whether, its conduct was prohibited by the FLSA.

130.     Defendant has not acted in good faith, nor with reasonable grounds to believe its actions and omissions were not a violation of the FLSA, and as a result thereof, are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages and overtime pay described above pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). Alternatively, should the Court find Defendant did not act willfully in failing to pay wages and overtime wages, Plaintiff and all similarly situated employees are entitled to an award of pre- and post-judgment interest at the applicable legal rate.

131.     As a result of the aforesaid willful violations of the FLSA regular wage and overtime provisions, regular wages, minimum wages and overtime compensation have been unlawfully withheld by Defendant from Class Representative Plaintiffs and all similarly situated employees for which Defendant is liable pursuant to 29 U.S.C. § 216(b), together with an additional equal amount as liquidated damages, pre- and post-judgment interest, reasonable attorneys' fees, and costs of this action.

## SECOND CLAIM FOR RELIEF
### Violation of the Colorado Wage and Hour Laws and Failure to Maintain Records on behalf of Plaintiffs Turner, Granado and Tsao and the Colorado State Class

132.     Plaintiffs Turner, Granado and Tsao and other similarly situated Colorado class members incorporate herein by this reference the allegations contained in Paragraphs 1 through 131 of this Complaint as if set forth *verbatim*

133.     Defendant violated the Colorado Wage and hour laws. C.R.S. §§ 8-6-101 *et. seq.*

134.     Defendant is in the retail and service industry. 7 COLO. CODE. REGS. § 1103-1:2(A).

135.     Defendant is required under Colorado law to pay Plaintiffs for their time worked. 7 COLO. CODE REGS. § 1103-1:4.

136.     Defendant is required under Colorado law to maintain accurate daily records of all hours worked by its employees, including Plaintiffs. 7 COLO. CODE REGS. § 1103-1:12.

137.     Defendant has not properly paid Plaintiffs and others similarly situated straight time for all hours worked.

138.     Defendant has not properly paid Plaintiffs and others similarly situated Colorado's Minimum Wage for all hours worked.

139.     Defendant has not properly paid Plaintiffs and others similarly situated overtime.

140.     Plaintiffs and others similarly situated Colorado class members have been damaged in an amount permitted under the law to be determined at trial.

141.     As a direct and proximate result of Defendant's failure and refusal to pay for off-the-clock work in violation of the Colorado wage and hour laws, Plaintiffs Turner, Granado and Tsao and other Colorado class members have been deprived of their rightfully earned wages, including regular time and overtime pay and any other compensation of which they were deprived, and are entitled to recover from Defendant all such unpaid wages and compensation, liquidated damages, attorney fees and costs, prejudgment interest, and all other appropriate relief.

### THIRD CLAIM FOR RELIEF
### Unjust Enrichment on behalf of
### Plaintiffs Turner, Granado, and Tsao and the Colorado State Class

142.    Plaintiffs Turner, Granado and Tsao and other similarly situated Colorado class members incorporate herein by this reference the allegations contained in Paragraphs 1 through 141 of this Complaint as if set forth *verbatim*

143.    Colorado Plaintiffs Turner, Granado and Tsao, and other similarly situated Colorado class members, conferred upon Defendant a benefit by performing unpaid work off-the-clock for Defendant, as demanded and required by Defendant.

144.    Defendant received this benefit of work performed by Plaintiffs Turner, Granado and Tsao and the Colorado class without paying them for this work.

145.    Defendant's retention of this benefit of work performed without paying for the work is unjust.

146.    Through its various sham formal, written (and other) policies uniformly, but falsely, expressing to all of its hourlypaid employees that such employees are to be paid for all hours worked, and in performing their work for Defendant, Plaintiffs Turner, Granado and Tsao, and the Colorado class, uniformly expected remuneration, in the form of wages at the appropriate rate, from the Defendant for all of their work performed for Defendant.

147.    By demanding and requiring Plaintiffs Turner, Granado and Tsao and the Colorado class members to work off-the-clock in transgression of, and by refusing and failing to pay them for all work performed in accordance with, Defendant's uniform expressed policies, Defendant significantly reduced its payroll and labor costs, diverted those savings to other company functions and priorities, and increased its profits to its own benefit and to the detriment of Plaintiffs Turner, Granado and Tsao and Colorado class members.

