**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:14-cv-02612-JLK

LEAH TURNER, ARACELI GUTIERREZ, MARKEITTA FORD,
JOLESSA WADE, DANYA GRANADO, BRETT CHARLES, and
RUBY TSAO

individually and on behalf of others
similarly situated,

Plaintiffs,

v. CHIPOTLE MEXICAN GRILL, INC.,

Defendant.

---

**CHIPOTLE MEXICAN GRILL, INC.'S MOTION TO DISMISS OPT-IN
PLAINTIFFS BOUND BY CHIPOTLE'S ARBITRATION AGREEMENT**

---

Defendant Chipotle Mexican Grill, Inc. ("Chipotle") respectfully moves this Court

to dismiss all Opt-In Plaintiffs who are bound by Chipotle's arbitration agreement from

this action ("Motion"). In support of this request, Chipotle states as follows:

**INTRODUCTION**

This collective action contains 2,814 Opt-In Plaintiffs[1] who are subject to a

mandatory arbitration agreement ("Improper Opt-Ins") with Chipotle that compels

---

[1] Chipotle has produced evidence demonstrating that 2,813 Improper Opt-Ins signed Arbitration
Agreements.  Chipotle is locating and will produce the Arbitration Agreement for the remaining
individual in due course.

arbitration of the very claims they now attempt to bring in this Court ("Arbitration Agreement"). Specifically, the Arbitration Agreement applies to all new-hires beginning in August 2014 and requires arbitration of any and all claims arising from the parties' employment relationship, including all claims for "wage or other compensation due" under federal and state law, and the Arbitration Agreement further prohibits employees from bringing or participating in class or collective actions. (Gottlieb Decl., Dkt. 173, Ex. A, ¶¶ 2, 5.1.)   Each of these 2,814 Improper Opt-Ins voluntarily executed the Arbitration Agreement. The Arbitration Agreement is valid, and the Improper Opt-Ins' varying claims seeking statutory and equitable relief for unpaid wages are squarely within its scope. As a result, the Improper Opt-Ins should not be parties to this action, should never have been permitted to join the collective, and should not be permitted to circumvent their contractual obligations.

Dismissal without prejudice, rather than compulsory arbitration, is the appropriate remedy. The Improper Opt-Ins were invited to this matter over Chipotle's objections, through a nationwide notice procedure that encouraged their participation in direct contravention of the Arbitration Agreement. Plaintiffs' counsel advocated for distribution of the notice to the Improper Opt-Ins with full knowledge of the Arbitration Agreement. Stated differently, that notice was an unequivocal invitation from Plaintiffs' Counsel to these Improper Opt-Ins to breach their contract with Chipotle—a process that should not have been permitted. As a result of that improper invitation, these 2,814 Improper Opt-Ins

2

should be dismissed, without further orders to proceed to arbitration. Indeed, compelling 2,814 individual arbitrations to proceed against Chipotle compounds the harm from this tainted process, further eviscerating Chipotle's due process and contractual rights. To correct the prejudice to Chipotle and mitigate further harm, the parties should be returned to the positions they held before the Improper Opt-Ins were invited to breach the agreement.

Further, Plaintiffs' Counsel should not be permitted to represent these Improper Opt-Ins in any further proceedings. Setting aside the inherent conflict Counsel has created with the Improper Opt-Ins by instigating their breach of the Arbitration Agreement, Plaintiffs' Counsel should not be permitted to capitalize on this process for their personal financial benefit or additional leverage in this case. By virtue of the notice process, Plaintiffs' Counsel collected thousands of clients they otherwise would never have, and should not have, represented. It belies fundamental principles of equity that Plaintiffs' Counsel can invite the Improper Opt-Ins to breach their contractual obligations with Chipotle and then use that invitation as a method of soliciting clients for their own profit. Moreover, returning to the status quo—that is, placing the Improper Opt-Ins back in the same position they were before they received notice of the collective—places them in no worse position. Indeed, Chipotle does not seek dismissal with prejudice or to limit their right to file individual arbitrations.

This Court should therefore dismiss the Improper Opt-Ins from this lawsuit altogether and prohibit Plaintiffs' Counsel from representing them in any future proceedings.

## RELEVANT BACKGROUND

### A.    This Lawsuit's Scope

Plaintiffs' Amended Complaint alleges Chipotle violated the Fair Labor Standards Act ("FLSA") and Colorado, New Jersey, California, and Arizona state statutory wage and hour laws, by asking employees to work "off-the-clock" and failing to keep required wage records. (Am. Compl., ¶ 1.) Plaintiffs also allege violations of the various state laws and FLSA for the alleged failure to keep required wage records and alleged unjust enrichment and/or quantum meruit for the supposed "off-the-clock" work. (*Id.* at ¶¶ 118-233.) Plaintiffs advance the FLSA claims on a collective basis and the state law claims on a putative class basis.

