**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:14-cv-02612-JLK

LEAH TURNER, ARACELI GUTIERREZ, MARKEITTA FORD,
JOLESSA WADE, DANYA GRANADO, BRETT CHARLES, and
RUBY TSAO

individually and on behalf of others
similarly situated,

Plaintiffs,

v.

CHIPOTLE MEXICAN GRILL, INC.,

Defendant.

_____

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO CHIPOTLE MEXICAN
GRILL INC.'S MOTION TO DISMISS OPT-IN PLAINTIFFS**

_____

## I.   INTRODUCTION

Defendant Chipotle Mexican Grill, Inc. ("Chipotle") is asking this Court not

only to deprive nearly three thousand Opt-in Plaintiffs of their statutory right under

the Fair Labor Standards Act ("FLSA") to participate in this collective by forcing

them to arbitrate their claims instead, but to do so in a manner that would adversely

affect the ability of these former Chipotle employees to vindicate their claims for

unpaid wages. Chipotle's ultimate goal is clear—to use the mandatory arbitration

provisions that the company inserted in its employment agreements as an effective

shield from liability by making the process of seeking redress as cumbersome and expensive as possible.

The mandatory arbitration provision in Chipotle's employment agreements violates the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151, *et seq.*, and therefore is unenforceable under the Federal Arbitration Act ("FAA"). *Lewis v. Epic Systems Corp.*, 823 F.3d 1147 (7th Cir. 2016), *cert. granted*, 137 S.Ct. 809 (2017).[1] However, if the Court decides to enforce the arbitration provision, it should not simply dismiss the claims of the covered Opt-in Plaintiffs. As discussed further below, it is likely that many of these individuals will be able to challenge the provision in any arbitration proceeding and therefore may be back in Court. By staying their claims rather than dismissing them, the Court can protect the ability of these Opt-in Plaintiffs to rejoin the collective without any prejudice to their claims at some future date. Under no circumstances is there any justification for Chipotle's request that these Opt-in Plaintiffs be denied representation by their current counsel in this matter. That is simply another effort by Chipotle to prevent these former employees from pursuing their claims.

---

[1] Counsel for Opt-In Plaintiffs are aware that the validity of forced arbitration of employment disputes is currently pending before the Supreme Court. *See Epic Sys. Corp. v. Lewis*, No. 16-285, *Ernst & Young v. Morris*, No. 16-300 and *National Labor Relations Board v. Murphy Oil USA*, No. 16-307. Because a decision on this issue may have bearing on whether Chipotle's arbitration agreements should be enforced in this case, Opt-In Plaintiffs reserve the right to make additional argument in opposition to Chipotle's motion based on the Supreme Court's rulings in these cases.

## II.   FACTS

In August of 2014, Chipotle began, according to the company's Rule 30(b)(6) witness, David Gottlieb, requiring new employees to sign arbitration agreements as a condition of their employment. *See* Deposition of David Gottlieb ("Gottlieb Depo.") at 10:1-4.[2] This was done in the context of ongoing litigation here and elsewhere relating to Chipotle's failure to pay its employees the wages they were owed under federal and state law.

The arbitration agreements purportedly were presented to new employees as part of Chipotle's "onboarding process." During the process, which was administered through the company's "Workday" web portal, the employee was supposed to "acknowledge and agree" to the arbitration provisions; however, the agreement was accessible only by hyperlink, and a new hire was able to "acknowledge and agree" to the terms without actually clicking on the link or otherwise viewing the document. *See* Gottlieb Depo. 50:6-17. There was no requirement that Opt-In Plaintiffs actually open and review the agreement as part of the process (Gottlieb Depo. 112:6-16; 51:16-19),[3] even though Chipotle could

---

[2] Relevant excerpts of the Gottlieb Depo. are attached to the Declaration of Andrew C. Quisenberry ("Quisenberry Dec.") as Exhibit 1.

[3] Chipotle's failure to ensure that new hires actually viewed the arbitration agreements contradicts its assertions elsewhere that the company wanted employees to read and understand their employment documents (Gottlieb Depo.: 25:9-22; 46:16-19; 48:10-20; 53:2-25, 54:1; 65:13-25, 66:1-8; 70:4-22; 71:10-17; 113:6-10; 116:16-25, 117:1; 127:3-15). It is also telling that while Chipotle has the

have implemented a procedure to ensure new hires actually did so (Gottlieb Depo. 52:10-19).

The arbitration agreements were drafted by Chipotle's lawyers and compliance officers. The terms of the agreements were not negotiable, but rather were offered on a take-it-or-leave-it basis (Gottlieb Depo. 68:13-18, 101:21-25). No additional consideration was offered in exchange for an employee's agreement to arbitrate on Chipotle's terms.

