# EXHIBIT 3

WILLIAMS LAW FIRM
1632 Homestead Trail
Long Lake, MN  55356
(612) 940-4452

January 31, 2014

**VIA ECF**

The Honorable Steven E. Rau
United States Magistrate Judge
United States Courthouse
316 North Robert Street, Room 334
St. Paul, MN 55101

      Re:   *Marcus Harris, et al. v. Chipotle Mexican Grill, Inc.*
           Case No. 13-cv-1719 (SRN/SER)

Dear Judge Rau:

At the hearing on Plaintiffs' Motion for Conditional Certification, the Court requested letter briefs regarding Chipotle's assertion that Plaintiffs' counsel should be disqualified due to "conflicts" that supposedly "permeate the proposed class." Rule 1.7 of the Minnesota Rules of Professional Conduct provides that a "concurrent conflict" exists if the representation of one client will be directly adverse to another client, or there is a significant risk that the lawyer's representation of one client will be materially limited by the lawyer's obligations to another client. Even if a conflict exists, however, the lawyer may represent both clients if he reasonably believes he will be able to provide competent and diligent representation to both clients; the representation is not prohibited by law; the representation does not involve the assertion of one client's claim against another client; and both clients give written, informed consent.  Minn. R. Prof. Conduct 1.7(b).

Chipotle asserts that Plaintiffs' counsel should be disqualified because "manager" employees who opt into this case ["manager opt-ins"] may undermine the claims of other opt-ins if they deny engaging in wrongful conduct to avoid unspecified "consequences." With this argument, Chipotle ignores adverse precedent, misstates the holdings from inapposite cases, and assumes conflicts where none exist.  Such abusive tactics should be rejected, and Chipotle's bid to disqualify Plaintiffs' counsel should be denied.

    1.    <u>Chipotle does not have standing to seek disqualification</u>.

Chipotle lacks standing to seek the disqualification of Plaintiffs' chosen counsel. "'As a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless *the former client* moves for disqualification.'"  *Andrews Farm v. Calcot, Ltd.,* 2010 WL 4010146, at *2 (E.D. Cal. Oct. 13, 2010) (emphasis added) (quoting *In re Yarn Processing Patent Validity Litigation*, 530 F.2d 83, 88 (5th Cir. 1976); *Kasza v. Browner*, 133 F.3d 1159, 1171 (9th Cir. 1998)); *accord In re Potash Litig*., 1993 WL 543013, at *9-11 (D. Minn. Dec. 8, 1993) (following the *In re Yarn* rule); *Beiter Co., v. Blomquist*, 132 F.R.D. 220, 224 (D. Minn. 1990) (citing *In re Yarn*)). *See also Colyer v.*

The Honorable Steven E. Rau
January 31, 2014
Page 2 of 5

*Smith*, 50 F.Supp.2d 966, 969 (C.D. Cal. 1999) (citing *In re Yarn* as the "majority view"). As the *Andrews* court explained, "[s]tanding requires that the party have personally suffered from an 'injury in fact' which is causally related to the conduct at issue. The court must consider whether *defendants* have demonstrated an injury in fact, that they will endure, as opposed to an injury to *plaintiff*." *Andrews*, 2010 WL 4010146, at *3 (citations omitted; emphasis in original); *see also O'Connor v. Jones*, 946 F.2d 1395, 1400-01 (8th Cir. 1991) (holding that a motion to disqualify counsel requires the moving party to demonstrate that it suffered "injury in fact"). Because Chipotle is not a current or former client, it lacks standing to seek the disqualification of Plaintiffs' chosen counsel.[1]

2.      There are no conflicts among potential class members.

Chipotle speculates that intra-class conflicts may arise if manager opt-ins deny requiring other employees to work off the clock, to avoid "consequences." Although Chipotle does not specify these "consequences," it presumably refers to the prospect of individual liability under the Federal Labor Standards Act ("FLSA").

Under the FLSA, an "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d) (2006) ("Definitions"). The Supreme Court has described "[t]he test of employment[ ]" as "economic reality rather than technical concepts[.]" *Goldberg v. Whitaker House Co-op., Inc.,* 366 U.S. 28, 33 (1961); *Blair v. Wills*, 420 F.3d 823, 829 (8th Cir. 2005); *Boucher v. Shaw,* 572 F.3d 1087, 1091 (9th Cir. 2009); *Maseck v. TAK Communications*, 2011 WL 1190579 at *5 (D. Minn. March 28, 2011)*; Saunders v. ACE Mortgage Funding, Inc*., 2007 WL 4165294 at *4 (D. Minn. Nov. 16, 2007). Because just about any supervisor, officer, or director may "act in the interest of the employer," an individual manager or

---

[1]The *In re Yarn* rule has been cited in no fewer than 43 federal court opinions and 14 state court opinions. Yet, at the hearing on Plaintiffs' motion for conditional certification, defense counsel did not even mention *In re Yarn*, *In re Potash*, *Beiter*, or any other of the plethora of cases that require a party to demonstrate standing when seeking to disqualify another party's counsel. This raises the serious question of whether Chipotle and its counsel complied with their duty of candor under Rule 3.3 of the Minnesota Rules of Professional Conduct. It also raises a significant question as to whether Chipotle and its counsel are engaged in the sort of abusive tactic courts warn about with respect to disqualification motions. *See, e.g., Richardson-Merrell, Inc., v. Koller*, 472 U.S. 424, 441 (1985) (Brennan, J., concurring) ("the tactical use of attorney-misconduct disqualification motions is a deeply disturbing phenomenon in modern civil litigation. When a trial court mistakenly disqualifies a party's counsel as the result of an abusive disqualification motion, the court in essence permits the party's opponent to dictate his choice of counsel"); *Macheca Transp. Co. v. Philadelphia Indem. Co.*, 463 F.3d 827, 833 (8th Cir. 2006) (holding that "disqualification motions should be subjected to particularly strict scrutiny," and that disqualification is an "extreme measure" which "should be imposed only when absolutely necessary" due to "the potential for abuse by opposing counsel") (citations and internal quotations omitted).

The Honorable Steven E. Rau
January 31, 2014
Page 3 of 5

supervisor will be held liable only where the evidence shows that they exercised economic and operational control over the employment relationship. *See Boucher,* 572 F.3d at 1091; *see also Saunders*, 2007 WL 4165294 at *4 (the "economic realities test" takes into account "the real economic relationship between the employer who uses and benefits from services of workers and the party that hires or assigns the workers to that employer") (citation omitted).

In applying the "economic realities test," courts consider factors such as the person's ownership interest, degree of control over the corporation's financial affairs and compensation practices, and role in causing the corporation to compensate or not compensate employees in compliance with the FLSA. *Saunders*, 2007 WL 4165294 at *4 (citing *Baystate Alternative Staffing, Inc. v. Herman,* 163 F.3d 668, 677-78 (1st Cir.1998)). No single economic factor is dispositive. *Id*. (citing *Dole v. Elliott Travel & Tours, Inc.,* 942 F.2d 962, 965 (6th Cir.1991)). Since economic reality is determined based upon all of the circumstances, any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition. *Id*. (citing *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 730 (1947)); *see McDonald v. JP Marketing Associates*, 2007 WL 1114159 at *5 (D. Minn. April 13, 2007) (holding that a person who did not directly hire and fire employees, supervise employees, determine employee compensation, or maintain employment records, was not an "employer" under the FLSA); *Baird v. Kessler,* 172 F. Supp.2d 1305, 1311 (E.D. Cal. 2001) (holding that one who did not "control the purse strings" was not an "employer" under the FLSA, even though he set work schedules, assisted in drafting employee handbooks, recommended or reviewed the termination of employees, and maintained employment records).

