**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-02612-JLK

LEAH TURNER, ARACELI GUTIERREZ, MARKEITTA FORD,
JOLESSA WADE, DANYA GRANADO, BRETT CHARLES, and
RUBY TSAO, individually and on behalf of others similarly situated,

    Plaintiffs,
v.

CHIPOTLE MEXICAN GRILL, INC.,

    Defendant.
_____

**ORDER re DEFENDANT'S MOTION TO DISMISS OPT-IN PLAINTIFFS BOUND BY
CHIPOTLE'S ARBITRATION AGREEMENT (ECF NO. 172)**
_____

Kane, J.

This matter is before me on the Motion to Dismiss Opt-In Plaintiffs Bound by Chipotle's Arbitration Agreement (ECF No. 172) filed by Defendant Chipotle Mexican Grill, Inc.  With its Motion, Chipotle seeks to dismiss from the collective action 2,814 Opt-In Plaintiffs (hereinafter "Arbitration Plaintiffs") who, it contends, are subject to a mandatory Arbitration Agreement that bars them from pursuing their wage claims in this Court.

The parties' briefs present four main issues for consideration: 1) the threshold matter of whether this Court, rather than the arbitrator, should decide the Arbitration Agreement's enforceability; 2) if the Court should decide the issue, then whether the Arbitration Agreement is valid and enforceable; 3) whether, assuming the Agreement is enforceable and mandates arbitration, the appropriate remedy is dismissal or a stay;  and 4) whether Plaintiffs' Counsel should be prohibited from representing the Arbitration Plaintiffs in future proceedings.

1

For the reasons stated below, I find that it is this Court's role to determine whether the Arbitration Agreement is valid and enforceable. However, I refrain from ruling on the other issues raised by Chipotle's Motion to Dismiss at this time and ORDER the parties to submit supplemental briefing on the enforceability of the Arbitration Agreement, including arguments specific to its alleged unconscionability.

### I. Threshold Argument – Who Should Determine Arbitrability

As a threshold matter, the Arbitration Plaintiffs challenge whether the Court, rather than the arbitrator, should decide arbitrability issues, including whether the Arbitration Agreement is enforceable. Whether an agreement creates a duty for parties to arbitrate certain issues "is a matter to be determined by the Court on the basis of the contract entered into by the parties." *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547 (1964) (citations omitted). Arbitrators may decide "gateway issues" of arbitrability only if the parties "clearly and unmistakably" indicate their intent that such issues be decided by an arbitrator. *See, e.g., First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("Courts should not assume that parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." (quoting *AT&T Techs. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986))). The Supreme Court has confirmed that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (citations omitted).

Oddly, the Arbitration Plaintiffs would have arbitrability determined by an arbitrator rather than this Court. They argue that the incorporation of the Employment Arbitration Rules and Procedures of JAMS ("JAMS Employment Rules") into the Arbitration Agreement

2

evidences clear and unmistakable intent by the parties for the arbitrator to decide questions of arbitrability.  Response 6, ECF No. 176.  Chipotle, in turn, reasons that the language of the incorporated JAMS Employment Rules is ambiguous and therefore cannot be "clear and unmistakable" evidence that the parties intended to arbitrate arbitrability.  Reply 4, ECF No. 177.

The Tenth Circuit recently held that an agreement incorporating JAMS Streamlined Arbitration Rules and Procedures ("JAMS Streamlined Arbitration Rules") evidenced a clear and unmistakable intent to arbitrate arbitrability.  *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1281 (10th Cir. 2017).  But, as Chipotle notes, the JAMS Streamlined Arbitration Rules at issue in *Belnap* differed from the JAMS Employment Rules incorporated into Chipotle's Agreement. The provision at issue in *Belnap* provided that:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

*Id.* The JAMS rule incorporated into Chipotle's Arbitration Agreement, Rule 11(b), contains a notable addition:

> Jurisdiction and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. *Unless the relevant law requires otherwise,* the Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

(Response Attachment 3, Ex. 2, ECF No. 176-3 (differing language emphasized).) This additional language distinguishes the subject Arbitration Agreement from the agreement at issue in *Belnap*.  Unlike the conclusive provision in *Belnap*, the provision incorporated into Chipotle's Arbitration Agreement creates ambiguity and demonstrates only that the arbitrator *may* have the authority to decide arbitrability, depending on the circumstances.

3

Neither the Arbitration Agreement nor the JAMS Employment Rules define "relevant law," but Chipotle correctly asserts that the law of contract interpretation is relevant to the enforcement of the Agreement and therefore requires the court to examine the contract as a whole. Reply 5. Because the incorporated JAMS provision is ambiguous as to the arbitrator's ability to resolve arbitrability, and because the express provisions in the Arbitration Agreement are silent on the matter, I can find no "clear and unmistakable" evidence that the parities intended to delegate arbitrability determinations to an arbitrator.

Accordingly, absent any other evidence of the parties' intent to arbitrate arbitrability, I find the JAMS provision in the Chipotle Agreement lacks the certainty needed to rebut the presumption that questions of arbitrability are resolved by the courts. To rule otherwise would render the language expressed—"unless relevant law requires otherwise"—meaningless.

