**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:14-cv-02612-JLK

LEAH TURNER, ARACELI GUTIERREZ, MARKEITTA FORD,
JOLESSA WADE, DANYA GRANADO, BRETT CHARLES, and
RUBY TSAO

individually and on behalf of others
similarly situated,

Plaintiffs,

v.

CHIPOTLE MEXICAN GRILL, INC.,

Defendant.

---

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO
CHIPOTLE MEXICAN GRILL INC.'S MOTION TO DISMISS OPT-IN
PLAINTIFFS BOUND BY CHIPOTLE'S ARBITRATION AGREEMENT**

---

Plaintiffs file this supplemental brief as directed by the Court in its Order dated February, 13, 2018. (ECF No. 178.) ("Order"). This Court has requested the parties to address two unanswered questions: (1) "whether under Colorado law the Arbitration Agreement is unenforceable because it is unconscionable[,]" and (2) "whether the Agreement is unenforceable because it fits within the effective vindication exception to the FAA." Order at 6-7. Plaintiffs hereby respond to these two questions.

## I. Unconscionability

### A. The Arbitration Agreement is Procedurally and Substantively Unconscionable.

The Arbitration Agreement (ECF No. 173-1) (hereafter "Agreement") is unenforceable because it is procedurally and substantively unconscionable.

The Order sets forth the following legal standard for unconscionability:

> Colorado courts consider several factors in determining whether a contractual provision is unconscionable, including: (1) the use of a standardized agreement executed by parties of unequal bargaining power; (2) the lack of an opportunity for the customer to read or become familiar with the document before signing it; (3) the use of fine print in the portion of the contract containing the provision; (4) the absence of evidence that the provision was commercially reasonable or should reasonably have been anticipated; (5) the terms of the contract, including substantive fairness; (6) the relationship of the parties, including factors of assent, unfair surprise, and notice; and (7) all the circumstances surrounding the formation of the contract, including setting, purpose, and effect. *Davis v. M.L.G. Group*, 712 P.2d 985, 991 (Colo. 1986) [hereinafter "the *Davis* factors"]. The *Davis* factors encompass procedural and substantive unconscionability, both of which must be shown to render a provision unenforceable in Colorado. *Nesbitt V. FCNH Inc.*, 74 F.Supp.3d 1366, 1371 (D. Colo. 2014) (citing *Vernon v. Qwest Commc'ns Intl., Inc.,* 925 F.Supp.2d 1185, 1194 (D. Colo. 2013)).

Order at 7 n.4. "[N]o one [*Davis*] factor predominates and courts should examine each of the factors in conjunction with the entirety of the surrounding circumstances" and "if the entirety of the circumstances discloses evidence of 'overreaching' by one party that causes a contract provision to unreasonably favor that party to the detriment of the other party, a court should decline to enforce the

provision. *General Steel Domestic Sales, LLC v. Rising Sun Missionary Baptist Church, Inc.*, 11-cv-001332-DME-CBS, 2012 WL 1801955, at *6 (D.Colo. May 17, 2012) (citation omitted).

### 1. The Agreement is procedurally unconscionable.

The first, second, third, sixth, and seventh factors relate to procedural unconscionability. *Nesbitt* at 1371; *Vernon* at 1194. These factors weigh in favor of finding that the Agreement is unconscionable.

The first factor weighs in favor of a finding of unconscionability. Chipotle, a multi-billion dollar company, uses a standardized Agreement, the terms of which are not subject to negotiation. Chipotle essentially had complete bargaining power over its employees who purportedly entered into the Agreement. These Plaintiffs, generally, are inexperienced, under-educated, relatively unsophisticated, low hourly-wage workers very much in need of the job, and were confronted with a take-it-or-leave-it situation. *See* 6/13/2017 Dep. Tr. of Chipotle 30(b)(6) witness David Gottlieb, at 101:7-101:25, attached hereto as Exhibit A.

