## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.        1:14-cv-02612-JLK

LEAH TURNER, ARACELI GUTIERREZ, MARKEITTA FORD,
JOLESSA WADE, DANYA GRANADO, BRETT CHARLES, and
RUBY TSAO

Individually and on behalf of others
similarly situated,

      Plaintiffs,

v.

CHIPOTLE MEXICAN GRILL, INC.,

      Defendant.

---

## CHIPOTLE'S SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION TO DISMISS OPT-IN PLAINTIFFS BOUND BY CHIPOTLE'S ARBITRATION AGREEMENT

---

Defendant Chipotle Mexican Grill, Inc. ("Chipotle"), in accordance with this Court's May 23, 2018 Order (Doc. 184) requesting additional supplemental briefing to address the United States Supreme Court's ruling in *Epic Systems Corporation v. Lewis*, ___ S. Ct. ___, 2018 WL 2292444 (May 21, 2018), states as follows in further support of its Motion to Dismiss Opt-In Plaintiffs Bound by Chipotle's Arbitration Agreement (Doc. 172 ("Motion to Dismiss")):

## INTRODUCTION

As this Court is aware, there are 2,184 opt-in plaintiffs ("Improper Opt-Ins") who joined this collective action lawsuit despite having executed valid Arbitration Agreements with Chipotle when they began employment. Chipotle has consistently argued these Arbitration Agreements are enforceable. Plaintiffs' Counsel, in contrast, engaged in a legally ambiguous, if not predictable,

course of conduct: they blatantly ignored the existence of the Arbitration Agreements, presented little-to-no evidence supporting their position that they were unenforceable, and in the process cultivated a new class of clients by way of the collective notice procedure.[1] Chipotle is now left to contend with the procedural fall-out: a group of thousands of potential claimants "collectivized" under a common counsel.

The Improper Opt-Ins' inclusion in this lawsuit is clearly antagonistic to the parties' intent to pursue a quicker, more informal, and cheaper resolution of potential disputes through truly individualized arbitration proceedings.  Indeed, Chipotle has insisted as much for years. Neither the Federal Arbitration Act ("FAA") nor controlling precedent contemplated Plaintiffs' Counsels' complete subversion of the Arbitration Agreements' terms through open solicitation of employees to breach their contractual obligations.  With the advent of *Epic Systems*, Chipotle's position has been proven correct, and this Court should therefore grant Chipotle's Motion.

## THE SUPREME COURT'S DECISION

On May 21, 2018, Justice Gorsuch delivered the Court's landmark opinion in *Epic Systems*. Before the Court were three decisions from the Seventh, Ninth, and Fifth Circuits: *Lewis v. Epic Systems Corp.*, 823 F.3d 1147 (7th Cir. 2016); *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016); and *Murphy Oil USA, Inc. v. N.L.R.B.*, 808 F.3d 1013 (5th Cir. 2015).  The Court ultimately reversed the *Lewis* and *Morris* decisions, and affirmed *Murphy Oil*. *See Epic Sys.*, 2018 WL 2292444, at *17.

---

[1] This procedure involved notices being sent to tens of thousands of employees who executed Arbitration Agreements and were thereby precluded from participating in the lawsuit as a matter of law.  Chipotle vehemently objected to this process.  (*See* Doc. 80, pp. 36-37.)

*Morris* involved a junior accountant who executed an arbitration agreement that required individualized arbitration. *Id*. at *4. Nonetheless, the employee initiated a nationwide class and collective action lawsuit against his employer alleging violations of the Fair Labor Standards Act ("FLSA") and California law. *Id*. The district court granted the employer's request to compel arbitration. *Id*. The Ninth Circuit reversed the judgment on the basis that the FAA's "saving clause" prohibited class and collective action waivers because that provision violated the National Labor Relations Act's ("NLRA") guarantee that employees can engage in concerted activity. *Id*.

