**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-02612-JLK

LEAH TURNER, ARACELI GUTIERREZ, MARKEITTA FORD,
JOLESSA WADE, DANYA GRANADO, BRETT CHARLES, and
RUBY TSAO, individually and on behalf of others similarly situated,

    Plaintiffs,

v.

CHIPOTLE MEXICAN GRILL, INC.,

    Defendant.

_____

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS OPT-IN PLAINTIFFS
BOUND BY CHIPOTLE'S ARBITRATION AGREEMENT (ECF NO. 172)**
_____

Kane, J.

    This matter is before me on the Motion to Dismiss Opt-In Plaintiffs Bound by Chipotle's Arbitration Agreement (ECF No. 172) filed by Defendant Chipotle Mexican Grill, Inc. With its Motion, Chipotle seeks to dismiss from the collective action 2,814 Opt-In Plaintiffs ("Arbitration Plaintiffs") who, it contends, are subject to a mandatory Arbitration Agreement that bars them from pursuing their wage claims in this Court. I have reviewed the Motion, Plaintiffs' Response (ECF No. 176), Chipotle's Reply (ECF No. 177), and the parties' supplemental briefs (ECF Nos. 179, 182, 185, and 186). For the reasons stated below, I find that the Arbitration Agreement is enforceable and GRANT the Motion.

**DISCUSSION**

    In my previous Order regarding the Motion to Dismiss (ECF No. 178), I ruled that this Court would determine the Arbitration Agreement's enforceability and directed the parties to submit supplemental briefs on the remaining issues: 1) whether the Arbitration Agreement is

enforceable; 2) whether, assuming the Agreement is enforceable and mandates arbitration, the appropriate remedy is dismissal without compulsory arbitration or a stay; and 3) whether Plaintiffs' Counsel should be prohibited from representing the Arbitration Plaintiffs in future proceedings. I now address each issue in turn.

**I. Enforceability of Arbitration Agreement**

**A. Challenges to Enforceability Based on the NLRA**

The Supreme Court's recent ruling in *Epic Systems Corporation v. Lewis* resolved the question of whether "employees and employers [should] be allowed to agree that any disputes between them will be resolved through one-on-one arbitration[.]" *Epic Sys.*, 138 S. Ct. 1612, 1619 (May 21, 2018). The Court concluded that they should be permitted to do so and rejected the position that mandatory individualized arbitrations violate the National Labor Relations Act ("NLRA") and are therefore unenforceable under the Federal Arbitration Act ("FAA"). The NLRA and the FAA, the Court found, "have long enjoyed separate spheres of influence and neither permits [the] Court to declare the parties' agreements unlawful." *Id.* I observed in my previous order that I found persuasive the Ninth and Seventh Circuit decisions holding that prohibitions on class and collective claims were unenforceable.[1] But the Supreme Court reversed these decisions in *Epic Systems*, and I am thus compelled to find that the class and collective action waiver in Chipotle's Arbitration Agreement does not violate the NLRA or render the Agreement unenforceable. *See id.* at 1632 ("Congress has instructed that arbitration agreements like those before us must be enforced as written. While Congress is of course always free to amend this judgment, we see nothing suggesting it did so in the NLRA—much less that it manifested a clear intention to displace the Arbitration Act.").

---

[1] *See Morris v. Ernst & Young*, 834 F.3d 975, 984 (9th Cir. 2016), *rev'd sub nom. Epic Sys.*, 138 S. Ct. 1612 (2018); *Lewis v. Epic Systems Corp.*, 823 F.3d 1147, 1156 (7th Cir. 2016), *rev'd*, 138 S. Ct. 1612 (2018).

Here, the employees who executed Arbitration Agreements committed to resolve claims through arbitration and accepted the provision barring class and collective actions. *Epic Systems* makes clear that the NLRA provides no basis for refusing to enforce the Agreement at issue here.

**B. Challenges to Enforceability on Other Grounds**

Under the FAA, when parties agree to settle a controversy by arbitration, courts must enforce that agreement "save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Santich v. VCG Holding Corp.*, 2017 WL 4251944, at *2 (D. Colo. Sept. 26, 2017). Such grounds include "generally applicable contract defenses, such as fraud, duress, or unconscionability." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted). Federal courts have also recognized an "effective vindication" exception to the FAA. *See, e.g., Nesbitt v. FCNH, Inc.*, 811 F.3d 371, 376–77 (10th Cir. 2016).

