# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.      1:14-cv-02612-JLK

LEAH TURNER, ARACELI GUTIERREZ, MARKEITTA FORD, JOLESSA WADE, DANYA GRANADO, BRETT CHARLES, and RUBY TSAO

Individually and on behalf of others
similarly situated,

      Plaintiffs,

v.

CHIPOTLE MEXICAN GRILL, INC.,

      Defendant.

---

## CHIPOTLE'S MOTION TO STAY ORDER GRANTING DEFENDANT'S MOTION TO DISMISS OPT-IN PLAINTIFFS BOUND BY CHIPOTLE'S ARBITRATION AGREEMENT (ECF NO. 187)

---

Defendant Chipotle Mexican Grill, Inc. ("Chipotle"), through its undersigned counsel, respectfully requests that this Court stay its Order Granting Defendant's Motion to Dismiss Opt-In Plaintiffs Bound by Chipotle's Arbitration Agreement (Order) pending resolution of Chipotle's appeal. In support of this request, Chipotle states as follows:

### MEET AND CONFER CERTIFICATION

In compliance with D.C.COLO.LCivR 7.1 and subsection B of the General Practices and Procedures for this Court, Defense counsel conferred in good faith with

Plaintiffs' counsel concerning the relief requested herein. The parties have not been able to come to an agreement concerning the requested stay, and this motion is opposed.

## **INTRODUCTION**

Plaintiffs' counsel erroneously solicited nearly 3,000 individuals to join this Fair Labor Standards Act (FLSA) collective action with full knowledge that Chipotle claimed those employees were subject to a mandatory arbitration agreement, which permitted those individuals to pursue only individual arbitrations (Arbitration Opt-Ins). This Court's Order partially redressed the harm from that solicitation—it dismissed from this collective the 2,814 individuals who signed the arbitration agreement. (Dkt. 187 at 15.) But that Order declined to make Chipotle whole from the damage caused by Plaintiffs' counsels' improper solicitation—specifically, the use of court-approved notice to solicit additional potential litigation and interfere with Chipotle's contractual rights with its employees.

Chipotle now seeks the Tenth Circuit's review of the Order, and the process through which the Arbitration Opt-Ins were invited to, and subsequently dismissed from, this collective. Precedent from the Tenth Circuit and other circuits supports Chipotle's appellate position and raises serious, substantial, and difficult questions for the Tenth Circuit to resolve. Absent a stay, Chipotle will likely lose all effective appellate rights in that review—particularly given that Plaintiffs' counsel has already begun initiating arbitrations on behalf of Arbitration Opt-Ins. In light of Plaintiffs' counsels' actions following that Order, and the magnitude of harm to Chipotle and its appeal rights if the Order is not stayed, Chipotle respectfully requests that this Court stay its Order pending resolution of its appeal.

## PERTINENT FACTUAL BACKGROUND

Over Chipotle's objection, Plaintiffs' counsel solicited nearly 3,000 individuals to join this FLSA collective action with full knowledge that Chipotle claimed those employees were subject to a mandatory, individualized arbitration agreement barring their participation. That solicitation was contrary to the agreement's plain terms, which required signatories to arbitrate any and all FLSA claims and prohibited class and collective actions or arbitrations. (Dkt. 173, Ex. A, ¶¶ 2, 4, 5.) Plaintiffs' counsel acknowledged that many of these solicited individuals had executed that agreement, but asked the Court to resolve them "as they come up," rather than at the outset. (Dkt. 193 at 21:6-19; *see also* 6:19-25.) This Court therefore deferred resolving whether those individuals bound by the arbitration agreement could participate in this collective until after they were sent notice and had opted in. (*Id.*, 25:25-26:11.) 2,814 individuals bound by the arbitration agreement opted-in, i.e., the Arbitration Opt-Ins.

Chipotle moved to dismiss them from the collective. (Dkt. 172.) It also requested that this Court restore the parties to their pre-improper solicitation position by preventing, or severing, Plaintiffs' counsel from representing the Arbitration Opt-Ins in any further proceedings against Chipotle. (*Id.* at 21-24.)

