**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:14-cv-02612-JLK

LEAH TURNER, ARACELI GUTIERREZ, MARKEITTA FORD,
JOLESSA WADE, DANYA GRANADO, BRETT CHARLES, and
RUBY TSAO

individually and on behalf of others
similarly situated,

Plaintiffs,

v.

CHIPOTLE MEXICAN GRILL, INC.,

Defendant.

---

**PLAINTIFFS' OPPOSITION TO CHIPOTLE MEXICAN
GRILL INC'S MOTION TO REINSTATE STAY AND DEFER
RULING ON NOTICE TO ARBITRATION OPT-INS
UNTIL RESOLUTION OF PENDING RULE 54(b) MOTION**

---

## INTRODUCTION

Although Chipotle Mexican Grill, Inc. ("Chipotle") insisted that more than 2,800 hourly employees who had opted in to the collective in this litigation could only pursue their claims in individual arbitrations ("Arbitration Opt-Ins"), the company now seeks to put any arbitrations on hold indefinitely while it pursues a hoped-for appeal of this Court's refusal to disqualify the undersigned counsel from

representing any Arbitration Opt-Ins who might choose to retain them in connection with those proceedings. Chipotle already delayed these claims for months with its unsuccessful petition for a writ of mandamus challenging this Court's August 21, 2015 Order and Opinion, which established the collective in this matter (and when that petition was denied, was followed by an equally unsuccessful request for en banc hearing). There is no good reason to continue to freeze private arbitrations of the claims of these persons—each of whom this Court has found, at Chipotle's insistence, do not even belong in this lawsuit and therefore are beyond this Court's jurisdiction—while Chipotle takes a run at yet another round of endless appeals of this Court's interlocutory rulings.

Chipotle has had other plaintiffs removed from collectives before this one, without demanding that the plaintiffs be sanctioned with an order restricting their right to select the counsel they want. Twenty-six workers were removed from the collective in *Strout v. Chipotle*, and a collective of 518 was decertified in *Scott v. Chipotle*. In neither of those cases did Chipotle ask for the plaintiffs' counsel to be barred from representing any plaintiffs, in arbitration or in court, as part of a "return to the status quo" or anything else. This is because such an order would be unprecedented and unwarranted. This Court correctly exercised its discretion in denying Chipotle's request to disqualify counsel from representing Arbitration Opt-Ins who affirmatively choose to retain them in their arbitration proceedings, and

Chipotle's chances of convincing the Tenth Circuit to reverse that exercise of discretion are extremely low.  Because there is no other good reason for a stay, Chipotle's motion should be denied.

### FACTUAL BACKGROUND

This case was filed on September 22, 2014. None of the named Plaintiffs signed arbitration agreements with Chipotle, and Plaintiffs' counsel were unaware arbitration was potentially an issue until May of 2015, when Chipotle disclosed the existence of arbitration agreements in its opposition to the Plaintiffs' motion for a collective. (Dkt. No. 80 at 5). Chipotle did not even produce a copy of an arbitration agreement until November 12, 2015, which it did in an email to Plaintiffs' counsel, after the Court had already issued its August 21, 2015 order granting Plaintiffs' motion for a collective, and also issued its September 23, 2015 order denying Chipotle's request to certify the August 21, 2015 order for interlocutory appeal. (Dkt. No. 94).

In December 2016, this Court ordered that the arbitration issue had to be resolved before any other aspect of the case would proceed. Soon afterwards, Chipotle petitioned the Tenth Circuit for a writ of mandamus, seeking to overturn the Court's August 21, 2015 Order. (Dkt. No. 143). Several weeks later, after receiving briefing by the parties, the Tenth Circuit denied the writ. (Dkt. No. 152). Chipotle then applied for *en banc* review, which also was denied. (Dkt. No. 157).

Chipotle demanded a stay and refused to participate in discovery or other activities in this Court while its petition was being considered.

After the request for a writ was denied, Chipotle had no choice but to go back to the trial court. Over the next several months the parties engaged in discovery and briefed whether the claims of approximately 2,800 "Arbitration Opt-Ins," who Chipotle identified as having signed arbitration agreements, should be severed from this lawsuit. In addition, Chipotle demanded that counsel for the plaintiffs be prohibited from representing any of the plaintiffs in arbitration. (Dkt. No. 182 at 30). At the Court's request, the parties provided supplemental briefing in light of the Supreme Court's *Epic* decision and other issues. (Dkt. Nos. 182 and 185). On August 3, 2018, this Court issued an order dismissing the 2,800 Arbitration Opt-Ins from the collective but declined to disqualify Plaintiffs' counsel from representing those workers in any individual arbitrations they may choose to pursue. (Dkt. No. 187).

