# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.    1:14-cv-02612-JLK

LEAH TURNER, ARACELI GUTIERREZ, MARKEITTA FORD,
JOLESSA WADE, DANYA GRANADO, BRETT CHARLES, and
RUBY TSAO

Individually and on behalf of others
similarly situated,

      Plaintiffs,

v.

CHIPOTLE MEXICAN GRILL, INC.,

      Defendant.

---

## DEFENDANT CHIPOTLE MEXICAN GRILL, INC.'S REPLY IN SUPPORT OF ITS MOTION TO REINSTATE STAY [DKT. 198] AND DEFER RULING ON NOTICE TO ARBITRATION OPT-INS [DKTS. 196 & 197] UNTIL RESOLUTION OF PENDING RULE 54(b) MOTION

---

Defendant Chipotle Mexican Grill, Inc. (Chipotle), through its undersigned counsel, respectfully states as follows in support of its Motion to Reinstate Stay and Defer Ruling on Notice to Arbitration Opt-Ins Until Resolution of Pending Rule 54(b) Motion (Motion):

## **INTRODUCTION**

The Arbitration Opt-Ins do not dispute the most salient facts underlying Chipotle's desired appeal: their arbitration agreement with Chipotle precluded them from participating in this collective action and—at Plaintiffs' counsels' invitation—they joined this collective action anyways. The necessity of complicated legal precedent is unnecessary to understand

that this was error: it is as plain as it is common sense. As a result of that error, Chipotle's contractual rights have been disregarded, and Plaintiffs' counsel has been permitted to stir up litigation for their personal benefit. Chipotle's right to seek meaningful review of and remedy for that error cannot be ignored or undercut. That review and potential remedy can be accomplished only if the Order is stayed during the pendency of Chipotle's appeal. The Arbitration Opt-Ins' arguments to the contrary fail, and Chipotle's Motion should be granted.

## **APPLICABLE LEGAL STANDARD**

*Diné Citizens Against Ruining Our Environment v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016), addressed whether the district court abused its discretion by not applying the relaxed probability of success test. The Tenth Circuit, extrapolating from *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008), observed that "any modified test which relaxes one of the prongs for preliminary relief and thus deviates from the standard test is impermissible." *Id*. at 1282. The Tenth Circuit held only that "the district court did not *abuse its discretion* in simply applying the Supreme Court's frequently reiterated standard for preliminary relief, including the requirement that the plaintiff must show he is likely to succeed on the merits." *Id*. (emphasis added); *see New Mexico Dep't of Game & Fish v. U.S. Dep't of the Interior*, 854 F.3d 1236, 1247 (10th Cir. 2017) ("[W]e reject the use of a modified test to review whether the district court abused its discretion in issuing the preliminary injunction.").

Some courts still apply the relaxed standard in the context of stays pending appeal. *See Victor P Kearney v. Louis Abruzzo, et. al.*, CV 18-888 JB/GJF, 2018 WL 5112909, at

*4 (D.N.M. Oct. 19, 2018); *In re Holman*, 11-13418, 2017 WL 3025929, at *2 (Bankr. D. Kan. July 14, 2017). However, this Court need not resolve whether it would be an abuse of discretion to apply the relaxed standard here. Even applying the traditional four factors, the result is the same: the Court's Order should be stayed pending appeal.

**ARGUMENT**

## I.   CHIPOTLE HAS A STRONG LIKELIHOOD OF SUCCESS ON THE MERITS.

It is undisputed that Chipotle's proposed appellate issues are ones of first impression in the Tenth Circuit, as neither party cites any controlling precedent. "[W]here a movant presents legal issues of first impression, the likelihood of success on appeal is impossible to determine, and the Court may grant an injunction pending appeal so long as the remaining factors weigh sufficiently in the movant's favor." *Lawson Envtl. Servs., LLC v. United States*, 128 Fed. Cl. 14, 17 (Fed. Cl. 2016) (applying standard four-part test as to injunction pending appeal); *see also Jacobson v. Lee*, 1 F.3d 1251 (Fed. Cir. 1993) (finding contested issues raised "important questions, some of first impression, that deserve careful consideration by this court" and therefore weighed in favor of a stay); *Ctr. for Int'l Envtl. Law v. Office of U.S. Trade Representative*, 240 F. Supp. 2d 21, 22 (D.D.C. 2003) (holding that fact that "case presents an issue of first impression and the first to involve the application of" a recent Supreme Court decision in the context of circuit precedent weighed in favor of stay). Thus, under any standard, Chipotle has demonstrated a likelihood of success on appeal.

## A.     It is error to invite individuals who are contractually prohibited from participating in a collective action to join a collective action.

