**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.        1:14-cv-02612-JLK

LEAH TURNER, ARACELI GUTIERREZ, MARKEITTA FORD,
JOLESSA WADE, DANYA GRANADO, BRETT CHARLES, and
RUBY TSAO

Individually and on behalf of others
similarly situated

        Plaintiffs

v.

CHIPOTLE MEXICAN GRILL, INC.

        Defendant

---

**JOINT STATUS REPORT TO SPECIAL MASTER**

---

        Pursuant to the Special Master's Order Regarding Joint Status Report, Chipotle Mexican

Grill, Inc. ("Chipotle") and Plaintiffs jointly make the following report:

**I.        A BRIEF STATEMENT REGARDING THE STATUS OF DISCOVERY IN
        THIS MATTER, INCLUDING A LIST OF PENDING DISCOVERY ISSUES
        THAT REQUIRE THE SPECIAL MASTER'S REVIEW.**

        **A.        Joint Statement as to Discovery Taken to Date.**

        Two prior Discovery Phases, both limited in scope, have been completed. Phase One

concerned arbitration issues. Chipotle produced the applicable arbitration agreement versions

and related on-boarding materials, responded to written discovery, and provided a Fed. R. Civ. P.

30(b)(6) witness on arbitrability topics.

        Phase 2 discovery concerned Chipotle's "methods and policies of payment and the

duration of operation of each of those methods or policies[]" and was limited to interrogatories

propounded to Chipotle. (Dkt. 137 at 2.) In response, Chipotle produced certain documents and videos relating to Chipotle's organizational structure; Chipotle's timekeeping policies; the Aloha system (i.e., the electronic time card system); its corporate policies for paying hourly employees; compensation for supervisory restaurant employees; and the Respectful Workplace Hotline.

Phases Three and Four of discovery now remain pending. The parties have briefed and proposed competing interrogatories for Phase Three. (*See* Dkts. 227, 235, 237.) As detailed in this report, a number of pending discovery issues remain that require review by the Special Master. The parties agree that a conference with the Special Master would be the most efficient manner in which to resolve those issues.

### B.   Plaintiffs' Statement as to Pending Discovery Issues Requiring Review.

Nearly four years after the Court authorized a collective in August 2015 (Dkt. 87), more than seven thousand former hourly-paid Chipotle employees are still waiting for their claims to be heard. Some of their claims date back as far as February 2012. Given the time that has already elapsed, the Plaintiffs respectfully suggest that a reasonable schedule and firm, trial-ready date before the end of 2020 would help the parties complete discovery and bring this case to a resolution while members of the collective still have hope of recovering their unpaid wages. *See* Memorandum Opinion and Order (August 21, 2015) at 17 ("I would like to see Plaintiffs' allegations rise or fall on their merits, rather than as a result of procedural maneuvering, piecemeal litigation, or attrition.") (Dkt. 87).

The Plaintiffs have submitted a discovery plan and proposed pretrial schedule (**EXHIBIT B**) that provides an opportunity for Chipotle to engage in reasonable discovery of the collective to determine whether there are any "misjoinder" issues, while allowing reasonable merits discovery to proceed in tandem. To date, the Plaintiffs have received little substantive discovery from Chipotle apart from limited discovery relating to arbitration (Phase One) and to Chipotle's

stated "methods and policies of payment" (Phase Two). Given that the Plaintiffs' claims involve allegations that Chipotle was not following those stated policies, and that company-wide policies emanating from its corporate offices resulted in off-the-clock work, *see* Am. Compl. ¶¶ 83-90 (Dkt. 25), significant additional discovery remains. As set below, discovery would be staged so that corporate-level discovery of Chipotle would begin immediately in Phase Three (alongside Chipotle's discovery directed to the collective) but store-level discovery could be postponed until Phase Four, after any misjoinder motion is resolved and the final composition of the collective is determined or at least there is no question that particular stores will be at issue.