148.    Defendant's acceptance and retention of the benefit of Plaintiff Turner's, Granado's. Tsao's and Colorado class members' off-the-clock work without paying for it, and the resultant savings by refusing and failing to pay for such work, by saving and avoiding payroll and labor costs, by diverting those savings to other company functions and priorities, and by enjoying the increased profits that Defendant received as a result of its failure and refusal to pay them for all work performed, is inequitable and contrary to the fundamental principles of justice, equity, and good conscience and, as such, Plaintiffs Turner, Granado and Tsao and the Colorado class members may recover under the unjust enrichment doctrine.

149.     As a direct and proximate result of Defendant's actions, defendant has reaped unfair benefits and illegal profits at the expense of Plaintiffs Turner, Granado and Tsao, and other Colorado class members.  Defendant should be made to account for, and restore to Plaintiffs, the monies that were wrongly reaped by Defendant at Plaintiffs' expense.

### FOURTH CLAIM FOR RELIEF
#### In the Alternative, *Quantum Meruit* on behalf of
#### Plaintiffs Turner, Granado, and Tsao and the Colorado State Class

150.     Plaintiffs and others similarly situated incorporate herein by this reference the allegations contained in Paragraphs 1 through 149 of this Complaint as if set forth *verbatim*.

151.     Colorado Plaintiffs Turner, Granado and Tsao, and other similarly situated Colorado class members, performed work for the Defendant off-the-clock for which Defendant refused and failed to pay.

152.     Defendant accepted this work performed by Plaintiffs Turner, Granado and Tsao and the Colorado class members.

153.     Through its various sham formal, written (and other) policies uniformly, but falsely, expressing to all of its hourly-paid employees that such employees are to be paid for all hours worked, and in performing their work for Defendant, Plaintiffs Turner, Granado and Tsao, and the Colorado class, uniformly expected to be compensated by the Defendant for the reasonable value of all of Plaintiffs' and the Colorado class's work performed for Defendant.

154.     As a direct and proximate result of Defendant's improper failure and refusal to pay for off-the-clock work, Plaintiffs Turner, Granado and Tsao and the Colorado class are entitled to the reasonable value of all of their work performed for Defendant and shall so demonstrate this reasonable value through discovery and at the trial of this matter.

### FIFTH CLAIM FOR RELIEF
#### Violation of the New Jersey Wage Payment Law ("NJWPL")
#### and New Jersey Wage Payment Regulations ("NJWPR")
#### On behalf of Plaintiffs Ford and Wade and the New Jersey State Class

155.     Plaintiffs and others similarly situated incorporate herein by this reference the allegations contained in Paragraphs 1 through 154 of this Complaint as if set forth *verbatim*.

156.     New Jersey Plaintiffs Ford and Wade and New Jersey class members were employees of Defendant and were entitled to, and not exempt from, the NJWPL's protections provided in N.J.S.A. §§ 34:11-4.1, *et seq.* and provided in the NJWPL's implementing regulations, the NJWPR, codified in N.J.A.C. §§ 12:55-1.1, *et seq.*

157.     Defendant is an employer covered by the NJWPL and NJWPR.

158.     At all relevant times, Defendant refused and otherwise failed to pay its hourly-paid restaurant employees for all hours worked.  Plaintiffs Ford and Wade and New Jersey class members were required to work before and/or after their scheduled shifts, without clocking in.

159.     The NJWPL and NJWPR require employers, including Defendant, to pay the full amount of wages due to their employees at least twice during each calendar month, on regular pay days designated in advance by the employer. N.J.S.A. § 34:11-4.2; N.J.A.C. § 12:55-2.4(j).

160.     Under the NJWPL, the end of the pay period for which payment is made must not be more than 10 working days before such regular payday, N.J.S.A. § 34:11-4.2, and, under the NJWPR, N.J.A.C. § 12:55-2.4(a), all final payment of wages following termination or voluntary leaving of employment must be completed within 10 days from the end of the work period for which such wages are earned (in compliance with N.J.S.A. § 34:11-4.2).