This Court has certified an FLSA collective pursuant to 29 U.S.C. § 216(b) as follows:

> All current or former hourly employees crew members of Chipotle who were not properly paid minimum wage, regular or straight time and/or overtime in the last three (3) years who were required to perform work, to attend meetings and training, or to perform other activities, "off-the-clock" without pay, and/or who, by way of Defendant's timekeeping devices or otherwise, were automatically punched off-the-clock or were recorded as having been punched off-the-clock, resulting in non-payment of overtime, minimum wage, or regular or straight wages.

(Dkt. 28, 27-28; Dkt. 87, 1-2.)

4

## B.      Chipotle's Arbitration Agreement

Beginning in August 2014, Chipotle implemented an arbitration program applicable to all new hires, including all new employees in Colorado, California, New Jersey, and Arizona. (Gottlieb Decl., Dkt. 173, ¶ 12.) The Arbitration Agreement provides in relevant part:[2]

> 2. **Duty to Arbitrate**. In consideration of Chipotle's offer of employment to Employee and the at will employment relationship between Chipotle and Employee, Chipotle and Employee hereby agree that any and all Claims (defined below in Section 4) shall be resolved by final and binding arbitration in accordance with this Agreement.

(*Id.* at Ex. A, ¶ 2.)

> 4. **Claims Subject to Arbitration**. As used in this Agreement, "Claims" means any and all disputes, claims, and controversies arising out of or relating to this Agreement, the parties' employment relationship, or the formation, existence, or termination of the parties' employment relationship, including but not limited to all claims for: wrongful termination; breach of any contract or covenant, oral or written, express or implied; breach of any duty owed to Employee by Chipotle or to Chipotle by Employee; personal, physical or emotional injury; fraud, misrepresentation, defamation, and any other tort claims; wages or other compensation due; penalties; benefits; reimbursement of expenses; discrimination or harassment, including but not limited to discrimination or harassment based on race, sex, pregnancy, religion, national origin, ancestry, age, marital status, physical disability, mental disability, medical condition, sexual orientation, or genetic information; retaliation; violation of any federal, state or other governmental constitution, statute, ordinance, rule, or regulation (as originally enacted and as amended), including but not limited to Title VII of the Civil Rights Act of 1964 ("Title VII"), Age Discrimination in Employment Act of 1967 ("ADEA"), Americans With Disabilities Act ("ADA"), Fair Labor Standards Act ("FLSA"), Employee Retirement Income Security Act ("ERISA"), Consolidated Omnibus Budget Reconciliation Act ("COBRA"), Family and Medical Leave Act ("FMLA"), and state and local government wage and hour, discrimination, leave, and other laws of every type; unfair business practices; disclosure of confidential information or trade secrets; pirating employees; and employee theft or conversion. As used herein, "Claims" does not mean any dispute the arbitration of which is prohibited by law.

(*Id.* at Ex. A, ¶ 4.)

---

[2] Chipotle revised its arbitration agreement in February 2017. (Gottlieb Decl., Dkt. 173, ¶ 13.) Because all Arbitration Opt-Ins received Notice prior to that date, it is immaterial here.

5.1 **Class and Collective Action Claims.** BY SIGNING THIS AGREEMENT, THE PARTIES AGREE THAT EACH MAY BRING AND PURSUE CLAIMS AGAINST THE OTHER ONLY IN HIS, HER, OR ITS INDIVIDUAL CAPACITY, AND MAY NOT BRING, PURSUE, OR ACT AS A PLAINTIFF OR CLASS MEMBER, IN ANY PURPORTED CLASS OR COLLECTIVE PROCEEDING.

5.2 **Representative Action Claims.** THE PARTIES FURTHER AGREE THAT, EXCEPT FOR ACTIONS BASED ON THE CALIFORNIA PRIVATE ATTORNEYS GENERAL ACT, LABOR CODE SECTIONS 2698, ET SEQ., NEITHER PARTY MAY BRING, PURSUE, OR ACT AS A PLAINTIFF OR REPRESENTATIVE IN ANY PURPORTED REPRESENTATIVE PROCEEDING OR ACTION, INCLUDING ANY CLAIMS UNDER ANY FEDERAL, STATE, OR LOCAL LAW, OR OTHERWISE PARTICIPATE IN ANY SUCH REPRESENTATIVE PROCEEDING OR ACTION OTHER THAN ON AN INDIVIDUAL BASIS.

(*Id.* at Ex. A, ¶¶ 5.1-5.2.)

Chipotle distributed the Arbitration Agreement electronically as part of the new hire and onboarding process. (*See id.* at ¶ 17.) New employees access the Arbitration Agreement through Chipotle's online system, known as Workday, by virtue of a unique identification number and password. (*Id.* at ¶ 15.) The employee must agree to the Arbitration Agreement electronically to complete the new hire process and begin work for Chipotle. (*Id.* at ¶ 17.) Chipotle assumes all arbitration-associated costs, except those the employee would have paid in court. (*Id.* at Ex. A., ¶ 7.)