## III.   ARGUMENT

Chipotle's motion to dismiss misstates the nature of the Court's inquiry and requests relief that is both mistaken and unwarranted. The arbitration agreements provide that issues regarding the arbitrability of claims are reserved for arbitrators, and are to be decided based upon state laws and other variable factors. Thus, some (perhaps many) claims may be dismissed as non-arbitrable; those Opt-In Plaintiffs should be allowed to re-join the collective, if they wish. For these and other reasons, to the extent the Court finds the arbitration provisions to be enforceable notwithstanding *Epic Systems*, a stay of claims is more appropriate than a dismissal of those claims. Moreover, Opt-In Plaintiffs should be allowed to proceed with their choice of counsel without interference from Chipotle.

---

ability to determine if and when a new hire opened the arbitration agreement (Gottlieb Depo. 95:16-25; 96:1-19), the company has provided no such information.

### A.     Chipotle Misstates the Nature of the Court's Inquiry.

Chipotle incorrectly contends that the question of whether or not the claims of the Opt-In Plaintiffs are arbitrable is for this Court to decide. *See, e.g.*, Mot. at 9-10. It is true that "***unless [the] parties clearly and unmistakably provided otherwise***, the question of whether the parties agreed to arbitrate a particular grievance is to be decided by a court, not an arbitrator." *Dish Network LLC v. Ray*, 226 F.Supp. 2d 1168 (D. Colo. 2016), *appeal filed*, Case No. 17-1013 (10th Cir. Jan.17, 2017) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 649 (1986); *see also Brennan v. Opus Bank*, 796 F.3d 1125, 1128 (9th Cir. 2015) (holding that "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability"). Chipotle's arbitration agreements in this case clearly evidence the intent that an arbitrator decide such issues by incorporating arbitration rules that provide for sweeping jurisdiction over these and other preliminary matters.

In *Dish Network*, the arbitration agreement at issue had no provision specifically authorizing the arbitrator to decide issues regarding the arbitrability of disputes. Such intent was found, however, because the agreement there incorporated the rules of the American Arbitration Association, which provided that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including

any objections with respect to the existence, scope, or validity of the arbitration agreement." 226 F. Supp. at 1172-73 (internal citations omitted).

The arbitration agreements at issue in this case evidence the same intent that issues regarding the arbitrability of disputes (including contract formation, validity, enforceability, and other such matters) are to be decided by the arbitrator. Section 3 states that any arbitration is to be conducted under the Employment Arbitration Rules and Procedures of JAMS ("JAMS Rules"), which expressly provide:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. Unless the relevant law requires otherwise, the Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

*See* JAMS Employment Arbitration Rules and Procedures effective July 1, 2014 ("JAMS Rules") Rule 11(b), attached to Quisenberry Dec. as Exhibit 2. Thus, as in *Dish Network*, an arbitrator is to decide any issues regarding the validity or other arbitrability of employment-related disputes.

There is likely to be variability in the arbitration decisions that result from the Opt-in Plaintiffs' claims. The presumption that doubts are resolved in favor of arbitration "disappears when the parties dispute the existence of a valid arbitration agreement." *Dumais v. American Golf Corp.*, 299 F.3d 1216, 1219-20 (10th Cir. 2002) (citing *First Options*; *Riley Mfg. Co., Inc. v. Anchor Glass*

6

*Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998) ("[W]hen the dispute is whether there is a valid and enforceable arbitration agreement in the first place, the presumption of arbitrability falls away.")).  State contract law governs the issue of whether or not a dispute is arbitrable under a valid agreement, *see Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006), and state contract law varies, as the Tenth Circuit has recognized in other contexts. *See, e.g., U.S. ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.2d 1161, 1169 (10th Cir. 2009) (applying federal common law to the question of the validity of a release, to avoid "state-by-state variations" in state contract law); *see also Northern Natural Gas Co. v. State Corp. Comm'n of Kan.*, 372 U.S. 84, 98 (1963) (describing variations in state contract law as "kaleidoscopic").

For example, Colorado uses a multi-factor test to determine whether or not a contract is substantively or procedurally unconscionable. *See Davis v. M.L.G. Corp.*, 712 P.3d 985, 991 (Colo. 1986). Other states, however, however, focus on the effect of the terms of the contract,[4] whether the contract is grossly unfair,[5]

---

[4] *See, e.g., Acosta v. Fair Isaac Corp.*, 669 F. Supp. 2d 716, 721 (N.D.Tex. 2009) (stating that under California law, "substantive unconscionability concerns the effect of a contract").

[5] *See, e.g., La Frontera Ctr., Inc. v. United Behavioral Health, Inc.,* No. CIV 16-0187 JB/WPL, 2017 WL 3172723 at *22 (D.N.M. June 1, 2017 (stating that "[s]ubstantive unconscionability relates to the content of the contract terms and whether they are illegal, contrary to public policy, or grossly unfair." (internal citations omitted) (applying New Mexico law); *Perez v. Lemarroy*, 592 F.Supp.2d 924, 933 (S.D.Tex.

whether the contract is overly one-sided or harsh,[6] and/or other factors.[7] These variations in state law, as well as factual disputes such as whether a particular Opt-in Plaintiff saw the agreement, or clicked "I agree" (as opposed to a manager or somebody else), will likely result in the dismissal of at least some arbitration agreements on contract formation, validity, enforceability, or other grounds.