There are no potential conflicts between potential manager opt-ins and other potential members of this proposed collective action. First, Chipotle has made no showing that its managers are "employers" within the meaning of the FLSA. Hourly-paid Kitchen Managers and Service Managers have no ownership interest in Chipotle, no control over the company's financial affairs or compensation practices, and no power to direct the company's compliance with the FLSA. They do not set schedules, determine employee compensation, or maintain employment records. Their duties are similar to those of the crew members they supervise:  preparing food and cleaning.  And, they were subjected to the same off-the-clock policies as the crew members they supervised. *See generally* Supplemental Declaration of Julius Caldwell [ECF No. 63]. Moreover, while salaried Apprentices and General Managers may have relatively more managerial control, they also have no ownership interest in Chipotle, no control over the company's financial affairs or compensation practices, and no power to direct the company's compliance with the FLSA. Nor do they set compensation, maintain employment records, or direct company compliance with the FLSA. And, to the extent any manager opt-ins directed employees to work off the clock, they did so in compliance with Chipotle's centrally-set labor budgets and the "policy to violate the policy" evidenced by Plaintiffs.

Second, even if manager opt-ins potentially were subject to individual FLSA liability, there are still no "conflicts" because Plaintiffs have not sued anyone in their

The Honorable Steven E. Rau
January 31, 2014
Page 4 of 5

individual capacity, and have no plans to do so. If this is not already obvious, the notice can be amended to state this explicitly.[2] Thus, the only way manager opt-ins will be subjected to individual liability in this case is if Chipotle sues its own managers for contribution – which would likely fail, based on the lack of any showing that Chipotle managers are "employers" under the FSLA.[3] Moreover, if Chipotle sues its own managers, the interests of manager opt-ins will be *aligned* with those of all other opt-ins, since they will all seek to prove that managers acted in accordance with Chipotle's centralized budgets and policies, under threat of discipline (including termination).

        3.    <u>Disqualification is not warranted</u>.

Even if there were a possibility of intra-class conflicts, this would not be sufficient grounds for disqualifying Plaintiffs' chosen counsel. Chipotle must demonstrate an ethical breach that "so infects the litigation in which the disqualification is sought that it impacts the moving party's interest in a just and lawful determination of her claims," or that is "so 'manifest and glaring' or 'open and obvious' that it 'confront[s] the court with a plain duty to act.'" *See Andrews*, 2010 WL 4010146 at **2-4 (quoting, *inter alia*, *In re Yarn*, 530 F.2d at 88-89). *See also Central Milk Producers Co-op, v. Sentry Food Stores, Inc.*, 573 F.2d 988, 993 (8th Cir. 1978) (affirming denial of defendant's motion to disqualify where, among other things, there was "no allegation of actual impropriety"); *Local 894 Laborers' Int'l Union of N.A. v. American Roadway Logistics, Inc.*, 2012 WL 3067377, at *1, *2 (N.D. Ohio July 27, 2012) ("A court should only disqualify counsel when there is a reasonable possibility that some specifically identifiable impropriety actually occurred.") (quoting *Moses v. Sterling Commerce (Am.), Inc.*, 122 Fed. Appx. 177, 183-84 (6th Cir. 2005)); *Shaffer v. Fresh Farm, Inc.*, 966 F.2d 142, 145-46 (4th Cir. 1992) (vacating decision to disqualify plaintiffs' counsel that rested on speculation, hypothesis, and a mere "likelihood" that counsel might engage in unethical behavior). Chipotle does not demonstrate any present or imminent ethical breach at all, but merely speculates that a conflict *may* arise depending upon who wishes to opt into this case, what some opt-ins *may* wish to allege or deny with respect to other

---

[2]Since this is an opt-in action, the decision not to sue individual managers does not bind anyone who wishes to do otherwise; they are free to pursue such claims in their own individual lawsuit. If necessary, the notice and opt-in form can be amended to make this fact, and the fact that no claims will be asserted by one opt-in against another, abundantly clear. This will more than satisfy Rule 1.7(b)'s "informed consent" requirement.

[3]It is doubtful that Chipotle could create a "conflict" by suing its own managers, even if it attempted to do so. *See Copantitla v. Fiskardio Estiatorio, Inc.*, 788 F. Supp. 2d 253, 281-82 (S.D.N.Y. 2011) (holding that there was no conflict between "properly tipped" and "improperly tipped" class members, because the defendant's counterclaim against "improperly tipped" class members failed as a matter of law); *Arrington v. National Broadcasting Co., Inc.*, 531 F. Supp. 498, 505-06 (D.D.C. 1982) (finding no conflict where the defendant was not allowed to inject third-party actions into the case).

The Honorable Steven E. Rau
January 31, 2014
Page 5 of 5

opt-ins, and what the response by the other opt-ins *may* be. Chipotle's "what ifs" and "maybes" are insufficient grounds for disqualifying Plaintiffs' counsel.

Significantly, Chipotle has cited no case in which counsel were disqualified from representing an opt-in class due to an intra-class conflict.[4] Plaintiffs have uncovered no such case, either. In the absence of any such authority, Plaintiffs' counsel should be allowed to ameliorate whatever potential conflicts may be of concern to the Court by amending the class definition, notice, and/or consent to join form, so that opt-ins are fully informed when they consent to be joined in this case, consistent with Rule 1.7(b).

Respectfully submitted,

WILLIAMS LAW FIRM

s/*Kent M. Williams*

Kent M. Williams, Esq.

---

[4]To create an appearance of supporting precedent, Chipotle and its counsel cite (and mischaracterize) the holdings of three inapposite cases. The first, *Ortiz v. Fibreboard Corp*, 527 U.S. 815 (1999), a Rule 23 case in which the plaintiffs sought to certify a mandatory "limited fund" settlement class, is of little significance here, where Plaintiffs have moved for conditional certification of a permissive opt-in class to which employees must affirmatively consent to be bound. Moreover, in *Ortiz* there was no contention, much less a determination, that class counsel should be disqualified. The second, *Lou v. Ma Laboratories, Inc.*, WL 2014 68605 (N.D. Cal. Jan. 8, 2014), another Rule 23 case, is unavailing because counsel represented two classes in overlapping class litigation **in two separate proceedings,** a point which Chipotle's counsel attempted to obscure at the hearing. *Compare* Defendant's Exhibits Presented at Oral Argument on Plaintiff's Conditional Certification Motion, Exhibit E at 2 ("an attorney who represents **either** an individual or another class against the same defendant **may not serve as class counsel in FLSA case**") (emphasis in original), *with Lou v. Ma Laboratories*, 2014 WL 68605 at *2 ("counsel cannot simultaneously represent a class and prosecute either individual or class claims against the same defendants **in a different proceeding**") (emphasis added). In this case, Bachus & Schanker, LLC represents opt-in Leah Turner against Chipotle in an unrelated individual worker's compensation action in Colorado state court; none of the attorneys in this action are involved in that suit, or have any knowledge of that suit, other than its existence. And, in the third case, *White v. Osmose*, 204 F. Supp. 2d 1309 (M.D. Ala. 2002), an FLSA collective action, the Court merely held that a foreman with dissimilar job duties was not "similarly situated" with crewmembers. *White*, 204 F. Supp.2d at 1314. Significantly, the Court went on to certify a class of foremen represented by the same counsel who unsuccessfully sought to include crewmembers in the class. *Id*. at 1315.

# ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
TEL: 612-349-8500 FAX: 612-339-4181
www.rkmc.com

ATTORNEYS AT LAW

Joel A. Mintzer
Admitted in Minnesota, Iowa and
Illinois
JAMintzer@rkmc.com
612-349-8244

January 31, 2014                                                        *By ECF*

Hon. Steven E. Rau
United States District Court
334 Warren E. Burger Federal Courthouse
316 N. Robert Street
St. Paul, MN 55101

    Re: Harris, et al. v. Chipotle Mexican Grill, Inc.
       Case No.: 13-cv-1719

Dear Judge Rau:

Thank you for this opportunity to discuss further the conflict-of-interest issue that Mr. Simmons raised at last week's hearing. As described below, there are different types of conflicts, and the conflicts have different legal consequences.

## A.    The Conflicts

This lawsuit raises two essential types of conflicts that are clearly documented in the record. First, there is an inherent conflict between hourly-paid managers and hourly-paid crew members; and second, a conflict exists because the same claims are asserted by the same lawyers in multiple lawsuits.

### 1.    The Internal Class Conflict Between Managers and Crew.

During the hearing, Plaintiffs' counsel described the night-shift as the "sweet spot" of their claims. During the night-shift, most Chipotle restaurants close their doors to new customers at approximately 10:00 p.m., and the computer system automatically resets at 12:30 a.m. There is no dispute between the parties that the computer reset results in clocking off any employee who did not previously clock off. Thus, if an employee completed his or her work at 11:00 in the morning, but forgot to clock out, that employee (who actually left work 13.5 hours earlier) would be automatically clocked out at 12:30 a.m. the next morning. Likewise, if an employee was still working at 12:30 a.m., that employee would also be automatically clocked out.

There is also no dispute that, in the second example, Chipotle's written policy requires the employee's time records to be adjusted to reflect actual time worked. This adjustment can happen in multiple ways, each involving managers.

- First, employees can clock themselves in. For example, Jason Beebe testified during cross-examination that—as an hourly-paid Service Manager—he sets his

January 31, 2014
Page 2                                                                                    *By ECF*

phone alarm to remind himself and all other employees to clock back in "right away." (Ex. 1, Beebe Dep. at 43–44.)

- Second, employees can ask the hourly-paid manager on duty to clock all employees back in and adjust records to eliminate gaps. (Ex. 2, Becerra Dep. at 28–29.) The employees know to ask. Because the system automatically clocks employees out at 12:30 a.m., the employees cannot clock-out again at, say 12:50 a.m., if they are still working. Rather, they have to clock-in again in order to clock-out, alerting the employees that they need an adjustment. (*Id.* at 125.) And when the employees do clock out, they obtain a written receipt that specifies the exact times of day during which they worked, totals the number of compensable hours, and informs them that they should "keep this for your records" because the receipt is the "verification for hours worked." (*Id.* at 121, and attached Dep. ex. 4.)

- Third, without being asked, hourly-paid managers are authorized and expected to adjust the time records; with the employee's consent. (*Id.* at 95–96.)

- And fourth, at a later time, a manager can adjust the time with the Edit Record Form that is part of the Aloha system; again with the employee's consent. (Beebe Decl. ¶ 16; Ceron Decl. ¶ 15; Hawkins Decl. ¶ 15; Becerra (Hernandez) Decl. ¶ 16.) Even Harris concedes that such edits occurred occasionally. (Harris Decl. ¶ 7.)

Because hourly-paid managers are responsible to adjust employee time records to reflect actual time worked, either upon request or *sua sponte*, this lawsuit creates a conflict of interest. The crew members will need to blame the hourly-paid managers (who are also in the putative class), and the hourly-paid managers will deny the allegations in order to avoid personal legal liability, *see Lucas v. Jerusalem Café*, 721 F.3d 927, 930 (8th Cir. 2013) (affirming FLSA overtime verdict against employer and manager), or to avoid work-place discipline.

This conflict is not theoretical. Of the four named plaintiffs, Julius Caldwell and Dana Evenson were hourly-paid managers, and they admit that they had required "hourly-paid employees to punch out early and work off the clock." (Caldwell Decl. ¶ 10; Evenson Decl. ¶ 10.) In contrast, putative opt-in Leah Turner states that, when she was a manager, she "attempted to ensure that all employees were properly paid for the hours they worked." (Turner Decl. ¶ 15.)[1]

Plaintiffs may attempt to circumvent this conflict by arguing that Chipotle uniformly (as a nationwide "policy") forces every hourly-paid manager to make other employees work off the clock. But Plaintiffs have no colorable evidence. In fact, an initial review of

---

[1] Plaintiff Harris revealed another layer of conflict that arises when crew members are pitted against managers. He accuses hourly managers Barbon and Hernandez of retaliation and an assault, claiming Mr. Barbon "shouted at me, knocked a pan out of my hand" after he filed the lawsuit. (Harris Supp. Decl. ¶ 16.)

January 31, 2014
Page 3                                                                                    *By ECF*

Chipotle's data shows between about 66,000 and 100,000 instances in which employees were paid for time after the automatic clock-out as a result of the various systems Chipotle uses to enforce its lawful policies. (Ex. 3.)

### 2.    Representational Conflict.

The second type of conflict is similar to that described in *Lou v. Ma Labs., Inc.*, No. 12-5409 (N.D. Cal. Jan. 8, 2014). In *Lou*, an off-the-clock case, the court faced a situation in which proposed class counsel had filed two lawsuits seeking to represent the same class as against the same defendant on substantially similar theories. *Id.* at 1–2. The court noted that this created a conflict of interest that "doomed" plaintiffs' conditional certification motion as each plaintiffs in each case deserve to be represented by counsel who are unencumbered by their duties in a different case. *Id.* at 3. This conflict can manifest itself in multiple ways, but it becomes most apparent when the parties begin discussing settlement. Because defendants typically desire global peace, and therefore want to settle all claims if it settles at all, the pursuit of multiple lawsuits creates opportunities for plaintiffs' counsel "to manipulate the allocation of settlement dollars" between the differing lawsuits. *Id.* Thus, "Courts have consistently held that counsel cannot simultaneously represent and prosecute either individual or class claims against the same defendants in a different proceeding, even if there is partial overlap among the plaintiffs or class members in the cases." *Id.* (quoting 1 McLaughlin on Class Actions 4:39 (10th ed.))

This same conflict exists here. The same lawyers who represent Leah Turner as an opt-in to this case also represent her in two other lawsuits (and Ms. Turner is also participating in yet another action against Chipotle).

In March 2013, Leah Turner filed an FLSA lawsuit against Chipotle in the District of Colorado on behalf of herself and "others similarly situated." Ms. Turner alleged that, as an hourly-paid manager, she "was required to clock-out after she worked forty hours for Defendant in a work week [and she was] required by Defendant to continue to work off-the-clock." *Complaint* at ¶ 35 (Ex. 4.). In that action, Ms. Turner was represented by Bachus & Schanker, LLC.