## II.  Enforceability of Arbitration Agreement

### A. Challenges to Enforceability Based on the NLRA

Having determined that the Court should decide arbitrability in this instance, I must consider whether Chipotle's Arbitration Agreement is enforceable.[1]  Notably, the validity of forced individual arbitration of employment disputes is currently pending before the Supreme Court in a trio of cases appealed from the Seventh, Ninth, and Fifth Circuits.[2]   In all three cases, employees initially filed suit for violations of the Fair Labor Standards Act ("FLSA") and employers attempted to compel individual arbitration pursuant to arbitration agreements. The Supreme Court is considering whether agreements that require employees to bring claims

---

[1] The only arbitrability issues to be decided relate to enforceability. As to the question of scope, Chipotle persuasively argues in its Motion to Dismiss that Plaintiffs' claims fall within the scope of the Arbitration Agreement. Motion 13-16. Indeed, Plaintiffs make no mention of scope and do not challenge the conclusion that the Arbitration Agreement, if valid and enforceable, would cover their claims.

[2] *See Epic Sys. Corp. v. Lewis*, S. Ct. No. 16-285, *Ernst & Young v. Morris*, S. Ct. No 16-300, and *NLRB v. Murphy Oil USA*, S. Ct. No. 16-307.

4

through individual arbitration and prohibit collective actions violate the National Labor Relations Act ("NLRA") and are therefore unenforceable under the Federal Arbitration Act ("FAA"). The cases were argued on October 2, 2017, and both parties have reserved the right to make additional arguments based on the rulings.

While the Supreme Court's decision could impact the enforceability of some portions of Chipotle's Arbitration Agreement, the cases do not dispute the validity of mandatory arbitration itself. Rather, the issue to be resolved is whether an arbitration agreement can require employees to bring claims as *individuals only* and to forgo class and collective claims. As stated by the Ninth Circuit, "the arbitration requirement is not the problem . . . [a]n agreement to arbitrate work-related disputes does not conflict with the NLRA." *Morris v. Ernst & Young*, 834 F.3d 975, 984 (9th Cir. 2016). However, the provision in Chipotle's Arbitration Agreement prohibiting class and collective action claims could be unenforceable. S*ee* Gottlieb Decl. Ex. 1 ¶ 5.1, ECF No. 173-1. In two of the cases appealed to the Supreme Court, the Ninth and Seventh Circuits found that such provisions violate the NLRA and are therefore unenforceable under the FAA. *Morris,* 834 F.3d at 985 (finding a contract provision requiring "separate proceedings" to be illegal because it "defeats a substantive federal right to pursue concerted work-related legal claims"); *Lewis v. Epic Systems Corp.*, 823 F.3d 1147, 1156 (7th Cir. 2016) ("We conclude that, insofar as it prohibits collective action, Epic's arbitration provision violates Sections 7 and 8 of the NLRA."). I find these decisions to be persuasive. Yet, even if the Supreme Court affirms the Ninth and Seventh Circuits and finds prohibitions on collective actions unlawful, the remainder of Chipotle's Arbitration Agreement could still be enforced without violating the NLRA. As the Ninth Circuit recognized in *Morris*, illegal portions of an agreement can be severed to bring the agreement into compliance with the NLRA. 834 F.3d at 985. Furthermore, Chipotle's

Arbitration Agreement includes a severability clause specifying that any unenforceable provisions shall not affect the balance of the Agreement.  Gottlieb Decl. Ex. 1 ¶ 11.

Therefore, while the Supreme Court's decision could render unenforceable the provision barring class and collective actions, the ruling is not likely to affect the remainder of the Arbitration Agreement, including the duty to resolve claims through arbitration.

B.  Challenges to Enforceability on Other Grounds

Although not fully explored in the parties' briefs, there are intimations that the Arbitration Agreement could be unenforceable on other grounds.  Under the FAA, when parties agree to settle a controversy by arbitration, courts must enforce that agreement "save upon grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; *see also Santich v. VCG Holding Corp.*, 2017 WL 4251944 at *2 (D. Colo. Sept. 26, 2017).  Such grounds include "generally applicable contract defenses, such as fraud, duress, or unconscionability."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted).  Federal courts have also recognized an "effective vindication" exception to the FAA.  *See, e.g., Nesbitt v. FCNH, Inc.*, 811 F.3d 371, 376–77 (10th Cir. 2016).

Courts apply state contract law principles when determining whether an arbitration agreement is valid and enforceable.  *See Kaplan*, 514 U.S. at 944.  Chipotle asserts and I agree that, under choice-of-law principles, Colorado law applies here.[3]  The first unanswered question, then, is whether under Colorado law the Arbitration Agreement is unenforceable because it is

---

[3] Although Plaintiffs do not offer substantive arguments to the contrary, they summarily conclude that "variations in state law, as well as factual disputes such as whether a particular Opt-in Plaintiff saw the agreement, or clicked 'I agree' (as opposed to a manager or somebody else), will likely result in the dismissal of at least some arbitration agreements on contract formation, validity, enforceability, or other grounds."  Response 8.

unconscionable. The second is whether the Agreement is unenforceable because it fits within the effective vindication exception to the FAA.