The second factor also weighs in favor of a finding of unconscionability. As new hires, these Plaintiffs were given inadequate direction and an inadequate opportunity to see and read or become adequately familiar with the Agreement as part of the "on-boarding" process," and Chipotle further failed to use measures that would better ensure that new hires would see and read or familiarize themselves

with the terms of the Agreement as part of the process. Chipotle utilized an electronic link to the electronic version of the Agreement – one of numerous key documents involved in the lengthy, time-consuming and information-filled on-boarding process – but Chipotle and its managers gave little if any instructions to the new hires and failed to require these new hires to open the link in order to gain access to or to read the Agreement itself, and did not automatically provide a hard copy of the Agreement (or state that a hard copy was available on request) in the absence of a specific request for one. As a result, many of these Plaintiffs lacked proper instruction, were confronted with numerous tasks and a significant amount of new information, and may never have seen the actual Agreement before completing the on-boarding process and thereby agreeing to the terms of the Agreement. Chipotle had the ability, through its managers to provide hard copies of the Agreement to new hires as part of the on-boarding process, or to at least require and direct new hires to activate the link and, through technology, to require new hires to open an electronic version of the Agreement before being capable of accepting the Agreement and completing the on-boarding process, but Chipotle did not do so. *See* Ex. A (30(b)(6) Dep. Tr.), at 25:17-26:2, 36:11-16, 46:11-49:13, 50:2-51:19, 52:6-54:1, 59:23-60:11, 61:20-63:1, 66:9-66:17, 68:19-69:23, 72:10-75:20, 79:24-80:12, 104:1-104:22, 106:5-107:4, 109:1-109:13, 110:16-111:22,

112:6-112:16, 112:24-114:21,138:3-139:19.[1] To this day, Chipotle has not disclosed how many employees never clicked on the link to the Agreement which Chipotle says bars participation in this suit.

Likewise, the third factor supports a finding of unconscionability. Analogous to "fine print" hiding an agreement or terms thereof, Chipotle (as described above) used an electronic link to an electronic version of the Agreement, buried within the mechanics of a lengthy, time-consuming, and information-rich on-boarding process. The Agreement likely went unnoticed during the on-boarding process which incorporated various other actions and documents that required review and execution simply to become an employee. A mere link to the Agreement - without providing the Agreement itself and other safeguards (as discussed above) - within the on-boarding process is unlikely to have been adequate means of having, and ensuring that new hires would, see, read, and grasp the terms of the Agreement.

The sixth factor also supports a finding of unconscionability. The Plaintiffs were typically individual, unskilled, prospective low hourly-wage employees, and Chipotle was a large, wealthy corporation with thousands of such employees. Besides the fact Plaintiffs could not have "assented" to an Agreement most of them

---

[1] Although Chipotle's 30(b)(6) witness testified about a helpline that an on-boarding new hire could call to assist with the on-boarding process, the witness was less than clear as to how an on-boarding new hire would find the hotline number, and testified that the hotline number is not contained within the Agreement itself. Nor did he know how the on-boarding new hire would see the hotline number in conjunction with accessing and opening the Agreement. Ex. A at 60:12-61:11.

likely never even saw, even if they did see (and understand) it, they would have been faced with the oppressive and unfair "choice" between signing away important rights or remaining unemployed. *See* Ex. A. at 101:7-101:25. Any "assent" obtained as a result of such coercion should not be enforced by this Court.

Finally, the seventh factor also supports a finding of unconscionability. This factor is a "catchall that allows for consideration of all of the factors surrounding formation of the contract." *Nesbitt*, 74 F.Supp.3d at 1372. Most low hourly-paid restaurant workers likely would never suspect that being hired for such a job would require surrendering their legal rights implicated by the Agreement. Additionally, there is no evidence that Chipotle informed these Plaintiffs at the time of (and after) their hiring that Chipotle had been accused of off-the-clock work by thousands of employees and sued in several states over the same practice. Had Chipotle provided this information at the time these Plaintiffs were seeking employment at Chipotle, many might have decided not to accept employment under the Agreement's terms.

### 2. The Agreement is also substantively unconscionable.

The remaining two factors, *i.e.* the fourth and fifth factors, also weigh in favor of a finding of unconscionability.

As to the fourth factor, it is outside the mainstream and generally unanticipated that a low paid, low level, relatively unsophisticated, hourly-wage

fast-food restaurant employee would be required to execute an agreement to arbitrate in order to be hired for such work. Therefore, requiring execution of the Agreement in this setting was not commercially reasonable.