Likewise, *Lewis* concerned an arbitration agreement containing a collective action waiver that employees received by email and accepted by continuing to work for the employer. 823 F.3d at 1151. The district court declined to compel individual arbitration of the employees' FLSA collective action lawsuit, and the Seventh Circuit affirmed. *Id*. at 1161. In so holding, the *Lewis* Court held that the NLRA rendered the arbitration agreements illegal. *Id*. at 1157. Because the FAA commanded that arbitration agreements be treated the same as other contracts, the court determined that illegality under the NLRA was a proper defense pursuant to the FAA's saving clause. *Id*. at 1159-60.

In contrast, in *Murphy Oil*, the employer petitioned the Fifth Circuit for review of a National Labor Review Board ("NLRB") decision concluding an employer's motion to compel arbitration was baseless because arbitration agreements requiring the resolution of disputes through individual arbitration violated the NLRA. 808 F.3d at 1017. The court declined to enforce the NLRB's sanctions against the employer in light of the Fifth Circuit's prior decision finding class and collective action waivers generally lawful such that the employer's motion to compel was not lacking in a reasonable basis in law or fact. *Id*. at 1021.

The Supreme Court granted *certiorari* to resolve the circuit split and determine whether "employees and employers [should] be allowed to agree that any disputes between them will be resolved through one-on-one arbitration[.]" *Epic Sys.*, 2018 WL 2292444, at *3. The Court answered that question in the affirmative.

First, the Court noted the FAA "establishes 'a liberal federal policy favoring arbitration agreements[,]'" and "require[s] courts to respect and enforce agreements to arbitrate…and enforce the parties' chosen arbitration procedures." *Id*. at *5 (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Moreover, the FAA "requires courts 'rigorously' to 'enforce arbitration agreements according to their terms[.]'" *Id*. (quoting *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013)).

Notwithstanding these "emphatic directions," the plaintiff employees argued that the FAA's saving clause rendered the class and collective action waivers illegal under the NLRA. *Id*. at *6. Relying on its previous decision in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), the Court rejected this position. It concluded instead that "the saving clause does not save defenses that target arbitration either by name or by more subtle methods," such as "a rule seeking to declare individualized arbitration proceedings off limits[.]" *Epic Sys.*, 2018 WL 2292444, at *6-7.

The plaintiff employees further argued that the NLRA displaced the guidance of *Concepcion* and similar cases. *Id*. at *8. Specifically, the plaintiff employees claimed "an irreconcilable statutory conflict" existed between the NLRA and the FAA based on Section 7 of the NLRA, which guarantees workers the right to self-organization, bargain collectively, and engage in other concerted efforts. *Id*. at *9; *see also* 29 U.S.C. § 157. Again, the Court found the plaintiff employees' contentions unavailing because, while "[i]t may permit unions to bargain to prohibit arbitration[,]" Section 7 of the NLRA "does not express approval or disapproval of

arbitration[,]" or even mention class or collective action procedures or the FAA.  *Epic Sys.*, 2018 WL 2292444, at *9.

Moreover, the plaintiff employees' claims arose from the FLSA and not the NLRA, yet the plaintiff employees did not argue that the FLSA displaced the FAA.  *Id*. at *10.  That argument would have been inconsistent to the Court's decision in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 (1991), which permitted collective action waivers under the Age Discrimination in Employment Act. This left the plaintiff employees forced to rely on the NLRA—a statute with a tenuous connection to the parties' disputes.  *Epic Sys.*, 2018 WL 2292444, at *10.  The Court found it "more than a little doubtful that Congress would have tucked into the mousehole of Sections 7's catchall term [concerted activities] an elephant that tramples the work done by the [Federal Rules of Civil Procedure, the FAA, and the FLSA.]; flattens the parties' contracted-for dispute resolution procedures; and seats the Board as supreme superintendent of claims arising under a statute it doesn't even administer."  *Id*. at *11.  Neither the Court's prior decisions interpreting the NLRA nor *Chevron* deference required a contrary conclusion.  *See id*. at *12-14.