Courts apply state contract law principles when determining whether an arbitration agreement is valid and enforceable. *See, e.g., First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (noting that courts should "apply ordinary state-law principles that govern the formation of contracts" when determining whether parties agreed to arbitrate) (citations omitted). Under choice-of-law principles, Colorado law applies here. The first unanswered question, then, is whether under Colorado law the Arbitration Agreement is unenforceable because it is unconscionable. The second is whether the Agreement is unenforceable because it fits within the effective vindication exception to the FAA.

**1. Unconscionability**

Colorado courts consider several factors in determining whether a contractual provision is unconscionable, including: (1) the use of a standardized agreement executed by parties of unequal bargaining power; (2) the lack of an opportunity for the customer to read or become

3

familiar with the document before signing it; (3) the use of fine print in the portion of the contract containing the provision in question; (4) the absence of evidence that the provision was commercially reasonable or should reasonably have been anticipated; (5) the terms of the contract, including substantive fairness; (6) the relationship of the parties, including factors of assent, unfair surprise, and notice; and (7) the circumstances surrounding the formation of the contract, including setting, purpose, and effect. *Davis v. M.L.G. Group*, 712 P.2d 985, 991 (Colo.1986) [hereinafter "the *Davis* factors"]. The *Davis* factors encompass procedural and substantive unconscionability, both of which must be shown to render a provision unenforceable in Colorado. *Nesbitt v. FCNH, Inc.*, 74 F.Supp.3d 1366, 1371 (D. Colo. 2014) (citing *Vernon v. Qwest Commc'ns Intl, Inc.*, 925 F.Supp.2d 1185, 1194 (D. Colo. 2013)). The burden of proof is on the party opposing enforcement of the arbitration agreement. *See Nesbitt*, 74 F.Supp.3d at 1371 (citing *Weller v. HSBC Mortg. Servs., Inc.*, 971 F.Supp.2d 1072, 1080 (D. Colo. 2013)).

I allowed Plaintiffs to argue the issue of unconscionability in supplemental briefing, as the record before me was insufficient to determine in whose favor the *Davis* factors tilt. Order re Mot. to Dismiss at 7. Unfortunately, Plaintiffs did little to advance their position. Left to consider only general, conclusory statements with no specific evidentiary support, I find that Plaintiffs have failed to meet their burden of demonstrating procedural and substantive unconscionability.

*Procedural Unconscionability*

The first, second, third, sixth, and seventh *Davis* factors relate to procedural unconscionability. *See Davis*, 712 P.2d at 991; *see also Vernon v. Qwest Commc'ns Intl, Inc.*, 857 F.Supp.2d 1135, 1158 (D. Colo. 2012). Plaintiffs argue that the first factor weighs in favor of a finding of unconscionability because the Arbitration Agreement was a standardized form

agreement offered on a take-it-or-leave-it basis.  This is insufficient to render an agreement unconscionable.  *See Concepcion*, 563 U.S. at 346-47 (finding that a state rule allowing parties to demand class-wide arbitration impermissibly interfered with the FAA even though the rule was limited to adhesion contracts); *Bernal v. Burnett*, 793 F.Supp.2d 1280, 1287 (D. Colo. 2011) (recognizing that in *Concepcion*, "the Supreme Court rejected the idea that arbitration agreements are per se unconscionable when found in adhesion contracts").  The only support Plaintiffs offer is the blanket statement that they are "generally, [ ] inexperienced, under-educated, relatively unsophisticated, low hourly-wage workers very much in need of the job . . . ."  Pls.' Supplemental Br. at 3, ECF No. 179.  While this may not be a wholly inaccurate characterization, Plaintiffs offer no factual support or individual examples to justify this claim.  Nor have they presented any evidence to demonstrate that these circumstances, even if applicable to all Arbitration Plaintiffs, impaired their bargaining power to such an extent as to render the agreement unconscionable.

Plaintiffs next argue that the second factor weighs in favor of a finding of unconscionability because Chipotle failed to provide them with an adequate opportunity to see and read or become familiar with the Arbitration Agreement as part of the "on-boarding" process for new hires.  Yet they provide no evidence to suggest that any of the Arbitration Plaintiffs were unable to review the Arbitration Agreement.  The record demonstrates that the Arbitration Agreement was available to them during the on-boarding process, and that they had up to seven days to review the Agreement and decide whether or not to sign it.  *See* Gottlieb Dep. 50:6-12; 80:2-6, ECF No. 179-1.  Furthermore, a party cannot avoid contractual obligations by claiming that he or she did not read the agreement before signing it.  *See Vernon*, 857 F.Supp.2d at 1152

("Colorado law recognizes that one generally cannot avoid contractual obligations by claiming that he or she did not read the agreement.") (internal quotations omitted).