In its Order granting Chipotle's motion, this Court determined that Chipotle's arbitration agreement was enforceable. (Dkt. 187 at 12-13.) Accordingly, it dismissed from this collective the 2,814 Arbitration Opt-Ins. (*Id.* at 13-14.) This Court rejected Chipotle's argument about the impropriety of Plaintiffs' counsels' solicitations and denied Chipotle's request to sever the relationship between them and restore the parties to their pre-improper

3

solicitation position. (*Id*. at 14-15.) As grounds, this Court determined that because "at the time Plaintiffs' Counsel allegedly instigated the breach of the Arbitration Agreement, the enforceability of the Agreement was still in dispute," there was no basis upon which to disqualify Plaintiffs' counsel from further proceedings against Chipotle. (*Id*. at 14 (concluding "absence of more concrete evidence of legal incompetence or evidence demonstrating a clear pattern of abuse of the judicial system" precluded relief).) It then determined the Arbitration Opt-Ins were "entitled" to be represented by Plaintiffs' counsel and permitted Plaintiffs' counsel to continue representing them. (*Id*.) It also directed the parties to submit proposed notices of the dismissal to be sent to the Arbitration Opt-Ins. (*Id*. at 15.) Ten days later, Plaintiffs' counsel Kent Williams initiated arbitration on behalf of fifty Arbitration Opt-Ins. (*See* William Cover Ltr. to JAMS, attached as Exhibit A[1].)

Chipotle subsequently appealed the Order. (*See* Dkt. 188.) Chipotle intends to raise at least two issues for the Tenth Circuit's review: first, whether the district court erred when it delayed enforcing the arbitration agreement until after it certified the collective, thereby allowing individuals bound by the agreement to opt-in to the collective, and second, whether the district court erred by failing to restore the parties to their pre-improper solicitation position after its first error.[2] (Docketing Statement at 6, attached as Exhibit B.)

---

[1] Chipotle does not waive its right to conduct arbitration privately and confidentially in accordance with the arbitration agreement. Therefore, a redacted version of Plaintiff's counsels' arbitration demand sufficient to demonstrate the harm to Chipotle is attached.

[2] This statement is made without prejudice to Chipotle's right to raise additional arguments on appeal.

To preserve its appellate rights, Chipotle now respectfully requests that this Court stay the Order pending resolution of that appeal.

## LEGAL STANDARD

The authority to stay proceedings "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936); *accord Pet Milk Co. v. Ritter*, 323 F.2d 586, 588 (10th Cir. 1963) (citing *Landis* and recognizing that the "granting of the stay ordinarily lies within the discretion of the district court"). The authority to "hold an order in abeyance" while the order's legality is assessed is an inherent power preserved in the federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a); *see also Nken v. Holder*, 556 U.S. 418, 426 (2009).

The purpose of a stay is to preserve the status quo pending appeal. *McClendon v. City of Albuquerque*, 79 F.3d 1014, 1020 (10th Cir. 1996). In ruling on a motion for a stay, this Court applies the same standards used when ruling on a motion for preliminary injunction. *Id.*; *Warner v. Gross*, 776 F.3d 721, 728 (10th Cir. 2015). Thus, a stay is warranted where the moving party demonstrates (1) a likelihood of success on appeal; (2) the threat of irreparable harm if the stay is not granted; (3) the absence of harm to opposing parties if the stay is granted; and (4) that the stay is not adverse to the public interest. *McClendon*, 79 F.3d at 1020; *see Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003); *see also* Fed. R. Civ. P. 62(c); Fed. R. App. P. 8(a); *Nken*, 556 U.S. at 425-26, 434. The first two factors "are the most critical." *Nken*, 556 U.S. at 434.

The Tenth Circuit has applied the Second Circuit's "liberal definition of the 'probability of success' requirement" for nearly forty years. *Heideman*, 348 F.3d at 1189 (citing *Otero Sav. & Loan Ass'n v. Fed. Reserve Bank*, 665 F.2d 275, 278 (10th Cir. 1981)). Thus, where "the moving party has established that the three 'harm' factors tip decidedly in its favor, the 'probability of success' requirement is somewhat relaxed." *Id*. The moving party "need only show 'questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation.'" *Id*. (quoting *Resolution Trust Cor. v. Cruce*, 972 F.2d 1195, 1199 (10th Cir. 1992)).