Chipotle filed a notice of appeal on August 15, 2018, claiming the August 3, 2018 order was a "Final Order." (Dkt. No. 188). In a docketing statement filed a few days later, Chipotle added the August 21, 2015 Order to the rulings being appealed. *See* Docketing Statement attached to Chipotle's Motion as Exhibit B. Plaintiffs' counsel specifically raised the issue of whether the Tenth Circuit had jurisdiction to hear the appeal, based on *Equal Employment Opportunity Comm'n*

*v. PJ Utah, LLC*, 822 F.3d 536 (10th Cir. 2016), but Chipotle refused to withdraw it, so Plaintiffs' counsel moved to dismiss the appeal. Chipotle then petitioned this Court for a stay of its August 3 order pending the outcome of the appeal, which this Court forthwith granted on September 4, 2018. (Dkt. No. 199). This effectively froze the claims of the 2,800 Arbitration Opt-Ins subject to the August 3 order—including 50 claimants who had already initiated arbitration individually and submitted their claims to JAMS—until Chipotle's appeal was resolved.

The Tenth Circuit granted Plaintiffs' motion to dismiss the appeal. (Dkt. No. 200). Notably, it did so notwithstanding Chipotle's counter-motion "in the alternative" that, in lieu of dismissing the appeal, the Tenth Circuit should follow its "well-established practice" of instructing the parties to obtain certification from the district court under Rule 54(b). *See* Chipotle's Opposition to Plaintiffs-Appellants' Motion to Dismiss Appeal for Lack of Appellate Jurisdiction, or, in the Alternative, Motion to Obtain Fed. R. Civ. P. 54(b) Certification, at 21 (App. Case. No. 18-1320, Doc. 010110052623, Sept. 13, 2018). At no time during this nearly two-and-a-half-month process did Chipotle actually seek a Rule 54(b) certification from this Court.

Following the Tenth Circuit's dismissal of Chipotle's appeal, this Court lifted the stay on arbitrations. (Dkt. No. 201). When the Plaintiffs' counsel notified JAMS of this fact that same day, Chipotle demanded time to "respond." One week later, and facing a deadline with JAMS, Chipotle finally filed a motion for entry of

judgment under Rule 54(b), along with a motion to "reinstate" the original stay. (Dkt Nos. 202 & 203).  It also filed a request with JAMS to continue the stay of the 50 arbitrations filed with that forum. While it considers Chipotle's requests, JAMS has not administered the claims of any claimants since this Court's stay was originally entered on September 4, 2018.

## ARGUMENT

Chipotle requests a stay of all arbitrations pending resolution of its hoped-for appeal of the Court's denial of its request that Plaintiffs' counsel be disqualified from representing any Arbitration Opt-Ins who might choose to retain them in connection with arbitrations against Chipotle. Chipotle is seeking this stay even though it insisted that the Arbitration Opt-Ins proceed in that forum instead of here, and it concedes that they have every right to do so. (Dkt No. 182 at 20) (arguing that the arbitration opt-ins can effectively vindicate their rights in the "arbitral forum"). Chipotle should not be allowed to invoke the procedural powers of this Court to frustrate the right of the Arbitration Opt-Ins to initiate the private arbitration proceedings Chipotle has demanded.

A party requesting a stay or injunction pending appeal must satisfy four factors: (1) the likelihood of success on appeal, (2) the threat of irreparable harm if the stay or injunction is not granted; (3) the absence of harm to opposing parties

if the stay or injunction is granted; and (4) any risk of harm to the public interest.[1] *Homans v. City of Albuquerque*, 246 F.3d 1240, 1243 (10th Cir. 2001)).[2] "While the first two factors are the most important, [the moving party] must satisfy them *all*." *In re Abengoa Boioenergy Biomass of Kansas, LLC*, No. 16-10446, 2018 WL 1613667, at *3 (Bankr. D. Kan. Mar. 29, 2018) (emphasis in original) (citing *Nken v. Holder*, 556 U.S. 418, 426 (2009)); *In re Frantz*, 534 B.R. 378, 385 (Bankr. D. Idaho 2015) ("failure to satisfy even one of the elements dooms the motion")). "A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken* at 432 (internal quotation marks and citation omitted). The party moving for a stay (or injunction) must demonstrate "a clear and unequivocal right to relief[,]" *Homans*, 243 F.3d at 1243, and bears the burden of convincing the court that the circumstances justify an exercise of the court's discretion. *Nken* at 433-34; *see also In re Frantz*, 534 B.R. at 385 (The moving party "bears the burden of proving that all of these elements are satisfied in a particular case").