Chipotle's initial question is straightforward: may a district court permit notice to be sent to nearly 3,000 individuals who are bound by an arbitration agreement that explicitly precludes any participation in a collective lawsuit to join a collective lawsuit?[1] The answer to that question is "no" for three reasons.

### 1.   That process is contrary to the Federal Arbitration Act (FAA).

The FAA was "designed to promote arbitration" and "embod[ies] a national policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (original brackets omitted, brackets added here). Chipotle's arbitration agreement was "valid, irrevocable, and enforceable" under the FAA and entitled to the same enforceability as any other written contract provision. 9 U.S.C. § 2. Congress designed the FAA to "overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and place such agreements upon the same footing as other contracts." *Volt Info. Sciences, Inc. v. Bd. of Trs.*, 489 U.S. 468, 474 (1989) (internal quotations and citations omitted). Just recently, the Supreme Court affirmed that this has always been the purpose of § 2. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1622 (2018) (stating that § 2 "establishes a sort of 'equal-treatment' rule for arbitration contracts.") (internal citations omitted).

---

[1] This was the express basis on which Chipotle objected to the notice process this Court ultimately employed. (Dkt. 193 at 12:2-9 ("[T]he arbitration agreement that has been signed by tens of thousands of Chipotle employees has an explicit waiver of the ability to bring or participate in collective actions under the [FLSA] or, for that matter, state laws. So it precludes the very type of participation that plaintiffs are seeking to invite people to consent to in the consent form.").)

4

The process employed here allows a party to directly violate her contractual obligations with impunity simply because those obligations concern her arbitration obligation. In other words, the signatories are permitted to completely disregard the arbitration agreement until *after* its signatories were permitted to engage in conduct directly contrary to its terms. This process is untenable.

### 2. That process is contrary to analogous Tenth Circuit precedent.

Analogous Tenth Circuit case law makes clear that whether an arbitration agreement deprives a court of jurisdiction to hear a matter presents a threshold question that should be resolved at the outset (whether by the court or arbitrator). *Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1243-44, 1245 (10th Cir. 2018); *see also Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998) (addressing enforceability of arbitration agreement as first inquiry in review of a district court order denying stay of a federal suit pending arbitration); *Getzelman v. Trustwave Holdings, Inc.*, 13-CV-02987-CMA-KMT, 2014 WL 3809736, at *2 (D. Colo. Aug. 1, 2014) (stating that where defendant had asked court to dismiss Plaintiff's claims because Plaintiff had agreed to arbitrate dispute, then "[t]he Court must first determine the threshold question of whether the parties clearly and unmistakably agreed to arbitrate.") (internal quotations omitted).

The Arbitration Opt-Ins attempt to distance themselves from this principle by claiming that the Tenth Circuit's reference to "gateway" questions refers to whom should determine enforceability, rather than when it should be determined. (Dkt. 206 at 11 n.3.) The Arbitration Opt-Ins miss the point—the Tenth Circuit requires that arbitration issues be resolved *before* anything else. Thus a process that delays that determination until after

the agreement's signatories have opted-in and started participating in a lawsuit, like here, runs afoul of this precedent.

### 3. That process is contrary to well-established FLSA notice principles.

A court facilitating notice to potential opt-ins must "be scrupulous to respect judicial neutrality" and "must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffmann La-Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989). In other cases, plaintiffs have sought "to use certification as a means to make workers aware of their rights such that they can, at the very least, pursue arbitration." *Hamoudeh v. Unitedhealth Grp., Inc.*, 16-CV-790, 2016 WL 2894870, at *2 (E.D.N.Y. May 17, 2016). They claim this is harmless because the "only harm" their employer faces "is more individual arbitrations than it otherwise would have." *Id*. At least one court rejects that argument. "Using this process as a means to make workers aware of their rights such that they can, at the very least, pursue arbitration," the Eastern District of New York has observed, "stir[s] up potential litigation" that "would be an improper use of judicial authority." *Id*.

The Fifth Circuit echoes the Eastern District of New York, concurring that arbitration agreements are "threshold questions," *Renya v. Int'l Bank of Commerce*, 839 F.3d 373, 377 (5th Cir. 2016), and rejecting the idea that "first-stage conditional certification and notice" determinations should be made "*before* ruling on the validity and enforceability of any purported arbitration agreement." *Edwards v. Doordash, Inc.*, 888 F.3d 738, 742 (5th Cir. 2018). Thus a process that allows the stirring up of potential

litigation and relegates the arbitration agreement's enforceability until some later time "as [it] come[s] up" is erroneous. (Dkt. 193 at 21:6-19.)