      **1.**      **Content, Form, and Manner of Service of Interrogatories to Collective Members.**

The Court has allowed Chipotle to take *limited* discovery of the collective in order to determine whether opt-in plaintiffs are "similarly situated" to the named plaintiffs, *see Order re Discovery* at 3 (March 19, 2019) (Dkt. 218). However, as set forth in their earlier briefing (Dkt. 227), the Plaintiffs do not believe that Chipotle's proposed interrogatories (**EXHIBIT A**) accomplish that purpose. Indeed, Chipotle has never identified *any* "misjoinder" theories that its proposed questions might address. Moreover, as the Plaintiffs have noted, the questions do not explicitly ask for certain information that is likely to be relevant.

The Plaintiffs respectfully suggest that any discovery sent to the collective should consist of an "easily digestible" questionnaire that would elicit relevant information targeted to the specific "misjoinder" theories that Chipotle intends to pursue, as well as a limited set of other issues that will allow this case to be tried on behalf of the collective. *See Thomas v. Kellogg Co.*, No. C13-5136, 2014 WL 4748144 (W.D. Wash. Sept. 24, 2014). To that end, the Plaintiffs have proposed a number of principles that should guide the design of a Phase Three questionnaire:

- First, the questionnaire should not impose unnecessary burdens on the collective by asking for information that Chipotle already has in its possession. *See Crawford v. Professional Transp., Inc.*, No. 3:14-cv-00018-RLY-WGH, 2015 WL 5123871 at *4 (S.D. Ind. Sept. 1, 2015) ("much of the information requested by Defendants should already be in their possession").

- Second, the questionnaire should be drafted in a way that can be easily understood by members of the collective. *Thomas*, 2014 WL 4748144 (discovery should be "easily digestible"). The questions should avoid legalese, lengthy instructions, and conventions of the legal community that would be confusing or not easily understood by lay persons (e.g., capitalization of defined terms like "You" and "Your").

- Third, in contrast to Chipotle's broad, open-ended interrogatories (*e.g.,* "If your answer is… please describe all facts that support Your answer"), the questions should be worded to elicit specific information that is useful to the parties. *See Order re Proposed Discovery Plan* at 2 (April 17, 2019) (interrogatories must provide the information necessary to inform motions for joinder).

- Finally, the questionnaire should be designed from the outset so it can be sent out and responded to in a manner that will impose a minimal burden on opt-in plaintiffs. The Plaintiffs believe that the best approach would be to design a simple survey with specific questions aimed at eliciting relevant information, that would be sent via email or text message to members of the collective, and that would be answered and verified using a smartphone or personal computer. This would be far more useful—and likely lead to a far higher response rate—than Chipotle's proposed interrogatories for the reasons discussed in the earlier briefing on this issue.

### 2. Corporate-Level Merits Discovery in Phase Three.

The Court has noted that "[i]n addition to the individual interrogatories, I am inclined to allow limited, corporate-level merits discovery of Chipotle during Phase 3" (Dkt. 225 at 2). The Plaintiffs' proposed discovery plan (**EXHIBIT B**) would allow for that discovery to take place in tandem with the Phase Three discovery of the collective. While the scope of "corporate-level merits discovery" will likely be an area of disagreement, a number of issues the Plaintiffs believe should be addressed were included in their Phase Two discovery requests (**EXHIBIT D**). These include subjects such as how the Chipotle established company-wide, area-wide or other regional policies regarding store labor costs; how the company established policies regarding bonuses and promotions for managers and other employees who met (or failed to meet) those goals; and how Chipotle investigated and responded to allegations of off-the-clock work, among other subjects. Plaintiffs received very little by way of substantive responses to these requests apart from Chipotle's formal written policies in Phase Two. All of these topics, however, are relevant to the Plaintiffs' claims and will remain so regardless of any misjoinder motion Chipotle might bring. Moreover, the Plaintiffs anticipate that Chipotle's document retention policies, particularly with respect to alarm records and store videos, would be an area of inquiry during Phase Three.