161.     The NJWPL further provides that whenever an employer discharges an employee, or when an employee for any reason whatsoever is laid off, or whenever an employee quits, resigns, or leaves employment for any reason, the employer must pay the employee all wages due not later than the regular payday for the pay period during which the employee's termination, suspension or cessation of employment took place. N.J.S.A. § 34:11-4.3.

162.     Additionally, but for certain exceptions, none of which include an employer's requiring its employees to work off-the-clock without pay, the NJWPL and NJWPR prohibit an employer from withholding or diverting any portion of an employee's wages, N.J.S.A. § 34:11-4.4; N.J.A.C. § 12:55-2.1, and, under N.J.S.A. § 34:11-4.6, further require an employer, among other things, to furnish each employee with a statement of deductions made from his wages in accordance with N.J.S.A. § 34:11-4.4 for each pay period such deductions are made.

163.     In violation of the NJWPL and NJWPR, by requiring Plaintiffs Ford and Wade and New Jersey class members to work off-the-clock without pay, Defendant failed within the appropriate time frames, and has continuously to this day   failed, to pay them the full amount of wages to which they were, and continue to be, entitled for all hours of work that they performed for Defendant.

164.      In further violation of the NJWPL and NJWPR, Defendant has improperly withheld or diverted wages belonging to Plaintiffs Ford and Wade and New Jersey class members for their off-the-clock work, and has failed to furnish them with statements of deductions made from their wages for their off-the-clock work.

165.      The NJWPL has been construed by the State and federal courts of New Jersey, and courts outside of New Jersey, to provide employees with a private right of action against employers to collect all wages wrongfully withheld or otherwise not paid to employees.

166.      In violating the NJWPL and the NJWPR, Defendant failed to act in good faith, and acted willfully and with reckless disregard of clearly applicable NJWPL and NJWPR provisions and protections.

167.      As a direct and proximate result of Defendant's failure and refusal to pay for off-the-clock work in violation of the NJWPL and NJWPR, Plaintiffs Ford and Wade and New Jersey class members have been deprived of their rightfully earned wages, including   regular wages and overtime pay and any other compensation of which they were deprived, and are entitled to recover from Defendant all such unpaid wages and compensation, liquidated damages, attorney fees and costs, prejudgment interest, and all other appropriate relief under the NJWPL and NJWPR.

### SIXTH CLAIM FOR RELIEF
**Violation of the New Jersey Wage and Hour Law ("NJWHL")**
**and the New Jersey Wage and Hour Regulations ("NJWHR")**
**On behalf of Plaintiffs Ford and Wade and the New Jersey State Class**

168.      Plaintiffs and others similarly situated incorporate herein by this reference the allegations contained in Paragraphs 1 through 167 of this Complaint as if set forth *verbatim.*

169.      New Jersey Plaintiffs Ford and Wade and New Jersey class members were employees of Defendant and entitled to, and not exempt from, the NJWHL's protections provided in N.J.S.A. §§ 34:11-56a, *et seq.* and provided in the NJWHL's implementing regulations, the NJWHR, codified in N.J.A.C. §§ 12:56-1.1, *et seq.*

170.      Defendant is an employer covered by the NJWHL and the NJWHR.

171.      At all relevant times, Defendant refused and otherwise failed to pay its employees for all hours worked.  Plaintiffs Ford and Wade and New Jersey class members were required to work before and/or after their scheduled shifts, without clocking in.

172.    The NJWHL and NJWHR require every employer to pay each of its hourly employees not less than the statutory hourly minimum wage for 40 hours of working time in a work week and "1 ½ times such employee's regular hourly wage for each hour of working time in excess of 40 hours in any week." N.J.S.A. § 34:11-56a4; N.J.A.C. § 12:56-3.1.

173.    The NJWHR further provides that employees entitled to the benefits of the NJWHL must be paid for all hours worked and that all of the time that the employee is required to be at his or her place of work or on duty must be counted as hours worked. N.J.A.C. §§ 12:56-5.1; 12:56-5.2(a).

174.    The NJWHL also requires every covered employer to keep a true and accurate record of the hours worked by and the wages paid to each of its employees, and requires the employer to provide a sworn statement of same to the proper New Jersey State officials upon demand. N.J.S.A. 34:11-56a20. The contents of these records, and the manner in, and conditions under, which they must be maintained are prescribed in the NJWHR, N.J.A.C. §§ 12:56-4.1 – 12:56-4.10. It is a violation of the NJWHL for an employer to fail to make, keep and preserve any records required under the NJWHR.