### C. At Plaintiffs' Counsels' Request, Persons Bound by the Arbitration Agreement Were Invited to Join this Lawsuit

The Court allowed "company-wide judicial notice to all current and former non-exempt hourly workers employed by Chipotle for the three years preceding the filing of this action." (Dkt. 87, 1-2.) In September 2015, the parties informed the Court that the

"pool of current and former employees" who were "entitled to receive notice" included current and former employees who "may be subject to compulsory, binding arbitration." (Dkt. 95, 6.)

At the November 12, 2015 motions hearing, Plaintiffs' Counsel confirmed that many of the past and current employees to whom they wanted to send notices were subject to compulsory binding arbitration. (Mot. Hr'g Tr., attached as **Exhibit 1**, 6:21-7:4, 21:6-19.) Plaintiffs' Counsel contended that notice should be sent to these individuals, but nonetheless confirmed that the employees had signed Arbitration Agreements. They proposed that "we'll deal with any arbitration agreement issues as they come." (*Id*. at 6:19-25, 21:6-19.)

Chipotle noted that the Arbitration Agreement explicitly waived the signatory's ability to bring or participate in collective actions under the FLSA. (*Id*. at 12:2-7.) Chipotle maintained that the agreement "precludes the very type of participation that Plaintiffs are seeking to invite people to consent to in the consent form." (*Id*. at 12:7-9.) The Court held that "[a]s to the arbitration agreements, I have no idea what to do with that, but I won't until such time as the issue's raised after we have the people in the collective class, and that will be up to counsel to address that issue." (*Id*. at 25:25-26:11.)

This notice was sent to over a quarter of a million current and former employees in April 2016—without any regard for whether the recipient had signed an Arbitration Agreement. (Dkt. 109.) These individuals were given ninety days to file "consents" to

participate in this action. (*Id.*) As of July 20, 2016, approximately 9,900 individuals had consented. (Dkt 111-1.) Since that time, Plaintiffs have filed an additional 147 untimely consents.[3] (*See* Dkts. 114-1–122-1, 127-1–129-1, 135-1, 138-1–142-1, 145-1, 150-1, 153-1, 156-1.) Collectively, these consents form the current pool of Opt-In Plaintiffs.

During Phase I discovery, Chipotle produced information and documents, including evidence of executed Arbitration Agreements concerning the Improper Opt-Ins. (Gottlieb Decl., Dkt. 173, Ex. B; *see also* Dkt. 137.) This discovery shows approximately 2,814 Improper Opt-Ins executed Chipotle's Arbitration Agreement yet are still members of the collective here.  A spreadsheet detailing all Improper Opt-Ins has been provided with this Motion.  (*See* Gottlieb Decl. Dkt. 173, Ex. B.)  These are the Improper Opt-Ins Chipotle now moves to dismiss.

As set forth in the conferral section below, Plaintiffs' Counsel object to the relief requested herein and informed Chipotle that they take specific issue with the request to sever any attorney-client relationship that exists between the Improper Opt-Ins and Plaintiffs' Counsel because Plaintiffs' Counsel does not believe that there is a legal basis to do so.

---

[3] Chipotle reserves its right to seek dismissal of any untimely Opt-In Plaintiff. Of these 147 untimely consents, thirty-four of them are individuals who signed Arbitration Agreements.

## LEGAL STANDARDS

The Federal Arbitration Act ("FAA") "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008). The FAA provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

In determining whether the parties have agreed to arbitrate a claim, this Court employs a two-step analysis. First, the Court must determine whether the parties are contractually bound to arbitrate. *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1460 (10th Cir. 1995); *see also James River Ins. Co. v. Atlantic Bldg. Sys., LLC,* No. 16–cv– 01981–MSK–NYW, 2017 WL 1862303, at *1 (D. Colo. May 9, 2017). To make this determination, the Court applies ordinary state law contract principles. *Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006). Chipotle, as the party seeking to enforce the Arbitration Agreement, has the burden of providing sufficient evidence establishing the agreement is enforceable. *James River*, 2017 WL 1862303 at *3. Second, the Court determines whether the parties' dispute falls within the scope of their agreement. *See Na'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004); *James River*, 2017 WL 1862303 at *5. Both of these issues here are reserved to this Court, as the Arbitration Agreement does not delegate such authority to an arbitrator. *See Belnap*

*v. Iasis Healthcare,* 844 F.3d 1272, 1281 (10th Cir. 2017) (noting courts should not assume parties intended to arbitrate arbitrability in the absence of clear evidence).