Moreover, it is axiomatic that the terms of a contract are to be construed against the drafter. *Dumais*, 299 F.3d at 1219. Chipotle's arbitration agreements state that employees can participate in representative actions on an individual basis, as set forth in the following provision:

> 5.2 **Representative Action Claims**. THE PARTIES FURTHER AGREE THAT, EXCEPT FOR ACTIONS BASED ON THE CALIFORNIA PRIVATE ATTORNEYS GENERAL ACT, LABOR CODE SECTIONS 2698, ET SEQ., NEITHER PARTY MAY BRING, PURSUE, OR ACT AS A PLAINTIFF OR REPRESENTATIVE IN ANY PURPORTED REPRESENTATIVE PROCEEDING OR ACTION,

---

2008) ("Whether an agreement is procedurally unconscionable rest on whether the contract results in unfair surprise or oppression.") (applying Texas law).

[6]*See, e.g., Capili v. Finish Line, Inc.*, 116 F.Supp.3d 1000, 1004 (N.D.Cal. 2015) (stating that the substantive element of unconscionability focuses on "overly harsh" results) (applying California law); *Boatright v. Aegis Defense Services, LLC*, 938 F.Supp.2d 602, 609 (E.D.Va. 2013) ("For substantive unconscionability, the contract terms must be so one-sided as to be oppressive") (internal citations and quotations omitted) (applying Delaware law).

[7]Other courts have noted that in the employment context, agreements to arbitrate realistically only affect the claims of the employee against the employer. *See, e.g., Ingle v. Circuit City Stores, Inc.* 328 F.3d 1165, 1174 (9th Cir. 2003) (stating further that even without expressly limiting the claims to those brought by employees, if the agreement has that practical effect, it raises a "rebuttable presumption" of substantive unconscionability).

> INCLUDING ANY CLAIMS UNDER ANY FEDERAL, STATE, OR LOCAL LAW, <u>OR OTHERWISE PARTICIPATE IN ANY SUCH REPRESENTATIVE PROCEEDING OR ACTION</u> **OTHER THAN ON AN INDIVIDUAL BASIS**.

*See* Arbitration Agreement, Doc. 173-1 at 3 (emphasis added).

Thus, according to the language of Section 5.2, an employee may not *commence* a representative action or otherwise act on behalf of others as a representative plaintiff, but may *participate* in a representative action on an individual basis. Each of the employees who opted in to this representative proceeding alleges individual claims only. None of the Opt-In Plaintiffs in question assert claims on behalf of anyone else, or otherwise seek to represent any other employee. Therefore, it is likely that some Opt-In Plaintiffs who wish to stay in the collective will demand that they be allowed to continue to do so, pursuant to this provision.

Whatever the outcome of these and other disputes, Chipotle's arbitration agreements make clear that they are to be decided by an arbitrator, and not the Court. Therefore, the Court should decline Chipotle's invitation to rule on the validity and/or enforceability of the arbitration agreements.

**B.    The Opt-In Plaintiffs' Individual Claims Should Be Stayed, Not Dismissed.**

If this Court finds that the claims of the Opt-In Plaintiffs should go to an arbitrator, the claims should be stayed, not dismissed. First, Rule 1 of the Federal

Rules of Civil Procedure[8] commands that the rules be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Simply dismissing the claims of the Opt-In Plaintiffs, without providing an orderly process for counsel to disseminate notice or even receive direction from Opt-In Plaintiffs as to whether they wish to proceed in arbitration, would create chaos and should be rejected. Instead, the Court should schedule a status conference so the parties can work out a suitable notice, procedure, and time period for discerning how each Opt-In Plaintiff wishes to proceed, without fear of losing claims due to the running of the statute of limitations.

Second, the plain language of the FAA states that trial of an action is to be "stayed" while "any issue referable to arbitration" is arbitrated "in accordance with the terms of the agreement." *See* 9 U.S.C. § 3; *see also Lloyd v. Hovensa, LLC*, 369 F.3d 263, 269 (3rd Cir. 2004). The word "dismiss" does not appear in this statutory language. *See Lloyd*, 369 F.3d at 269 ("the plain language of § 3 affords a district no discretion to dismiss a case where one of the parties applies for a stay pending arbitration."). Therefore, it is questionable whether a "dismissal" of any sort is appropriate, rather than a "stay" pending arbitration. *See Pollard v. ETS PC,*

---

[8] At the December 1, 2016 status conference, this Court reminded counsel that they are as responsible for case management as the Court. *See* Doc. 136 at 40.

*Inc.*, 186 F.Supp.3d 1166, 1169 (D. Colo. 2016) (holding that arbitration would be compelled and the case stayed, but not dismissed, in light of the statutory language of the FAA).