Bachus & Schanker, now joined by the Williams Law Firm and the Law Offices of Adam Levy, filed a second lawsuit against Chipotle in Colorado in June 2013 (the "Hobbs" case) as a proposed collective action. Even though some of the same attorneys filed the Turner case with similar claims in March, no designation of related case was filed. The Harris case was filed in Minnesota in July, and the Hobbs and Harris cases were later consolidated.

Despite the pendency of her own action, on October 18, 2013, Ms. Turner signed a consent to opt into this lawsuit, and she proposed the appointment of Bachus & Schanker, as well as the Williams Law Firm and the Law Office of Adam S. Levy as counsel. (ECF No. 32 at 7, filed Oct. 23, 2013.) Four weeks after that, on November 14, Bachus & Schanker asked that Ms. Turner's Colorado case be stayed (not dismissed) in light of that

January 31, 2014
Page 4                                                                    *By ECF*

---

consent. Turner did not want to dismiss her Colorado lawsuit because of the possibility that the Minnesota court might not certify a class. (Ex. 5.) Ultimately, the parties agreed to a dismissal without prejudice, with Turner retaining her right to reinstitute her Colorado suit. The Turner case was not dismissed until December 27, 2013. (Ex. 6.)

In addition to her own FLSA off-the-clock case, Ms. Turner has joined yet another FLSA case. In February 2013, even before filing her off-the-clock lawsuit, Ms. Turner joined the *Scott* case, which asserts that Chipotle misclassified assistant general managers, known as Apprentices, as exempt salaried employees. (Ex. 7.)

Ms. Turner's and her counsel's fourth action against Chipotle is a claim brought under Colorado's workers' compensation system. Ms. Turner was injured on-the-job on May 19, 2012, and the parties dispute the necessity of various medical services. Ms. Turner is represented by Bachus & Schanker in that matter as well. While the factual basis for this claim is largely distinct from her three FLSA lawsuits, it proves the very conflict that concerned the *Lou* court.

In the workers' comp case, Ms. Turner sent a settlement demand to Chipotle on November 4, 2013 (which was after she had opted into the Minnesota action but before seeking dismissal of her Colorado action). (Ex. 8.) On November 18, Chipotle's counsel asked if Ms. Turner was "interested in settling all of her claims including the employment issue." (Ex. 9.) Ms. Turner's lawyer responded: "She will do a global settlement, including the employment claim. This is not a sticking point issue." (*Id.*) As the date for mediation approached, Chipotle's counsel, desiring the type of "global peace" identified in *Lou*, sought reassurance on January 14, 2014: "I assume that this is the current demand on a global basis to resolve any and all claims. I need you to confirm the same immediately before we get closer to the settlement conference." (Ex. 10.) Turner's response: "Yes, that was for a global settlement." (*Id.*) On January 21, Chipotle unilaterally cancelled the mediation. (Ex. 11.)

### B.     The Legal Consequences

These serious conflicts highlight two significant legal obstacles to class certification: manageability and adequacy of counsel.

In *Saleen*, Magistrate Judge Keyes noted that, even at the initial stage of an FLSA case, "it is incumbent on a court" to consider manageability. *Saleen v. Waste Mgmt., Inc.*, No. 08-4959, 2009 U.S. Dist. LEXIS 49891, at *26 (D. Minn. June 15, 2009). In this case, even the "sweet spot" of Plaintiffs' claim requires proof that hourly-paid managers disregarded Chipotle's written policy in order to enforce an unwritten, but nationwide, policy not to adjust time entries after the system reset. This proof will vary from employee to employee, from manager to manager, and from store to store. The conflict-of-interest between the thousands of hourly-paid managers and the hourly-paid crew members is sufficiently serious that conditional FLSA certification should be denied. *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1314-15 (M.D. Ala. 2002). Indeed, even numerous salaried

January 31, 2014
Page 5                                                                                   *By ECF*

---

managers (such as Ms. Turner) worked in hourly manager and non-manager positions within the three-year period in issue. The manageability issues precluding certification in *Saleen*, which did not involve any conflicts, are dwarfed by those present here.

Though not separately articulated in the FLSA, plaintiffs' counsel must be "adequate" in order to represent a class. *Lou*, at 3. The adequacy inquiry seeks, in part, to uncover conflicts of interest. *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997). In this case, the conflict between hourly-paid managers and hourly-paid crew members also places proposed class counsel in an irreconcilable conflict. As counsel for the entire proposed class, they may be forced to choose whether to attack the testimony of the plaintiff-managers who deny knowing that crew members worked off-the-clock, or instead defend the plaintiff-managers from claims by crew members that could result in the managers' liability or job discipline. *See Ellerd v. County of Los Angeles*, No. CV-08-4289, 2009 U.S. Dist. LEXIS 36865, at *12–14 (C.D. Cal. Apr. 9, 2009) (denying conditional certification where counsel could not represent both workers and their supervisors on their off-the-clock claims). The issue here is further highlighted by the responsibility of hourly managers such as Caldwell and Evenson to ensure that all time was accurately recorded, including time worked on closing shifts.

Finally, there is the adequacy issue raised in *Lou*. In this case, as in *Lou*, proposed class counsel have sought to resolve the same claims in multiple proceedings. Plaintiffs' counsel have filed three lawsuits against Chipotle on the same FLSA off-the-clock claims: in March 2013, they filed Ms. Turner's lawsuit; in June 2013, they filed the Hobbs lawsuit; and in July 2013, they filed the Harris lawsuit. Based on Chipotle's objections, the Hobbs lawsuit was transferred to this Court and consolidated with Harris. The Turner lawsuit was dismissed months after the instant motion was filed, but in a manner permitting Ms. Turner to re-file her lawsuit. And then, even in her remaining workers' compensation case, Plaintiffs' counsel would settle her employment claims.

These multiple layers of conflicts are not of Chipotle's making. Plaintiffs and their counsel created these issues by simultaneously filing four separate individual and class actions. These facts show yet another reason why adjudication of these claims on a class-wide basis is neither manageable, suitable, nor desirable.

Sincerely,

Joel A. Mintzer

84522785.1

THE QUISENBERRY LAW FIRM
John N. Quisenberry, Esq. (SBN 94751)
10472 Lindbrook
Los Angeles, CA 90024
Telephone No.: (310) 415-7600
jquisenberry@quislaw.com

BACHUS & SCHANKER, LLC
Andrew C. Quisenberry, Esq. (*pro hac vice*)
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Telephone No.: (303) 893-9800
Facsimile No.: (303) 893-9900
andrew.quisenberry@coloradolaw.net

Attorneys for Class Settlement Objector
ENRIQUE LOPEZ-CARRILLO

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES, CENTRAL CIVIL WEST

| | |
|---|---|
| WENDY SEGOVIA, as  an individual and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>CHIPOTLE MEXICAN GRILL, INC., a Delaware Corporation; and DOES 1 through 100, inclusive,<br><br>    Defendants. | Case No.:  **BC489851**<br><br>Assigned for All Purposes to:<br>The Hon. Elihu M. Berle, Dept. 323<br><br>**ENRIQUE LOPEZ-CARRILLO'S RESPONSE TO DEFENDANT CHIPOTLE MEXICAN GRILL, INC.'S *EX PARTE* APPLICATION TO ENFORCE AUTOMATIC STAY PENDING APPEAL OR, ALTERNATIVELY, TO PRECLUDE VIOLATION OF PROHIBITORY ASPECTS OF THE COURT'S JULY 14, 2015 ORDER APPROVING THE PARTIES' CLASS ACTION SETTLEMENT**<br><br>[Declaration of Andrew C. Quisenberry Filed Concurrently Herewith]<br><br>[Complaint Filed:  August 8, 2012]<br>[Trial Date:  TBD] |

1

**INTRODUCTION**

Chipotle has brought an *ex parte* motion requesting that this Court "preclude" counsel for the plaintiffs in *Turner v. Chipotle Mexican Grill, Inc.*, Case No. 14-cv-2612-JLK, from complying with the *Turner* Court's order that notice be disseminated to *Segovia* class members.  Chipotle's request raises deep constitutional concerns that Chipotle completely ignores.  Moreover, even if the request was constitutional, the very authority Chipotle cites demonstrates why any such relief is unwarranted.  For these reasons, Chipotle's motion should be denied.