*Unconscionability*

Chipotle argues that the Arbitration Plaintiffs have waived their unconscionability argument by making no effort to demonstrate it, and even if they have not waived their unconscionability argument, there is no evidence that the Arbitration Agreement is unconscionable under Colorado or any other law.[4] Anticipating Plaintiffs' counterarguments, Chipotle accurately asserts that a party cannot avoid contractual obligations by claiming that he or she did not read the agreement before signing it. *See Vernon v. Qwest Commc'ns Intl, Inc.*, 857 F.Supp.2d 1135, 1152 (D. Colo. 2012) ("Colorado law recognizes that 'one generally cannot avoid contractual obligations by claiming that he or she did not read the agreement.'"). Still, though, issues such as language facility in English might affect conscionability of the Agreement, and the record before me is insufficient to determine in whose favor the *Davis* factors tilt. I refuse to bar the Arbitration Plaintiffs from arguing that the Arbitration Agreement is unconscionable. Supplemental briefing is necessary to flesh out the parties' respective positions and facilitate a thorough analysis of the *Davis* factors.

---

[4] Colorado courts consider several factors in determining whether a contractual provision is unconscionable, including: (1) the use of a standardized agreement executed by parties of unequal bargaining power; (2) the lack of an opportunity for the customer to read or become familiar with the document before signing it; (3) the use of fine print in the portion of the contract containing the provision in question; (4) the absence of evidence that the provision was commercially reasonable or should reasonably have been anticipated; (5) the terms of the contract, including substantive fairness; (6) the relationship of the parties, including factors of assent, unfair surprise, and notice; and (7) the circumstances surrounding the formation of the contract, including setting, purpose, and effect. *Davis v. M.L.G. Group*, 712 P.2d 985, 991 (Colo.1986) [hereinafter "the *Davis* factors"]. The *Davis* factors encompass procedural and substantive unconscionability, both of which must be shown to render a provision unenforceable in Colorado. *Nesbitt v. FCNH, Inc.*, 74 F.Supp.3d 1366, 1371 (D. Colo. 2014) (citing *Vernon v. Qwest Commc'ns Intl, Inc.*, 925 F.Supp.2d 1185, 1194 (D. Colo. 2013)).

*Effective Vindication Exception*

Under the "effective vindication" exception, the presumption in favor of enforcing agreements to arbitrate "falls apart . . . if the terms of an arbitration agreement actually prevent an individual from effectively vindicating his or her statutory rights." *Shankle v. B–G Maint. Mgmt. of Colo., Inc.*, 163 F.3d 1230, 1234 (10th Cir. 1999). This exception "would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights," and "would perhaps cover filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013) (citation omitted).

In Colorado, "an arbitration agreement requiring a plaintiff to share in the costs of arbitration is unenforceable when the agreement effectively deprives the plaintiff of an accessible forum to resolve his statutory claim and vindicate his statutory rights." *Daugherty v. Encana Oil & Gas (USA), Inc.*, 2011 WL 2791338, at *10 (D. Colo. July 15, 2011) (citing *Shankle*, 163 F.3d at 1235). As this district recently recognized, "the most common examples of arbitral provisions that thwart effective vindication of federal statutory rights, particularly FLSA rights, are those that impose prohibitive costs on the plaintiff (such as paying or splitting the arbitrator's fee), or that would hold the plaintiff liable for the defendant's attorneys' fees and costs if the plaintiff is unsuccessful." *Pollard v. ETS PC, Inc.*, 186 F.Supp.3d 1166, 1176 (D. Colo. 2016) (citations omitted).

I note that the Arbitration Agreement here expressly states that the "Employee shall not be required to pay any cost or expense of the arbitration that Employee would not be required to pay if the matter had been heard in court." ECF No. 173-1, ¶ 7. Still, I invite the parties to address in their supplemental briefs the question of whether the Arbitration Agreement is

8

unenforceable because it would prevent Arbitration Plaintiffs from effectively vindicating their statutory rights under the FLSA.

### III. CONCLUSION

I disagree with Plaintiffs' assertion that the parties "clearly and unmistakably" intended for an arbitrator to resolve questions of arbitrability and therefore find that it is this Court's role to determine whether the Arbitration Agreement is valid and enforceable. However, I decline to rule on Chipotle's Motion to Dismiss based solely on the briefs before me and ORDER the parties to submit supplemental briefing on the enforceability of the Arbitration Agreement, including arguments specific to its alleged unconscionability.

Accordingly, Plaintiffs are DIRECTED to file on or before March 12, 2018, a supplemental brief setting forth their arguments on the enforceability of the Arbitration Agreement. Chipotle is DIRECTED to file the corresponding response on or before April 2, 2018. The parties shall indicate in their briefs what, if any, additional discovery is needed in order to resolve the question of enforceability.

DATED this 13th day of February, 2018.

_____
JOHN L. KANE
SENIOR U.S. DISTRICT JUDGE