Regarding the fifth factor, the Agreement is substantively unfair because, if the Court agrees with Chipotle that the Agreement prohibits collective litigation, the Agreement would nullify a statutory right to pursue litigation collectively as granted by the FLSA, which would undermine the FLSA's remedial purpose. *See Lozoya v. All Phase Landscape Constr., Inc.*, Civ. No. 12-cv-1048-JLK, 2014 WL 222104, at *4 (D.Colo. Jan. 21, 2014) (The collective action mechanism of the FLSA has as its important remedial purpose the lowering of costs by pooling resources and limiting of the controversy to one proceeding to resolve common issues).[2]

For all of these reasons, this Court should find that the Agreement is procedurally and substantively unconscionable thereby rendering it unenforceable. Therefore, Chipotle's motion should be denied in its entirety.

---

[2] Plaintiffs concede the weight of authority holds that, in the context of arbitration agreements, the FLSA does not provide a non-waivable, substantive right to litigate collectively. *See e.g., Delaney v. FTS Int'l Servs., LLC*, No. 4:16-cv-662, 2017 WL 264463, at *5 (M.D.Pa Jan. 20, 2017) (discussing authority for this proposition). *See also, e.g., Doe #1 v. Déjà Vu Consulting, Inc.,* No. 3:17-cv-00040, 2017 WL 3837730, at *13 (M.D.Tenn Sept. 1, 2017) (citing authority for the proposition); *Mason v. Synchrony Bank*, No. 3:17-cv-314, 2018 WL 527981, at *3, *5 (S.D.Ohio Jan. 22, 2018) (same). To Plaintiffs' knowledge, however, the Tenth Circuit Court of Appeals has not conclusively decided the issue.

## II.     Effective Vindication

Regarding "effective vindication," the Court's Order cites, among other cases, *Daugherty v. Encana Oil & Gas (USA), Inc.*, 2011 WL 2791338 (D.Colo. July 15, 2011). That case (among others) recognizes that arbitration provisions can "erect impermissible obstacles to Plaintiffs' ability to avail themselves of the rights and protections afforded by the FLSA" so as to make the provisions unenforceable. *Id.* at *11-*12 (finding unenforceable the agreement's provisions (1) requiring the parties to follow the Commercial Rules of the AAA providing for the plaintiffs to be assessed one-half of the arbitration costs, including the fees of the arbitrator, the effect of which would be to preclude them from pursuing their claims; and (2) providing for an award of attorneys' fees to the prevailing *party* rather than the prevailing *plaintiff* – a fee-shifting mechanism that thwarts the FLSA's statutory enforcement scheme and chills a plaintiff's ability, and willingness to attempt, to press their claims under the FLSA).

In *Daugherty*, the court ruled that the agreement's savings/ severability clause permitted the court to strike the unenforceable provisions while enforcing the rest of the agreement. *Id.* at *13. Numerous courts have ruled similarly, and Chipotle's Agreement has a "Severability" clause. *See* Agreement at ¶ 8. In this instance, however, the severability provision should not "save" the Agreement. *Daugherty* states: "'where an agreement contains a "savings and severability"

clause, the agreement "should not be completely obliterated because some provisions are beyond the legal limits …, ***unless such illegal provisions permeate the complete contract to such an extent as to affect its enforceability entirely***."" *Daugherty* at *12 (emphasis added) (quoting *Fuller v. Pep Boys-Manny, Moe & Jack of Del., Inc.*, 88 F.Supp.2d 1158, 1162 (D.Colo. 2000) (quoting *N.L.R.B. v. Tulsa Sheet Metal Works, Inc.*, 367 F.2d 55, 59 (10th Cir. 1966)). Here, the various potential legal problems with the Agreement's provisions and/or ambiguities or conflicts within the Agreement or in conjunction with the applicable JAMS Employment Arbitration Rules and Procedures (ECF No. 176-3) ("JAMS Rules") compel the conclusion that the Agreement should be "completely obliterated," despite the severability provision.