Finally, the Court dispelled concerns that a decision upholding class and collective action waivers in arbitration agreements would threaten workers' rights to unionize.  *Id*. at *15.  Indeed, the Court noted that its holding gave effect to both the NLRA, which prohibits "yellow dog" contracts against union organization, and the FAA, which "speaks directly to the enforceability of arbitration agreements[.]"  *Id*. at *16.  To that end, the Court ruled that, by way of the FAA, "Congress has instructed that arbitration agreements…must be enforced as written[,]" and there is nothing in the NLRA to suggest otherwise.  *Id*. at *17.  The Court emphasized that Congress' instruction to enforce arbitration agreements according to their terms includes "terms providing for individualized proceedings."  *Id*. at *6.

## **ARGUMENT**

I.  **THE CLASS AND COLLECTIVE ACTION WAIVER DOES NOT RENDER THE ARBITRATION AGREEMENTS UNENFORCEABLE**

As early as May of 2015, Chipotle objected to notice being sent to the tens of thousands of employees who executed Arbitration Agreements and were therefore precluded from bringing or participating in a class or collective action as a matter of law based on the terms of those agreements.  (*See* Doc. 80, pp. 36-37.)  *Epic Systems* confirms the basis for Chipotle's objection.

In seeking dismissal of the Improper Opt-Ins, Chipotle emphasized the very standard *Epic Systems* adopts: that courts must "rigorously enforce arbitration agreements according to their terms, including terms that specify with whom [the parties] choose to arbitrate their disputes, and the rules under which that arbitration will be conducted."  (Doc. 172, p. 11 (quoting *Italian Colors*, 133 S. Ct. at 2309).)  At the core of each Arbitration Agreement is the parties' unambiguous intent and obligation to arbitrate disputes individually; they may never bring or participate in a collective or class proceeding.  (*See* Doc. 173-1, § 5.)  Nonetheless, Plaintiffs' Counsel induced the Improper Opt-Ins to breach their contractual obligations. And in response to Chipotle's Motion to Dismiss, the Improper Opt-Ins contested the Arbitration Agreements' enforceability altogether. Specifically, they claimed, based on the Seventh Circuit's now-overruled *Lewis* decision, that they violated they violated the NLRA.  (Doc. 176, p. 2.)  The Improper Opt-Ins later argued that the class and collective action waiver rendered the Arbitration Agreements substantively unconscionable. (Doc. 179, p. 7.)

*Epic Systems* resolves the question of whether the class and collective action waiver renders Chipotle's Arbitration Agreements unenforceable in Chipotle's favor: it does not.  The FAA "protect[s] pretty absolutely" the parties' right to contract for arbitration and "to specify the rules that [will] govern their arbitration," including individualized procedures.  *Epic Sys.*, 2018 WL

6

2292444, at *6.  There can also be no reasonable dispute now that class and collective action waivers like that contained in the Arbitration Agreements do not, in fact, violate the NLRA as the Improper Opt-Ins previously claimed.  *See id.* at *9.  Thus, "by attacking (only) the individualized nature of the arbitration proceedings, the [Improper Opt-Ins'] argument seeks to interfere with one of arbitration's fundamental attributes"—individualized resolution.[2]  *Id.* at *7.  That is precisely where the Supreme Court found "the employees' argument stumbles."  *Id.*  The Improper Opt-Ins trip over the same problem and similarly "stumble."  This Court must therefore reject the Improper Opt-Ins' challenges to the Arbitration Agreements stemming from the mere existence of a class and collective action waiver.

II.   ***EPIC SYSTEMS* SUPPORTS DISMISSING THE IMPROPER OPT-INS AND PROHIBITING PLAINTIFFS' COUNSEL FROM REPRESENTING THEM IN FUTURE PROCEEDINGS**

Chipotle has urged this Court to dismiss the Improper Opt-Ins without compelling arbitration. (*See* Doc. 172, pp. 16-21.) Specifically, in light of the Improper Opt-Ins' prejudicial breaches of each of their Arbitration Agreements, dismissal is appropriate to place Chipotle in the position (or as close of a position as possible) to that which would have existed as if the Improper Opt-Ins had not been allowed to join the litigation.[3]  (*Id.* at p. 18; *see also* Doc. 182, p. 30.) Chipotle further requests that this Court prohibit Plaintiffs' Counsel—who knowingly encouraged the Improper Opt-Ins to ignore their contractual obligations—from representing the Improper Opt-

_____

[2] While the FAA's saving clause does not recognize class and collective action waivers as a defense to an agreement to arbitrate, it does permit "generally applicable contract defenses, such as fraud, duress, or unconscionability."  *Epic Sys.*, 2018 WL 2292444, at *6 (internal quotations omitted). For the reasons previously outlined in Chipotle's first supplemental briefing in support of the Motion to Dismiss, the Improper Opt-Ins have not made even the barest showing to support these traditional contract defenses.  (*See* Doc. 182, pp. 7-19.)