Moving to the third factor, Plaintiffs argue that Chipotle's use of an electronic link to a digital version of the Arbitration Agreement accessible within the on-boarding system is analogous to hiding the agreement in "fine print." I am not convinced. Unlike "fine print" that makes an arbitration provision nearly "impossible to read," *Davis*, 712 P.2d at 992, the Arbitration Agreement here was written in standard font and clearly labeled as "Agreement to Arbitrate." *See* Gottlieb Decl. Ex. A, ECF No. 173-1. This availability and readability weigh against a finding of unconscionability. *See Bernal*, 793 F.Supp.2d at 1288 (noting that the fact that the arbitration agreement was clearly labeled and included in a separate document within the enrollment materials weighed against finding unconscionability).

The sixth *Davis* factor examines the parties' relationship, including factors of assent, unfair surprise, and notice. Plaintiffs offer no additional evidence for their claim that this factor supports a finding of unconscionability. Repeating the conclusion that they "were typically individual, unskilled, prospective low hourly-wage employees," Plaintiffs allege that they were coerced into "assenting" to the Arbitration Agreement. Pls.' Supplemental Br. at 5-6. There is absolutely no evidence that Plaintiffs' assent to the Arbitration Agreement was coerced through undue influence or duress. Nor were they pressured to sign the Arbitration Agreement quickly without taking time to review and consider its terms.

The seventh *Davis* factor "is a catchall that allows for consideration of all of the factors surrounding formation of the contract." *Nesbitt*, 74 F.Supp.3d at 1372. Plaintiffs argue that this factor weighs in favor of a finding of unconscionability because "[m]ost low hourly-paid restaurant workers likely would never suspect that being hired for such a job would require

6

surrendering their legal rights implicated by the Agreement." Pls.' Supplemental Br. at 6. This one-sentence argument lacks any factual support and is unpersuasive. Also meritless and unsupported is Plaintiffs' assertion that Chipotle should have informed Plaintiffs that it "had been accused of off-the-clock work by thousands of employees." *Id.*

*Substantive Unconscionability*

The fourth and fifth *Davis* factors relate to substantive unconscionability. These factors examine whether the Arbitration Agreement is commercially reasonable and whether its terms are substantively fair. *Davis*, 712 P.2d at 991. The only argument Plaintiffs make concerning commercial reasonability is that "it is outside the mainstream and generally unanticipated that a low paid, low level, relatively unsophisticated, hourly-wage fast-food restaurant employee would be required to execute an agreement to arbitrate in order to be hired for such work." Pls.' Supplemental Br. at 6-7. As to the fifth factor, Plaintiffs' single argument that the Agreement is substantively unfair is that it "would nullify a statutory right to pursue litigation collectively as granted by the FLSA, which would undermine the FLSA's remedial purpose." *Id.* at 7. Plaintiffs' nominal effort to demonstrate substantive unconscionability is unavailing.

Chipotle contends that the Arbitration Agreement serves a commercial purpose because it provides predictability in handling litigation matters and reduces dispute resolution costs. These benefits do not come at the expense of the employees, Chipotle maintains, because the Agreement provides that employees cannot be required to pay any cost of the arbitration that they would not be required to pay if the matter was heard in court. Def.'s Supplemental Br. at 15, ECF No. 182; Agreement at ¶ 7, ECF No. 173-1. Further, Chipotle maintains that its decision to permit only individual claims is commercially reasonable because it allows all parties to realize the benefits of bilateral arbitration's informality while avoiding the risks associated

with class actions.[2] *Id.* at 15. Regardless of whether I agree with the choice to forgo the right to pursue class and collective action claims and resolve disputes through individual arbitration, many businesses have selected this route and the Supreme Court has ruled it lawful. *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (applying the liberal policy favoring arbitration agreements to claims founded on statutory rights); *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 683 (2010) (concluding that parties to arbitration agreements "may specify with whom they choose to arbitrate their disputes"); *Epic Sys.*, 138 S. Ct. at 1621 (recognizing that the FAA protects the rights of parties, including employers and employees, to "specify the rules that would govern their arbitrations, indicating their intention to use individualized rather than class or collective action procedures").