Accordingly, because Chipotle satisfies the first three "harm factors," it addresses those first and then addresses its probability of success.

## ARGUMENT

### I.      THE ORDER SHOULD BE STAYED PENDING APPEAL.

#### A.      Chipotle will suffer irreparable harm if the Order is not stayed.

Irreparable harm exists where it will be "difficult or impossible" to "restore the status quo ante in the event" the moving party prevails on appeal. *Heideman*, 348 F.3d at 1189 (citing cases). The harm must be "certain, great, actual and not theoretical." *Id*.; *see also Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001) (defining harm as "certain, great, not merely serious or substantial"). While the concept "unfortunately does not readily lend itself to definition," cases have found irreparable injury when "the injury can[not] be adequately atoned for in money" or "the district court cannot remedy [the injury] following a final determination on the merits." *Am. Hosp. Ass'n v. Harris*, 625 F.2d 1328, 1331 (7th Cir. 2001) (brackets in original); *see also Pierce*, 253

6

F.3d at 1250 (quoting *A.O. Smith Corp. v. FTC*, 530 F.2d 515, 525 (3d Cir. 1976)). Indeed, the harm must be "of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Heideman*, 348 F.3d at 1189.

Chipotle satisfies that standard here. Chipotle seeks appellate review of the district court's decision to delay enforcing the arbitration agreement until *after* the collective was certified and in sending notice to individuals bound by the agreement. It also seeks appellate review of what the appropriate remedy is for that error, where, here, the error led to Plaintiffs' counsels' improper solicitation of nearly 3,000 individuals. Stated simply, Chipotle seeks review of the terms on which the Arbitration Opt-Ins are dismissed. The remedy it seeks—severance of the relationship between the Arbitration Opt-Ins and Plaintiffs' counsel for purposes of any claims against Chipotle—will be permanently lost if the Order is not stayed.

First, Chipotle has no way to "undo" these arbitrations. No mechanism exists under the Federal Arbitration Act by which Chipotle could unwind these arbitrations if the Tenth Circuit determines Plaintiffs' counsels' continued representation is improper. 9 U.S.C. § 10 provides no grounds for vacating an arbitration award under these circumstances. And even if it did, 9 U.S.C. § 12 requires a request to vacate to be made "within three months after the award is filed or delivered." It is plausible (if not certain) that arbitrations will be initiated, concluded, and the three-month window elapsed before Chipotle's appeal is resolved. Accordingly, because this Court has no ability to remedy any injury to Chipotle if it prevails on appeal, the harm to Chipotle is irreparable, and a stay is warranted. *See Ohio Oil Co. v. Conway*, 279 U.S. 813, 814 (1929) (finding irreparable harm in payment

of allegedly unconstitutional tax when state law did not provide a remedy for its return should the statute be determined to be invalid).

Second, the imminence of the harm is self-apparent. Plaintiffs' counsel did not even wait for the automatic stay under Fed. R. Civ. P. 62(a) to expire before filing fifty arbitrations. Chipotle anticipates that Plaintiffs' counsel will initiate many more. Absent a stay of the Order, it is entirely possible that any remedy to which Chipotle may be entitled on appeal may become moot.[3] *Church of Scientology of Calif. v. United States*, 506 U.S. 9, 12 (1992) ("A case becomes moot if an event occurs during the pendency of the action that makes it impossible for the court to grant any effectual relief whatever to a prevailing party." (internal citations omitted)); *see, e.g., In re Whatley*, 169 B.R. 698, 701 (Bankr. D. Colo. 1994) (finding appeal moot in absence of stay of order for bankruptcy sale because court could not grant effective relief once property was sold to good faith purchaser). That alone is sufficient to find Chipotle will suffer irreparable harm and grant Chipotle's motion. *Ctr. for Int'l Envtl. Law v. Office of U.S. Trade Representative*, 240 F. Supp. 2d 21, 22-23 (D.D.C. 2003) (finding "strong showing of irreparable harm" where compliance with order "would render any appeal moot"); *see also Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 217 F. Supp. 2d 58, 58 (D.D.C. 2002) (granting stay of disclosure order in FOIA case pending appeal where compliance with order "would effectively moot any appeal").