---

[1] Motions for a stay and for an injunction pending appeal are subject to the same standards. *Warner v. Gross*, 776 F.3d 721, 728 (10th Cir. 2015) (citing *Homans*, 243 F.3d at 1243).

[2] *Heideman* also discusses a "relaxed" likelihood of success on the merits test arising under certain circumstances. This "relaxed" test has since been repudiated/abrogated. *See* discussion below.

## I.     CHIPOTLE IS NOT LIKELY TO SUCCEED ON THE MERITS.

The first factor requires the moving party to make a "strong showing that he is likely to succeed on the merits." *Nken*, 556 U.S. at 426. "It is not enough that the chance of success on the merits be better than negligible," and "more than mere possibility of relief is required." *Id.* at 434 (internal quotation marks and citations omitted).

Chipotle badly misstates the law with respect to the first factor. In its August 31, 2018 motion to stay (Dkt. No. 198) (attached as Exhibit A to its pending motion to reinstate stay) (cited herein as "Motion to Stay"), which Chipotle incorporates by reference, Chipotle claims "the 'probability of success' requirement is somewhat relaxed" if there is a strong showing on the other three factors.  *See* Motion to Stay at 6. The Tenth Circuit has repudiated any such notion. *See In re Abengoa*, 2018 WL 1613667, at *3 (explaining that the Tenth Circuit "repudiate[d] this 'relaxed' or modified standard in this Circuit" with respect to both stays and injunctions pending appeal) (citing *Diné Citizens Against Ruining Our Environment v. Jewell*, 839 F.3d 1276 (10th Cir. 2016)); *see also Blue Valley Hosp. Inc., v. Azar,* No. 18-2176-JAR-GLR, 2018 WL 2986686, at *3 & n.26 (D. Kan. June 14, 2018) ("The Tenth Circuit no longer applies a 'modified test' for determining temporary or preliminary injunctive relief, and courts have concluded the test is likely abrogated with respect to injunctions and stays pending appeal") (citations omitted).

Whether or not the first factor is "relaxed," Chipotle cannot satisfy it. Chipotle's appeal is based on the notion that it was somehow improper for this Court to authorize notice to be sent to persons who may have signed arbitration agreements, and whose claims may have to be severed from the litigation. Motion to Stay at 13-14. To be sure, this Court acknowledged the uncertainty of the significance of the arbitration agreements in this case, as well as other questions. *See* 11/12/2015 Hrg. Trans. (Dkt. 193) at 25:25-26:4; *see also* 8/3/2018 Order (Dkt. No. 187) (explaining that "at the time Plaintiffs' Counsel allegedly instigated the breach of the Arbitration Agreement, the enforceability of the Agreement was still in dispute."). However, by deferring resolution of these questions until after the members of the collective had been established, this Court merely adhered to the practice of the overwhelming majority of courts that, when faced with similar circumstances, decided "to delay resolution of the arbitration issue until after the Arbitration Opt-ins were notified of and opted-in to this collective." Motion to Stay at 15. *See*, *e.g., Weckesser v. Knight Enters. S.E., LLC*, No. 2:16-cv-02053-RMG, 2018 WL 4087931, at *3 (D.S.C. Aug. 27, 2018) (citing numerous cases supporting the consistently followed procedure of allowing conditional certification and notice to proceed first and addressing arbitration issues after opt-in plaintiffs allegedly subject to arbitration agreements have been identified); *Sanchez v. Simply Right, Inc.*, No. 15-cv-00974-RM-MEH, 2017 WL 2230079, at *5 (D. Colo. May 22, 2017)