> **B.    The Arbitration Opt-Ins' arguments to the contrary fail.**

The Arbitration Opt-Ins—in the face of these arguments—still assert the answer to Chipotle's question is "yes"—that an invitation to join this lawsuit *is* properly sent to individuals who are contractually precluded from participating in it. They assert that because (1) *Edwards* and *Renya* are distinguishable, and (2) an "overwhelming majority of courts" have approved or adopted the delayed process used here, Chipotle cannot show a probability of success on the merits. (Dkt. 206 at 9-12.) The Arbitration Opt-Ins are wrong.

> **1.    *Edwards* and *Renya* apply.**

The Arbitration Opt-Ins claim that *Edwards* and *Renya* are inapplicable here because those cases apply solely when the named plaintiffs (rather than putative opt-ins) have signed an arbitration agreement. (Dkt. 206 at 11.) A close reading of those cases demonstrates otherwise.

In *Renya*, a single plaintiff sought to conditionally certify an FLSA collective action against his employer, alleging it failed to pay him and others similarly situated overtime. 839 F.3d at 374. The employer moved to dismiss and compel arbitration, which Renya opposed on the ground that courts rule on first-stage conditional certification and notice before ruling on the validity and enforceability of an arbitration agreement. *Id*. at 376. The district court agreed with him and declined to address the arbitration arguments.

On review, the Fifth Circuit determined that arbitrability is a "gateway issue," meaning it should be decided before conditional certification. 839 F.3d at 376-77 ("We

therefore disagree with Reyna's argument that courts typically delay consideration of the arbitrability of a claim until after conditional certification is granted."). In support of this determination, the *Renya* Court cited to previous Fifth Circuit precedent—outside the FLSA context—that "instructed that a district court must consider an agreement to arbitrate as a 'threshold' question." *Id*. at 377 (citing *Auto Parts Mfg. Miss, Inc. v. King Constr. of Houston, L.L.C.*, 782 F.3d 186, 196 (5th Cir. 2015)) (quotations in original). Requiring consideration of "whether Renya should be compelled to arbitrate his FLSA claim prior to conditional certification," the Fifth Circuit observed, "more closely aligns with the national policy favoring arbitration embodied by the FAA." *Id*. at 378 (internal quotations omitted). It thus concluded that "the district court erred when it deferred deciding the threshold question of whether Renya is required to arbitrate his claims until after the conditional certification stage." *Id*. (rejecting Renya's argument that "district courts consistently conditionally certify a collective before determining the arbitrability of a claim," acknowledging that a class of cases exists in which "district courts [have] declined to determine the validity of arbitration agreements with potential opt-in plaintiffs, not arbitration agreements with the sole named plaintiff." (emphasis omitted)).

Two years later, in *Edwards*, the Fifth Circuit eroded any suggestion that *Renya* was limited to solely the factual circumstances presented therein—i.e., a single-plaintiff putative FLSA collective action in which the named plaintiff has signed an arbitration agreement. Edwards (one of four plaintiffs) filed suit against his employer alleging FLSA violations and also moved to conditionally certify a collective of similarly situated individuals. 888 F.3d at 741. His employer opposed the motion and moved to compel

arbitration as to Edwards, based on an arbitration agreement that precluded collective actions. The district court granted the motion to dismiss and determined Edwards should be compelled to arbitrate his claims, relying on *Renya*. *Id*. at 742.

On appeal, the Fifth Circuit addressed whether the district court erred in compelling arbitration before considering collective certification. *Id*. It observed that in *Renya* "we held that arbitrability claims should be resolved at the outset, even before considering conditional class certification." *Id*. "We rejected the plaintiff's contention that in collective action suits brought under the FLSA," the *Edwards* Court stated, "courts rule on first-stage conditional certification and notice before ruling on the validity and enforceability of any purported arbitration agreement." *Id*. at 743 (quoting *Renya*, 839 F.3d at 376 (quotations and brackets omitted)). *Renya* was factually distinguishable from other cases in which district courts had certified a collective action before determining the arbitrability of the claims, the *Edwards* Court continued, "because it involved a defendant who moved to compel the sole plaintiff to arbitrate his claim, pursuant to an arbitration agreement that indisputably existed." *Id*. (citing *Renya*, 839 F.3d at 377).