### C. Chipotle's Statement as to Pending Discovery Issues Requiring Review.

Chipotle knows nothing about the facts giving rise to the approximately 7,000 claims against it, beyond the bare fact that these individuals allege they worked off-the-clock without pay while employed with Chipotle.

To date, the discovery taken has been *of* Chipotle, but never *by* Chipotle. Phase One discovery was aimed at resolving whether individuals who agreed to arbitrate their claims were proper members of this lawsuit. Phase Two discovery was directed solely to Chipotle and was

aimed at identifying its payment policies and procedures. (Dkt. 218 at 2.) Chipotle has never had an opportunity to propound discovery to either Plaintiffs or opt-ins.

As a result, Chipotle has no basis to develop its misjoinder theories. (*See* Dkt. 87 at 16-17 (certifying the collective "with the understanding that individuals may be challenged and severed from the collective if the basis for their joinder proves erroneous[]" and placing burden to do so on Chipotle).) Nor has Chipotle had a chance to ensure that this collective action, built upon representative proof, comports with basic principles of due process and fundamental fairness.

The next two discovery phases—Phases Three and Four—are intended to remedy these deficiencies. The Court held Phase Three's "primary goal is to facilitate discovery of information relevant to deciding which opt-ins are similarly situated and thus properly joined in a single action[]" and "assess[ing] whether each opt-in is properly included in the collective[.]" (Dkt. 218 at 3.) To accomplish this goal, the Court held that Chipotle may use "individual interrogatories directed to the remaining members of the collective" to gather that information. (*Id.*) Phase Four (if appropriate) would entail "representative depositions based on the information gathered in the interrogatories[.]" (*Id.* at 2.) Any remaining merits discovery of either the Named Plaintiffs or Chipotle would be completed thereafter.

### 1.    Content, Form, and Manner of Service of Interrogatories to Collective Members.

The Court held that Chipotle may use "individual interrogatories directed to the remaining members of the collective" to obtain information necessary to decide which opt-ins members are properly joined and inform misjoinder motions. (Dkt. 218 at 3.) That discovery should be "limited" and not "overly broad and intrusive." (*Id.* at 4.) Consistent with this, Chipotle has proposed interrogatories addressing the following basic categories of information:

- The dates on which the opt-in worked for Chipotle, positions held, and locations at which he or she worked;

- Whether the opt-in reported the underpayment/nonpayment of wages, alleged off-the-clock work, or other alleged supervisor misconduct resulting in allegedly unpaid work to Chipotle;

- The facts and documents supporting the claimant's allegations that he or she worked off-the-clock and/or was underpaid or not paid for work he or she performed; and

- The individuals who assisted with preparing or with whom the opt-in discussed his or her responses to the interrogatories.

Chipotle has requested that each opt-in be served with and required to respond to the interrogatories as consistent with Fed. R. Civ. P. 33. Each opt-in, by virtue of this Court's order joining them in this lawsuit, is a party and is represented by Plaintiffs' counsel. *Mickles on behalf of herself v. Country Club Inc.*, 887 F.3d 1270, 1278 (11th Cir. 2018) ("[O]pt-in plaintiffs remain party plaintiffs until the district court determines they are not similarly situated and dismisses them."); *Silva v. Tegrity Pers. Servs., Inc.*, 986 F. Supp. 2d 826, 837 (S.D. Tex. 2013) ("Opt-in plaintiffs and original parties are treated the same under the FLSA.") (quoting *Muhammad v. GBJ, Inc.*, No. CIV.A. H–10–2816, 2011 WL 2357369, at *2 (S.D. Tex. June 10, 2011)). Chipotle's proposed revised interrogatories are attached as **EXHIBIT A** for reference**.**

As explained in Chipotle's Response to Plaintiffs' Objections to its First Set of Interrogatories to Collective Members (Dkt. 235), Plaintiffs' critique is vague and offers no meaningful counterproposal. Plaintiffs' inability to support their "belief" that discovery via text message will comport with the procedural safeguards of the Federal Rules of Civil Procedure is fatal. Plaintiffs have never disputed that all that is known about the approximately 7,000 remaining opt-ins is that they claim to have worked off the clock without pay for Chipotle. Plaintiffs' suggestion that from that bare information pre-drafted, drop-down menu responses to

discovery questions may be drafted is illogical—as it presupposes the parties have the necessary information to even draft the purported options—and untenable—in light of the due process and procedural safeguards with which this action must comply.