175.    In addition to any direct violation of the provisions of the NJWHL itself, an employer violates the NJWHL when, among other things, it violates any provision of the NJWHR. N.J.A.C. § 12:56-1.2(8).

176.    In violation of the NJWHL and the NJWHR, by operation of its requiring Plaintiffs Ford and Wade and New Jersey class members to work off-the-clock without pay, including, at times, beyond 40 hours in a work week, Defendant failed to pay them the appropriate minimum wage for hours worked and/or "1 ½ times" the appropriate minimum wage for more than 40 hours worked in a work week. In further violation of the NJWHL and NJWHR, by requiring them to work off-the-clock without pay, Defendant failed to pay the Plaintiffs and New Jersey class members for all hours worked for the Defendant.

177.    Upon information and belief, in further violation of the NJWHL and NJWHR, Defendant failed to make, keep, preserve and maintain complete and accurate records required by N.J.S.A. 24:11-56a20 and N.J.A.C. 12:56-4.1.

178.    Under the NJWHL and NJWHR, and as construed by the courts of New Jersey, employees have a private right of action – including, but not limited to, the NJWHL's allowance of a private right of action to enforce the NJWHR generally, including, but not limited to, N.J.A.C. § 12:56-5.1 (requiring payment for all hours worked) – against employers to collect all wages wrongfully withheld or not paid to employees.

179.     In violating the NJWHL and the NJWHR, Defendant failed to act in good faith, and acted willfully and with reckless disregard of clearly applicable NJWHL and NJWHR provisions and protections.

180.     As a direct and proximate result of Defendant's failure and refusal to pay for off-the-clock work in violation of the NJWHL and NJWHR, Plaintiffs Ford and Wade and New Jersey class members have been deprived of their rightfully earned wages, including  regular wages and overtime pay and any other compensation of which they were deprived, and are entitled to recover from Defendant all such unpaid wages and compensation, liquidated damages, attorney fees and costs, prejudgment interest, and all other appropriate relief under the NJWHL and NJWHR.

<u>**SEVENTH CLAIM FOR RELIEF**</u>
**Unjust Enrichment**
**On behalf of Plaintiffs Ford and Wade and the New Jersey State Class**

181.     Plaintiffs and others similarly situated incorporate herein by this reference the allegations contained in Paragraphs 1 through 180 of this Complaint as if set forth *verbatim.*

182.     New Jersey Plaintiffs Ford and Wade and New Jersey class members conferred upon Defendant a benefit by performing unpaid work off-the-clock for Defendant, as demanded and required by Defendant.

183.     Defendant received and retained this benefit of work performed by Plaintiffs Ford and Wade and New Jersey class members without paying them for this work.

184.     Defendant's retention of this benefit of work performed without paying for the work is unjust.

185.     Through its various sham formal, written (and other) policies uniformly, but falsely, expressing to all of its hourly wage employees that such employees are to be paid for all hours worked, and in performing their work for Defendant, Plaintiffs Ford and Wade and New Jersey class members uniformly expected remuneration, in the form of wages and compensation at the appropriate rate, from the Defendant for all of their work performed for Defendant.

186.     By demanding and requiring Plaintiffs Ford and Wade and the New Jersey class members to work off the clock in transgression of, and by refusing and failing to pay them for all work performed in accordance with, Defendant's uniform expressed policies, Defendant significantly reduced its labor costs, diverted those savings to other company functions and priorities, and increased its profits to its own benefit and to the detriment of Plaintiffs Ford and Wade and New Jersey class members.

187.     Defendant's acceptance and retention of the benefit of Plaintiffs Ford's and Wade's and New Jersey class members' off-the-clock work without paying for it, and the resultant savings by refusing and failing to pay for such work, by saving and avoiding labor costs, by diverting those savings to other company functions and priorities, and by enjoying the increased profits that Defendant received as a result of its failure and refusal to pay them for all work performed, is inequitable and contrary to the fundamental principles of justice, equity, and good conscience, and, as such, Plaintiffs Ford and Wade and the New Jersey class members may recover under the unjust enrichment doctrine.