The Court "must interpret arbitration clauses liberally, and all doubts must be resolved in favor of arbitration." *Armijo v. Prudential Ins. Co. of Am.*, 72 F.3d 793, 798 (10th Cir. 1995). In analyzing a motion to dismiss in this context, the Court applies a standard akin to summary judgment. The Court must consider all relevant, admissible evidence, it must draw all reasonable inferences in favor of the non-moving party, and, if the relevant facts are uncontroverted, it must rule as a matter of law. *See, e.g., Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir. 1997) ("When parties dispute the making of an agreement to arbitrate, a jury trial on the existence of the agreement is warranted unless there is no genuine issue of material fact regarding the parties' agreement."); *Let's Go Aero, Inc. v. Cequent Performance Prods., Inc.*, 78 F. Supp. 3d 1363, 1372-73 (D. Colo. 2015) (internal quotations omitted) ("The Court approaches disputes over whether the parties have agreed to arbitrate by applying a standard akin to that governing motions for summary judgment."). The "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) (internal citations omitted).

## I.   IMPROPER OPT-INS SHOULD BE DISMISSED

All Improper Opt-Ins should be dismissed because the Arbitration Agreement is enforceable and all their claims plainly fall within its scope. Plaintiffs have been afforded

the opportunity to engage in discovery related to this issue over a several-month period. Consistent with this Court's December 2016 minute order, it is appropriate for the Court to resolve this issue now rather than wait for the close of discovery. *See THI of N.M. at Hobbs Ctr., LLC v. Spradlin*, 532 Fed. Appx. 813, 819-20 (10th Cir. 2013) ("*Spradlin II*") (finding no need for discovery before trial court resolved issue of arbitrability).

### A. The Arbitration Agreement is Valid and Enforceable

Chipotle's Arbitration Agreement is valid and enforceable as against each of the 2,814 Improper Opt-Ins. In resolving this threshold inquiry, the Supreme Court emphasized in *American Express Co. v. Italian Colors Restaurant* lower courts' obligation to "rigorously enforce arbitration agreements according to their terms, including terms that specify with whom [the parties] choose to arbitrate their disputes, and the rules under which that arbitration will be conducted." 133 S.Ct. 2304, 2309 (2013); *see, e.g.*, *McGee v. Nordstrom Cherry Creek Rack*, No. 16–cv–02715–LTB, 2017 WL 3007037, at *2 (D. Colo. July 14, 2017) (finding plain language of agreement compelled arbitration of plaintiff's dispute with employer).

The Supreme Court has further made clear that the court is to apply general principles of contract interpretation. *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland*, 489 U.S. 468, 475 (1989). "Generally, courts should apply ordinary state-law principles that govern the formation of contracts to determine whether a party has agreed to arbitrate a dispute." *Hardin*, 465 F.3d at 475. The Arbitration Agreement does not include a choice of law

provision. "Absent a choice-of-law provision, a federal court sitting in diversity must apply the forum state's choice-of-law principles[.]" *Salt Lake Tribune Publ'g Co., LLC v. Mgmt. Planning, Inc.*, 390 F.3d 684, 695 (10th Cir. 2004); *see also Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 289 (3d Cir. 2017) (applying forum state's choice of law rules to determine if parties agreed to arbitrate). Colorado applies the law of the state with the most significant relationship to a particular issue. *Wood Bros. Homes, Inc. v. Walker Adjustment Bureau*, 601 P.2d 1369, 1372 (Colo. 1979) (applying "most significant relationship test" to contact dispute); *see also TPLC, Inc. v. United Nat. Ins. Co.*, 44 F.3d 1484, 1490 (10th Cir. 1995) (applying Colorado's "most significant relationship test" in contract case).

Under the "most significant relationship test," Colorado law applies. Chipotle is headquartered in Colorado and the Improper Opt-Ins have elected to resolve their claims in this forum. *See, e.g., Sabell v. Pacific Intermountain Express Co.*, 536 P.2d 1160, 1166 (Colo. App. 1975) (holding Colorado has significant interest in applying its laws to those who seek relief in its courts).[4] In Colorado, "contracts are formed when there are unambiguous terms, an offer, and acceptance of that offer[.]" *Kovac v. Farmers Ins. Exch.*, 2017 COA 7M, ¶ 23. Like other contracts, the Court must give effect to an arbitration agreement as written unless the agreement is voidable for some reason, such as fraud or

---

[4] Regardless of the state law that applies here, it is axiomatic that a contract requires offer, acceptance, and consideration. Chipotle has therefore met its burden under any applicable law.

duress.  *See Rhino Fund, LLLP v. Hutchins*, 215 P.3d 1186, 1190 (Colo. App. 2008).  No such circumstances exist here, and, the Arbitration Agreement is enforceable.

Chipotle's Arbitration Agreement is short, concise, and in simple terms explains the arbitration process. It sets forth the obligation of each signatory to submit any claims related to his or her employment with Chipotle to arbitration. (*See* Gottlieb Decl., Dkt. 173, Ex. A.) As demonstrated by Chipotle's on-boarding process, each Arbitration Opt-In voluntarily agreed to the Arbitration Agreement's terms by electronic signature. (*Id.* at Ex. B.) Each signatory specifically acknowledged that he or she "carefully read" the Arbitration Agreement, understood its terms, and voluntarily entered into it. (*Id.* at Ex. A, ¶ 13.) The Arbitration Agreement is further supported by consideration in that employment is conditioned on execution of the agreement and the obligation to arbitrate is reciprocal. *See Grady v. DIRECTV Customer Services, Inc.*, No. 14-cv-03474-CMA-NYW, 2015 WL 3619337, at *4 (D. Colo. June 10, 2015) (enforcing arbitration agreement)*; see also Pennington v. Northrop Grumman Space & Mission Sys. Corp.*, 269 Fed. Appx. 812, 819-20 (10th Cir. 2008) (same).  Given the Arbitration Agreement's plain validity, the Improper Opt-Ins cannot make any credible argument to the contrary.