Notwithstanding this clear statutory language, Chipotle cites a number of opinions from other jurisdictions in which claims were dismissed in lieu of a stay. (Def. Mot. at 10-11, 16-17.) "Although the Tenth Circuit has not addressed this issue directly, it has intimated that a district court may dismiss **when all claims are arbitrable** and the movant specifically requests dismissal rather than a stay." *Hickey v. Brinker Int'l Payroll Co., L.P.*, No. 2014 WL 622883 at *5 (D.Colo. Feb. 18, 2014) (citing *Armijo v. Prudential Ins. Co. of Am.*, 72 F.2d 793, 796-97 (10th Cir. 1995) (emphasis added). There is no reason to assume that the claims of all 2,800 Opt-In Plaintiffs at issue are arbitrable here where validity and arbitrability issues are sure to be disputed by many, along with contract formation and other issues depending upon the individual laws and facts in question.

Chipotle, however, appears to argue that no arbitration should be ordered because the company has been unduly "prejudiced" by the dissemination of notice of the right to join in litigation against the company. (Def. Mot. at 18). To the extent Chipotle cites such "prejudice" in seeking to bar Opt-In Plaintiffs from pursuing their rights in arbitration, Chipotle cites no authority for the notion that opting into a collective as a result of a Court-ordered notice somehow constitutes "prejudice."

Chipotle cites *Ruggles v. WellPoint, Inc.,* 591 F.Supp.2d 150, 164 (N.D.N.Y. 2008) for the proposition that the "court should act to correct misleading statements made to the putative members of the FLSA collective" (Def. Mot. at 18), but neglects to point out that the notice at issue in *Ruggles* were pre-certification notices sent unilaterally to putative class members prior to the filing of the Complaint. *See Ruggles*, 591 F.Supp.2d at 163-64. Moreover, Chipotle points to no false or misleading statements made to putative class members or Opt-In Plaintiffs in this action.

Nor have the Opt-In Plaintiffs waived their right to elect arbitration by opting in to this case (*see* Def. Mot. at 19). There is "no set rule as to what constitutes a waiver or abandonment of the arbitration agreement; the question depends upon the facts of each case." *Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 772 (10th Cir. 2010). In *BOSC, Inc. v. Board of County Comm'ns of County of Bernalillo*, 853 F.3d 1165 (10th Cir. 2017), the Tenth Circuit listed several factors to consider in determining whether a party has waived its right to arbitration:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery

procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced" the opposing party.

*BOSC*, 853 F.3d at 1170 (internal citations omitted) ("[T]hese factors reflect principles that should guide courts in determining whether it is appropriate to deem that a party has waived its right to demand arbitration." *Id.* (internal citations omitted).

Chipotle cites *Dufreco Steel Inc. v. M/V Kalisti*, 121 F.3d 321 (7th Cir. 1997), for the notion that simply by initiating a lawsuit, the Opt-In Plaintiffs have waived their right to arbitrate. (Def. Mot. at 19.) In *Dufreco*, however, the operative arbitration agreement included language that required a party to seek arbitration within a specified period of time or explicitly waive all claims. *Dufreco*, at 325-26. In other words, it was the failure to seek timely arbitration under the express terms of the arbitration agreement in *Dufreco* that resulted in waiver, not the mere filing of a lawsuit. *Id.* No such requirement exists in the arbitration agreements at issue here. [9]

---

[9] Indeed, even the "dismissal" opinions Chipotle cites in support of its motion make clear that the plaintiffs had the right to bring their claims in arbitration or elsewhere. *See In Evangelical Lutheran Good Samaritan Soc'y v. Telles*, No. 2:17-cv-00207, 2017 WL 4417606, at *10 (D.N.M. Sept. 30, 2017) (arbitration); *American. Family Mut. Ins Co. v. Tamko Bldg. Prod., Inc.*, 178 F.Supp. 3d 1121, 1129 (D.Colo. 2016) (arbitration); *Fedmet Corp. v. M/V BUYALYK*, 194 F.3d 674, 679 (5th Cir. 1999) (affirming order dismissing action without prejudice "and permitting the parties to conduct arbitration in Germany"); *Choice Hotels Int'l, Inc. v BSR Tropicana Resort, Inc.*, 252 F.3d 707, 712 (4th Cir. 2001) (stay pending arbitration). Chipotle also cites *dicta* from *Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 637 (9th Cir. 1988) for the notion that dismissal is appropriate, but in that case (unlike here) the plaintiff

In the present case, the Opt-in Plaintiffs have not substantially invoked the "litigation machinery." All these employees have done is tear off a postcard, sign it, and drop it in the mail. They have not engaged in any motion practice, or taken any discovery (other than discovery about the arbitration agreements). Moreover, this Court previously made it clear that there would be no waiver in this case while the arbitration issue is resolved. *See* Doc. 136 at 20.