**RELEVANT FACTUAL BACKGROUND**

Leah Turner filed her Collective Action Complaint ("Complaint") against Chipotle Mexican Grill, Inc. ("Chipotle") in the United States District Court for the District of Colorado on September 22, 2014.[1]  Declaration of Andrew C. Quisenberry ("Quisenberry Decl.") at ¶ 5.  On November 19, 2014, Araceli Gutierrez ("Gutierrez") retained the firm of Bachus & Schanker, LLC to represent her in her claim against Chipotle.   Turner amended her Complaint on January 21, 2015, to add Gutierrez and other named plaintiffs.  Gutierrez alleges violations of the Fair Labor Standards Act ("FLSA") and California law on behalf of herself and those similarly situated.  *Id.*

On February 2, 2015, the named plaintiffs in *Turner* moved for a nationwide collective action for violations of the FLSA.  Quisenberry Decl. at ¶ 6.  The named plaintiffs did not request any action from the Court related to alleged California state law claims, and no discovery has been conducted regarding such claims.  *See id.*

Lopez-Carrillo filed his Consent to Join the *Turner* action on March 9, 2015.  Lopez-Carrillo is not a named plaintiff in *Turner*, did not file the motion for a collective in *Turner*, and has not been directed to do anything regarding Notice in *Turner*.  *See* Quisenberry Decl. at ¶ 7.

---

[1] Ms. Turner had previously brought an individual case against Chipotle in early 2013, which she dismissed without prejudice so that she could opt into another case against Chipotle, *Harris et al. v. Chipotle Mexican Grill, Inc.*, No. 13-cv-1719 (SRN/SER).  Ms. Turner left the *Harris* case and re-filed her original claim when the *Harris* Court certified a collective that did not include Ms. Turner.  *See* Quisenberry Ex. 2 at *3 (recounting the procedural history of the *Harris* and *Turner* cases).

2

ENRIQUE LOPEZ-CARRILLO'S RESPONSE TO DEFENDANT CHIPOTLE MEXICAN GRILL, INC.'S EX PARTE APPLICATION TO ENFORCE AUTOMATIC STAY PENDING APPEAL OR, ALTERNATIVELY, TO PRECLUDE VIOLATION OF PROHIBITORY ASPECTS OF THE COURT'S JULY 14, 2015 ORDER APPROVING THE PARTIES' CLASS ACTION SETTLEMENT

Chipotle did not disclose *Segovia* as being related to *Turner* under D.Colo.LCiv.R.3.2, and *Turner* Plaintiffs' counsel did not learn about *Segovia* from any of the parties or their counsel in this case.   When *Turner* Plaintiffs' counsel did learn about *Segovia* in early April of 2015, they immediately filed a Supplemental Notice of Related Cases to make the *Turner* Court aware of *Segovia*.   *See* Quisenberry Decl. at ¶ 8.

On May 28, 2015, in its opposition to the *Turner* Plaintiffs' motion for a collective, Chipotle addressed *Segovia* for the first time.   Although final approval of the settlement had not yet been granted in *Segovia*, Chipotle falsely stated that "nearly everyone in the State of California has settled and released the claims at issue here."   Chipotle also falsely claimed that approximately 33,228 persons had accepted settlement payments in *Segovia* and released their claims.   *See* Quisenberry Decl. at ¶ 9.   Chipotle also made no mention of the fact that it had received a timely objection to the *Segovia* settlement from opt-in plaintiff Lopez-Carrillo.   *See* Quisenberry Decl. at ¶ 10.

The *Segovia* Court heard oral argument regarding Lopez-Carrillo's objection on June 25, 2015, during which Chipotle asserted that no FLSA claims would be released until *Segovia* class members endorsed their checks, thereby contradicting what Chipotle had told the *Turner* Court.   The *Segovia* Court overruled Lopez-Carrillo's objection and approved the settlement.   On or about September 1, 2015, Lopez-Carrillo appealed the decision of this Court.   *See* Quisenberry Decl. at ¶ 10.

The Court in *Turner* granted the Motion for Collective Certification on August 21, 2015.   On September 4, 2015, Chipotle moved the Court for certification of an Interlocutory Appeal and requested that the *Turner* action be stayed.   Plaintiffs in *Turner* timely responded.   Once again, while Chipotle addressed other collective actions it deemed related to *Turner*, Chipotle did not mention *Segovia* in its motion.   Quisenberry Decl. at ¶¶ 11-12.

The Court in *Turner* denied Chipotle's motion and requested stay, and expressed concern about "the tone and content of the defendant's argument," which the Court found to be "replete with

3

1    incomplete quotations, erroneous statements of law, and conjured analysis." The Court warned

2    Chipotle that shoddy scholarship would not be tolerated in the future. *See* Quisenberry Decl. at ¶ 13.

3    On September 24, 2015, the parties submitted a Joint Status Report to the *Turner* Court

4    addressing an appropriate Notice plan. Chipotle requested "guidance and an opportunity to be heard

5    by this Court with respect to the effect of this [*Segovia*] settlement on the defined collective." At a

6    hearing held on November 12, 2015, Chipotle's counsel urged the *Turner* Court not to authorize

7    Notice to the *Segovia* class members because they would be confused by the *Turner* Notice. The

8    Court refused to carve out *Segovia* class members. *See* November 12, 2015 Minute Order attached to

9    Quisenberry Decl. as Ex. 4.   The Court is now considering the appropriate language of the Notice to

10   be sent.

11                                    **III.   ARGUMENT**

12   Chipotle contends that if counsel for the *Turner* Plaintiffs comply with the *Turner* Court's

13   order directing notice to *Segovia* class members, *Turner* Plaintiffs' counsel would be in violation of

14   California's automatic stay provisions, and in violation of California's ethical rules. Chipotle

15   concedes that it recently made, and lost, many of these same arguments in hearings and filings before

16   Judge Kane in the *Turner* case. *See* Supp. Memo. at 4:16 – 5:2. Undaunted, Chipotle repeats these

17   arguments, and demands that this court "preclude" counsel from complying with Judge Kane's order.

18   Besides ignoring the dubious constitutionality of such relief, Chipotle misstates and misconstrues the

19   authority upon which it relies. Chipotle's motion should be denied.