First, to the extent the Agreement is construed as prohibiting collective litigation, the Agreement thwarts the remedial purpose of the FLSA of lowering costs by pooling resources, as noted in the unconscionability section above. When this Court granted Plaintiffs' motion for a collective, Opt-In Plaintiffs were permitted to join the collective action simply by submitting a claim form without paying anything to bring their claims. Thus, each Opt-In Plaintiff avoided paying the $400.00 it costs to file a Complaint in federal court. As the Court recognizes, the Agreement provides that an "'Employee shall not be required to pay any cost or expense of the arbitration that Employee would not be required to pay if the matter

had been heard in court.'" Order at 8 (quoting Agreement at ¶ 7). Whether this ambiguous provision requires Opt-Ins to pay is subject to dispute. *See* Plaintiffs' Motion for Referral of Certain Opt-In Plaintiffs' Claims to Arbitration [ECF No. 158] at 9. Nonetheless, given that most of the Opt-In Plaintiffs' claimed damages are likely to be relatively small, many of them likely will decide to forego their claims altogether rather than re-file in arbitration and run the risk of being required to pay a fee to proceed, or otherwise be taxed in whatever amount some unknown arbitrator finds appropriate, contrary to the intent of the FLSA.

Second and relatedly, the Agreement has another ambiguous provision concerning a requirement that potentially could make arbitrating Plaintiffs responsible for paying defense counsel's fees and costs if Chipotle were the prevailing "party." Such a ruling would offend the FLSA as discussed in *Daugherty* (and many other cases). *See also* Order at 8 (citing *Pollard v. ETS PC, Inc.*, 186 F.Supp.3d 1166, 1176 (D.Colo. 2016)). Paragraph No. 8 of the Agreement raises this possibility by stating:

> The arbitrator shall award reasonable attorneys'' fees and costs to a party if such award is required by applicable law; if an award of attorneys'' fees and costs is not required, the arbitrator shall have authority, subject to applicable law, to award reasonable attorneys' fees and costs in the arbitrator's discretion.

The FLSA provides no authority for payment of attorneys' fees and costs to a defendant in the court's "discretion" if not otherwise required.

Third, the Agreement requires arbitrations to "take place in the county where Employee last was employed by Chipotle." Agreement at ¶ 6. A forum selection clause is valid and enforceable unless enforcement of the provision would be unreasonable, unfair or unjust. *See Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 299 (5th Cir. 2004); *Archer v. Darling*, No. 09-cv-01988-PAB-KMT, 2011 WL 861201, at *2 (D.Colo. Mar. 9, 2011); *Edge Telecom, Inc. v. Sterling Bank*, 143 P.3d 1155, 1161 (Colo. Ct. App. 2006). Given the passage of time, it is reasonable to believe that some, perhaps many, of the nearly 2,800 employees at issue have moved far away from the county where they last worked for Chipotle and it will now be unreasonable for them to bring and pursue arbitration proceedings in the county where last employed by Chipotle. Indeed, in *Segovia v. Chipotle* (No. BC489851, Cal. Sup. Ct.), a class settlement involving 38,344 California workers, mailed settlement notice initially failed to reach approximately 18% of the class (6,923 workers). *See* Supp. Decl. of Able E. Morales in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement, at ¶¶ 3, 6, attached hereto as Exhibit B. Requiring a sizeable number of Plaintiffs to exit this forum, and re-file their claim in a county where they may not even reside, is significant interference with a worker's right to have their FLSA claim heard efficiently and cost-effectively.[3]

---

[3] It may even have Constitutional implications if it discourages interstate travel. *See* United States Constitution, Article IV, Section 2, Clause 1.

11

Fourth, if workers read and understood the Agreement, they must have interpreted the ambiguity between Sections 5.1 and 5.2 to mean that a worker may participate individually in an existing collective action.[4] At least some of those who did not participate likely were deterred by this provision from opting into this proceeding and for the reasons stated above, were discouraged from pursing their claims in arbitration.