[3] Chipotle is severely prejudiced by Plaintiffs' notice to the Improper Opt-Ins and solicitation of tens of thousands of individuals to breach their contractual obligations.  At this point, the prejudice cannot be undone—only mitigated.

Ins in future proceedings against Chipotle.  (*See* Doc. 172, pp. 21-23.)  *Epic Systems* implicitly supports these requests.  After all, the Arbitration Agreements' explicit terms precluded the Improper Opt-Ins from bringing or participating in this lawsuit and being solicited by Plaintiffs' Counsel to do so.

In holding that mandatory individualized arbitrations is an impermissible defense under the FAA's saving clause, the Court relied heavily on its decision in *Concepcion*.  *Epic Sys.*, 2018 WL 2292444, at *7.  Most notably, the Court acknowledged that a "defense that prohibited unconscionable class action waivers…failed to qualify for protection under the saving clause because it interfered with a fundamental attribute of arbitration[.]"  *Id.*  Arbitration is "traditionally individualized and informal[,]" and permitting collective proceedings constitutes a "fundamental change to the traditional arbitration process[.]"  *Id.* (internal quotations omitted).

The Arbitration Agreements are intended to facilitate the quicker, more informal, and cheaper resolution of disputes through individualized arbitration.  However, compelling the Improper Opt-Ins to arbitration and allowing Plaintiffs' Counsel to continue their representation of the Improper Opt-Ins would eviscerate that intention and operate as a the type of "fundamental change to the traditional arbitration process" *Epic Systems* rebuffs.  To illustrate, an order compelling the Improper Opt-Ins to arbitration would merely allow—if not facilitate—the collectivization of claims in the arbitral forum.  Permitting Plaintiffs' Counsel to continue their representation of the Improper Opt-Ins ensures that, as a result of joining the collective action in breach of their Arbitration Agreements, the Improper Opt-Ins can collectively leverage thousands of simultaneous arbitration proceedings against Chipotle, not unlike a member of a class or collective action.  (*See* Doc. 182, p. 31.)  Plaintiffs' Counsel would effectively continue to represent the same collectivized group, albeit in two forums—this Court and the arbitral forum—

all because of their inducement of employees to breach their Arbitration Agreements' terms. Indeed, the arbitrations would be individualized in form only. According to *Epic Systems*, this result contravenes the FAA and the will of Congress that courts "respect and enforce the parties' chosen arbitration procedures[,]" including terms providing for individualized proceedings. *Epic Sys.*, 2018 WL 2292444, at *5.

Moreover, *Epic Systems* expressly noted that the FAA "establishes a sort of 'equal-treatment' rule for arbitration contracts." *Id*. at *6. In other words, arbitration agreements are not to be treated differently than any other type of contractual agreement. In any other contract dispute, it would be highly irregular, to say the least, for a court to enable a party to blatantly breach the terms of the parties' agreement. It would likewise be considered improper for an attorney to encourage a client to flout his or her contractual obligations and then present no compelling arguments to challenge the validity of the contract giving rise to those obligations. (*See* Doc. 172, pp. 22-23; Doc. 182, p. 30.) This, *Epic Systems* decrees, is contrary to the FAA.

## III.   THE PROCEDURAL POSTURE OF THIS CASE UNDERMINES THE POLICY CONSIDERATIONS EVIDENT IN *EPIC SYSTEMS*

As the Court further notes, the benefits of arbitration are "the promise of quicker, more informal, and often cheaper resolutions for everyone involved." *Epic Sys.*, 2018 WL 2292444, at *5; (*see also* Doc. 182, p. 31 (citing *Concepcion*, 563 U.S. at 348).) To further these goals, Congress, by way of the FAA, "directed courts to abandon their hostility" towards arbitration agreements and enforce them according to their terms, including those specifying "*the rules* under which that arbitration will be conducted." *Epic Sys.*, 2018 WL 2292444, at *5 (quoting *Italian Colors*, 570 U.S. at 233) (emphasis in original).