Plaintiffs' other argument as to substantive unconscionability—that the Agreement is substantively unfair—is similarly deficient. The FLSA provides a substantive right to bring an action for overtime and minimum wage violations, but it does not guarantee or require any particular procedural path for vindicating that right. *See* 29 U.S.C. § 216(b). Plaintiffs admit as much with their concession that "the weight of authority holds that, in the context of arbitration agreements, the FLSA does not provide a non-waivable, substantive right to litigate collectively." Pls.' Supplemental Br. at 7, n.2. Indeed, "a party does not forgo the substantive rights afforded by the statute" by agreeing to resolve statutory claims "in an arbitral, rather than a judicial, forum." *Mitsubishi Motors*, 473 U.S. at 628. The employees waived the right to litigate collectively, but they may still assert their substantive statutory rights under the FLSA by pursuing individual claims in arbitration.

---

[2] Chipotle correctly notes that the Supreme Court has recognized the advantages of bilateral arbitration. *See Concepcio*n, 563 U.S. at 348 ("[T]he switch from bilateral to class arbitration sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment.").

2. **Effective Vindication Exception**

Under the "effective vindication" exception, the presumption in favor of enforcing agreements to arbitrate "falls apart . . . if the terms of an arbitration agreement actually prevent an individual from effectively vindicating his or her statutory rights." *Shankle v. B–G Maint. Mgmt. of Colo., Inc.*, 163 F.3d 1230, 1234 (10th Cir. 1999). This exception "would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights," and "would perhaps cover filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013) (citation omitted). The Arbitration Agreement at issue here does neither. Nor do the various challenged provisions of the Agreement compel the conclusion that it should be "completely obliterated," as Plaintiffs suggest. Pls.' Supplemental Br. at 9.

First, as I noted above, nothing in the Agreement prohibits the assertion of a statutory right under the FLSA. The Supreme Court has made clear that "so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." *Italian Colors*, 570 U.S. at 235 (internal quotations omitted). Plaintiffs argue that because most of the Arbitration Plaintiffs' "claimed damages are likely to be relatively small," some may "forego their claims altogether rather than re-file in arbitration . . . ." Pls.' Supplemental Br. at 10. This is irrelevant. "[T]he fact that it is not worth the expense involved in *proving* a statutory remedy does not constitute the elimination of the *right to pursue* that remedy." *Italian Colors*, 570 U.S. at 236 (emphasis in original); *see also Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 296-97 (2d Cir. 2013) (holding that in light of *Italian Colors*, the "argument that proceeding individually in arbitration

would be 'prohibitively expensive' is not a sufficient basis to invalidate the class-action waiver provision at issue here under the 'effective vindication doctrine'").

Second, the fee provisions in the Agreement do not prevent effective vindication. As this district recently recognized, "the most common examples of arbitral provisions that thwart effective vindication of federal statutory rights, particularly FLSA rights, are those that impose prohibitive costs on the plaintiff (such as paying or splitting the arbitrator's fee), or that would hold the plaintiff liable for the defendant's attorney[ ] fees and costs if the plaintiff is unsuccessful." *Pollard v. ETS PC, Inc.*, 186 F.Supp.3d 1166, 1176 (D. Colo. 2016). The "party resisting arbitration ha[s] the initial burden of proof to demonstrate that arbitration would be prohibitively expensive by showing the likelihood of incurring such costs." *Sanchez v. Nitro-Lift Techs.*, LLC, 762 F.3d 1139, 1149 (10th Cir. 2014) (internal quotations omitted). But here, the Arbitration Agreement expressly states that the "[e]mployee shall not be required to pay any cost or expense of the arbitration that [e]mployee would not be required to pay if the matter had been heard in court." Agreement at ¶ 7. Thus, there is no likelihood that the Arbitration Plaintiffs would incur costs beyond those they would incur if they pursued their claims in federal court.