A stay is therefore necessary to preserve the status quo and avoid irreparable harm to Chipotle. *McClendon*, 79 F.3d at 1020 (purpose of stay on appeal is to preserve status

---

[3] Chipotle reserves its right to argue, even if it is ultimately denied a stay of the Order, that the appeal is not moot and still presents justiciable issues for the Tenth Circuit's review.

quo); *In re CGI Indus., Inc.*, 27 F.3d 296, 299 (7th Cir. 1994) ("A stay serves to maintain the status quo pending appeal, thereby preserving the ability of the reviewing court to offer a remedy and holding at bay the reliance interests on the judgment that otherwise militate against reversal of the [underlying order]."). Preservation of the status quo here requires that the Arbitration Opt-Ins' not be permitted to rely on the Order dismissing them from this lawsuit until the terms on which they are dismissed (and the propriety of Plaintiffs' counsels' continued representation) is resolved. In other words, their pursuit of arbitration is held in stasis until such time as that issue is fully resolved.

Accordingly, this factor weighs in favor of staying the Order.

### B.   The harm to Chipotle outweighs the harm to the Arbitration Opt-Ins.

The moving party bears the burden of demonstrating that "the threatened injury to the movant outweighs the injury to the other party[.]" *Heideman*, 348 F.3d at 1190.

Here, as set forth above, if the Order is not stayed, notice is sent to the Arbitration Opt-Ins, and Plaintiffs' counsel initiates arbitrations, the harm to Chipotle is irreparable. Chipotle will be left with no effective remedy to restore the parties to their pre-improper solicitation position if the Tenth Circuit rules in its favor. In sum, the harm to Chipotle is great.

On the other hand, the harm to the Arbitration Opt-Ins is minimal. As an initial matter, the Arbitration Opt-Ins will benefit from clarification of the terms of their dismissal from this collective. Certainty in whether or not their selection of counsel is legally permissible will benefit them in deciding in what manner to proceed with their claims.

Further, the Arbitration Opt-Ins' right to pursue their claims following resolution of the appeal will not be impaired. By filing of this motion, Chipotle requests that this Court equitably toll the statute of limitations for the Arbitration Opt-Ins, thereby significantly minimizing (if not altogether eliminating) any harm to them from the temporary delay caused by Chipotle's appeal.

The equitable tolling doctrine permits courts to extend statutes of limitation on a case-by-case basis in order to prevent inequity. *Johnson v. U.S. Postal Serv.*, 861 F.2d 1475, 1481 (10th Cir. 1988) (noting "propriety of equitable tolling must necessarily be determined on a case-by-case basis" (quoting *Gonzalez-Aller Balseyro v. GTE Lenkurt, Inc.*, 702 F.2d 857, 859 (10th Cir. 1983)). The doctrine is read into every federal statute. *United States v. $57,960.00 in U.S. Currency*, 58 F. Supp. 2d 550, 664 (D.S.C. 1999) (citing *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946)). Equitable tolling is designed to apply where "a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Maiteki v. Marten Transp., Ltd.*, 4 F. Supp. 3d 1249, 1255 (D. Colo. 2013) (quoting *Graham-Humpreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561-62 (6th Cir. 2000)). Courts have routinely tolled statutes of limitations in FLSA actions when doing so serves the interests of justice. *See, e.g., In re Bank of Am. Wage & Hour Emp't Litig.*, No. 10-MDL-2138, 2010 WL 4180530 (D. Kan. Oct. 20, 2010); *Partlow v. Jewish Orphans' Home of S. Cal., Inc.*, 645 F.2d 757, 760-61 (9th Cir. 1981), *abrogated on other grounds by Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165 (1989); *Beauperthuy v. 24 Hour Fitness USA, Inc.*, No. 06-cv-0715, 2007 WL 707475 at *8 (N.D. Cal. Mar. 6, 2007).