(granting collective action certification and leaving the arbitration issue to be addressed at a later stage in the case.); *Abdulina v. Eberl's Temp. Servs.*, No. 14-cv-00314-RM-NYW, 2015 WL 4624251, at *3 (D. Colo. Aug. 4, 2015) (while agreeing that employees who executed arbitration agreement may not be appropriate members of the FLSA collective, leaving that argument for a later stage of the case); *Bowman v. Doe Run Resources Corp.*, No. 4:13-cv-2519 CDP, 2014 WL 3579885, at *5 (E.D. Mo. July 21, 2014) (deferring question of validity of arbitration agreements until after membership in the collective was determined); *Davis v. Novastar Mort., Inc.*, 408 F. Supp.2d 811, 818 (W.D. Mo. 2005) (granting conditional certification of FLSA collective and authorizing notice without addressing opt-in plaintiff arbitration issues, leaving the latter to motion practice at a later time if defendants were to choose to move to compel arbitration of any claims) (relying on and discussing *Villatoro v. Kim Son Rest.*, 286 F. Supp.2d 807, 808 (S.D. Tex 2003)).

Chipotle cites no case like this one (i.e., a case in which no plaintiff before the Court had signed an arbitration agreement), where the Court decided to resolve questions of arbitrability before issuing notice of a collective action. Instead, Chipotle relies heavily upon *Edwards v. Doordash* (which in turn relies upon *Reyna v. International Bank*) for the broad proposition that "arbitrability is a threshold question that must be addressed before considering collective

certification." Motion to Stay at 14. Both *Edwards* and *Reyna* are distinguishable, however, because the named plaintiffs in both of those cases were bound by arbitration agreements. Not so here, where it is undisputed that none of the named plaintiffs ever signed an arbitration agreement with Chipotle.[3] *See Weckesser*, 2018 WL 4087931, at n.4 (distinguishing *Edwards* and *Reyna*). Since no workers who had signed an arbitration agreement were before the Court at the time of the August 21, 2015 ruling (indeed, Chipotle did not even submit a copy of its agreement to the Court until after plaintiffs' motion for a collective was granted), the issue was not sufficiently ripe for the Court to adjudicate at that point. Indeed, Chipotle argued that the named Plaintiffs were not similarly situated as a result of this difference, among others. (*See* Dkt. No. 149). Therefore, far from supporting Chipotle's complaints about this Court's actions, the *Edwards* and *Rayna* opinions help explain why the Court was correct.

In sum, the fact that this Court followed the same procedure as every other court that has faced the issue under similar circumstances is a strong indication that this Court committed no error whatsoever in ordering that notice be sent before

---

[3] Chipotle also cites *Dish Network L.L.C v. Ray*, 900 F.3d 1240 (10th Cir. 2018). The case is inapposite. As so many cases – including those cited above – demonstrate, the question of whether courts consider certain arbitration issues to be "gateway" or "threshold" questions *that the court rather than an arbitrator must decide* has no bearing on the question presented here: whether a court must always consider and decide arbitration issues before granting a motion for a collective action and authorization to send notice to putative collective members.

resolving the arbitration issue, much less error significant enough to constitute an abuse of discretion. Chipotle's failure to cite a single case suggesting otherwise demonstrates that Chipotle is unable to make the required "strong showing that [it] is likely to succeed on the merits." *Nken*, 556 U.S. at 434.

Even if the notice was found improper, disqualification of counsel still would not be warranted. *See Carollo v. United Capital Corp.*, Case No. 6:16-cv-00013 (DNH/TWD), 2018 WL 1508562 at *3 (S.D.N.Y. March 27, 2018) ("First, disqualification of a plaintiff's counsel of choice based upon improper solicitation is unwarranted. *See, e.g., Lefrak v. Arabain Am. Oil* Co., 527 F.2d 1136, 1139 (2d Cir. 1975) ("Even if existing plaintiffs had been solicited, ... the remedy of disqualification would be unwarranted."); *Spagnuoli v. Louie's Seafood Rest.t, LLC,* 20 F. Supp.3d 348, 358-59 (E.D.N.Y. 2014) (finding disqualification was not warranted even assuming counsel improperly solicited clients).[4] Whatever error Chipotle thinks occurred in the notice process does not come close to meeting the

---

[4] Perhaps for this reason, Chipotle avoids describing its request as seeking to "disqualify" counsel, referring instead to a request to "sever" the relationship between counsel and the Arbitration Opt-Ins, as a "return to the status quo." *See* Motion to Stay at 3, 7, 16, 17. This is inaccurate, however, because the relationship is "severed" when the worker is dismissed and ceases to remain a member of the collective, and preventing counsel from representing any plaintiffs was never the "status quo." In any event, this Court and the Tenth Circuit both recognize Chipotle's request for what it is. *See* Order Granting Defendant's Motion to Dismiss Opt-In Plaintiffs Bound by Chipotle Arbitration Agreement (Dkt. 187) at 14 (referring to motion to "disqualify" counsel); 10th Circuit Order granting Plaintiffs' motion to dismiss appeal (Dkt. No. 200 at 2) (same).

high bar to disqualifying opposing counsel over it. *See* Plaintiffs' Mem. in Opp. to Chipotle's Motion to Dismiss Opt-In Plaintiffs (Dkt. No. 176 at 14-24).