The *Edwards* Court then made clear that "[t]he rationale for the holding in *Renya*, though, *was not limited to these factual differences*." *Id*. (emphasis added). Rather, "[w]e also stated that arbitrability is a threshold question, as a contrary holding would present a justiciability issue: a court could conditionally certify a collective action solely on the basis of a claim that the plaintiff was bound to arbitrate and was therefore barred from bringing it in court in the first place." *Id*. And it repeated *Renya*'s reference as to the necessity of

addressing the arguments in this order to "more closely align" with the FAA's national policy. *Id.*

"Edward's arguments against applying *Renya*," the Fifth Circuit observed, "are limited to identifying factual differences." *Id.* (identifying that case had more than one plaintiff, agreement differed, and agreement's validity was disputed). "What Edwards fails to do, however, is explain *why those differences compel a different result.* As in *Renya*," the Fifth Circuit went on, "we agree that whether the named plaintiffs must arbitrate their claims should be decided well before the nationwide notification issue is reached." *Id.* (emphasis added). Thus, "[w]e continue to hold that arbitrability is a threshold question to be determined at the outset, a holding consistent with the national policy favoring arbitration." *Id.* (internal quotations omitted). The Fifth Circuit affirmed the district court's dismissal order. *Id.* at 746.

*Edwards* makes clear that neither it nor *Renya* are restricted in application to circumstances where the named plaintiffs (rather than the potential opt-ins) have signed arbitration arguments. The policy that "arbitrability is a threshold question to be determined at the outset" applies with equal force to any collective action unless the distinguishing factual differences are meaningful—that is, they must "compel a different result." Under the circumstances of this case, no such meaningful factual circumstances exist.

Therefore *Edwards* and *Renya*'s core teaching—that arbitrability is a threshold question to be determined at the outset of a collective action—applies with equal force here. But even without that precedent the error is plain: Chipotle's arbitration agreement prohibited litigation of collective actions. (Dkt. 173 at Ex. 2 ¶ 5.1.) That was the basis on

which Chipotle asserted the agreement should be addressed before sending notice to the potential opt-ins. (Dkt. 193 at 12:2-9.) That provision's enforceability was not dependent upon the eventual Arbitration Opt-Ins' individual circumstances or their participation in the case.[2] It was purely a threshold issue that should have precluded the Arbitration Opt-Ins' participation from the outset. *See Williams v. Imhoff,* 203 F.3d 758, 764 (10th Cir. 2000) ("[The court's] first task 'is to determine whether the parties agreed to arbitrate' [the claims] at issue.") (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)); *see also Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139, 1145 (10th Cir. 2014) (stating that the Arbitration Act requires courts to "rigorously enforce arbitration agreements according to their terms") (quoting *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013)). Thus, the fact that the agreement's enforceability "was in dispute" at the time only solidified the need to resolve it before inviting the Arbitration Opt-Ins to participate in this collective. (Dkt. 187 at 14.)

### 2.  The Arbitration Opt-Ins' cited cases are distinguishable.

The Arbitration Opt-Ins cited cases in support of delayed process here are inapposite. The circumstances supporting the arbitration agreement's enforceability were known, not speculative, and involved solely the collective action waiver. *See Weckesser v. Knight Enters. S.E., LLC*, No. 2:16-cv-02053, 2018 WL 4087931, at * 3 n.3 (D.S.C. Aug. 27, 2018) (distinguishing *Edwards* and *Renya*  on grounds that because potential opt-in

---

[2] Indeed, as the Court observed in its Order, the Arbitration Opt-Ins did "little to advance their position" that any individual circumstances applied to negate the agreement (such as unconscionability). (Dkt. 187 at 4 (observing that the Court was "[l]eft to consider only general, conclusory statements with no specific evidentiary support").)

plaintiffs "allegedly subject to arbitration agreements have not yet joined this action," the court lacked the ability to "determine whether any potential arbitration agreement[s] are enforceable against them."); *see also Sanchez v. Simply Right, Inc.*, No. 15-cv-00974-RM-MEH, 2017 WL 2230079, at *5 (D. Colo. May 22, 2017) (court delayed addressing the arbitration agreements because it was unknown "which of the putative collective action members" would be affected by the agreement and whether they would even opt-in to the case). Chipotle is challenging only that notice should not have been sent to the Arbitration Opt-Ins, not the certification of the collective altogether.[3] *See Abdulina v. Eberl's Temporary Servs., Inc.*, No. 14-cv-00314-RM-NYW, 2015 WL 4624251, at *3 (D. Colo. Aug. 4, 2015) (applying *Thiessen* standard this Court expressly rejected); *Bowman v. Doe Run Res. Corp.*, No. 4:13-cv-2519 CDP, 2014 WL 3579885, at *5 (E.D. Mo. July 21, 2014) (addressing argument that "conditional certification should be denied because some potential class members may be required to arbitrate their FLSA claims."); *Davis v. Novastar Mortg., Inc.*, 408 F. Supp. 2d 811, 817-18 (W.D. Mo. 2005) (addressing whether "conditional certification would be improper" where "most, if not all, of [the defendants' employees] have signed arbitration agreements.").

Thus Chipotle has a strong probability of success on the merits of this argument.