### 2. Corporate-Level Merits Discovery in Phase Three.

The Court has noted that "[i]n addition to the individual interrogatories, I am inclined to allow limited, corporate-level merits discovery of Chipotle during Phase 3." (Dkt. 225 at 2.) "The exact parameters of this corporate-level discovery can be determined at or after the status conference." (*Id.*) Those parameters have not yet been determined, nor have the parties briefed them.

As set forth above in section I.A, extensive merits discovery has already occurred of Chipotle. Until more is known about the opt-ins and the allegations giving rise to their claims, further discovery is a fishing expedition without a target. Chipotle's position is that no additional discovery is necessary until Phase Three is complete. Even if discovery is ordered (it should not be), Chipotle proposes it be limited to a Fed. R. Civ. P. 30(b)(6) deposition as to company-wide methods and policies applicable to all collective members.

### 3. Representative Depositions in Phase Four.

At this time, Chipotle believes it is premature to commit to any Phase 4 discovery. Chipotle proposes that it file a statement at the conclusion of Phase 3 stating whether Phase 4 depositions concerning misjoinder issues are necessary and, if so, a suggested approach for completing them.

Chipotle reserves its right to take depositions of the collective members of its choosing in Phase 4. Chipotle rejects Plaintiffs' contention that Chipotle only "be entitled to depose a random selection of collective members[.]" (Dkt. 223 at 4.) Chipotle instead proposes that it be

permitted to depose a reasonable number of collective members (a number to be determined following Phase 3's conclusion), and permitted to choose which collective members it deposes.

## II.     AN UPDATED JOINT PROPOSED DISCOVERY PLAN THAT ALIGNS WITH THE FORMAT OF PLAINTIFFS' PROPOSED DISCOVERY PLAN, EXHIBIT A, FILED ON APRIL 15, 2019, INCLUDING NEW PROPOSED PRE-TRIAL DEADLINES.

### A.     Plaintiffs' Statement.

Plaintiff's proposed discovery schedule is attached hereto as **EXHIBIT B.** The Plaintiffs' proposed schedule aligns with their April 15, 2019 submission but adjusts deadlines by approximately three months, which still allows this matter to be trial ready before the end of 2020.

### B.  Chipotle's Statement.

Chipotle's proposed discovery schedule is attached hereto as **EXHIBIT C.**

## III.    A FINAL TALLY OF PERSONS WHO HAVE OPTED-IN PURSUANT TO 29 U.S.C. § 216(B).

A total of approximately 10,000 opt-in forms were received. In its August 2018 Order Granting Defendant's Motion to Dismiss Opt-In Plaintiffs Bound by Chipotle's Arbitration Agreement (Dkt. 187), the Court dismissed 2,814 opt-ins plaintiffs. Excluding those individuals, 7,107 individuals remain in the collective.

Of these 7,107 individuals, 184 opted-in after the July 6, 2016 opt-in deadline. Chipotle reserves its right to argue that these individuals opting-in after the deadline should be dismissed from the collective.

## IV.    A BRIEF STATEMENT REGARDING THE STATUS OF THE STATE LAW CLAIMS ASSERTED IN THIS CASE.

The Court has deferred addressing the state law claims pending further notice. At the December 1, 2016 scheduling conference, the Court held that it would not address those claims

until the FLSA process was "well under way." (Dkt. 136 at 34:7-8.) Specifically, Judge Kane

stated:

> Now, I do note that there are these four 23(b) states that are involved, and California, frankly, is its own universe in that regard, but for purposes of case management I'm not going to deal with 23(b) until we have the statutory process well under way. And I'm deferring that in the interest, first of all, of economy and efficiency. We may not even get to it. It may be. I don't know. But I'm not going to -- I'm not going to try and keep that plate up in the air with others to be a juggling act. I'm going to defer anything on 23(b) for the time being.