188.     As a direct and proximate result of Defendant's actions, defendant has reaped unfair benefits and illegal profits at the expense of Plaintiffs Ford and Wade and New Jersey class members.  Defendant should be made to account for, and restore to Plaintiffs, the monies that were wrongly reaped by Defendant at Plaintiffs' expense.

## EIGHTH CLAIM FOR RELIEF
### *Quantum Meruit*
**On behalf of Plaintiffs Ford and Wade and the New Jersey State Class**

189.     Plaintiffs and others similarly situated incorporate herein by this reference the allegations contained in Paragraphs 1 through 188 of this Complaint as if set forth *verbatim.*

190.     New Jersey Plaintiffs Ford and Wade and New Jersey class members performed work for the Defendant off-the-clock for which Defendant refused and failed to pay.

191.     Defendant accepted this work performed by Plaintiffs Ford and Wade and the New Jersey class members.

192.     Through its various sham formal, written (and other) policies uniformly, but falsely, expressing to all of its hourly wage employees that such employees are to be paid for all hours worked, and in performing their work for Defendant, Plaintiffs Ford and Wade and New Jersey class members uniformly expected to be compensated by the Defendant for the reasonable value of all of Plaintiffs' and the New Jersey class members' work performed for Defendant.

193.     As a direct and proximate result of Defendant's conduct, Plaintiffs Ford and Wade and New Jersey class members have been deprived of the reasonable value of their off-the-clock work performed for Defendant and are entitled to recover same from Defendant, which they shall  demonstrate through discovery and at the trial of this matter.

## NINTH CLAIM FOR RELIEF
### Failure To Compensate Employees For All Hours Worked
### (Cal. Labor Code §§ 200, 218, 226, 500, 1194, 1197, 1198)
### On behalf of Araceli Gutierrez and the California State Class

194.     Plaintiffs and others similarly situated incorporate herein by this reference the allegations contained in Paragraphs 1 through 193 of this Complaint as if set forth *verbatim.*

195.     Gutierrez and other California class members were employees of Defendant and were not exempt from the requirements of California employment laws and regulations.

196.     During the Class Period, Defendant was required to compensate its hourly employees for all hours worked, pursuant to Industrial Welfare Commission Order 5-2001, California Code of Regulations, Title 8, Chapter 5, Section 11070, and Labor Code Sections 200, 218, 226, 500, 510, 1194, 1197, and 1198.

197.     At all relevant times, Defendant refused and otherwise failed to compensate its employees for all hours worked.  California class members were required to work before and after their scheduled shifts, without clocking in. California class members were not compensated for this off-the-clock work.

198.     As a direct and proximate result of Defendant's failure and refusal to pay for off-the-clock work, Gutierrez and the other California class members have been deprived of their rightfully earned compensation, which includes both regular wages and overtime pay. Plaintiffs are entitled to actual and statutory damages for such unpaid compensation, together with attorneys fees, costs and disbursements, and statutory interest.

## TENTH CLAIM FOR RELIEF
### Failure To Furnish Accurate Wage And Hour Statements
### (Cal. Labor Code §§ 218, 226(e), 226.3)
### On behalf of Araceli Gutierrez and the California State Class

199.     Plaintiffs and others similarly situated incorporate herein by this reference the allegations contained in Paragraphs 1 through 198 of this Complaint as if set forth *verbatim.*

200.     Gutierrez and other California class members were employees of Defendant and were not exempt from the requirements of California employment laws and regulations.

201.     Pursuant to Labor Code § 226(a), Defendant was required to provide timely, accurate itemized wage statements to Gutierrez and other California class members.

202.     During the Class Period, in refusing and otherwise failing to record or otherwise account for off-the-clock work, Defendant failed to provide Gutierrez and other California class members with timely and accurate wage and hour statements showing total hours worked, gross wages earned, and net wages earned for a given pay period, as required by Labor Code § 226(a).

203.     On information and belief, Defendant's failure to provide timely and accurate wage and hour statements was intentional. Defendant knew that the pressure to control labor costs forced store managers and others to require hourly employees to work off the clock, without compensation. Defendant deliberately failed to account for off-the-clock work in its wage and hour statements to prevent hourly employees from being compensated for such off-the-clock work. Defendant thus intentionally failed to comply with Labor Code § 226.