### B.      The Improper Opt-Ins' Claims Are Within the Agreement's Scope

The Arbitration Agreement explicitly defines claims to include:

> any and all disputes, claims, and controversies arising out of or relating to this Agreement, the parties' employment relationship…including but not limited to all claims for…wages or other compensation due;…violation

> of…Fair Labor Standards Act…and state and local government wage and
> hour [laws].

(*Id*. at Ex. A, ¶ 4.) Accordingly, the Arbitration Agreement encompasses the Improper Opt-Ins' federal and state statutory wage and hour claims, as well as the unjust enrichment/quantum meruit claims. Indeed, those are simply the corollary common law claims to the wage and hour statutes used to obtain similar relief. *See Solis v. Circle Grp., LLC*, 2017 WL 1246487, at *5 (D. Colo. Apr. 5, 2017) ("If a plaintiff's common law claims are merely duplicative of the remedies in the FLSA, the common law claims are preempted.") (internal quotations omitted); *see, e.g., Chytka v. Wright Tree Servs., Inc.*, 925 F. Supp. 2d 1147, 1173 (D. Colo. 2013) (finding quantum meruit/unjust enrichment claim preempted by FLSA claim).

The Tenth Circuit has articulated a three-part test for courts to apply "when determining whether an issue falls within the scope of an arbitration clause." *Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139, 1146 (10th Cir. 2014). The three part test is as follows:

> First, recognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow. Next, if reviewing a narrow clause, the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause. *Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview. Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.*

14

*Id.* (emphasis in original); *see also P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999) ("[T]he strong presumption in favor of arbitrability…'applies with even greater force' when … a broad arbitration clause is at issue.") (internal citation omitted).

Additionally, the use of the phrase "arising out of" means the parties intended that the arbitration agreement be broadly construed. *Id.* (explaining arbitration agreement applying to "[a]ny controversy, claim, or breach arising out of or relating to" was broad). And it is axiomatic that an agreements' specific reference to a claim's basis brings it within the agreement's purview. *See Alvarez v. Nat'l Debt Relief, LLC*, No. 16-civ-4156 (CM), 2017 WL 2876478, at *2-3 (S.D.N.Y. June 23, 2017) (holding there was "no question" that wage-and-hour claims were covered by arbitration agreement where it specifically referenced them).

Here, as a threshold matter, it cannot be reasonably contested that the Improper Opt-Ins' claims "arise out of or relate to" claims for "wages or other compensation," and alleged violations of the FLSA and state wage and hour laws.  Thus, on a facial reading alone, the Improper Opt-Ins are compelled to arbitrate. *See Let's Go*, 78 F. Supp. 3d at 1372 (citing *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002)) ("The language of the contract defines the scope of the disputes subject to arbitration."). Moreover, applying the Tenth Circuit's criteria, there is no question that the Improper Opt-Ins' claims fall within the Agreement's scope. The clause at issue is broad, uses the phrase "arising out of," and specifically encompasses all claims alleging a violation of the FLSA or state or local wage

and hour laws; it contains no limiting language. Furthermore, the clause encompasses all the state and local wage and hour claims and theories on which the Improper Opt-Ins rely to support their claims. Lastly, there is a strong presumption these claims are encompassed in light of the clause's broad nature. Accordingly, the Improper Opt-Ins' claims cannot be part of this lawsuit.

### C.   The Improper Opt-Ins Should Be Dismissed Without Direction to Proceed to Arbitration

#### 1.  Dismissal is Appropriate

"[W]hen the only issue in the district court is a complaint to compel arbitration, and all issues are arbitrable, the district court may dismiss the case." *Evangelical Lutheran Good Samaritan Soc'y v. Telles*, No. 2:17-cv-00207-MCA-GJF, 2017 WL 4417606, at * 10 (D.N.M. Sept. 30, 2017) (citing *THI of N.M. at Hobbs Ctr., LLC v. Spradlin*, 893 F. Supp. 2d 1172, 1190 (D.N.M. 2012), aff'd on appeal, 532 Fed. Appx. 813 ("*Spradlin I*"), and *Am. Family Mut. Ins. Co. v. Tamko Bldg. Prod., Inc.*, 178 F. Supp. 3d 1121, 1129 (D. Colo. 2016)). This is so despite the "seemingly mandatory language" of § 3 of the FAA. *Tamko*, 178 F. Supp. 3d at 1129.  Indeed, "[n]either Section 3 nor Section 4 of the FAA requires the Court to stay th[e] case when the only issue before it is whether to compel arbitration, and that issue has been resolved." *Spradlin I*, 893 F. Supp. 3d at 1129. Rather, dismissal is appropriate where "all claims are arbitrable and the movant specifically requests dismissal rather than a stay." *Tamko*, 178 F. Supp. 3d at 1129 (citing *Armijo v. Prudential Ins. Co. of Am.,* 72 F.3d 793, 796–97 (10th Cir.1995)).