In sum, simply dismissing the claims of nearly three thousand Opt-In Plaintiffs, without more, invites chaos and would contradict both the FAA and Rule 1. The Court should stay the claims while the parties present a suitable notice and a plan to disseminate same, and schedule a status conference so the parties and the Court can work out a procedure for giving the Opt-In Plaintiffs sufficient time to decide whether to proceed in arbitration.[10]

## C.   Chipotle's Request to Disqualify Plaintiffs' Counsel from Representing Opt-Ins In Arbitration is Unwarranted and Should be Denied.

Chipotle demands that plaintiffs' counsel be precluded from representing opt-In plaintiffs in any arbitration proceedings, but has not demonstrated any

---

agreed that the dispute was arbitrable. As explained above, the arbitrability of disputes is likely to be contested by many Opt-In Plaintiffs based on numerous grounds. Chipotle also cites *Green v. Ameritech Corp.*, 200 F.3d 967 (6th Cir. 2000), but that case, which dismissed an appeal from arbitration on jurisdictional grounds, did not address the issue of whether dismissal or a stay is appropriate.

[10] Chipotle's proposed order provides fourteen days for the parties to submit proposed notices. *See* Doc. 172-2.

grounds for disqualification. *See Carbajal v. American Family Life Ins. Co.*, No. 06-CV-00608-FSF-MEH, 2006 WL 2988955, at *1 (D.Colo. Oct. 18, 2006) ("The burden rests with the moving party to show sufficient grounds for disqualification.") (citing *English Feedlot, Inc. v. Norden Labs., Inc.,* 833 F.Supp.1498, 1506 (D.Colo. 1993)). The Court imposes a "heavy burden" on such showing, *Evans v. Artek Sys. Corp*, 715 F.2d 788, 794 (2d Cir. 1983), because disqualification is a "drastic measure" that "serves to destroy a relationship by depriving a party of representation of their own choosing." *Freeman v. Chicago Musical Instrument*, 689 F.2d 715, 721-22 (7th Cir. 1982); *The Proctor & Gamble Co., v. Haugen*, 183 F.R.D. 571, 574 (D.Utah 1998) ("disqualification of counsel is a 'drastic' measure and a court should hesitate to impose it except when 'necessary'"); *see Machea Transp. Co. v. Philadelphia Indem. Ins. Co.*, 463 F.3d 827, 833 (8th Cir. 2006) ("A party's right to select its own counsel is an important public right and a vital freedom that should be preserved (internal quotations and cited cases omitted)); *Lewis v. Wal-Mart Stores, Inc.*, No. 02-cv-0944-CVE-FHM, 2006 WL 1892583, at *4 (N.D.Ok. July 10, 2006) ("A civil litigant's right to counsel of its choice is implicit in the Due Process Clause of the Fifth Amendment as well as in 28 U.S.C. § 1654.")

"Because of the potential for abuse by opposing counsel, disqualification motions should be subjected to particularly strict scrutiny." *Machea*, 463 F.3d at 833 (internal quotations and cited cases omitted). Such motions "should only rarely

be granted" and should be viewed with "extreme caution" because of the "possible unfair advantage that may result depending on the circumstances" since such a motion "can itself be harassment and involve vexatious factors." *Parkinson v. Phonex Corp.*, 857 F.Supp. 1474, 1480-81 (D.Utah 1994) (citing cases); *see Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 441 (1985) (Brennan, J., concurring) ("the tactical use of attorney-misconduct disqualification motions is a deeply disturbing phenomenon in modern civil litigation"); *Shaffer v. Farm Fresh, Inc.*, 955 F.2d 142, 146 (4th Cir. 1992) (the "drastic nature of disqualification requires" a court to be mindful that counsel may misuse disqualification motions "for strategic reasons"); *Carbajal*, 2006 WL 2988955, at * 1 (a court "must consider whether the motion [to disqualify] was filed to gain a tactical advantage" because such motions "often pose the very threat to the integrity of the judicial process that they purport to prevent") (internal quotations and citation omitted).

In line with the law's stance that disqualification of counsel is a "drastic measure" and requires the moving party to overcome a "high burden," is the recognition that a party generally has no standing to request disqualification of counsel for the opposing party based on an allegation of a conflict of interest:

> [C]ourts should generally refuse to entertain a motion to disqualify based [sic] a conflict of interest where the motion is brought by an opposing party. However, the opposing party may have standing if it raises a conflict that, if left unaddressed, would clearly call into question the fair or efficient administration of justice. The Court views this as akin to the final prong of the plain error test, which requires an

error that "would seriously affect the fairness, integrity, or public reputation of judicial proceedings" if not corrected.

*Shapiro v. Rynek*, No. 13-CV-3086-WJM-KMT, 2017 WL 121617, at *3 (D.Colo. Jan. 11, 2017) (discussing Colorado ethical rules and related comments, and citing cases).