20   **A.     Contacting Segovia Class Members Would Not Violate the Automatic Stay.**

21   Chipotle urges this Court to enjoin  Mr. Lopez-Carrillo and his counsel[2] from complying with

22   a federal court order directing counsel to send notice of an FLSA collective to persons arguably

---

24   [2] Throughout its brief, Chipotle contends that Mr. Lopez-Carrillo needs to be "precluded" from contacting persons covered by the *Segovia* settlement. *See, e.g.*, Supp. Memo. at 1 ("Lopez-Carrillo and his lawyers now seek to violate the

25   automatic stay…"); ("Chipotle respectfully requests an order precluding Lopez-Carrillo and his attorneys from contacting the Segovia class members."). As Chipotle well knows, Mr. Lopez-Carrillo is not a Named Plaintiff in the *Turner* action,

26   but only an opt-in plaintiff. Mr. Lopez-Carrillo did not move for the collective in *Turner;* indeed, he did not join *Turner* until well over a month after the motion for a collective had already been filed. *See* Quisenberry Decl. at ¶ 7 and Ex. 1

27   thereto.  Nor does his name appear anywhere in any proposed version of the *Turner* Notice.  Accordingly, Chipotle's

4

28
ENRIQUE LOPEZ-CARRILLO'S RESPONSE TO DEFENDANT CHIPOTLE MEXICAN GRILL, INC.'S EX PARTE
APPLICATION TO ENFORCE AUTOMATIC STAY PENDING APPEAL OR, ALTERNATIVELY, TO PRECLUDE
VIOLATION OF PROHIBITORY ASPECTS OF THE COURT'S JULY 14, 2015 ORDER APPROVING THE
PARTIES' CLASS ACTION SETTLEMENT

covered by the *Segovia* settlement.  Chipotle asserts that such notice will necessarily involve communications between plaintiffs' counsel and members of the *Segovia* settlement class, and that those communications will upset the *status quo* in *Segovia* during the pendency of the appeal from this Court's order approving a settlement class.

> 1.  The Automatic Stay Under California Code of Civil Procedure 916(a)
> Does Not Apply to Federal District Court Proceedings in Colorado.

Chipotle asks this Court to enter an order "enforcing the automatic stay," which stays proceedings *in the trial court* once an appeal has been perfected.  Cal.Civ. Pro. Code § 916 (a) (emphasis added).  According to Chipotle, this Court is empowered to stay proceedings in a federal court in Colorado.  But Chipotle omits the limiting language of the statute, which reads in pertinent part, "…. the perfecting of an appeal *stays proceedings in the trial court….*"  *Id*. (emphasis added.) Chipotle cites no authority for the notion that Section 916 reaches beyond this trial court to proceedings in other courts, such as a federal court in another state.

Currently, there is nothing proceeding in the *Segovia* trial court (other than Chipotle's instant motion for *ex parte* relief).  Thus, there is nothing happening for the trial court to "stay."  The communications Chipotle complains of will occur in the *Turner* action, not in this trial court, and those communications have been authorized by a federal judge who has already considered the same arguments from the same Chipotle counsel, and rejected them.  Chipotle now seeks to circumvent that ruling, and convert the automatic stay of proceedings in this trial court into an injunction against compliance with a federal court order.  There is simply no authority construing section 916(a) in that manner.

The three cases Chipotle cites are unavailing.  In *Varian v. Delfino* (2005) 35 Cal. 4th 180, the California Supreme Court held that the trial court had erred in proceeding with *a trial in that courtroom* while the defendants' anti-SLAPP motion was pending in the Court of Appeal.  In *Coast*

---

request for relief against Mr. Lopez-Carrillo is baseless.  Moreover, not all of *Turner* Plaintiffs' counsel have appeared in this Court, and therefore do not concede that this Court has jurisdiction over them with respect to this matter.

ENRIQUE LOPEZ-CARRILLO'S RESPONSE TO DEFENDANT CHIPOTLE MEXICAN GRILL, INC.'S EX PARTE APPLICATION TO ENFORCE AUTOMATIC STAY PENDING APPEAL OR, ALTERNATIVELY, TO PRECLUDE VIOLATION OF PROHIBITORY ASPECTS OF THE COURT'S JULY 14, 2015 ORDER APPROVING THE PARTIES' CLASS ACTION SETTLEMENT

*Plaza Doctors Hosp. v. Blue Cross of California* (2000) 83 Cal. App. 4th 677, the automatic stay prevented a party from conducting discovery *in the trial court* while the trial court's order denying a petition to arbitrate was pending appeal.  And, in *Henry M. Lee Law Corp. v. Superior Court* (2012) 204 Cal. App. 4th 1375, the appellate court held that the automatic stay did not deprive the trial court of jurisdiction to rule upon a motion *in the trial court* to change a fee order issued by that trial court. All of these cases demonstrate that the automatic stay under section 916(a) applies only to proceedings in the trial court that issued the order, or entered the judgment, from which an appeal has been taken.  *See Henry Lee*, 204 Cal. App. at 1383 ("The purpose of the automatic stay is to protect the appellate court's jurisdiction by preserving the *status quo* and preventing the trial court from undermining or otherwise affecting the effectiveness of the appeal by altering the appealed judgment or order."); *Varian*, 83 Cal. App. 4th at 189 ("A matter is embraced in or affected by the appealed judgment or order within the meaning of Code of Civil Procedure section 916, subdivision (a) *only if trial court proceedings on the matter* would affect the effectiveness of the appeal.") (emphasis added)

In sum, there is absolutely no authority for the notion that the automatic stay under section 916(a) pertains to anything other than "proceedings in the trial court" in *Segovia* pending appeal. This is fatal to Chipotle's argument.  On that ground alone, Chipotle's *ex parte* application for an order enjoining counsel's communications in another proceeding should be denied.

      2.    <u>Chipotle Has Not Shown that the *Turner* Notice Will Alter the Status Quo in *Segovia* and Thereby Render the Pending Appeal Futile.</u>

Even assuming that the reach of Section 916 extends to other courts in other states, in urging this Court to enforce the automatic stay, Chipotle must further show that the communications it imagines will occur in *Turner* will actually affect the *status quo* in *Segovia.*  Within the meaning of section 916(a), those communications must render the pending appeal in *Segovia* "futile by altering the appealed judgment or order...."  *Varian,* 83 Cal. App. 4th at 180.  Chipotle strains to make a factual argument that the Notice somehow will derail or confuse the appellate panel and thus render

6

1  the appeal futile, but their exertions reflect more the inflamed imagination of an advocate than actual

2  facts.  Because Chipotle has not met its burden of showing that the pending appeal in *Segovia* will be

3  affected by the communications in *Turner*, this *ex parte* application should be denied on this ground

4  as well.

5  All Chipotle offers is speculation about what might happen in *Turner* to confuse the appellate

6  justices in *Segovia*.  Among other things, Chipotle contends that the *Turner* Plaintiffs' counsel seek

7  to "derail" the *Segovia* settlement "because they fear it will cut into the fees they hope to obtain in

8  *Turner*," Supp. Memo. at 4:3-4; that they will "pressure" potential opt-ins to disavow the putative

9  *Segovia* settlement and join this litigation, *id*. at 5:10-11; that "it is ***virtually certain*** that [*Turner*

10 Plaintiffs' counsel] will disparage and slander" the *Segovia* settlement, *id*. at 6:1-3 (emphasis in

11 original); that they will "dupe" *Segovia* class members into not cashing their settlement checks, *id*. at

12 6:14; and that "there is an obvious incentive for the *Turner* lawyers to ***lie*** to the class members by

13 ***grossly inflating*** their chances of success," *id*. at 6 n.5 (emphasis in original).  Just as it cites no

14 authority for its questionable legal assertions, Chipotle makes no effort to support any of these

15 inflammatory accusations with any evidence whatsoever.