Finally, the JAMS Rules appear, potentially and ambiguously, to significantly limit discovery and depositions at the arbitrator's sole discretion, *see* ECF No. 176-3 at Rule 17, and perhaps conflicts with the Agreement's discovery provision. *See* Agreement at ¶ 8. A limitation on discovery would likely affect the arbitrating Plaintiffs much more than it would Chipotle given that a plaintiff in an employment case would generally need more discovery than would his or her employer, and therefore would be unfair to arbitrating Plaintiffs. Moreover, given inconsistent discovery provisions in the Agreement and the JAMS Rules, there is a likelihood

---

[4]Plaintiffs have argued that Sections 5.1 and 5.2 of the Agreement are ambiguous and should be construed against Chipotle. *See* Plaintiffs' Opposition [ECF No. 176] at 8-9. Chipotle tries to explain away the ambiguity by asserting that "an FLSA collective action is not a representative proceeding," *see* Chipotle Reply [ECF No. 177] at 13-14, which contradicts the expressed understanding of this and other courts. *See Turner v Chipotle Mexican Grill, Inc.*, No. 1:14-cv-02612 JLK, 2015 WL 4979770 at *4 (explaining that "the threshold issue in this case is the proper procedural mechanism for pursuing a representative action"); *see also Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995) (noting, "If the claimants are similarly situated, the district court allows the representative action to proceed to trial").

of confusion which, when added to the other issues discussed above, should compel "obliteration" of the Agreement.

For all of these reasons, the Arbitration Agreement should be invalidated in its entirety.

## CONCLUSION

Based on the foregoing, and on any arguments raised in Plaintiffs' prior opposition to Chipotle's Motion that have not yet been decided by the Court, Plaintiffs' respectfully request the Court to deny Chipotle's Motion.

Respectfully submitted this 12th day of March, 2018,

> */s/ Andrew C. Quisenberry*
> Darin L. Schanker
> Andrew C. Quisenberry
> BACHUS & SCHANKER, LLC
> 1899 Wynkoop Street, Suite 700
> Denver, CO 80202
> Tel: 303.893.9800
> Fax: 303.893.9900
> dschanker@coloradolaw.net
> andrew.quisenberry@coloradolaw.net
>
> Kent Williams
> WILLIAMS LAW FIRM
> 1632 Homestead Trail
> Long Lake, MN 55356
> Tel: 612.940.4452
> williamslawmn@gmail.com

Adam S. Levy
LAW OFFICE OF ADAM S. LEVY, LLC
P.O. Box 88
Oreland, PA 19075
Tel: 267.994.6952
adamslevy@comcast.net

Thomas M. Hnasko
Michael E. Jacobs
Julie A. Sakura
HINKLE SHANOR LLP
P.O. Box 2068
Sante Fe, NM 87504
Tel: 505.982.4554
Fax: 505.982.8623
thnasko@hinklelawfirm.com
mjacobs@hinklelawfirm.com
jsakura@hinklelawfirm.com

Kevin E. Giebel
GIEBEL AND ASSOCIATES, LLC
P.O. Box 414
Lake Elmo, MN 55402
Tel: 651.236.0729
kgiebel@ggwklaw.com

Robert J. Gralewski, Jr.
KIRBY MCINERNEY LLP
600 B Street, Suite 1900
San Diego, CA 92101
Tel: 619.398.4340
bgralewski@kmllp.com

Attorneys for Named and
Opt-In Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2018, I electronically filed and served the foregoing **PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO CHIPOTLE MEXICAN GRILL INC.'S MOTION TO DISMISS OPT-IN PLAINTIFFS BOUND BY CHIPOTLE'S ARBITRATION AGREEMENT** via the CM/ECF system, which will send notification of such filing to all counsel of record:

John K. Shunk
Allison J. Dodd
Adam M. Royval
Kendra N. Beckwith
Thomas R. Blackburn
MESSNER REEVES LLP
1430 Wynkoop Street, Suite 300
Denver, Colorado 80202
Telephone: (303) 623-1800
jshunk@messner.com
adodd@messner.com
aroyval@messner.com
kbeckwith@messner.com
tblackburn@messner.com

Richard J. Simmons (*pro hac vice*)
SHEPPARD MULLIN RICHTER & HAMPTON LLP
333 South Hope Street
Forty-Third Floor
Los Angeles, CA 90071
rsimmons@sheppardmullin.com
Attorneys for Defendant

*/s/ Andrew C. Quisenberry*
Andrew C. Quisenberry