This action was commenced on September 22, 2014. Nearly four years later, Chipotle is still awaiting dismissal of 2,184 signatories to valid and enforceable Arbitration Agreements, while

the Improper Opt-Ins' purported claims have languished for approximately three years.  This delay has effectively prevented adjudication of what could and should have been resolved individually in the cheaper, quicker, and less formal arbitral forum the Arbitration Agreements' explicit language required.  In no uncertain terms, *Epic Systems* cautioned courts and litigants against conduct causing the deterioration of arbitration's "speed and simplicity and inexpensiveness" such that it "wind[s] up looking like the litigation it was meant to displace."  2018 WL 2292444, at *7.

For years, Chipotle has objected to both the circumvention of the Arbitration Agreements to which the Improper Opt-Ins voluntarily agreed, and the subsequent abrogation of individualized arbitration proceedings.  Now, in light of the Court's pronouncement that "courts may not allow a contract defense to reshape traditional individualized arbitration by mandating classwide arbitration procedures without the parties' consent[,]" Chipotle urges this Court to enforce the Arbitration Agreements according to their terms.  *Id.*

## CONCLUSION

For the reasons set forth above, and in Chipotle's principal and first supplemental briefing, Chipotle respectfully requests that this Court return the parties to their proper, pre-breach positions by: (i) dismissing, without prejudice, the claims of any Improper Opt-Ins who executed Chipotle's Arbitration Agreement; (ii) prohibiting Plaintiffs' Counsel from representing, directing or otherwise communicating with the dismissed Improper Opt-Ins; (iii) providing the Improper Opt-Ins with a Court-authorized notice of the dismissal of their claims and alerting them to the right to secure alternative counsel if they intend to pursue their individual claims in any forum; and (iv) granting such other and further relief as this Court deems just and proper.

Dated: June 6, 2018

Respectfully Submitted,

MESSNER REEVES LLP

*s/ John K. Shunk*

John K. Shunk, #16204
Allison J. Dodd, #43835
Adam M. Royval, #43836
Kendra N. Beckwith, #40154
Thomas R. Blackburn, #41136
1430 Wynkoop Street, Suite 300
Denver, Colorado 80202
Telephone:  (303) 623-1800
E-mail: jshunk@messner.com
E-mail: adodd@messner.com
E-mail: aroyval@messner.com
E-mail: kbeckwith@messner.com
E-mail: tblackburn@messner.com

SHEPPARD     MULLIN     RICHTER     &
HAMPTON LLP
Richard J. Simmons
333 South Hope Street
Forty-Third Floor
Los Angeles, CA  90071
rsimmons@sheppardmullin.com

*Attorneys for Defendant, Chipotle Mexican Grill, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 6, 2018, I electronically filed and served the foregoing **CHIPOTLE'S SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION TO DISMISS OPT-IN PLAINTIFFS BOUND BY CHIPOTLE'S ARBITRATION AGREEMENT** via the CM/ECF system which will send notification of such filing to all counsel of record listed on CM/ECF system:

**Attorneys for Plaintiffs**

**Adam Seth Levy** (adamslevy@comcast.net)

**Andrew Curry Quisenberry** (andrew.quisenberry@coloradolaw.net)

**Darin Lee Schanker** (dschanker@coloradolaw.net)

**Julie A. Sakura** (jsakura@hinklelawfirm.com)

**Kent Morgan Williams** (williamslawmn@gmail.com)

**Kevin Edward Giebel** (kgiebel@ggwklaw.com)

**Michael Edmund Jacobs** (mjacobs@hinklelawfirm.com)

**Thomas Mark Hnasko** (thnasko@hinklelawfirm.com)

*s/ Jeanine A. Montoya*
Legal Assistant