Plaintiffs take issue with the provision on attorney fees, which provides in relevant part that, "if an award of attorney[ ] fees and costs is not required, the arbitrator shall have authority, subject to applicable law, to award reasonable attorney[ ] fees and costs in the arbitrator's discretion." *Id.* at ¶ 8. This would offend the FLSA, Plaintiffs contend, because "[t]he FLSA provides no authority for payment of attorney[ ] fees and costs to a defendant in the court's 'discretion' if not otherwise required." Pls.' Supplemental Br. at 10. As Chipotle notes, this is inaccurate. "[T]he FLSA entitles a prevailing defendant to attorney[ ] fees only where

10

the district court finds that the plaintiff litigated in bad faith." *Sanchez*, 762 F.3d at 1148 (internal quotations omitted). The Agreement makes clear that the arbitrator's authority to award reasonable attorney fees is subject to applicable law. Agreement at ¶8. Therefore, in arbitration, just as in court, plaintiffs would be responsible for defense counsel's fees only if there are specific findings of bad faith. This is distinguishable from the arbitration agreement in *Daugherty*, which would have allowed for the award of attorney fees to a prevailing defendant regardless of whether the losing plaintiff pursued its claims in bad faith. *Daugherty v. Encana Oil & Gas (USA), Inc.*, 2011 WL 2791338, at *11 (D. Colo. July 15, 2011).

Third, the forum selection clause does not prevent effective vindication. "[A] forum selection clause will be enforced unless the party seeking to avoid its effect proves that enforcement would be unfair or unreasonable." *Edge Telecom, Inc. v. Sterling Bank*, 143 P.3d 1155, 1158 (Colo. App. 2006). The Arbitration Agreement requires arbitrations to take place in the county where the employee was last employed by Chipotle. Agreement at ¶ 6. Plaintiffs assert that some of the Arbitration Plaintiffs may "have moved far away from the county where they last worked for Chipotle," and thus it would "be unreasonable for them to bring and pursue arbitration proceedings in the county where last employed by Chipotle." Pls.' Supplemental Br. at 11. But they do not identify any individuals who would suffer under this "unreasonable" burden supposedly imposed by the forum selection clause. "Mere inconvenience or additional expense is not the test of unreasonableness," and Plaintiffs have not otherwise demonstrated that the forum selection clause was unreasonable. *ABC Mobile Sys., Inc. v. Harvey*, 701 P.2d 137, 139 (Colo. App. 1985).

Fourth, the purported ambiguity in the Agreement does not prevent effective vindication. Plaintiffs' unconvincing argument is that employees would have interpreted paragraph 5.2 of the

11

Agreement, which states that "employees can participate in representative actions on an individual basis," to mean that they could join an FLSA collective action in court. I agree with Chipotle that this argument is "ill-explained" and "nonsensical." Def.'s Supplemental Br. at 25. The Agreement is clear that all FLSA claims must be resolved by arbitration, and that the employee may pursue those claims only as an individual—not as part of a class or collective. Agreement at ¶¶ 2, 4, and 5.1.

Finally, the discovery provided for by the Agreement does not prevent effective vindication. Plaintiffs assert that the Agreement limits discovery through incorporation of the JAMS Rules, and that such limitations on discovery would be unfair to arbitrating Plaintiffs. Chipotle insists that there is no basis for finding that the arbitration discovery process prevents effective vindication of statutory rights. I agree. Although arbitration discovery "procedures might not be as extensive as in the federal courts, by agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991) (quoting *Mitsubishi Motors*, 473 U.S. at 628). "Thus, a party seeking to have an arbitration agreement invalidated on this basis must show that the discovery provisions in question 'will prove insufficient to allow [FSLA] [sic] claimants . . . a fair opportunity to present their claims.'" *Carter v. Countrywide Credit Industries, Inc.*, 362 F.3d 294, 298 (5th Cir. 2004) (quoting *Gilmer*, 500 U.S. at 31) (alteration in original). Plaintiffs have failed in that regard and have not demonstrated that the discovery procedures provided for in the Agreement, specifically those in the JAMS Rules, will hinder an Arbitration Plaintiff's ability to present his or her claim.

In sum, Plaintiffs have failed to establish that the Agreement is unenforceable because it violates the NLRA, is unconscionable, or prevents them from effectively vindicating their statutory rights under the FLSA.