The interests of justice are best served by tolling the statute of limitations here. The delay in the Arbitration Opt-Ins' ability to bring their FLSA claims results from Chipotle's appeal and is outside their control. In recognition of that fact, Chipotle proposes that every Arbitration Opt-Ins' claim asserted in this lawsuit, to the extent the statute of limitations has not already elapsed, be held in abeyance during the pendency of appellate proceedings in this case, up to and including through any United States Supreme Court proceedings. The claims would then be equitably tolled from August 3, 2018 until thirty days after the case is remanded to this Court and notice is sent to the Arbitration Opt-Ins advising them of the outcome of the appellate proceedings. This reduces, if not eliminates, any harm the Arbitration Opt-Ins as a result of Chipotle's appeal: Their claims remain intact, to the extent such a claim existed as of the Order's date. Moreover, prejudgment interest continues to accrue during the pendency of the appeal, so the Arbitration Opt-Ins are not financially prejudiced.

In the alternative, should this Court disagree, Chipotle proposes that the Order be stayed only as to any Arbitration Opt-In who desires to be represented by Plaintiffs' counsel in any further proceedings against Chipotle and his or her claim tolled as set forth above. Any Arbitration Opt-In who does not retain Plaintiffs' counsel would be free to pursue his or her claims against Chipotle in accordance with the arbitration agreement as he or she desires[4], but those claims would not be tolled. Under this alternative proposal,

---

[4] Chipotle reserves its right to assert any and all defenses available to it in any arbitration proceeding.

the harm to the Arbitration Opt-Ins is again minimized and their interests remain protected during the pendency of the appeal.

Accordingly, this factor also weighs in favor of a stay.

### C.    A stay is in the public interest.

A movant has the burden of demonstrating that the stay, if issued, is not adverse to the public interest. *Heideman*, 348 F.3d at 1191. The circumstances are just the opposite here: a stay pending resolution of the appeal will provide the public greater insight and certainty into how individualized arbitration agreements should be enforced following *Epic Systems Corporation v. Lewis*, 138 S.Ct. 1612 (2018).

"There is a strong federal policy encouraging the expeditious and inexpensive resolution of disputes through arbitration." *Metz v. Merrill Lynch, Pierce, Fenner & Smith*, 39 F.3d 1482, 1488-89 (10th Cir. 1994). When the applicability of arbitration is in dispute, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). To that end, Congress enacted the FAA with the express purpose of granting arbitration agreements the same enforceability as any other contract provision. *See Volt Info. Sciences, Inc. v. Bd. of Trs.*, 489 U.S. 468, 474 (1989) (stating Congress designed the FAA to "overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and place such agreements upon the same footing as other contracts.").

Against this backdrop, there is no adverse impact to the public in staying the Order pending appeal. The public has a vested interest in seeing this appeal effectively prosecuted and resolved. Indeed, in a post-*Epic Systems* world, the issue of arbitration waivers and

class and collective waivers has been a point of great public interest. As this Court previously recognized, this case concerns those issues.  The public therefore has an interest in Chipotle's appeal—i.e., understanding the point in the proceedings at which those individualized arbitration agreements must be enforced in a putative class or collective proceeding. These same stakeholders also have a vested interest in knowing whether, as occurred here, the FLSA's collective solicitation and notice procedure may be effectively used as means of subverting an employer's private contract rights with its employees and encouraging them to initiate proceedings (including arbitration) beyond the collective action in which the notice is given. The Tenth Circuit's resolution of these issues will provide clarity on these points, and staying the Order while these issues are resolved is in no way adverse to the public interest. Rather, it makes the appeal all the more effective and meaningful to the public.

Accordingly, this factor weighs in favor of a stay.

**D.    Chipotle has shown "fair ground" for litigation exists here.**

To satisfy this factor, Chipotle must show that its chance of success on the merits is "better than negligible." *Nken*, 556 U.S. at 434 (requiring more than a "possibility of relief"). Because the first three elements are satisfied, Chipotle need only show "questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation." *Resolution Trust Corp.*, 972 F.2d at 1199. Chipotle's appeal amply satisfies this standard.

Chipotle's appeal presents two issues: the first, whether this Court erred in permitting notice to go to nearly 3,000 individuals Chipotle asserted were bound by an

13

arbitration agreement precluding their participation in this collective, and the second, what the proper remedy is for the first error. (*See* Ex. B at 6.)