This Court's decision to deny Chipotle's disqualification request was well within the Court's discretion. Chipotle cannot show a reasonable probability of success on the merits of its hoped-for appeal under the actual standard, or even under Chipotle's debunked "relaxed" standard for this factor. This weighs heavily against a stay.

## II.   CHIPOTLE WILL NOT SUFFER IRREPARABLE HARM IN THE ABSENCE OF A STAY.

The second factor requires showing more than simply some possibility of irreparable injury. *Id.* Irreparable harm requires an injury that is "certain, great, actual and not theoretical," and "is not harm that is merely serious or substantial." *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (discussing preliminary injunctions; internal quotation marks omitted), *called into doubt on other grounds by Predator Int'l Inc. v. Gamo Outdoor USA, Inc.*, 669 F. Supp.2d 1235, 1243-44 (D. Colo. 2009).

While Chipotle claims that "later appellate review will surely be impossible," Opp. to Motion to Dismiss Appeal at 17, the Supreme Court has rejected this very argument in concluding that refusals to disqualify counsel are not immediately appealable under the collateral order doctrine. *See Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 378 (1981) (erroneous refusals to disqualify counsel can be

addressed on appeal after trial). The fact that Chipotle might have to wait until after an arbitration does not change the equation. Just as an erroneous decision ordering an arbitration can be reviewed at the end of a case, *see PJ Utah*, 822 F.3d at 543 n.8; *Pioneer Props., Inc. v. Martin*, 776 F.2d 888, 891 (10th Cir. 1985), an appellate court can also address other claims of error then. *Cf. Coady v. Ashcraft & Gerel*, 223 F.3d 1, 10-11 (1st Cir. 2000) (addressing pre-arbitration venue transfer ruling on appeal).

Chipotle also seems to believe that if its appeal is successful, it would necessarily be entitled to "unwind" or "vacate" the arbitration rulings. *See* Motion to Stay at 9. This assumption is incorrect. *See Firestone Tire*, 449 U.S. at 376 (conducting a trial with counsel who should have been disqualified does not "indelibl[y] stamp or taint the proceedings"). If allowing counsel to continue representing plaintiffs in arbitrations is error, then that error would have no greater consequence than any other error, with Chipotle having the right to appeal if the plaintiff prevails. *See Warpar Mfg. Corp. v. Ashland Oil, Inc.*, 606 F. Supp. 866, 867 (N.D. Ohio 1985) (denying a motion to stay pending an appeal of a denial of a request to disqualify counsel).

In deciding whether Chipotle faces "irreparable harm" if a stay is not granted, it is significant that Chipotle held off seeking Rule 54(b) certification for as long as possible.  It is also significant that in previous cases, Chipotle has been completely

silent about the so-called prejudice from having to face individual claims from workers who improvidently joined a collective. For example, in *Strout v Chipotle*, Chipotle successfully moved to sever 26 workers who signed arbitration agreements from the collective, but never once mentioned the need to go back to the "status quo" or to disqualify plaintiffs' counsel. In *Scott v Chipotle*, the company successfully decertified a collective of 518 persons for not being "similarly situated." Again, the company made no effort to disqualify opposing counsel or to otherwise prevent the plaintiffs from individually pursuing their claims. This silence by Chipotle in other cases belies the notion that the failure to disqualify counsel in this case will inflict such serious injury on Chipotle that an immediate appeal and an indefinite stay are warranted.

In sum, Chipotle has failed to meet the exacting requirement that it demonstrate a risk of real, great, actual, harm to the company if the stay is not granted.

## III. THE ARBITRATION OPT-INS WILL SUFFER SUBSTANTIAL PREJUDICE IF A STAY IS GRANTED.

The third factor requires the applicant to address whether there is an absence of harm to opposing parties if the stay is granted. *Homans*, 264 F.3d at 1243. In this case, if their claims are stayed, the Arbitration Opt-Ins will suffer substantial, perhaps even irreparable, injury (although irreparable injury to the party opposing a stay is not a requirement under this factor).