## C.     The remedy for the error is to restore the status quo.

Chipotle, having demonstrated it was error to invite opt-ins to this collective who were contractually prohibited from participating in it, then presents a second question: what

---

[3] Chipotle reserves its right, at the appropriate juncture, to challenge the standard used in that determination.

is the remedy for that error? It is again undisputed that this is an issue of first impression for the Tenth Circuit. (Dkt. 198 at 16-17, Dkt. 206 at 12.)

The remedy should, as Chipotle has repeatedly argued, be to restore the status quo to the parties' relationship prior to the improper notice. The Arbitration Opt-Ins were solicited to participate in this collective action in direct breach of their contract with Chipotle. The well-established remedy for such conduct is restoration of the status quo— that is, to place the non-breaching party in the same position as if the breach had never occurred. *See Smith v. Farmers Ins. Exch.*, 9 P.3d 335, 337 (Colo. 2000) ("Generally, in a breach of contract action, a plaintiff may recover the amount of damages necessary to place him in the same position he would have occupied had the breach not occurred.").[4]

This requires that the parties be placed back in the positions they enjoyed before the notice was improperly sent to the Arbitration Opt-Ins. This requires severance of the Arbitration Opt-Ins from Plaintiffs' counsel, as they would never have been introduced to each other (having never received the notice). It does *not* mean—as the Arbitration Opt-Ins imply and Chipotle has repeatedly refuted—that the Arbitration Opt-Ins are precluded from bringing an individual arbitration claim against Chipotle. It simply means that they cannot do so with counsel who intentionally ignored their contractual obligations to Chipotle, induced them to breach their agreement, and used this litigation to "stir up

---

[4] This Court previously determined that Colorado law applies to this analysis. (Dkt. 187 at 3.) Even if it did not apply to this determination, this is a near-universal proposition that applies regardless of the jurisdiction.

potential litigation" through the "improper use of judicial authority." *Hamoudeh*, 2016 WL 2894870, at *2.

### D.     The Arbitration Opt-Ins' arguments to the contrary fail.

The Arbitration Opt-Ins' efforts to characterize Chipotle's argument requesting mere disqualification of Plaintiffs' counsel should be rejected. Certainly, the process which Plaintiffs' Counsel advocated for here could be characterized as an improper solicitation warranting such disqualification. In the face of a clear contractual prohibition on the Arbitration Opt-Ins' participation in this collective, they persisted in soliciting them to join this collective action. Whether or not that conduct violated the ethical restraints on solicitation is not the pertinent inquiry; Plaintiffs' counsels' conduct cannot be isolated from the fact that they acted in clear violation of an express contractual prohibition on the Arbitration Opt-Ins' participation here.

Each of the Arbitration Opt-Ins' cited cases—which address solely lawyers' alleged "ethical improprieties"—are therefore distinguishable and inapposite. The Arbitration Opt-Ins rely principally on *Carollo v. United Capital Corp.*, Case No. 6:16-cv-00013 (DNH/TWD), 2018 WL 1508562 (S.D.N.Y. Mar. 27, 2018), for this proposition. *Carollo* concerned a class and collective action pursuant to the FLSA. *Id*. at *1. The sole basis on which the employer moved to disqualify the plaintiffs' counsel was "alleged violations of the New York Rules of Professional Conduct[.]" *Id*. Specifically, the employer argued that the plaintiffs' counsel should be disqualified based on a named plaintiff's deposition testimony that she received a telephone call from an attorney she "did not know, before the action was commenced[,]" which the employer contended was an improper solicitation

resulting in commencement of the action. *Id*. at *2. The *Carollo* Court rejected this as a grounds for disqualifying the plaintiffs' counsel. Stating that "disqualification of a plaintiff's counsel of choice based upon improper solicitation is unwarranted," it further found that the evidence of improper solicitation was "speculation," and denied the request. *Id* at *3.

*Carollo* does not apply here. First, and foremost, Chipotle's severance request is not based on any governing rules of professional conduct. Rather, as set forth above, it is premised on the improper solicitation and breach of the arbitration agreement (hence Chipotle's distinguishing use of the phrase "severance" rather than disqualification which the Arbitration Opt-Ins' unsuccessfully attempt to impugn)[5]. *Carollo* can be rejected on this ground alone.

Second, the evidence of the conduct justifying severance of Plaintiffs' counsel is undisputed. Chipotle informed this Court that the group of potential opt-in plaintiffs to whom the notice would be sent included individuals who had signed an arbitration agreement with Chipotle. (Dkt. 193 at 12:2-9.) Chipotle informed this Court that that agreement included an express prohibition on class and collective actions. (*Id*.) Plaintiffs' counsel acknowledged that many of those opt-ins had signed the agreement, but requested that the Court resolve the issues "as they come up," rather than at the outset. (Dkt. 193 at

---

[5] Indeed, disqualification would imply that a relationship had already been formed. Yet given the Arbitration Opt-Ins now claim that any attorney-client relationship was severed when they were dismissed, severance more appropriately encompasses the relief to which Chipotle is entitled. (Dkt. 206 at 12 n.4.) Severance simply ends the relationship altogether—regardless of the stage in which it may be in—and restores the status quo.