(*Id.*, 34:4-13.)

The Court then held the state law claims would not be addressed until after Phase Three

was completed. (*Id.* at 36:24-37:3 ("I'm going to tell you right now that I'm thinking very

seriously when we get through phase three of appointing a special master. And if that's the case,

then we'll open it up afterwards about the 23(b) and all the various idiosyncrasies of a class

action and how it might relate to these claims.").)  The Court has given no further directive as to

when the state law claims will be addressed. The parties agree that the state law claims should

continue to be held in abeyance until after Phase Three, at which point the parties should file

statements as to how the state claims should proceed.

Dated: July 23, 2019

        Respectfully Submitted,

        MESSNER REEVES LLP

        *s/ Kendra N. Beckwith*
        Kendra N. Beckwith, #40154
        John K. Shunk, #16204
        Allison J. Dodd, #43835
        Adam M. Royval, #43836
        Tanner Walls, #41534
        1430 Wynkoop Street, Suite 300
        Denver, Colorado 80202
        Telephone:  (303) 623-1800
        E-mail: kbeckwith@messner.com

E-mail: jshunk@messner.com
E-mail: adodd@messner.com
E-mail: aroyval@messner.com
E-mail: twalls@messner.com

DLA PIPER LLP (US)
Levi Heath, CA Bar No. 220854
2000 Avenue of the Stars, Suite 400
Los Angeles, CA 90067
Telephone: (310) 595-3000
Levi.Heath@dlapiper.com

*Attorneys for Defendant, Chipotle Mexican Grill, Inc.*

HINKLE SHANOR LLP

*/s/ Michael E. Jacobs*

Thomas M. Hnasko
Michael E. Jacobs
Julie A. Sakura
P.O. Box 2068
Santa Fe, NM 87504
Tel: 505.982.4554
thnasko@hinklelawfirm.com
mjacobs@hinklelawfirm.com
jsakura@hinklelawfirm.com

WILLIAMS LAW FIRM
Kent M. Williams
1632 Homestead Trail
Long Lake, MN  55356
Tel: 615.940.4452
williamslawmn@gmail.com

LAW OFFICE OF ADAM S. LEVY, LLC
Adam S. Levy
P.O. Box 88
Oreland, PA 19074
Tel: 267.994.6952
adamslevy@comcast.net

KIRBY MCINERNEY LLP
Robert J. Gralewski, Jr.,
600 B Street, Suite 1900

San Diego, CA 92101
Tel: 619.398.4340
bgralewski@kmllp.com

GIEBEL AND ASSOCIATES, LLC
Kevin E. Giebel
P.O. Box 414
Lake Elmo, MN 55042
Tel: 651.236.0729
kgiebel@ggwklaw.com

**_Attorneys for the Named and Opt-in Planitiffs_**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 23, 2019, I electronically filed and served the foregoing **JOINT STATUS REPORT TO SPECIAL MASTER** via the CM/ECF system which will send notification of such filing to all counsel of record listed on CM/ECF system, including:

- Adam S. Levy, adamslevy@comcast.net

- Andrew C. Quisenberry, andrew.quisenberry@coloradolaw.net

- Darrin L. Schanker, dschanker@coloradolaw.net

- Julie A. Sakura, jsakura@hinklelawfirm.com

- Kent M. Williams, williamslawmn@gmail.com

- Kevin E. Geibel, kgiebel@ggwklaw.com

- Michael E. Jacobs, mjacobs@hinklelawfirm.com

- Robert J. Gralewski, Jr., bgralewski@kmllp.com

- Thomas M. Hnasko, thnasko@hinklelawfirm.com

*s/ Kendra N. Beckwith*