204.     Pursuant to Labor Code §§ 218 and 226, Defendant is liable to Gutierrez and other California class members for actual and statutory damages for its failure to provide accurate wage statements.

## ELEVENTH CLAIM FOR RELIEF
### Continuing Wages
### (Cal. Labor Code §§ 201, 202, 203)
### On behalf of Araceli Gutierrez and the California State Class

205.     Plaintiffs and others similarly situated incorporate herein by this reference the allegations contained in Paragraphs 1 through 204 of this Complaint as if set forth *verbatim*.

206.     Pursuant to Labor Code § 203, upon the termination of employment of Gutierrez or any other California class member, Defendant was required to pay the full amount of all wages owed to such employee, within specified time frames.

207.     As alleged above, because Defendant failed to pay for off the clock work, Gutierrez and other California class members were not provided with all wages that were due and owing upon the termination of their employment.

208.     Gutierrez and other California class members whose employment was terminated are entitled to continuing wages, pursuant to Labor Code § 203.

## TWELFTH CLAIM FOR RELIEF
### Unfair Competition
### (Cal. Bus. & Prof. Code § 17200 et seq.)
### On behalf of Araceli Gutierrez and the California State Class

209.    Plaintiffs and others similarly situated incorporate herein by this reference the allegations contained in Paragraphs 1 through 208 of this Complaint as if set forth *verbatim.*

210.    Defendant's violations of California wage and hour laws as alleged herein, which included, without limitation:  requiring employees to work off the clock without compensation, failing to pay overtime wages, failing to pay minimum wages, and failing to properly account for all work performed by employees, constitute a business practice because they were done repeatedly, over a lengthy period of time, and in a systematic manner, to the detriment of Gutierrez and other California class members.

211.    Defendants' violations of California wage and hour laws, as alleged herein, constitute unfair, unlawful, deceptive, or fraudulent business practices in violation of California Business & Professional Code § 17200 et seq.

212.    As a direct and proximate result of Defendant's unfair business practices, Defendant has reaped unfair benefits and illegal profits at the expense of Gutierrez and other California class members.  Defendant should be made to account for, and restore to Plaintiffs, the monies that were wrongly reaped by Defendant at Plaintiffs' expense.

213.    Defendant's unfair business practices entitle Gutierrez and other California class members to preliminary and permanent injunctive relief, including but not limited to an order that Defendant account for and restore the compensation wrongly withheld from the California State Class.

## THIRTEENTH CLAIM FOR RELIEF
### Unjust Enrichment
### On behalf of Araceli Gutierrez and the California State Class

214.    Plaintiffs and others similarly situated incorporate herein by this reference the allegations contained in Paragraphs 1 through 213 of this Complaint as if set forth *verbatim.*

215.    In providing labor to Defendant, Gutierrez and other California class members conferred benefits on Defendant.

216.    Defendant received, kept and retained the benefits conferred upon it Gutierrez and other California class members, without compensating them for said benefits.

217.     Defendant's retention of the benefits without providing compensation violated federal and state labor laws as alleged herein, and was therefore unjust.

218.     As a direct and proximate result of Defendant's actions, Defendant has reaped unfair benefits and illegal profits at the expense of Gutierrez and other California class members. Defendant should be made to account for, and restore to Plaintiffs, the monies that were wrongly reaped by Defendant at Plaintiffs' expense.

219.     Defendant's actions entitle Gutierrez and other California class members to preliminary and permanent injunctive relief, including but not limited to an order that Defendant account for and restore the compensation wrongly withheld from the California State Class.

## FOURTEENTH CLAIM FOR RELIEF
### Failure To Pay Wages
(A.R.S. § 23-355)
**On behalf of Brett Charles and the Arizona Class**

220.     Plaintiffs and others similarly situated incorporate herein by this reference the allegations contained in Paragraphs 1 through 219 of this Complaint as if set forth *verbatim*.

221.     Charles and other Arizona class members were employees of Defendant and were not exempt from the requirements of Arizona employment laws and regulations.

222.     Pursuant to A.R.S. § 23-355, Defendant was required to pay wages due to Charles and other Arizona class members for all time worked, including all hours worked off the clock.