16

A majority of federal courts approve of dismissal in these circumstances. *See, e.g.,*
*Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir.
2001); *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000); *Fedmet Corp. v. M/V*
*BUYALYK*, 194 F.3d 674, 678 (5th Cir. 1999); *Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d
141, 156, n. 21 (1st Cir. 1998); *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th
Cir. 1988); *Black and Veatch Int'l Co. v. Wartsila NSD North Am., Inc.*, No. CIV.A. 97-
2256-GTV, 1998 WL 953966 at *4 (D. Kan. Dec. 17, 1998); *but see Lloyd v. Hovensa,*
*LLC*, 369 F.3d 263, 269–71 (3rd Cir. 2004). The Tenth Circuit has intimated its approval
as well. *See Spradlin II*, 532 Fed. Appx. at 820 (affirming order dismissing claims subject
to arbitration agreement); *Armijo*, 72 F.3d at 796-97 (finding appellate jurisdiction over
order dismissing case in which all claims referred to arbitration). Moreover, dismissal is
consistent with this Court's prior order stating it "does not refer cases to arbitration." (Dkt.
166, 2.)

Here, Chipotle seeks dismissal of the Improper Opt-Ins claims, rather than a stay
pending any arbitration, without any directive to pursue compulsory arbitration. Dismissal
in this manner is consistent with the Court's "managerial responsibility to oversee the
joinder of additional parties," *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170
(1989), and necessary to protect Chipotle's contractual rights. *See ADT Sec. Servs., Inc. v.*
*Premier Home Protection, Inc.*, 181 P.3d 288, 293 (Colo. App. 2007) (recognizing "good
faith performance doctrine…to give effect to the intentions of the parties or to honor their

reasonable expectations"). The Improper Opt-Ins would not be in this lawsuit but for the nationwide notice procedure that invited their participation in breach of their Agreement with Chipotle. Chipotle opposed that procedure, which has been prejudicial. These circumstances are therefore tantamount to a situation in which parties' contractual obligations have been intentionally and improperly interfered with. *See Westfield Dev. Co. v. Rifle Inv. Assocs.*, 786 P.2d 1112, 1117 (Colo. 1990) (recognizing tort of intentional interference with contract).

There simply is no argument that inviting 2,814 people to participate in a proceeding that they are contractually obligated to address solely through arbitration is anything other than intentional, improper, prejudicial, and a breach of the Arbitration Agreement. *See Hoffman-La Roche*, 493 U.S. at 170 (noting the benefits of collective actions depend on employees receiving accurate notice concerning pending action). Indeed, it is likely that most, if not all, of the Improper Opt-Ins would not have initiated any action but for this improper invitation. Accordingly, Chipotle should be placed in the same position it would have been in had the improper solicitation to join this action never occurred. *See Ruggles v. WellPoint, Inc.*, 591 F. Supp. 2d 150, 164 (N.D.N.Y. 2008) (noting that court should act to correct misleading statements to putative members of FLSA collective).

## 2.  No Arbitration Should be Ordered

Dismissal should be without any order directing that arbitration proceed. 9 U.S.C. § 4 allows only "[a] party aggrieved by the alleged failure, neglect, or refusal of another to

arbitrate under a written agreement for arbitration [to] petition any United States district court…for an order directing that such arbitration proceed[.]" 9 U.S.C. § 4. As a threshold matter, Chipotle does not invoke this statutory relief here. *See Robinson v. Lorillard Corp.*, 444 F.2d 791, 803 (4th Cir. 1971) ("[A] remedy desired by none of the parties should not be forced upon them.").

Moreover, the Improper Opt-Ins cannot invoke § 4 for two reasons. First, the Improper Opt-Ins lack standing under § 4's plain language. Section 4 permits only individuals "aggrieved by the alleged failure" to arbitrate to seek "an order directing that such arbitration proceed." 9 U.S.C. § 4. Because Chipotle did not fail, neglect, or refuse to honor the terms of the Arbitration Agreement, the Improper Opt-Ins are not "aggrieved" and cannot now, regretting their decision to consent, invoke § 4 to compel arbitration.