Chipotle's request is the latest iteration of its long-standing, abusive, harassing and vexatious tactic of fabricating phantom "conflicts" in an attempt to preclude the undersigned counsel from representing employees against Chipotle in this and other litigation. Significantly, this is at least the fourth attempt by Chipotle to disqualify the undersigned counsel or otherwise interfere in their representation of plaintiffs in cases against Chipotle.[11] Thus, Chipotle's request that the Court "prohibit" Plaintiffs' counsel from representing the Opt-In Plaintiffs "in any future

---

[11] *See Harris v. Chipotle Mexican Grill, Inc.*, No. 13-cv-1719 SRN/SER (D.Minn.), Doc. 80 [*Harris* plaintiffs' 1/31/2014 Letter Brief] and Doc. 81 [Chipotle's 1/31/2014 Letter Brief] (pertaining to alleged conflicts and disqualification); *Turner* Doc. 80 at 35 [Chipotle's 5/28/2015 opposition to Plaintiffs' motion for conditional collective action] and Doc. 86 at 51-53 [Plaintiffs' 6/17/2015 reply in support of motion for conditional collective action] (pertaining to alleged conflicts and disqualification); *Segovia v. Chipotle Mexican Grill, Inc.*, No. BC489851 (Cal. Super. Ct., Berle, J.) [Chipotle's 12/15/2015 application and 12/15/2015 supporting memorandum (*Turner* Doc. 103); and *Segovia* settlement objector/*Turner* collective member's 12/18/2015 response to application] (pertaining to a California state class action settlement in which Chipotle unsuccessfully requested the California court to prohibit *Turner* Plaintiffs' counsel from sending the *Turner* Court-approved notice to *Turner* collective action members who are also part of the California state court settlement), non-*Turner* filings collectively attached as Exhibit 3 to the Quisenberry Dec.

proceedings[,]" should be viewed as nothing more than an attempt to gain a tactical advantage, and is not based on preserving the integrity of these proceedings.

Moreover, Chipotle has altogether failed to explain any "conflict" (or even to cite any ethical rule serving as the basis for its request to disqualify counsel), or to cite any conceivable prejudice it has or could suffer through counsel's continued representation. *See, e.g., Carbajol*, 2006 WL 2988955, at *1 (discussing the District of Colorado's adoption of nearly all of the Colorado Rules of Professional Conduct as professional responsibility standards for the Court); *English,* 833 F.Supp. at 1506 (same). Rather, Chipotle generally asserts a "conflict" with no explanatory ethical, legal, or factual analysis. *See, e.g.,* Def. Mot. at 3 ("Setting aside the inherent conflict Counsel has created with the Improper Opt-Ins by instigating their breach of the Arbitration Agreement…."); 22 & n.5 ("Plaintiffs' counsel breached their fiduciary obligations as well as Chipotle's contractual rights," and "Chipotle notes conflicts of interest between counsel and members of a collective are relevant to whether named plaintiffs are adequate representatives of the collective").[12]

---

[12] "Adequacy of representation" is a class action certification element that must be satisfied under Rule 23(a)(4), not an element applied in determining whether to grant or settle a collective under Section 216(b). Chipotle, however, cites *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180 (10th Cir. 2002) and *Pliego v. Los Acros Mexican Rest., Inc.*, 313 F.R.D.117 (D.Colo. 2016), for the notion that the named plaintiffs must show they are "adequate" to represent the collective in this case. Def. Mot.  22 & n.5.  *Rutter* was solely a Rule 23 class action; naturally, it analyzed the adequacy of representation requirement under Rule 23(a)(4). *See*

Chipotle also claims "prejudice," but fails to explain or demonstrate how it will be unduly prejudiced by Plaintiffs' counsel's continued representation of the Opt-Ins (whether in this action or in arbitration). As a general matter, a finding of undue or material prejudice requires proof and may not be based simply on speculation or conclusory allegations. *See, e.g., Malibou Media, LLC v. Cuddy,* No. 13-cv-02385 WYD-MEH, 2015 WL 1280783, at *6 (D.Colo. Mar. 18, 2015) (affirming and adopting magistrate judge's recommendation addressing prejudice); *Crocs, Inc. v. Cheng's Enters., Inc*., No. 06-cv -00605-PAB-BNB, 2012 WL 5504227, at *2 (D.Colo. Oct. 6, 2012) (Boylan, U.S.M.J.), *recommendation accepted*, 2012 WL 5493729 (Nov. 13, 2012). If anything, it is the Opt-In Plaintiffs and current Plaintiffs' counsel who would face extreme unfairness, undue prejudice, and harm if Chipotle's request for disqualification were granted, which outweighs any purported (and unproven) prejudice to Chipotle resulting from counsel for Plaintiffs' continued representation.