16 The most Chipotle can claim is that if some *Segovia* class members join the *Turner* collective

17 action, Chipotle will not get what it bargained for in settling the *Segovia* action.  That argument,

18 however, is irrelevant.  To invoke Section 916's "automatic stay," Chipotle must show that the

19 *Turner* Notice somehow will alter the judgment in the *Segovia* trial court so that the appellate court

20 will not be able to decide clearly and properly the issues before it.  Of course, any such notion is

21 preposterous, and Chipotle makes no attempt to demonstrate any such thing.

22 Chipotle's only other contention in this regard is that the *Turner* Notice will "undermine

23 support" for the *Segovia* settlement.  Supp. Memo. at 6:9.  Chipotle asserts that if people opt into

24 *Turner*, this would "fundamentally alter the facts in front of this Court when it entered the order

25 approving the parties' class action settlement."  Supp. Memo, at 6:4-8.  Chipotle speculates that the

26 *Turner* lawyers might even ask such employees to submit an amicus brief in *Segovia*.  In Chipotle's

27

28

7

1   view, this loss of support would "potentially impact the issues the court of appeal must consider,"

2   and presumably render the appeal futile.  Again, however, this vague speculation is insufficient to

3   justify the extraordinary relief Chipotle seeks.

4        Chipotle obviously is upset that the *Turner* Court did not carve out the *Segovia* settlement

5   class from the order directing Notice, as Chipotle demanded.  But, as explained more fully below,

6   Chipotle's *pique* in no way justifies an attempt to do end run around a federal court order.  Because

7   Chipotle cannot demonstrate that attorney communications in the *Turner* action will alter the *status*

8   *quo* in such a manner as to render the appeal in *Segovia* futile, Chipotle's *ex parte* application should

9   be denied.

10  **B.      Contacting The Segovia Class Members Would Not Violate Prohibitory Aspects of the**

11  **Court's Final Approval Order.**

12       Chipotle contends that even if an automatic stay under Section 916 is not implicated, this

13  Court's final approval order prohibits the *Turner* Plaintiffs' lawyers from sending court-ordered

14  notice to persons covered by the Segovia class.  Chipotle asserts that sending the court-ordered

15  *Turner* Notice to members of the *Segovia* settlement class would be an improper communication

16  with a party represented by counsel, such that *Turner* Plaintiffs' counsel should be "precluded" from

17  complying with the *Turner* Court's order.  Supp. Memo. at 7:7-22.

18       One colossal flaw with this argument is it ignores the Supremacy Clause.[3]  *See General*

19  *Atomic Co. v. Fetter*, 434 U.S. 12, 15-16 (1977); *see also Donovan v. City of Dallas*, 377 U.S. 408,

20  412-413 (1964).  As the Supreme Court has explained:

21            While Congress has seen fit to authorize courts of the United States to

22            restrain state-court proceedings in some special circumstances, it has in

23            no way relaxed the old and well-established judicially declared rule

24            that state courts are completely without power to restrain federal-court

25

26  ---
    [3] Incredibly, Chipotle characterizes the federal court's order as "irrelevant."  Supp. Memo. at 2:19-20.

27

28                                              8

---

ENRIQUE LOPEZ-CARRILLO'S RESPONSE TO DEFENDANT CHIPOTLE MEXICAN GRILL, INC.'S EX PARTE
APPLICATION TO ENFORCE AUTOMATIC STAY PENDING APPEAL OR, ALTERNATIVELY, TO PRECLUDE
VIOLATION OF PROHIBITORY ASPECTS OF THE COURT'S JULY 14, 2015 ORDER APPROVING THE
PARTIES' CLASS ACTION SETTLEMENT

1    proceedings in *in personam* actions like the one here.  And it does not

2    matter that the prohibition here was addressed to the parties rather than

3    to the federal court itself.

4    *Donovan,* 377 U.S. at 412-13 (citations omitted).  *See also BioSense Webster, Inc. v. Superior*

5    *Court*, 135 Cal. App. 4th 827, 839 (2006) (following *General Atomic* and *Donovan*).  This basic

6    constitutional principle, which Chipotle does not even mention, prevents this Court from issuing the

7    relief Chipotle seeks.

8    Even putting aside the settled question of whether a state court judge has the power to enjoin

9    compliance with a federal court order, the purported legal basis for Chipotle's request – California

10   Rule of Professional Conduct 2-100 – does not prohibit *Turner* Plaintiffs' counsel from following the

11   *Turner* Court's order.[4]   Chipotle makes no mention of it, but the prohibition on contact with a

12   represented party provides an exception for "communications otherwise authorized by law."

13   California RPC 2-100 (C)(3).  Court-ordered communications fall within this exception.  *See United*

14   *States v. Lopez*, 4 F.3d 1455, 1461 (9th Cir. 1993) (communication with represented party pursuant

15   to court order may fall within the "otherwise by law" exception of California's Rule 2-100); *see also*

16   *Wagner v. City of Holyoke*, 183 F.Supp.2d 289, 292 (D.Mass. 2001) (stating that courts have

17   generally agreed that they may authorize *ex parte* communications with represented persons in

18   particular circumstances, and noting that the ABA has defined Rule 4.2's "authorized by law"

19   language as including a court order).

20   The *Turner* Court's order expressly instructs *Turner* Plaintiffs' counsel to send notice of the

21   collective to employees arguably within the *Segovia* class.  The order was authorized by federal law.

22   *See Hoffman-La Roche Inc., v. Sperling*, 493 U.S. 165, 170 (1989) (authorizing court-ordered notice

23

24

25
    _____

26   [4] When examining this Rule, a court should be guided by the following principle: "Rule 2–100 must be interpreted narrowly because a rule whose violation could result in disqualification and possible disciplinary action should be narrowly construed when it impinges upon a lawyer's duty of zealous representation."  *San Francisco Unified Sch. Dist.*

27   *ex. rel. Contearas v. First Student, Inc.*, 213 Cal. App. 4th 1212, 1231 (2013) (citations and internal quotations omitted).

9
    _____

28   ENRIQUE LOPEZ-CARRILLO'S RESPONSE TO DEFENDANT CHIPOTLE MEXICAN GRILL, INC.'S EX PARTE APPLICATION TO ENFORCE AUTOMATIC STAY PENDING APPEAL OR, ALTERNATIVELY, TO PRECLUDE VIOLATION OF PROHIBITORY ASPECTS OF THE COURT'S JULY 14, 2015 ORDER APPROVING THE PARTIES' CLASS ACTION SETTLEMENT

1  in FLSA cases). Therefore, it is a valid, court-ordered communication, and falls within the
2  "otherwise authorized by law" exception to Rule 2-100.