## II. Appropriate Remedy

Having determined that the Arbitration Agreement is enforceable, I must now consider whether the appropriate remedy is dismissal or a stay. Plaintiffs ask me to stay the case pending arbitration so that some plaintiffs may rejoin the collective if their claims are ultimately not arbitrable. Section 3 of the FAA provides that when claims are properly referable to arbitration, the court shall, upon application of one of the parties, stay the trial of the action until the arbitration is complete. 9 U.S.C. § 3. "This rule, however, was not intended to limit dismissal of a case in the proper circumstances." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992); *see also Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir.1988) (holding that Section 3 of the FAA does not preclude dismissal when all of plaintiff's claims are barred by an arbitration clause). Because the Arbitration Agreement is enforceable and thus requires all Arbitration Plaintiffs to pursue their claims through individual arbitration, dismissal, rather than a stay, is a proper remedy. *See, e.g., Am. Family Mut. Ins. Co. v. Tamko Bldg. Prod., Inc.*, 178 F.Supp.3d 1121, 1129 (D. Colo. 2016) ("a district court may dismiss when all claims are arbitrable and the movant specifically requests dismissal rather than a stay"); *Hickey v. Brinker Int'l Payroll Co., L.P.*, 2014 WL 622883, at *5 (D. Colo. Feb. 18, 2014) (finding dismissal proper where all claims are arbitrable and the movant sought dismissal instead of a stay).

Section 4 of the FAA allows "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate" to petition the court to compel arbitration. 9 U.S.C. § 4. Chipotle, the

party moving to enforce the Arbitration Agreement, does not request that I direct the parties to arbitration, and Plaintiffs are not entitled to relief under § 4 because Chipotle has not refused to comply with the terms of the Arbitration Agreement. Therefore, I find that dismissal without prejudice, without directing the parties to mandatory arbitration, is the appropriate remedy. While I will not compel the parties to arbitrate, the dismissed Arbitration Plaintiffs are of course free to pursue their claims in arbitration if they so choose.

In the interests of justice, I agree that the Arbitration Plaintiffs should be provided with notice of the dismissal of their claims. The parties shall submit proposed notices of the dismissal including plans for disseminating the notice to the Court for review within 14 days from the date of this Order.

### III. Request to Disqualify Plaintiffs' Counsel

Chipotle seeks an order prohibiting Plaintiffs' Counsel from representing the dismissed Arbitration Plaintiffs in any future proceedings. The decision to disqualify an attorney is within the sound discretion of the trial court. *English Feedlot, Inc. v. Norden Laboratories, Inc.*, 833 F. Supp. 1498, 1506 (D. Colo. 1993) (citation omitted). Chipotle has made clear its position that "Plaintiffs' Counsel should not have been permitted to invite thousands of persons to disregard Chipotle's contractual rights and their own contractual obligations . . . ." Def.'s Supplemental Br. at 30-31. But at the time Plaintiffs' Counsel allegedly instigated the breach of the Arbitration Agreement, the enforceability of the Agreement was still in dispute. While I have now concluded that the Arbitration Agreement is enforceable, I decline to make the separate legal finding that Plaintiffs' Counsel's actions were "tantamount to intentional interference with Chipotle's contractual rights." Def.'s Reply at 19. Chipotle also calls into question Plaintiffs' Counsel's adequacy as collective counsel. Def.'s Supplemental Br. at 29. As I observed above,

Plaintiffs' briefs opposing dismissal were deficient and they have thus failed to prevent the ejection of the Arbitration Plaintiffs from the collective.  However, absent more concrete evidence of legal incompetence or evidence demonstrating a clear pattern of abuse of the judicial process, I will not interfere with the Arbitration Plaintiffs' right to choice of counsel.  If one or more of the dismissed Arbitration Plaintiffs wish to pursue their claims individually in arbitration, they are entitled to do so with representation by the legal counsel of their choice. Chipotle raised the question of whether any Arbitration Plaintiffs who are dismissed from this collective would still *want* to retain Plaintiffs' Counsel.  Def.'s Reply at 21 (emphasis in original).  Perhaps some will, perhaps not.  That is up to each individual being dismissed from the collective to decide, Defendant's supposition to the contrary notwithstanding.

## CONCLUSION

Having determined that Plaintiffs have not demonstrated that the Arbitration Agreement is unenforceable, I find that the Arbitration Plaintiffs are not proper parties to the collective and should be dismissed from this action.  Chipotle's Motion to Dismiss Opt-In Plaintiffs Bound by Chipotle's Arbitration Agreement (ECF No. 172) is GRANTED.  Consequently, the Opt-In Plaintiffs who executed Chipotle's Arbitration Agreement are DISMISSED from this action without prejudice.  The parties are DIRECTED to submit proposed notices of the dismissal, including plans for disseminating the notice, to the Court for review on or before August 17, 2018.

DATED this 3rd day of August, 2018.

JOHN L. KANE
SENIOR U.S. DISTRICT JUDGE