The Fifth Circuit Court of Appeals has addressed Chipotle's first contention and determined that arbitrability is a threshold question that must be addressed before considering collective certification.[5] *Edwards v. Doordash, Inc.*, 888 F.3d 738, 742 (5th Cir. 2018). The Fifth Circuit has "rejected" the contention that "[i]n collective action suits brought under the FLSA, courts rule on first-stage conditional certification and notice *before* ruling on the validity and enforceability of any purported arbitration agreement." *Id*. at 742-43 (emphasis in original) (brackets in original) (quoting *Reyna v. Int'l Bank of Commerce*, 839 F.3d 373, 376 (5th Cir. 2016)). This order of procedures is "consistent with" the "national policy favoring arbitration." *Id*. at 743 (quoting *Reyna*, 888 F.3d at 378 (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011)).

While the Tenth Circuit has not yet addressed this issue, its existing precedent is sufficiently analogous to demonstrate that this issue is "fair ground" for litigation. Arbitration agreements are entitled to the same enforceability as any other contract provision. *Volt Info. Sciences*, 489 U.S. at 474; *see also* 9 U.S.C. § 2 (written arbitration agreements "shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"). Indeed, less than a month ago the Tenth Circuit affirmed that whether the parties are bound by an arbitration agreement, or

---

[5] *Edwards* concerns FLSA collective claims, but refers to "class certification" rather than "collective certification." *Edwards*, 888 F.3d at 742-43. The distinction is one without a difference here.

whether a binding arbitration clause applies to a certain type of controversy, is a threshold, or "gateway," question. *Dish Network L.L.C. v. Ray*, -- F.3d --, 2018 WL 3978537, at \*1 (Aug. 21, 2018 10th Cir.). It has long been the case that "[w]hen a contract mandates arbitration, courts generally will enforce the arbitration clause absent a waiver." *Peterson v. Shearson/Am. Exp., Inc.*, 849 F.2d 464, 466 (10th Cir. 1988). And at least one district court in the Tenth Circuit has determined that delaying notification to the court that an arbitration agreement exists until after the class certification process concludes suggested "an attempt to manipulate the process, or at least to attempt multiple bites at the apple." *In re Cox Enters., Inc. v. Set-Top Cable Television Box Antitrust Litig.*, No. 12-MDL-2048-C, 2014 WL 3567629, at \*3 (W.D. Okla. July 18, 2014) (unpublished), *subsequently affirmed by* 790 F.3d 1112 (10th Cir. 2015).

Moreover, the Supreme Court has long instructed that "[i]n exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality" and "must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffmann La-Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989). In approving a notice to potential plaintiffs, a court must be careful not to create an "apparent judicial sponsorship of the notice." *Woods v. New York Life Ins.*, 686 F.2d 578, 581 (7th Cir. 1982).

Here, whether this Court's decision to delay resolution of the arbitration issue until after the Arbitration Opt-Ins were notified of and opted-in to this collective provides a "fair ground" for litigation. Over Chipotle's objection, this Court accepted Plaintiffs' counsels' invitation to solicit the Arbitration Opt-Ins with notice of the collective. That solicitation

15

was contrary to the agreement's plain terms, which required signatories to arbitrate any and all FLSA claims and prohibited class and collective actions or arbitrations. Whether permitting notice to be sent to individuals Chipotle clearly claimed were barred from this collective by virtue of the arbitration agreement gave an improper appearance that the agreement would not be enforced is by itself a substantial and serious question that is "fair ground" for litigation on appeal. And this Court's decision to resolve the issue "after we have the people in the collective class" is, respectfully, inconsistent with the precedent set forth above and the national policies favoring arbitration and enforcement of private contract rights, offering further fertile "fair ground" for litigation. (Nov. 12, 2015 Tr., 25:25-26:11.)

The issue, then, as Chipotle's second contention posits, is what is the appropriate remedy for that error? This Court dismissed the Arbitration Opt-Ins from this collective. It declined to sever the relationship between them and Plaintiffs' counsel because "at the time Plaintiffs' counsel instigated the breach of the Arbitration Agreement," that is, when the solicitation to join the collective was sent, "the enforceability of the Agreement was still in dispute." (Dkt. 187 at 14.) Stated differently, this Court concluded that by dismissing the Arbitration Opt-Ins, the agreement was enforced and the harm to Chipotle undone.