This case has already passed the four-year mark. The Arbitration Opt-in plaintiffs began joining this action over two years ago. But the parties have not even moved past the first phase of this case, resolution of the arbitration issue, because Chipotle has continually dragged out these proceedings with stay motions, interlocutory appeals, requests for writs, re-hearings, *en banc* review, petitions, etc., to avoid any arbitrations for as long as possible.  Indeed, this Court has recognized that the bulk of the delay in this case can be attributed to Chipotle's litigation tactics. (Dkt. No. 94 at 7). And this Court, in another case, has correctly recognized that "justice delayed is justice denied." *Zukowski v. Howard, Needles, Tammen & Bergendoff*, 115 F.R.D. 53, 58 (D. Colo. 1987) (decrying a court backlog of cases and a 15 month wait for a trial from the date a case is ready to be heard, and further stating: "I suffer no illusions that time and justice are unrelated."); *see Trusted Transp. Sols., LLC v. Guarantee Ins. Co.*, Civ. No. 16-7094 (JS), 2018 WL 2187379, at *4  (D.N.J. May 11, 2018) (quoting *In re Health Mgmt., Inc.*, C.A. No. 96-0889 (ADS), 1999 WL 33594132, at *5 (E.D.N.Y. Sept. 15, 1999) ("'The ability of courts to avoid undue delay is essential to assur[e] that justice for all litigants be neither delayed nor impaired.'")).

Accordingly, Chipotle's latest bid for delay, "[a] stay of the Dismissal Order pending resolution to the Rule 54(b) Motion and through conclusion until any and all appellate proceedings, including up to and through any Supreme Court

proceedings," Motion for Stay at 5, should be rejected. Exhausting any appeal through any Supreme Court proceedings would likely take several years. By then, it is a virtual certainty that significantly more arbitration plaintiffs will have lost interest in pursuing their claims, moved residences, changed contact information, passed away, or otherwise become unavailable and unfindable. And for those who do remain, memories will have faded, witnesses will have disappeared, and evidence will be lost.

Courts are sympathetic to these concerns and the prejudice resulting from delay and have denied motions to stay for these reasons. *See, e.g., Trusted Transp.,* 2018 WL 2187379, at *4 (denying stay where opposing party was "prejudiced by a stay because any significant delay in the case could hinder its ability to prove its case," citing cases discussing increased danger of prejudice arising from loss of evidence, witnesses' failing recall, possible death of a party, and fading memories); *Allvoice Devs. US, LLC v. Microsoft Corp.*, No. c:09-cv-366, 2010 WL 11469800, at *4 (E.D. Tex. June 4, 2010) (denying stay where resulting delay would have caused prejudice to opposing party by risking loss of evidence as witnesses become unavailable and memories fade, citing case in which the court found prejudice where delay would be eight months); *Optimumpath, L.L.C. v. Belkin Int'l*, Inc., No. 09-01398 CW, 2010 WL 761285, at *2 (N.D. Cal. Mar. 3, 2010) (in case that was over two years old and length of time required for an appeal

17

was unknown, denying stay where "further delay" would only increase the likelihood that evidence would be lost, citing case in which court concluded that a stay could lead to "'further loss of information'" and a "tactical advantage").

Chipotle essentially concedes the severity of the harm caused by further delay,[5] proposing in the alternative "that the Order be stayed only as to any Arbitration Opt-In who desires to be represented by Plaintiffs' counsel in any further proceedings against Chipotle, and that "[a]ny Arbitration Opt-in who does not retain Plaintiffs' counsel would be free to pursue his or her claims in accordance with the arbitration agreement" (without tolling). *Id.* at 11. Forcing the Arbitration Opt-Ins to either proceed now with substitute counsel, or wait for several more years while Chipotle avails itself of every conceivable appeal, is no kind of choice at all and would effectively reverse the Court's August 21, 2015 order. Obviously, any rational Arbitration Opt-In faced with such a condition would choose to proceed with substitute counsel— but even this would also cause further delay, as the new counsel would have to be located, retained, brought up to speed, etc.  Some plaintiffs would likely abandon their claims rather than go through the hassle of

---

[5] Chipotle tries to downplay the harm to the Arbitration Opt-Ins, asserting that "the harm to Arbitration Opt-Ins is minimal" and can be cured with equitable tolling of the statute of limitations. Motion to Stay at 9. But while tolling has been and remains necessary until formal notice of the Court's August 3 Order has been provided to and read by each Arbitration Opt-In, this would do nothing to prevent the significant injury and prejudice to the Arbitration Opt-Ins, described above.