21:6-19; *see also* 6:19-25.) This Court adopted that position. (*Id.*, 25:25-26:11.) The basis for Chipotle's severance request is thus far from speculative.

The Arbitration Opt-Ins' remaining cited cases are similarly unpersuasive. They simply recite the two cases to which *Carollo* cited, without even so much as modification of the parentheticals. *Carollo*, at *3 (citing same cases with same parentheticals as appear on page 12 of the response). Each case again addresses only the New York Rules of Professional Conduct, and neither case is persuasive. *Lefrak v. Arabian American Oil Company*, 527 F.2d 1136, 1139 (2d Cir. 1975), denied a disqualification request for a lack of definitive evidence of solicitation and "no possible prejudice to the defendant." And *Spagnuoli v. Louie's Seafood Restaurant, LLC*, 20 F. Supp. 3d 348, 358-59 (E.D.N.Y. 2014), relied on similar grounds. Again, Chipotle's evidence supporting its requested remedy is undisputed. And it has—on multiple occasions, at length and in great depth—explained the prejudice it has suffered to its contractual rights. Plaintiffs' counsels' conduct was a clear violation of an express contractual prohibition on the Arbitration Opt-Ins' participation here, and their efforts to argue otherwise fail.

The Arbitration Opt-Ins' argument that even if the notice should not have been sent, the error is harmless is as baseless as it is bold. (Dkt. 206 at 12 ("Even if the notice was found improper, disqualification of counsel would still not be warranted.").) They cannot justify or explain away the harm Chipotle has suffered as a result of the error in delaying the arbitration agreement's enforcement and permitting the notice to be used as a client solicitation method. Chipotle has—under any standard—demonstrated a probability of success on the merits, and its Motion should be granted.

## II.   CHIPOTLE WILL SUFFER IRREPARABLE HARM IF THE ORDER IS NOT STAYED.

It is undisputed that irreparable harm requires results where an injury is "certain, great, actual, and not theoretical." (Dkt. 198 at 6; Dkt. 206 at 13.) That harm exists here. Unless the Order is stayed pending appeal, Chipotle will be unable to obtain any effective review of its appeal. *See Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001). Chipotle has no way of undoing an arbitration once it occurs—no mechanism exists by which they may be unwound, and, in any event, the time in which Chipotle could even attempt to do so will certainly expire before any final ruling on the merits occurs here. (Dkt. 198 at 7-8.) Thus the harm is imminent: if arbitrations go forward, Chipotle's appeal rights will likely be mooted. (*Id.*, 8.)

The Arbitration Opt-Ins attempt to refute this clear harm by arguing that "[t]he fact that Chipotle might have to wait until after an arbitration [to seek review] does not change the equation." (Dkt. 206 at 13-14.) They appear to believe that Chipotle could seek post-arbitration review of the Order in each arbitration. Not so.

The Arbitration Opt-Ins' cited cases are inapposite, as they rely on 9 U.S.C. § 10 as the grounds for the post-arbitration review. *Pioneer Props., Inc. v. Martin*, 776 F.2d 888, 891 (10th Cir. 1985) ("Following the arbitrator's determination of the merits of plaintiff's claims, plaintiff may return to federal court *to seek limited review of the award under the critiera set forth in* 9 U.S.C. § 10.") (emphasis added);  *E.E.O.C. v. PJ Utah, LLC*, 822 F.3d 536, 543 n.8 (10th Cir. 2016) (citing same). As Chipotle has explained, § 10 affords no basis for the relief Chipotle seeks here. (Dkt. 198 at 7.)

Further, the arbitrator has no authority to review or overturn this Court's Order (as Chipotle's appeal seeks)—that relief is available only through appellate review of the Order. *See Lundahl v. Halabi*, 600 Fed. Appx. 596, 605 (10th Cir. 2014) ("It is a basic proposition that all orders and judgments of courts must be obeyed however erroneous the action of the court may be, until the order is reversed by orderly review, either by itself or by a higher court . . . ."); *see also* Dkt. 173 at Ex. A ¶ 8 (limiting arbitrator's authority to determining "issues of liability and damages regarding all claims to be arbitrated."). Absent a stay of the Order, interim arbitrations cannot be unwound—rendering appellate review meaningless. The Arbitration Opt-Ins' belief that even if Chipotle were to demonstrate error, it would be harmless is without any basis in law or fact, given the novelty of the issue Chipotle's intended appeal presents. (Dkt. 206 at 14.) And, as set forth above, reliance on disqualification of counsel cases is inapposite here. *See Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 375-76 (1981) (addressing solely disqualification motion in context of collateral order doctrine).