223.     At all relevant times, Defendant refused and otherwise failed to compensate its employees for all hours worked. Arizona class members were required to work before and after their scheduled shifts, without clocking in. Arizona class members were not compensated for this off-the-clock work.

224.     On information and belief, Defendant's actions in failing to pay earned wages to Charles and other Arizona class members was intentional, willful, unreasonable, and in bad faith.

225.     As a direct and proximate result of Defendant's failure and refusal to pay for off-the-clock work, Charles and the other Arizona class members have been deprived of their rightfully earned compensation, which includes both regular wages and overtime pay. Plaintiffs are entitled to actual and statutory damages for

such unpaid compensation in the amount of three times the amount of the unpaid wages owed to them, together with attorney fees, costs and disbursements, and statutory interest.

## FIFTEENTH CLAIM FOR RELIEF
### Unjust Enrichment
### On behalf of Brett Charles and the Arizona Class

226.     Plaintiffs and others similarly situated incorporate herein by this reference the allegations contained in Paragraphs 1 through 225 of this Complaint as if set forth *verbatim*.

227.     In providing off-the-clock labor to Defendant, Charles and other Arizona class members enriched Defendant.

228.     Defendant received, kept and retained the enrichment conferred upon it by Charles and other Arizona class members, without compensating them for the off-the-clock work they performed.

229.     Charles and other Arizona class members were impoverished by Defendant's refusal and failure to pay for off-the-clock work.

230.     Defendant had no legitimate justification for its own enrichment, and the impoverishment of Charles and other Arizona class members.   Defendant's refusal and failure to pay for off-the-clock work violated federal and state labor laws as alleged herein, and was therefore unjust.

231.     As a direct and proximate result of Defendant's actions, Defendant has reaped unfair benefits and illegal profits at the expense of Charles and other Arizona class members.  Defendant should be made to account for, and restore to Plaintiffs, the monies that were wrongly reaped by Defendant at Plaintiffs' expense.

232.     Charles and other Arizona class members have no adequate remedy at law to recover wages that were unfairly and unlawfully withheld more than one year prior to the commencement of this lawsuit.

233.     Defendant's actions entitle Charles and other Arizona class members to preliminary and permanent injunctive relief, including but not limited to an order that Defendant account for and restore the compensation wrongly withheld from the Arizona State Class.

## CONCLUSION

WHEREFORE, Class Representative Plaintiffs and those similarly situated request the following relief:

(a)     certification of this case as a collective action under the FLSA;

(b)     certification of a Colorado class under Rule 23;

(c)     certification of a New Jersey class under Rule 23;

(d)     certification of a California class under Rule 23;

(e)     certification of an Arizona class under Rule 23;

(f)     an order preliminarily and permanently enjoining Chipotle from engaging in the above-described conduct;

(g)     an award of the value of Plaintiffs' unpaid wages, and the unpaid wages of all other current and former hourly-paid Chipotle restaurant employees included in this action;

(h)     an award of liquidated damages under the FLSA for Plaintiffs and for all other current and former hourly-paid Chipotle restaurant employees included in this action;

(i)     an award of reasonable attorneys fees, expenses, expert fees and all other costs incurred in this action;

(j)     an award of pre- and post-judgment interest;

(k)     any other relief permissible under the laws alleged; and

(l)     any and all other relief that the Court deems proper.

## JURY DEMAND

Plaintiff requests a trial to a jury on all issues so triable.

DATED this January 21, 2015.

Respectfully submitted,


/s/Karen O'Connor
Karen O'Connor
BACHUS & SCHANKER, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Telephone: 303.893.9800
Facsimile:  303.893.9900
Karen.oconnor@coloradolaw.net


Kent M. Williams
WILLIAMS LAW FIRM
1632 Homestead Trail
Long Lake, MN 55356
Telephone: (612) 940-4452
Facsimile: (763) 473-0314
williamslawmn@gmail.com

Adam S. Levy
LAW OFFICE OF ADAM S. LEVY,
LLC
P.O. Box 88
Oreland, PA 19075
Telephone:  (267) 994-6952
Facsimile:  (215) 233-2992
adamslevy@comcast.net

ATTORNEYS FOR PLAINTIFF