Second, the Improper Opt-Ins waived the right to insist on arbitration by joining this lawsuit. *See In re Cox Enters., Inc. Set-Top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1205 (10th Cir. 2016) ("A party can 'subjectively' waive its right to arbitration if it intentionally relinquishes or abandons that right; once it has done so, it has no right to demand arbitration later."). *Duferco Steel Inc. v. M/V Kalisti*, 121 F.3d 321 (7th Cir. 1997), is instructive. There, the plaintiff initiated a lawsuit and, therefore, waived its right to arbitration. *Id*. at 326. The district court dismissed the plaintiff's claims as time barred under the terms of the parties' arbitration agreement. *Id*. On appeal, the plaintiff argued that the defendant could only move for a stay—and not dismissal—under § 3 of the FAA.

19

*Id*. The Seventh Circuit rejected the plaintiff's argument on the basis that, "[g]iven the waiver of arbitration by [the plaintiff], the district court was under no independent obligation to invoke the remedy rejected by the party[.]" *Id*. Because neither party requested a stay under § 3 or to compel arbitration under Section 4, the district court properly dismissed the plaintiff's claims. *Id*. at 327.

Likewise, the Improper Opt-Ins joined this lawsuit by consent and waived their right to ask the Court to compel arbitration, and Chipotle is not seeking a stay or an order directing the parties to arbitration. Under these circumstances, a blanket dismissal of the Improper Opt-Ins—without any directive that arbitration must proceed—is both consistent with the FAA and the only remedy appropriately tailored to address the facts of this case. Ordering arbitrations to proceed would compound the harm to Chipotle from the improper invitation to breach the Arbitration Agreement. Indeed, by way of analogy, compelling the Improper Opt-Ins to arbitration against Chipotle is akin to permitting evidence derived from information acquired by the police through unlawful means to be admitted in a criminal prosecution. *See U.S. v. Hatfield*, 333 F.3d 1189, 1193-94 (10th Cir. 2003) ("Under the fruit of the poisonous tree doctrine, the exclusionary rule bars the admission of physical evidence and live testimony obtained directly or indirectly through the exploitation of unconstitutional police conduct."). Permitting the Improper Opt-Ins (and, as set forth below, Plaintiffs' Counsel) to benefit from such "fruit of the poisonous tree" belies fundamental principles of equity and common sense.

Dismissal in this manner—without prejudice—works no injustice on the Improper Opt-Ins. There has been absolutely no determination that any of these individuals have meritorious claims. By virtue of the Court's permissive joinder standard, the Improper Opt-Ins were included in this collective without any threshold showing that they were similarly situated to the Named Plaintiffs here, *i.e.*, had the basis to even bring a claim against Chipotle. Nonetheless, dismissing them as Chipotle now requests—without prejudice— still permits the Improper Opt-Ins to pursue any claims they believe they may have in the proper forum. The practical, and harmless, effect of Chipotle's requested relief is that the Improper Opt-Ins must proceed without the endorsement of this Court compelling mandatory arbitration. Dismissal is further consistent with this Court's own position that it "does not refer cases to arbitration." (Dkt. 166, 2.) To that end, the Court should provide the Improper Opt-Ins with notice of the dismissal of their claims.

## II.   PLAINTIFFS' COUNSEL SHOULD BE PROHIBITED FROM REPRESENTING DISMISSED IMPROPER OPT-INS IN FUTURE PROCEEDINGS

Assuming Chipotle's Motion is granted, the Court should prohibit Plaintiffs' Counsel from representing the dismissed Improper Opt-Ins in any future proceedings. *See Andrews v. Heaton*, 483 F.3d 1070, 1077 (10th Cir. 2007) ("Federal courts have the inherent power to regulate the activities of abusive litigants by imposing carefully tailored restrictions in appropriate circumstances."). As an initial matter, Plaintiffs' Counsel only learned their identities by inviting thousands of unknown persons to disregard Chipotle's

well-established contractual rights, and their own contractual obligations. Chipotle challenged the Improper Opt-Ins' desire to do so and maintains Plaintiffs' Counsel breached their fiduciary obligations as well as Chipotle's contractual rights.[5] Plaintiffs' Counsel should not be permitted to exploit the process they should not have pursued or continue to utilize those individuals' identity for further gain. *See, e.g., Fengler v. Crouse Health Found., Inc.*, 595 F. Supp. 2d 189, 198 (N.D.N.Y. 2009) (holding courts regularly restrict disclosure of personal information even after conditional certification is granted, precisely to protect against the potential for improper solicitation by use of "inherently private information."). Counsel should not now be permitted to use this information to gain any leverage or tactical advantage or to drum up further litigation in the form of individual arbitrations.