In evaluating prejudice relative prejudice to the parties, this Court should take "practical considerations" into account, including "a party's ability to secure

---

314 F.3d at 1187-88. Although Chipotle deceptively describes *Pliego* as "applying *Rutter* and Rule 23 adequacy standard to [a] FLSA collective." *see* Def. Mo. at 22, n.5, *Pliego* involved the settlement of a hybrid Rule 23 class and Section 216(b) FLSA collective action.  The *Pliego* Court applied the "adequacy of representation" test as part of its Rule 23 analysis, not its Section 216(b) analysis. *See* 313 F.R.D. at 126-27.

alternative representation. *Shaffer*, 955 F.2d at 146 (4th Cir. 1992). Here there is a significant likelihood that most of these Opt-In Plaintiffs will not be able to secure alternative representation if they are required to proceed in arbitration individually and without their current and chosen counsel. Many, if not the vast majority, will simply abandon their claims given the small size of their individual claims and the difficulty they will face trying to find and secure dedicated, competent counsel to represent them.

Furthermore, any assertion of an ethical conflict or other transgression necessarily rings hollow because Plaintiffs' counsel have strictly complied with this Court's Order authorizing the form and substance of Notice and commanding that it be sent to the collective that the Court granted. As Chipotle acknowledges, Chipotle informed the Court of, and was heard on, Chipotle's concerns regarding collective action treatment, the existence of arbitration agreements, the nature and make-up of the Notice, communicating with the collective, and much more. These matters were all thoroughly vetted in motion practice and in oral argument before the Court.

With full knowledge and due consideration of the facts and the legal issues, this Court granted conditional collective action status and authorized Plaintiffs' counsel to send the Notice in this case. There is no evidence, nor even an allegation, that this Court was somehow deceived in the course of making the

rulings granting the collective action and authorizing the dissemination of the Notice. This in itself defeats Chipotle's unfounded and conclusory claims of "conflict" and the request for disqualification. *Cf. Kamienski v. Attorney General of New Jersey*, No. 11-CV-6243(PGS)(DEA), 2015 WL 3616599, at *6 (D.N.J. June 9, 2015) (refusing to find that counsel for plaintiff engaged in unethical behavior, particularly where there was compliance with the court's orders); *Lewis*, 2006 WL 1892583, at *4 (court found no breach of confidentiality order or unethical indirect solicitation to obtain plaintiffs via a letter sent by plaintiffs' counsel to witnesses to obtain information which also mentioned the possibility of a class action, though court acknowledged that the better practice would have been for plaintiffs' counsel to have first sought the court's approval for the letter.)

Rather than analyze the specific legal standards governing a motion to disqualify opposing counsel, Chipotle cites a number of cases that do not support its drastic request. For instance, Chipotle cites *Andrews v. Heaton*, 483 F.3d 1070 (10th Cir. 2007), for the broad, elementary principle that a federal court has the inherent power to regulate the activities of "abusive litigants." (Def. Mot. at 21.) Plaintiffs wholly concur with this general principle, but *Andrews* did not involve a motion to disqualify opposing counsel, and the general axiom provided by *Andrews* has no bearing on the issues here.

Chipotle also relies on *Fengler v. Crouse Health Found., Inc.*, 595 F.Supp. 2d 189 (N.D.N.Y. 2009) (Def. Mot. at 22), another case that did not involve a motion for disqualification of opposing counsel. The court in *Fengler*, in the context of granting a conditional collective, simply put a limit on the discovery of putative opt-ins' information sought from the defendant which named plaintiffs requested in furtherance of notifying potential opt-ins of the collective action. The court required defendant to produce some, but not all, of the information requested by the named plaintiffs, and excluded from discovery certain "inherently private information" of the putative opt-ins. The court limited the information strictly to that which the court viewed as necessary to facilitate the putative opt-ins' receipt of notice. *Id.* at 198. Plaintiffs' counsel here are unable to see the connection between *Fengler* and Chipotle's request for disqualification of Plaintiffs' counsel. As explained above, Plaintiffs' counsel acted in accordance with this Court's rulings and orders authorizing the Notice and used the information this Court required Chipotle to provide to facilitate sending the Notice to putative opt-in plaintiffs. Thus, Chipotle's claims that Plaintiffs' counsel "exploit[ed] the process" and should not be able "use this information to gain any leverage or tactical advantage or to drum up further litigation in the form of individual arbitrations[,]" Def. Mot, at 22, is without merit.

Chipotle cites *Vallone v. CNA Fin. Corp.,* No. 98-C-7108, 2002 WL 1726524 (N.D.Ill. Mar. 19, 2002), parenthetically describing it as "holding there is no attorney

client-client relationship between putative class members and class counsel when solicitation of putative class members was inappropriate." *See* Def. Mot. at 23. *Vallone* was a putative class action case that was never certified, did not involve a Section 216(b) collective action, did not involve orders granting a collective and authorizing the sending of a Notice that had been reviewed and fully vetted by the court, and did not involve a motion to disqualify opposing counsel.