3  The cases Chipotle cites offer no support for its position.  The *Cal Pak* case is irrelevant to
4  the ultimate issue; Respondent does not dispute that *Segovia's* attorneys serve as Class Counsel in
5  the *Segovia* action as a result of the final approval order and settlement class certification.  Nor does
6  Respondent dispute that an attorney-client relationship is created between class counsel and class
7  members when the class is certified.  But none of this changes the fact that the *Turner* Court's order
8  is a court-ordered communication and, as such, meets the "otherwise authorized by law" exception of
9  Rule 2-100.[5]

10  Nor does Respondent quarrel with the principle expressed in *Martorana* that class counsel
11  owe a duty of care to the entire class to represent all class members with the ordinary skill, prudence
12  and diligence commonly possessed and applied by attorneys.  But, again, nothing in *Martorana*
13  provides any basis for this Court to interfere with a federal court order, or to otherwise frustrate the
14  federal court's management of a collective action over which it has jurisdiction.

15  Chipotle also argues that "an out-of-state court cannot authorize violations of California's
16  rules of professional conduct" or "of automatic stay provisions" or "encroach upon this Court's
17  orders."  Supp. Memo. at 8:14-15 & n.7 (relying on *Santa Clara* and *Ford*).  For the reasons already
18  stated, the *Turner* Order does not violate Rule 2-100.  Beyond that, the legal support that Chipotle
19  offers for these assertions borders on frivolous.  The first case Chipotle cites – *Santa Clara* –
20  involved the interplay between a California rule of professional conduct and a California statute,
21  where no "conflict" was found between the two.  Although Chipotle describes this as an "analogous
22  situation," it is not.  *See* Supp. Memo. at 8.  Not only did it not involve Rule 2-100, it did not involve

---

[5] Chipotle's other assertions, about Rule 2-100's purported incorporation into the final approval order, and class counsel's
role in a class action, are of no importance in this context for the same reasons.  Also, Chipotle's attempt to draw an
analogy between its own attorneys and the attorneys for the *Turner* plaintiffs is completely off the mark.  *See* Supp.
Memo. at 7.  In addition to the comparative lack of civility by Chipotle's attorneys in their brief, there *is* an "analytical"
reason why Chipotle's attorneys should be treated differently: the *Turner* Court's Order does not command or permit
them to communicate with *Segovia* class members, whereas the Order expressly commands counsel for *Turner* to do so.

1   any purported "conflict" between the orders of two courts from different jurisdictions, where one

2   court is constitutionally prohibited from interfering in the affairs of the other.[6]

3       Chipotle does cite one case – *Ford* – for the proposition that "an out-of-state court cannot

4   authorize violations of the automatic stay provisions … or encroach upon this Court's orders." Supp.

5   Memo. at 8:14-15 & n.7  Chipotle's parenthetical description of *Ford* is "(disapproving attempt by

6   one court to interfere with order of another court)."  *Id.*  Had Chipotle been candid, it would have

7   mentioned that *Ford* involved two different departments of the California Superior Court -- not a

8   state court and a federal court in two different jurisdictions.  Like the other cases Chipotle cites, *Ford*

9   is quite distinguishable and has no bearing in this matter.

10   **CONCLUSION**

11       For all the reasons stated, the undersigned respectfully requests that Chipotle's motion be

12   denied in its entirety.

14   Dated this 18th day of December, 2015.        BACHUS & SCHANKER, LLC

18   By: _____

19   Andrew C. Quisenberry
    Attorney for Class Settlement Objector
    ENRIQUE LOPEZ-CARRILLO

---

[6] Moreover, in finding no "conflict," the *Santa Clara* court indicated that a party must overcome a high hurdle to demonstrate such a conflict. *Santa Clara County Counsel Attys. Assn. v. Woodside*, 7 Cal. 4th 525, 544 (1994) ("But a ruling that a statute affecting attorney-client relations is unconstitutional on separation of powers grounds will not be lightly made.").  So, even if Chipotle were able to find a case authorizing a state court to obviate a federal court order, one would expect a similarly high (or higher) legal threshold to do so, since it would be contrary to hundreds of years of precedent. *See Donovan*, 377 U.S. at 412 & n.9 ("Early in the history of our country a general rule was established that state and federal courts would not interfere with or try to restrain each other's proceedings.") (citing *M'Kim v. Voorhies*, 7 Cranch 279, 3 L.Ed. 342; *Diggs v. Wolcott*, 4 Cranch 179, 2 L.Ed. 587).

11

ENRIQUE LOPEZ-CARRILLO'S RESPONSE TO DEFENDANT CHIPOTLE MEXICAN GRILL, INC.'S EX PARTE APPLICATION TO ENFORCE AUTOMATIC STAY PENDING APPEAL OR, ALTERNATIVELY, TO PRECLUDE VIOLATION OF PROHIBITORY ASPECTS OF THE COURT'S JULY 14, 2015 ORDER APPROVING THE PARTIES' CLASS ACTION SETTLEMENT

**PROOF OF SERVICE**

I hereby certify that on December 18, 2015, I served copies of the **ENRIQUE LOPEZ-CARRILLO'S RESPONSE TO DEFENDANT CHIPOTLE MEXICAN GRILL, INC.'S EX PARTE APPLICATION TO ENFORCE AUTOMATIC STAY PENDING APPEAL OR, ALTERNATIVELY, TO PRECLUDE VIOLATION OF PROHIBITORY ASPECTS OF THE COURT'S JULY 14, 2015 ORDER APPROVING THE PARTIES' CLASS ACTION SETTLEMENT AND DECLARATION OF ANDREW C. QUISENBERRY** via Lexi File & Serve, on the following interested counsel:

Peter M. Hart, Esq.
Amber S. Healy, Esq.
Katherine M. Copeland, Esq.
Law Offices of Peter M. Hart
12121 Wilshire Boulevard, Suite 205
Los Angeles, CA 90025
*Attorneys for Plaintiff Wendy Segovia*

Kenneth H. Yoon, Esq.
Law Offices of Kenneth H. Yoon
One Wilshire Boulevard, Suite 2200
Los Angeles, CA 90017-3383
*Attorneys for Plaintiff Wendy Segovia*

Richard J. Simmons, Esq.
Jason W. Kearnaghan, Esq.
Daniel J. McQueen, Esq.
Robert Mussig, Esq.
Sheppard, Mullin, Richter & Hampton
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071
*Attorneys for Defendant
Chipotle Mexican Grill, Inc.*

Charles C. Cavanagh, Esq.
Messner & Reeves, LLC
1430 Wynkoop, Suite 300
Denver, CO 80202
*Attorneys for Defendant
Chipotle Mexican Grill, Inc.*

Payam Shahian, Esq.
Stategic Legal Practices, APC
1875 Century Park East, Suite 700
Los Angeles, CA 90067
*Attorneys for Plaintiffs in Intervention Corina Munoz, Keresha Edwards, and Ashante Lewings, individually, and on behalf of others similarly situated*

Robert L. Starr, Esq.
Law Offices of Robert L. Starr
23277 Ventura Boulevard
Woodland Hills, CA 91364
*Attorneys for Plaintiffs in Intervention Corina Munoz, Keresha Edwards, and Ashante Lewings, individually, and on behalf of others similarly situated*

André E. Jardini, Esq.
Knapp, Petersen & Clarke
550 North Brand Boulevard, Suite 1500
Glendale, CA 91203-1922
*Attorneys for Plaintiffs in Intervention Corina Munoz, Keresha Edwards, and Ashante Lewings, individually, and on behalf of others similarly situated*

1

1  I declare under penalty of perjury that the above is true and correct.

2

3  Executed on May 18, 2015, at Denver, Colorado.

4

5

6  _____

7  Andrew C. Quisenberry, Esq.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2