Not so. Chipotle faces the risk of additional, individual arbitrations brought by Arbitration Opt-Ins who were made aware of their alleged claims solely as a result of Plaintiffs' counsels' persistence in sending them improper notice of this collective. In other words, Plaintiffs used the certification process "as a means to make workers aware of their rights such that they can, at the very least, pursue arbitration." *Hamoudeh v. Unitedhealth*

*Grp. Inc.*, 16-CV-790, 2016 WL 2894870, at * 2 (E.D.N.Y. 2016). At least one court has found that "stirring up potential litigation in this manner would be an improper use of judicial authority." *Id*. And the Sixth Circuit recently agreed that where a group of plaintiffs had entered into enforceable individual arbitration agreements with the defendant precluding their participation in FLSA collective actions, notice to potential opt-ins would be, in effect, futile "because there will be no FLSA collective action against the Defendants about which the district court could facilitate notice." *McGrew v. VCG Holding Corp.*, --- Fed. Appx. ---, 2018 WL 4030739, at *1 (6th Cir. Aug. 23, 2018) (addressing "whether court abused its discretion" when it enforced arbitration agreements prior to notice of collective).

Where, as here, Plaintiffs have used this Court's judicial authority in an improper fashion, the question that necessarily follows is how to repair the damage that improper use has caused. This Court rejected Chipotle's proposed solution—severance of the relationship between the Arbitration Opt-Ins and Plaintiffs' counsel that was formed from that improper solicitation, i.e., restoration of the parties to their pre-improper solicitation position. That issue is therefore further "fair ground" for litigation on appeal.

Accordingly, this factor weighs in favor of staying the Order.

## II.   NOTICE SHOULD NOT BE SENT TO THE ARBITRATION OPT-INS.

As set forth in Chipotle's contemporaneously-filed Brief in Support of Proposed Notice Related to This Court's August 3, 2018 Order Dismissing Arbitration Opt-Ins, Chipotle expressly requests that any notice to the Arbitration Opt-Ins be stayed pending

completion of all appellate proceedings. Should this Court disagree, then Chipotle incorporates by reference its proposed notice as set forth therein.

## CONCLUSION

For the reasons set forth above, this Court should stay its Order pending conclusion of Chipotle's appeal.

Dated: August 31, 2018

Respectfully Submitted,

MESSNER REEVES LLP

*s/ Kendra N. Beckwith*
John K. Shunk, #16204
Allison J. Dodd, #43835
Adam M. Royval, #43836
Kendra N. Beckwith, #40154
Thomas R. Blackburn, #41136
1430 Wynkoop Street, Suite 300
Denver, Colorado 80202
Telephone:  (303) 623-1800
E-mail: jshunk@messner.com
E-mail: adodd@messner.com
E-mail: aroyval@messner.com
E-mail: kbeckwith@messner.com
E-mail: tblackburn@messner.com

SHEPPARD  MULLIN  RICHTER  &
HAMPTON LLP
Richard J. Simmons
333 South Hope Street
Forty-Third Floor
Los Angeles, California  90071
rsimmons@sheppardmullin.com

*Attorneys for Defendant, Chipotle Mexican Grill, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2018, I electronically filed and served the foregoing **CHIPOTLE'S MOTION TO STAY ORDER GRANTING DEFENDANT'S MOTION TO DISMISS OPT-IN PLAINTIFFS BOUND BY CHIPOTLE'S ARBITRATION AGREEMENT (ECF NO. 187)** via the CM/ECF system, which will send notification of such filing to all counsel of record:

**Adam Seth Levy** (adamslevy@comcast.net)

**Andrew Curry Quisenberry** (andrew.quisenberry@coloradolaw.net)

**Darin Lee Schanker** (dschanker@coloradolaw.net)

**Julie A. Sakura** (jsakura@hinklelawfirm.com)

**Kent Morgan Williams** (williamslawmn@gmail.com)

**Kevin Edward Giebel** (kgiebel@ggwklaw.com)

**Michael Edmund Jacobs** (mjacobs@hinklelawfirm.com)

**Thomas Mark Hnasko** (thnasko@hinklelawfirm.com)

*s/ Kendra N. Beckwith*

Kendra N. Beckwith