having to retain new counsel. There is no just reason to require Arbitration Opt-Ins to forfeit their right to counsel of their choice and undergo these additional steps. *See Machea Transp. Co. v. Philadelphia Indem. Ins. Co.*, 463 F.3d 827, 833 (8th Cir. 2006) ("A party's right to select its own counsel is an important public right and a vital freedom that should be preserved (internal quotations and cited cases omitted)); *Lewis v. Wal-Mart Stores, Inc.*, No. 02-cv-0944-CVE-FHM, 2006 WL 1892583, at *4 (N.D. Ok. July 10, 2006) ("A civil litigant's right to counsel of its choice is implicit in the Due Process Clause of the Fifth Amendment as well as in 28 U.S.C. § 1654.").

In sum, Chipotle's latest request for a stay, if granted, would add significantly to the prejudice the Arbitration Opt-Ins have already suffered as a result of Chipotle's previous delay tactics. The Arbitration Opt-Ins should not be forced to either give up their choice of counsel or have their claims held hostage in the federal courts for years, just so Chipotle can avoid facing particular legal counsel in private arbitrations that Chipotle itself demanded. This would be a significant and unjustified departure from this Court's assurance that Arbitration Opt-Ins can withdraw from this litigation (Dkt. No. 166 at 2) and would effectively hand Chipotle the disqualification ruling it so desperately seeks. The third factor tips decidedly in favor of the Plaintiffs.

## IV.   A STAY IS NOT IN THE PUBLIC INTEREST.

Chipotle acknowledges that "'[t]here is a strong federal policy encouraging the expeditious and inexpensive resolution of disputes through arbitration.'" Motion to Stay at 12 (quoting *Metz v. Merrill Lynch, Pierce, Fenner & Smith*, 39 F.3d 1482, 1488-89 (10th Cir. 1994)). "A prime objective of an agreement to arbitrate is to achieve 'streamlined proceedings and expeditious results.'" *Preston v. Ferrer*, 552 U.S. 346, 357 (2008). Chipotle's seeking of an appeal (up to and including the Supreme Court) that has no likelihood of success and that, if permitted, would likely cause a delay of years in resolving potentially thousands of employees' disputes would clearly be counter to and would thwart this federal policy and prime objective. The public has no interest in big corporate employers delaying justice for their employees by pursuing appeals that have no likelihood of success. *Ipso facto*, this is harmful to the public interest.

Chipotle, a large company, has required tens of thousands of its employees to arbitrate any claims arising from their Chipotle employment as a condition of accepting employment with Chipotle. Since August 2014, if employees have wanted a job with Chipotle, they have had no choice but to enter into the arbitration agreements foisted upon them. Thousands of employers do what Chipotle does. Employees employed by businesses around the country are now subject to employment arbitration agreements, all touted as beneficial for the employee

because these agreements supposedly will bring about inexpensive and expeditious resolution of any claims arising from their employment. Employees usually enter into these agreements not because they want to (and, in fact, many enter into them unknowingly), but because they need the job for which entering into the agreement is a condition. Allowing employers to require arbitration agreements but then to thwart "a prime objective," *Preston* at 357, of expeditious and inexpensive arbitration by engaging in litigation delay tactics and by seeking to deprive arbitrating employees of their selected counsel on unfounded legal bases unrecognized by a well-established body of jurisprudence is harmful to the public interest.

It is worth noting that at some point the number of persons affected by a stay is sufficiently large to literally become the public interest. In this case, Chipotle is requesting that the claims of approximately 2,800 people be left in limbo for several more years. As explained above, Chipotle will likely succeed in thwarting justice for many, if not most, of these persons through sheer attrition. Whether or not this Court allows Chipotle's appeal, and regardless of how such an appeal would be resolved, there is no public interest in a corporate defendant preventing thousands of employees from seeking redress in federal court, while simultaneously invoking federal court procedures to prevent those same employees from seeking redress in private arbitrations unless they retain counsel more to the company's liking.