Finally, the Arbitration Opt-Ins' vague illusions to other Chipotle cases in which Chipotle has not sought the relief it seeks here are irrelevant to this Court's inquiry. The Arbitration Opt-Ins provide nothing to support this Court's ability to look outside the confines of this case in accessing the irreparability of the harm to Chipotle in denying a stay.[6] Rather, the harm to Chipotle must be assessed on the facts presented in this case. *See*

---

[6] Moreover, what limited information the Arbitration Opt-Ins provide as to these cases demonstrates they are distinguishable. *Scott*, 1:12-CV-08333 (S.D.N.Y. 2017), involved Chipotle's successful decertification of an entire collective. (Dkt. 206 at 15.) And *Strout,*

*Nken v. Holder*, 556 U.S. 418, 426 (2009) (limiting stay inquiry to merits of the case, harm to the parties, and the public interest).

Chipotle has therefore demonstrated it will suffer irreparable harm.

### III.     THE HARM TO CHIPOTLE IS GREATER THAN THE HARM TO THE ARBITRATION OPT-INS.

As set forth above, the harm to Chipotle is irreparable if the Order is not stayed while Chipotle appeals. *See* section II, *supra*. The harm to the Arbitration Opt-Ins, on the other hand, is comparatively minimal. Pre-judgment interest is continuing to accrue, and, as this Court previously recognized, Chipotle's offer of equitable tolling is adequate to protect their ongoing interest in vindicating their claims (a request Chipotle renews here). *See* Dkt. 199. For all the same reasons, these circumstances adequately protect—if not altogether eliminate—harm to the Arbitration Opt-Ins. (*See* Dkt. 203; *see also* Dkt. 198 at 9-12.)

The Arbitration Opt-Ins claim otherwise. They assert the passing of time harms the viability of their claims. (Dkt. 206 at 16.) Their argument improperly assumes that there must be *no* harm to them in order to grant Chipotle's Motion. This is incorrect. Implicit in the applicable standard is the recognition that the non-moving party will be harmed by the requested stay. *See Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1190 (10th Cir. 2003). Thus, the minimal harm from the additional time it may take to resolve their claims is outweighed by the irreparable harm to Chipotle's appeal rights.

---

4:14-CV-02585 (S.D. Tex. 2017), involved only 26 individuals, rather than the nearly 3,000 at issue here. (*Id.*)

They also assert the harm to them is greater because it is "a virtual certainty that significantly more arbitration plaintiffs will have lost interest in pursuing their claims, moved residences, changed contact information, passed away, or otherwise become unavailable and unfindable" if their claims are stayed. (Dkt. 206 at 17.) To the extent this is considered cognizable harm to the Arbitration Opt-Ins, Chipotle has provided a mechanism to alleviate it: a stay and limited tolling only as to those Arbitration Opts "who desire[] to be represented by Plaintiffs' counsel" and to permit arbitrations to go forward for others, albeit without Plaintiffs' counsel. (Dkt. 198 at 11.)

The Arbitration Opt-Ins claim this is "no kind of choice at all" because "[o]bviously, any rational Arbitration Opt-In faced with such a condition would choose to proceed with substitute counsel[.]" (Dkt. 206 at 18.) Their argument reveals that the individuals they seek to protect are Plaintiffs' counsel, not the Arbitration Opt-Ins. Were the concern truly about giving the Arbitration Opt-Ins their choice of counsel, then Chipotle's proposed alternative would provide the solution: advise them as to their options via an appropriate notice from the court, and allow them to make an informed choice. But the response makes every conceivable effort to avoid that informed conversation from occurring, or stated differently, every argument is made to prevent the Arbitration Opt-Ins from having a choice. Instead, the emphasis is on denying Chipotle any meaningful appellate right for the benefit of Plaintiffs' counsel.

Indeed, much like their briefing concerning the arbitration agreement before, the Arbitration Opt-Ins' briefing here is similarly rife with "general conclusory statements with no specific evidentiary support." (Dkt. 187 at 4.) While the burden to demonstrate a stay is

warranted rests only with Chipotle, the lack of even a single affidavit or other piece of evidence from any Arbitration Opt-In is conspicuous. If the inability to be represented by Plaintiffs' counsel were so important, presumably at least one Arbitration Opt-In would be willing to state so (particularly given that at least fifty of them have allegedly agreed to move forward with arbitrations). They have not.