In addition, Plaintiffs' Counsel took a position that encouraged the dismissed Improper Opt-Ins to take action contrary to their contractual obligations. Specifically, each of the Improper Opt-Ins was contractually obligated to arbitrate their claims and to do so on an individual basis. They are expressly prohibited from initiating or participating in a class or collective action. Yet, Plaintiffs' Counsel improperly invited them to consent to

---

[5] Chipotle notes that conflicts of interest between counsel and members of a collective are relevant to whether named plaintiffs are adequate representatives of the collective. *See Rutter v. Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002) (holding adequacy determination requires resolution of whether "named plaintiffs and their counsel have any conflicts of interest with other class members"); *see also Pilego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 126-27 (D. Colo. 2016) (applying *Rutter* and Rule 23 adequacy standard to FLSA collective).

participate in a collective action in complete disregard of such obligations. Counsels' decision, made on their behalf, could conceivably result in undisclosed and unanticipated costs, including filing fees, and a unilateral waiver of their right to arbitrate. Chipotle has already been prejudiced. It should not have to bear the additional costs of Plaintiffs' Counsels' breach of their fiduciary obligations to the Improper Opt-Ins.

Finally, upon dismissal, the dismissed Improper Opt-Ins shall cease to be parties to this action and Plaintiffs' counsel will no longer represent them for any purpose—indeed, the attorney-client relationship does not out-live this lawsuit. *See, e.g., Vallone v. CNA Fin. Corp.*, No. 98C7108, 2002 WL 1726524, at *1 (N.D. Ill. Mar. 19, 2002) (holding there is no attorney-client relationship between putative class members and class counsel when solicitation of the putative class members was inappropriate). Each of the Improper Opt-Ins should be returned to the position they occupied prior to joining this action— unrepresented. Again, Plaintiffs' Counsel should not be permitted to benefit, financially or otherwise, from a notice and opt-in process that never should have included these individuals. *See In re Corn Deriv. Antitrust Litig.*, 748 F.2d 157, 160 (3d Cir. 1984) ("One of the inherent powers of any federal court is the admission and discipline of attorneys practicing before it."). Nor should Chipotle be further prejudiced. Permitting such a result—at extreme cost and hardship to Chipotle—is simply unjust.

## CONCLUSION

For each of the foregoing reasons, Chipotle respectfully requests that the Court: (i) dismiss, without prejudice, the claims of any Improper Opt-In who executed Chipotle's Arbitration Agreement; (ii) prohibit Plaintiff's Counsel from representing or otherwise communicating with the dismissed Improper Opt-Ins; (iii) provide the Improper Opt-Ins with a Court-authorized notice of the dismissal of their claims and alerting them to the need to secure alternative counsel if they intend to pursue their claims in any forum; and (iv) granting such other and further relief as this Court deems just and proper.

## CERTIFICATE OF CONFERRAL

Pursuant to D.C.COLO.LCivR. 7.1(a), Chipotle's counsel (specifically John Shunk and Thomas Blackburn) conferred with Plaintiffs' counsel (specifically Kent Williams and Andrew Quisenberry) by email on October 30, 2017, regarding this Motion. Plaintiffs' counsel (Kent Williams and Adam Levy) and Chipotle's counsel (John Shunk and Thomas Blackburn) had a follow-up conference call on October 31, 2017.  During the call, Chipotle explained the forms of relief it requests in this Motion and the basis for the same. After Chipotle explained its position, Plaintiffs' counsel confirmed that they understood the requested relief and that they opposed the same.  The parties also previously conferred concerning a briefing schedule on the Motion and agreed upon the same.  (*See* Dkt 170.)

Respectfully submitted,

MESSNER REEVES LLP

*s/ John K. Shunk*
_____

John K. Shunk, #16204
Allison J. Dodd, #43835
Adam M. Royval, #43836
Kendra N. Beckwith, #40154
Thomas R. Blackburn, #41136
1430 Wynkoop Street, Suite 300
Denver, Colorado 80202
Telephone:  (303) 623-1800
E-mail: jshunk@messner.com
E-mail: adodd@messner.com
E-mail: aroyval@messner.com
E-mail: kbeckwith@messner.com
E-mail: tblackburn@messner.com

SHEPPARD    MULLIN    RICHTER    &
HAMPTON LLP
Richard J. Simmons
333 South Hope Street
Forty-Third Floor
Los Angeles, CA  90071
rsimmons@sheppardmullin.com

*Attorneys for Defendant, Chipotle Mexican Grill, Inc.*

25

## CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2017, I electronically served the foregoing **CHIPOTLE MEXICAN GRILL, INC.'S MOTION TO DISMISS OPT-IN PLAINTIFFS BOUND BY CHIPOTLE'S ARBITRATION AGREEMENT** to all counsel of record listed on CM/ECF system:

**Adam Seth Levy** (adamslevey@comcast.net)

**Andrew Curry Quisenberry** (andrew.quisenberry@coloradolaw.net)

**Darin Lee Schanker** (dschanker@coloradolaw.net)

**Julie A. Sakura** (jsakura@hinklelawfirm.com)

**Kent Morgan Williams** (williamslawmn@gmail.com)

**Kevin Edward Giebel** (kgiebel@ggwklaw.com)

**Michael Edmund Jacobs** (mjacobs@hinklelawfirm.com)

**Thomas Mark Hnasko** (thnasko@hinklelawfirm.com)

/s/*Jeanine Montoya*

Jeanine Montoya