Finally, Chipotle cites *In re Corn Derivatives* for the elementary proposition that admission and disciplining of attorneys practicing before a federal court fall within the court's inherent powers. *See* Def. Mot. at 23. *Corn Derivatives*, however, actually supports Plaintiffs' position and many of the points expressed previously in this section. *Corn Derivatives* involved the Third Circuit's disqualification of a law firm that represented a couple of class members with conflicting interests in a class action setting. 748 F.2d at 157, 162. Although the facts and substantive issues in that case are different than those presented here, relevant to the instant action is the Third Circuit's recognition that the counsel subject to disqualification in that case did not represent the class and, therefore, the court did not need to consider prejudice to the class. *Id.* Conversely, Plaintiffs' counsel in the present case represent an entire collective of employees who have affirmatively opted into the collective action based on a Court-ordered Notice stating that Plaintiffs' counsel would represent them. Moreover, Judge Adams' concurring opinion in *Corn*

*Derivatives* pointed to factors weighing in favor of disqualification in those unique circumstances, including, among others, that the disqualified counsel represented only three class members rather than the entire class or a large portion of it, and that the party potentially required to proceed without its chosen counsel was a large corporation "with ample resources to enable it to secure new counsel." *Id.* at 166. Again, those factors are markedly at odds with the present case. Here, Plaintiffs' counsel represent an entire collective. The Opt-Ins, if required to proceed without Plaintiffs' counsel, are individuals (rather than large corporations) without sufficient resources to secure new counsel, an unfortunate circumstance which Chipotle seeks to exploit by its meritless request for disqualification.

In sum, Chipotle fails to cite any case that is procedurally, factually or substantively similar to the instant action, and its claim of inappropriate solicitation lacks any factual or legal support. For these and the other many reasons set forth above, Chipotle's request to disqualify Plaintiffs' counsel should be denied.

## IV.   CONCLUSION

Chipotle should not be permitted to use the arbitration provisions in its employment agreements as a shield to deprive the Opt-in Plaintiffs of a meaningful remedy. If the Court decides that the Opt-in Plaintiffs should go to arbitration, then (1) the claims of the Opt-in Plaintiffs at issue should be stayed in this litigation pending arbitration, and (2) a status conference should be scheduled to determine

the appropriate notice to be sent to the affected Opt-In Plaintiffs, a procedure for determining how they each wish to proceed, and a reasonable timetable for accomplishing same. This procedure protects the respective rights of the parties and provides a means for dealing with the inevitable interplay between the arbitration proceedings and this litigation.

**Respectfully submitted this 22nd Day of December 2017.**

/s/Andrew C. Quisenberry
Darin L Schanker
Andrew C. Quisenberry
BACHUS & SCHANKER, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Tel: 303.893.9800
Fax: 303.893.9900
dschanker@coloradolaw.net
andrew.quisenberry@coloradolaw.net

Kent M. Williams
WILLIAMS LAW FIRM
1632 Homestead Trail
Long Lake, MN 55356
Tel: 612.940.4452
williamslawmn@gmail.com

Adam S. Levy
LAW OFFICE OF ADAM S. LEVY, LLC
P.O. Box 88
Oreland, PA 19075
Tel: 267.994.6952
Fax: 215.233.2992
adamslevy@comcast.net

Thomas M. Hnasko
Michael E. Jacobs
Julie A. Sakura
HINKLE SHANOR LLP
P.O. Box 2068
Sante Fe, NM 87504
Tel: 505.982.4554
Fax: 505.982.8623
thnasko@hinklelawfirm.com
mjacobs@hinklelawfirm.com
jsakura@hinklelawfirm.com

Kevin E. Giebel
Giebel and Associates, LLC
P.O. Box 414
Lake Elmo, MN 55402
Tel: 651.236.0729
kgiebel@ggwklaw.com

Robert J. Gralewski, Jr.
KIRBY MCINERNEY LLP
600 B Street, Suite 1900
San Diego, CA 92101
Tel: 619.398.4340
bgralewski@kmllp.com

***Attorneys for Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 22, 2017, I electronically filed and served the foregoing **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO CHIPOTLE MEXICAN GRILL INC.'S MOTION TO DISMISS OPT-IN PLAINTIFFS** via the CM/ECF system, which will send notification of such filing to all counsel of record:

John K. Shunk
Allison J. Dodd
Adam M. Royval
Kendra N. Beckwith
Thomas R. Blackburn
MESSNER REEVES LLP
1430 Wynkoop Street, Suite 300
Denver, Colorado 80202
Telephone: (303) 623-1800
jshunk@messner.com
adodd@messner.com
aroyval@messner.com
kbeckwith@messner.com
tblackburn@messner.com

Richard J. Simmons (*pro hac vice*)
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
333 South Hope Street
Forty-Third Floor
Los Angeles, CA 90071
rsimmons@sheppardmullin.com

Attorneys for Defendant

*/s/ Andrew C. Quisenberry*
Andrew C. Quisenberry