If Chipotle's request for a stay is granted under these circumstances, every future litigant seeking to dismiss or compel arbitration will know to include a request to disqualify counsel,[6] or some other meritless peripheral issue. Then, if arbitration is compelled, the moving party can continue to evade justice for years by obtaining a stay while the party brings countless meritless interlocutory appeals that take years to resolve due to lengthy appellate court deadlines and heavy judicial workloads. In a case like this one, where individual claims are relatively small and the number of claimants is large, the attrition caused by this delay would be tantamount to awarding summary judgment on thousands of claims to Chipotle. Chipotle's cynical manipulation of federal court procedures, motivated solely by its desire to avoid justice in individual private proceedings over which this Court has no jurisdiction, is not in the public interest.

---

[6] Many courts have warned about the dangers of allowing parties to use disqualification requests to obtain a tactical advantage. *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 441 (1985) (Brennan, J., concurring) ("the tactical use of attorney-misconduct disqualification motions is a deeply disturbing phenomenon in modern civil litigation"); *Shaffer v. Farm Fresh, Inc.*, 955 F.2d 142, 146 (4th Cir. 1992) (the "drastic nature of disqualification requires" a court to be mindful that counsel may misuse disqualification motions "for strategic reasons"); *Carbajal v. American Family Life Ins. Co.*, No. 06-CV-00608-FSF-MEH, 2006 WL 2988955, at * 1 (D.Colo. Oct. 18, 2006) (a court "must consider whether the motion [to disqualify] was filed to gain a tactical advantage" because such motions "often pose the very threat to the integrity of the judicial process that they purport to prevent") (internal quotations and citation omitted).

## CONCLUSION

Chipotle has failed to satisfy all of the stay pending appeal factors and, therefore, has failed to satisfy its burden of showing that the circumstances justify this Court's issuance of a stay pending appeal. Therefore, this Court should deny Chipotle's motion to reinstate a stay.

Respectfully submitted this 23rd day of October 2018.

/s/ Andrew C. Quisenberry
**BACHUS & SCHANKER, LLC**
Darin L. Schanker
Andrew C. Quisenberry
1899 Wynkoop Street, STE 700
Denver, CO 80202
Tel: 303.893.9800
dschanker@coloradolaw.net
andrew.quisenberry@coloradolaw.net

**HINKLE SHANOR LLP**
Thomas M. Hnasko
Michael E. Jacobs
Julie A. Sakura
P.O. Box 2068
Santa Fe, NM 87504
Tel: 505.982.4554
thnasko@hinklelawfirm.com
mjacobs@hinklelawfirm.com
jsakura@hinklelawfirm.com

**WILLIAMS LAW FIRM**
Kent M. Williams,
1632 Homestead Trail
Long Lake, MN 55356
Tel: 615.940.4452
williamslawmn@gmail.com

**LAW OFFICE OF ADAM S. LEVY, LLC**
Adam S. Levy
P.O. Box 88
Oreland, PA 19074
Tel: 267.994.6952
adamslevy@comcast.net

**GIEBEL AND ASSOCIATES, LLC**
Kevin E. Giebel
P.O. Box 414
Lake Elmo, MN 55042
Tel: 651.236.0729
kgiebel@ggwklaw.com

**KIRBY MCINERNEY LLP**
Robert J. Gralewski, Jr.,
600 B Street, Suite 1900
San Diego, CA 92101
Tel: 619.398.4340
bgralewski@kmllp.com

*ATTORNEYS FOR NAMED AND
OPT-IN PLAINTIFFS*

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of October 2018, a true and correct copy of the foregoing **PLAINTIFFS' OPPOSITION TO CHIPOTLE MEXICAN GRILL INC'S MOTION TO REINSTATE STAY AND DEFER RULING ON NOTICE TO ARBITRATION OPT-INS UNTIL RESOLUTION OF PENDING RULE 54(b) MOTION** was electronically filed and served via CM/ECF system, which will send notification of such filing to all counsel of record.

**MESSNER REEVES LLP**
John K. Shunk
Allison J. Dodd
Adam M. Royval
Kendra N. Beckwith
Thomas R. Blackburn
1430 Wynkoop Street, Suite 300
Denver, Colorado 80202
Tel: 303-623-1800
jshunk@messner.com
adodd@messner.com
aroyval@messner.com
kbeckwith@messner.com
tblackburn@messner.com

**SHEPPARD MULLING RICHTER & HAMPTON LLP**
Richard J. Simmons (pro hac vice)
333 South Hope Street
Forty-Third Floor
Los Angeles, CA 90071
rsimmons@sheppard mullin.com

*Attorneys for Defendant*

*/s/ Andrew C. Quisenberry*
Andrew C. Quisenberry