Plaintiffs' counsel first encouraged them to breach their arbitration agreement with Chipotle, and now places their interests above the Arbitration Opt-Ins' in pursing resolution of the Arbitration Opt-Ins' claims. The harm is therefore greater to Chipotle than to the Arbitration Opt-Ins, and this factor weighs in favor of a stay.

## IV.    A STAY IS IN THE PUBLIC INTEREST.

Chipotle demonstrated that a stay would not be adverse to the public interest because it would permit full resolution of whether and when parties' arbitration agreements and waivers were entitled to be enforced, particularly in a post-*Epic Systems* world. (Dkt. 198 at 12-13.) The public has a vested interest in knowing whether the FLSA's collective solicitation and notice procedure may be used as a method of subverting those contractual rights, as well as provide greater clarity as to when in an FLSA collective an arbitration agreement must be enforced. (*Id.*)

The Arbitration Opt-Ins disagree that resolution of those issues is in the public interest. Instead, they conflate their arguments from the third factor (i.e., the harm to them in a stay) to argue that "the number of persons affected by a stay is sufficiently large to literally become the public interest." (Dkt. 206 at 21.) For all the reasons set forth above, that argument fails.

The Arbitration Opt-Ins' remaining argument is effectively that a stay is not in the public interest because Chipotle is purportedly using this appeal, specifically, and its arbitration agreement, generally, to harm them. (Dkt. 206 at 20-21.) Such hyperbole and rhetoric could not be further from the truth. The use of arbitration agreements is both permissible and encouraged under the law—and this Court can infer nothing prejudicial to Chipotle from its decision to use them. *See Epic Sys. Corp.* 138 S. Ct. at 1621 (stating that arbitration can offer "quicker, more informal, and often cheaper resolutions for everyone involved[,]" and so through the Arbitration Act, Congress "directed courts to abandon their hostility and instead treat arbitration agreements as 'valid, irrevocable, and enforceable.'") (quoting 9 U.S.C. § 2). Chipotle has also offered to permit the Arbitration Opt-Ins to go forward with their claims while still preserving its right to have the inappropriate disregard of its agreement with those individuals redressed. *See* section III, *supra*. The Arbitration Opt-Ins' argument should therefore be disregarded and Chipotle's Motion granted.

## CONCLUSION

For the reasons set forth above, in its Motion to Reinstate Stay and Defer Ruling on Notice of Arbitration Opt-Ins Until Resolution of Pending Rule 54(b) Motion and its Motion to Stay Order Granting Defendant's Motion to Dismiss Opt-In Plaintiffs Bound by Chipotle's Arbitration Agreement, Chipotle respectfully requests that this Court stay the August 3 Order pending conclusion of Chipotle's appeal.

Dated: October 31, 2018

Respectfully Submitted,

MESSNER REEVES LLP

*s/ Kendra N. Beckwith*
John K. Shunk, #16204
Allison J. Dodd, #43835
Adam M. Royval, #43836
Kendra N. Beckwith, #40154
Thomas R. Blackburn, #41136
1430 Wynkoop Street, Suite 300
Denver, Colorado 80202
Telephone:  (303) 623-1800
E-mail: jshunk@messner.com
E-mail: adodd@messner.com
E-mail: aroyval@messner.com
E-mail: kbeckwith@messner.com
E-mail: tblackburn@messner.com

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Richard J. Simmons
333 South Hope Street
Forty-Third Floor
Los Angeles, California  90071
rsimmons@sheppardmullin.com

*Attorneys for Defendant, Chipotle Mexican Grill, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2018, I electronically filed and served the foregoing **DEFENDANT CHIPOTLE MEXICAN GRILL, INC.'S MOTION TO REINSTATE STAY [DKT. 198] AND DEFER RULING ON NOTICE TO ARBITRATION OPT-INS [DKTS. 196 & 197] UNTIL RESOLUTION OF PENDING RULE 54(b) MOTION** via the CM/ECF system, which will send notification of such filing to all counsel of record:

**Adam Seth Levy** (adamslevy@comcast.net)

**Andrew Curry Quisenberry** (andrew.quisenberry@coloradolaw.net)

**Darin Lee Schanker** (dschanker@coloradolaw.net)

**Julie A. Sakura** (jsakura@hinklelawfirm.com)

**Kent Morgan Williams** (williamslawmn@gmail.com)

**Kevin Edward Giebel** (kgiebel@ggwklaw.com)

**Michael Edmund Jacobs** (mjacobs@hinklelawfirm.com)

**Thomas Mark Hnasko** (thnasko@hinklelawfirm.com)

*s/ Kendra N. Beckwith*
Kendra N. Beckwith