# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.        1:14-cv-02612-JLK

LEAH TURNER, ARACELI GUTIERREZ, MARKEITTA FORD,
JOLESSA WADE, DANYA GRANADO, BRETT CHARLES, and
RUBY TSAO

Individually and on behalf of others
similarly situated

      Plaintiffs

v.

CHIPOTLE MEXICAN GRILL, INC.

      Defendant

---

**DEFENDANT CHIPOTLE MEXICAN GRILL, INC.'S MOTION TO DISMISS
NONRESPONSIVE AND UNTIMELY OPT-INS PURSUANT TO FED. R. CIV. P. 37(d)
AND 41(b)**

---

Defendant Chipotle Mexican Grill, Inc. (Chipotle), through undersigned counsel, respectfully requests that this Court dismiss with prejudice all opt-ins who have not responded to Chipotle's Phase 3 interrogatories (Nonresponsive Opt-Ins) and all opt-ins who provided untimely responses (Untimely Opt-Ins). In support of this request, Chipotle states as follows:

### Certificate of Conferral

Undersigned counsel conferred with Plaintiffs' counsel Kent Williams on February 4, 2020. Plaintiffs oppose this motion.

## INTRODUCTION

Over 70% percent of the collective members in this lawsuit—including two Named Plaintiffs—have failed to respond to Chipotle's Phase 3 interrogatories. That discovery was indisputably "necessary to assess whether each opt-in is properly included in the collective[.]" (Dkt. 218 at 3.) Absent that discovery, there is no way for Chipotle to know whether each opt-in is "properly joined in a single action." (*Id.*) Indeed, without that response, all that is known about an opt-in is that he or she returned a consent to join form alleging the opt-in worked for Chipotle off the clock without pay. (Dkt. 235-3, Consent to Join Form.)

Allowing these opt-ins—and particularly two Named Plaintiffs—to remain in this lawsuit under these circumstances is untenable and a violation of Chipotle's due process rights. Chipotle cannot be forced to try the claims of approximately 7,100 individuals when over 70% of them failed to provide even basic information concerning their claim. The opt-ins were provided ample time to confer with their counsel and respond to Chipotle's discovery requests. Nonetheless, these 5,198 Nonresponsive Opt-Ins failed to respond or otherwise show good cause for their lack of participation in the mandatory discovery process. Further, 404 opt-ins responded long after their 30-day response time had passed. These Untimely Opt-Ins did so without any explanation, much less the showing of good cause and excusable neglect contemplated by the Federal Rules of Civil Procedure—despite being represented by counsel.

As detailed below, it is well-settled that a litigant's refusal to answer interrogatories or actively prosecute a claim and adhere to court deadlines is grounds for dismissal, particularly in collective actions. For the reasons set forth below, Chipotle respectfully requests that the 5,198 Nonresponsive Opt-Ins and 404 Untimely Opt-Ins be dismissed with prejudice from this case.

## SPECIAL MASTER JURISDICTION

The Special Master has jurisdiction to resolve this motion. On June 26, 2019, the Court appointed the Special Master "to direct, oversee and manage the course and conduct of discovery and related pretrial matters." (Dkt. 247 at 2.) The Special Master "is authorized to rule on all discovery and related pretrial motions . . . and to recommend sanctions as he deems appropriate to secure compliance with his orders, [and] to punish noncompliance[.]" (*Id*.) Chipotle is seeking, pursuant to Rules 37(d) and 41(b) of the Federal Rules of Civil Procedure, a recommendation to the Court that the Nonresponsive Opt-Ins and Untimely Opt-Ins be dismissed with prejudice from this collective action for their failure to participate in discovery and prosecute this lawsuit.

## FACTUAL BACKGROUND

In its August 21, 2015 Memorandum Opinion and Order (Dkt. 87), the Court certified a collective of Chipotle workers "bringing the same statutory claim against the same employer . . . with the understanding that individuals may be challenged and severed from the collective if the basis for their joinder proves erroneous." (*Id*. at 16-17 (referencing Fed. R. Civ. P. 20's joinder standard).) The Court held that a challenge to participation in the collective would ultimately be analyzed as "any other challenge to a Rule 20 joinder in an existing plaintiff's claims." (*Id*. at 17.) For opt-ins to properly join this lawsuit, Rule 20 requires that the claims of the Named Plaintiffs and opt-ins arise "out of the same transaction, occurrence, or series of transactions or occurrences," and present common "question[s] of law or fact[.]" The burden fell to Chipotle to challenge individual opt-ins. (*Id*. at 16-17.)

Thereafter, approximately 10,000 individuals opted-in to the collective. Minimal information was known about each opt-in. All that was known was what each opt-in provided on a consent to join form. That information was limited to the following: that "there were/have been times when [the opt-in] worked at Chipotle 'off the clock,' without pay." (Dkt. 235-3, Consent to Join Form.) Approximately 3,000 of those opt-ins were subsequently dismissed as a result of binding arbitration agreements with Chipotle.

As to the remaining opt-ins, the Court developed a multi-phase discovery plan designed to "assess whether each opt-in is properly included in the collective[.]" (Dkt. 218 at 3.) Phase 3 of that plan permitted written discovery to each Named Plaintiff and opt-in. That discovery was "necessary to assess whether each opt-in is properly included in the collective and will inform motions for misjoinder." (Dkt. 218 at 3.) The discovery's purpose was therefore plain: "to facilitate discovery of information relevant to deciding which opt-ins are similarly situated and thus properly joined in a single action." (*Id.* (indicating that Chipotle could use "individual interrogatories directed to the remaining members of the collective" to gather information).)

Following several meet and confer efforts, the parties agreed to (a) a set of written interrogatories and (b) that the opt-ins could respond to the discovery via a text message application, reducing the burden on both Plaintiffs' counsel and the opt-ins in responding. (Dkt. 255 at 3.) Between September 26, 2019, and December 15, 2019, Chipotle served the 7,109 Named Plaintiffs and opt-ins with written discovery requests pursuant to the district court's discovery plan. Plaintiffs' counsel was permitted to use whatever means necessary, including email or text message, to notify the Named Plaintiffs and opt-ins of the interrogatories and their obligation to provide a response. (*See id.*)

4

Consistent with Phase 3's purpose, and the Court's directive that the discovery be used to determine whether the opt-ins are in fact similarly situated, Chipotle made clear at the outset that any nonresponding opt-ins should not be permitted to remain in this collective action. (8/21/2019 Tr., 8:25-11:1., attached as Exhibit A.) The interrogatories contained the following notice, which was included in both the electronic and paper versions:

> These questions are being sent to you as a result of your choice to join the *Turner v. Chipotle Mexican Grill, Inc.* lawsuit pending in the United States District Court for the District of Colorado. The Court has approved these questions and you must answer them. **IF YOU DO NOT ANSWER THESE QUESTIONS, YOU MAY NOT BE ABLE TO PARTICIPATE IN THIS LAWSUIT.** Please consult with your attorneys if you have further questions.

(Defendant Chipotle Mexican Grill, Inc.'s First Set of Interrogatories to Collective Members, attached as Exhibit B at 3 (emphasis in original).)[1]

The Named Plaintiffs and opt-ins were served discovery in four waves, and each wave was provided thirty days in which to respond. (*Id*. at 1.) Chipotle received timely responses as follows[2]:

---

[1] The interrogatories were also provided in Spanish.

[2] Chipotle has identified at least 48 individuals within the 1,574 timely responses it received who do not appear on any discovery service list. Nor does Chipotle have any record that these individuals properly opted-in to the collective. Chipotle, for solely purposes of this motion, counts their responses as timely received, and reserves all rights to raise additional challenges to these individuals' participation in this lawsuit. For purposes of the data below, these "untrackable" individuals have been grouped with the discovery wave in which they would have been served had they properly opted-in to the collective and appeared on a discovery service list.

5

### TIMELY RESPONSES RECEIVED

| Wave | Date Served | Number Served | Timely Responses Received |
|------|-------------|---------------|---------------------------|
| 1 | September 26, 2019 | 2,000 | 401 |
| 2 | November 3, 2019 | 2,000 | 465 |
| 3 | November 21, 2019 | 2,000 | 402 |
| 4 | December 15, 2019 | 1,109 | 306 |
| | **TOTALS** | 7,109 | 1,574 |

In addition, Chipotle subsequently received 404 untimely responses (i.e., served after their due date) as follows[3]:

### UNTIMELY RESPONSES RECEIVED

| Wave | Date Due | Date Served | Untimely Responses Received |
|------|----------|-------------|-----------------------------|
| 1 | November 18, 2019 | November 19, 2019 | 6 (1 day late) |
| | | January 15, 2020 | 134 (58 days late) |
| | | January 20, 2020 | 8 (63 days late) |
| 2 | December 3, 2019 | January 15, 2020 | 130 (43 days late) |
| | | January 20, 2020 | 5 responses (48 days late) |

---

[3] Chipotle has identified at least 19 individuals within the 404 untimely responses who do not appear on any discovery service list. Nor does Chipotle have any record that these individuals properly opted-in to the collective. These individuals are highlighted on Exhibit E, which sets forth the Untimely Opt-Ins' identity. Even giving these individuals the benefit of the doubt that they properly opted-in to this lawsuit, their responses are still untimely based on the wave in which Plaintiffs' counsel represents they were allegedly served. Chipotle therefore moves for their dismissal here, and reserves all rights to raise additional challenges to these individuals' participation in this lawsuit.

| 3 | December 23, 2019 | January 15, 2020 | 104 (23 days late) |
| | | January 20, 2020 | 11 (28 days late) |
| 4 | January 15, 2020 | January 20, 2020 | 6 (5 days late) |
| | | **TOTAL** | 404 |

Plaintiffs' counsel did not request an extension of time, nor did they offer any explanation as to why these Untimely Opt-Ins could not respond within the allotted time. Thus, although the parties jointly agreed the opt-ins were entitled to 30 days to respond to the interrogatories, the Untimely Opt-Ins effectively had as many as 117 days in which to respond. The numbers break down as follows:

In sum, 5,198 Nonresponsive Opt-Ins, including Named Plaintiffs Ruby Tsao and Jolessa Wade, identified on Exhibit D have failed to provide discovery responses. This means the collective has an approximate 22% timely response rate. (Even if the untimely responses are included, that results in a marginal 6% increase.) That means that all that is known about the remaining Nonresponsive Opt-Ins is what Chipotle started with: "There were/have been times when [the opt-in] worked at Chipotle 'off the clock,' without pay." (Dkt. 235-3, Consent to Join Form.) These Nonresponsive Opt-Ins cannot remain in this collective. That information is wholly insufficient to satisfy Chipotle's right to due process. *See Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 587 (E.D. La. 2008) (holding a defendant "cannot be expected to come up with 'representative' proof when the plaintiffs cannot reasonably be said to be representative of each other."); *see also Rueb v. Zavaras*, Civ. Act. No. 09-cv-00072-BNB, 2009 WL 1579518, at *2 (D. Colo. Dec. 11, 2017) (holding joinder must "comport with the principle of fundamental

7

fairness"). Their refusal to participate also demonstrates an outright lack of interest in proceeding with their claims against Chipotle.

Accordingly, for the reasons set forth below, the 5,198 Nonresponsive Opt-Ins and 404 Untimely Opt-Ins should be dismissed from this collective action.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 41(b), "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Thus, "[a] district court undoubtedly has discretion to sanction a party for failing to prosecute or defend a case, or for failing to comply with local or federal procedural rules." *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002); *see also Campbell v. City of Los Angeles*, 903 F.3d 1090, 1104 (9th Cir. 2018) (noting "there is no statutory distinction between the roles or nomenclature assigned to the original and opt-in plaintiffs[]" such that opt-in plaintiffs have "party status" in a collective action).

Similarly, Rule 37(d)(1)(A)(ii) of the Federal Rules of Civil Procedure provides that a party may be sanctioned for his or her refusal to respond to properly served interrogatories. *Cont'l Ins. Co. v. McGraw*, 110 F.R.D. 679, 682 (D. Colo. 1986) (holding "sanctions under Rule 37(d) are appropriate[]" where a party "failed completely to answer the interrogatories"). Sanctions for this behavior include dismissal of the action or striking the party's pleadings. Fed. R. Civ. P. 37(d)(3) (cross-referencing (b)(2)(A)(i)-(vi)). In addition to sanctions, "the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." *Id.*

In addressing a motion to dismiss under Rule 41, the following factors are considered: 1) prejudice to the moving party; 2) the amount of interference with the judicial process; 3) the non-moving party's culpability; 4) whether the non-moving party had notice of the possibility of dismissal; and 5) the availability of lesser sanctions. *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1143 (10th Cir. 2007) (applying factors to Rule 41 motion). Those factors have also applied to a motion under Rule 37. *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992) (applying factors to Rule 37 motion). Here, under either rule, the result is the same: all of the factors weigh in favor of dismissal of the Nonresponsive Opt-Ins from this collective action.

## ARGUMENT

### A.     The Nonresponsive Opt-Ins should be dismissed from the collective pursuant to Rule 41(b) for their refusal to prosecute their claims.

Rule 41 codifies the basic and well-settled principle that an individual cannot maintain a claim he or she is either unwilling or unable to actively prosecute. Such dilatory conduct is prejudicial to other litigants, disruptive to the courts, and inconsistent with timely and efficient resolution of disputes. The Nonresponsive Opt-Ins identified on Exhibit D have clearly demonstrated their unwillingness to participate in this lawsuit through their rejection of one of the most basic party obligations: discovery. For the reasons set forth below, the Nonresponsive Opt-Ins cannot remain in this collective action.

### 1.     The Nonresponsive Opt-Ins' refusal to prosecute their claims has prejudiced Chipotle.

The Court always intended that the interrogatory responses would inform Chipotle's request to dismiss opt-ins who are not similarly situated to the Named Plaintiffs. The express

purpose of Phase 3 of the discovery plan was "to facilitate discovery of information relevant to deciding which opt-ins are similarly situated and thus properly joined in a single action." (Dkt. 218 at 3.) The Nonresponsive Opt-Ins' conduct, or lack thereof, has completely thwarted the objective of Phase 3 and Chipotle's "due process right to conduct its investigation to position itself for misjoinder[.]" (Ex. A, 8/21/19 Tr., 48:5-8.)

Chipotle is now, in the absence of discovery responses, prohibited from knowing whether the Nonresponsive Opt-Ins' claims differ from the Named Plaintiffs' claims. The Nonresponsive Opt-Ins' refusal to fulfill their minimal discovery obligations robs Chipotle of the opportunity to challenge claims as "too different for collective treatment." (Dkt. 87 at 17; *see also* Dkt. 255 at 2 ("It is well established that an opt-in member to a collective action . . . has a duty to participate in the discovery process, including by timely responding to discovery requests to facilitate a determination regarding whether the plaintiffs are in fact similarly situated.").)

Instead, Chipotle will be forced to try the claims of over 70% of the collective without the basic information necessary to ensure that the Named Plaintiffs' representative proof is in fact representative of these Nonresponsive Opt-Ins. This is unacceptable. "[T]he use of representative testimony is justified ***only*** where it is reasonable to believe that the testifying witnesses' experiences are sufficiently similar to those of the rest of the non-testifying plaintiffs." *Roussell v. Brinker Intern., Inc.*, Civ. Action No. H-05-3733, 2008 WL 2714079, at *22 (S.D. Tex. July 9, 2008) (emphasis added).

Allowing the Nonresponsive Opt-Ins to remain in an action premised on representative proof will deprive Chipotle of its constitutional right to due process. *See Johnson*, 561 F. Supp. 2d at 588 (holding a verdict based on evidence not representative of the whole collective "would

result in liability on the defendant in a magnitude that is not likely to be warranted in reality");
*Sandoval v. M1 Auto Collisions Ctrs.*, Case No. 13-cv-03230-EDL, 2016 WL 6561580, at *11
(N.D. Cal. Sept. 23, 2016) (noting "courts have granted decertification due to serious due process
concerns with an employer being forced to defend itself based on representative proof");
*Espenscheid v. DirectSat USA, LLC*, No. 09-cv-625-bbc, 2011 WL 2009967, at *7 (W.D. Wis.
May 23, 2011) (decertifying collective based on "substantial variations" among plaintiffs
because a defendant "cannot be expected to present 'representative' proof of its defenses when
the plaintiffs and class members are not clearly representative of each other").

Therefore, the Nonresponsive Opt-Ins' refusal to participate in this lawsuit by responding
to discovery prejudices Chipotle to a degree that warrants dismissal.

**2.      The Nonresponsive Opt-Ins' refusal to prosecute has interfered with the
judicial process.**

The Nonresponsive Opt-Ins' refusal to participate in the discovery process, or even
communicate with their counsel, evidences a lack of respect for court-ordered deadlines and
process. This necessarily interferes with the Court's management of the collective action,
specifically, and its docket, generally. *See Taylor v. Dist. of Colo. Safeway, Inc.*, 116 Fed. App'x
976, 978 (10th Cir. 2004) (finding "[t]he judicial process essentially ground to a halt when [the
plaintiff] refused to respond to either the defendant's requests or the district court's orders")
(affirming dismissal). Moreover, as noted above, the Court has long anticipated that the
collective will only include Opt-In Plaintiffs with claims sufficiently similar to those of the
Named Plaintiffs to comport with Chipotle's due process rights. It is now impossible to ensure
the Nonresponsive Opt-Ins belong in the collective because their refusal to respond to the
interrogatories has hindered that process.

11

**3.      The Nonresponsive Opt-Ins are culpable in their refusal to prosecute.**

On April 7, 2016, the parties disseminated notice of this collective action to all potential

members, including the Nonresponsive Opt-Ins. (*See generally* Dkt. 235-4, Notice.) In no

uncertain terms, the Notice advised the Nonresponsive Opt-Ins that, by joining the collective

action, they had "certain obligations to participate in the litigation," including "being asked to

respond to written discovery, to appear for a deposition, and, if necessary, to appear and testify at

trial." (*Id*. at § 4.) The interrogatories contained a similar notice and warning that the refusal to

respond could preclude participation in the collective action:

> The Court has approved these questions and you must answer them. **IF YOU DO NOT ANSWER THESE QUESTIONS, YOU MAY NOT BE ABLE TO PARTICIPATE IN THIS LAWSUIT.**

(Ex. B at 3 (emphasis in original).)

Despite being informed on multiple occasions of their obligations as litigants, the

Nonresponsive Opt-Ins have failed to participate in this lawsuit. The Nonresponsive Opt-Ins—

and more saliently, their counsel—have also offered no justification for their willful absence

from this litigation. After the initial response deadline came and went without a single

communication or request for an extension from opposing counsel, the Special Master cautioned

that any late discovery responses would be "disallowed" in the absence of "extreme showing of

good cause and/or excusable neglect[.]" (11/6/19 Tr., 18:15-23, attached as Exhibit C.) However,

to date, neither the Nonresponsive Opt-Ins nor their counsel have made the requisite showing of

good cause. As such, "the record does not reveal that anyone other than [the Nonresponsive Opt-

Ins] is culpable for [their] failure" to prosecute. *Hall v. Wal-Mart*, Civ. Action No. 09-cv-01410-

WYD-CBS, 2009 WL 6337957, at *3 (D. Colo. Dec. 18, 2009) (recommending dismissal), *report and recommendation adopted*, 2010 WL 1416785, at *1 (D. Colo. Apr. 7, 2010).

Moreover, while the Nonresponsive Opt-Ins have failed to respond to discovery—even using the minimally burdensome text message application—each was willing to join the collective by completing a physical form and submitting it by mail, fax, email, or electronically through a website. (*See* Dkt. 235-4, Notice of Right to Join Collective Action Lawsuit ("Notice"), § 10.) The Nonresponsive Opt-Ins' refusal now to participate in this action using similar (if not even simpler) methods is further evidence of their disinterest in this collective and decision not to further participate. Their conduct is particularly egregious because the Nonresponsive Opt-Ins had as many as more than four months in which to respond to the interrogatories—albeit, untimely—and, still, the Nonresponsive Opt-Ins flouted their discovery obligations.

**4.      The Nonresponsive Opt-Ins had notice that refusing to respond to the discovery could result in dismissal.**

The notice factor does not impose "an express-warning requirement[.]" *Ecclesiastes*, 497 F.3d at 1150. In other words, "it is not necessary that the district court *promise* to dismiss the case . . . nor is it necessary that the notice be given pursuant to the specific behavior that later forms the basis of the dismissal." *Davis v. Miller*, 571 F.3d 1058, 1064 (10th Cir. 2009) (emphasis in original).

Here, the Nonresponsive Opt-Ins were informed through multiple court-sanctioned communications that their claims could be dismissed for failure to participate in discovery. Specifically, both the Notice and interrogatories informed the Nonresponsive Opt-Ins that "continuation" of their claims was "contingent" on their participation in the discovery process.

*Clowdis v. Colo. Hi-Tec Moving & Storage*, Civ. Action No. 11-cv-00036-CMA-KMT, 2014

WL 1515584, at *2 (D. Colo. Apr. 17, 2014) (finding constructive knowledge of dismissal based

on requirement to submit status reports); (*see* Ex. B at 3; Dkt. 235-4 at § 4.) Even in the absence

of these communications, the Nonresponsive Opt-Ins—who are represented by a number of

experienced attorneys—cannot feign lack of notice. "[T]he need to prosecute one's claim (or

face dismissal) is a fundamental precept of modern litigation, certainly known to every

competent attorney." *Rogers v. Andrus Transp. Servs.*, 502 F.3d 1147, 1152 (10th Cir. 2007)

(affirming dismissal).

     **5.**     **There are no lesser sanctions that will effectively protect Chipotle's due process rights.**

Finally, there are no appropriate alternative sanctions under the circumstances. An order

compelling the Nonresponsive Opt-Ins to respond will be ineffective. The Nonresponsive Opt-

Ins have already had, in some instances, over four months to participate in discovery. Had the

Nonresponsive Opt-Ins intended to submit discovery responses, they could have done so—as the

approximately 400 Untimely Opt-Ins demonstrate. They did not. Any provision of additional

time to the Nonresponsive Opt-Ins will therefore be fruitless—they did not take time when they

had it or could have conceivably still taken it, and will likely not do so in the future. *See, e.g.,*

*Armstrong v. Swanson*, Civ. Action No. 08-cv-00194-MSK-MEH, 2009 WL 1938793, at *6 (D.

Colo. July 2, 2009) (finding dismissal reasonable if "[n]othing in the record indicates that [the

plaintiff's] prosecution of [the] case is likely to be any more diligent in the future").

In addition to refusing to engage in discovery, there is no indication that the

Nonresponsive Opt-Ins are in contact with their own counsel. Lesser sanctions aimed at

compelling a party's compliance are useless where, as is the case here, the Nonresponsive Opt-

Ins have seemingly abandoned their claims altogether. *See, e.g., Faircloth v. Hickenlooper*, 758 Fed. App'x 659, 662 (10th Cir. 2018) (finding lesser sanctions would be ineffective on *pro se* plaintiff who ignored court communications and failed to inform court of new address); *Stacker v. Wilner*, Civ. Action No. 10-cv-01150-PAB-MEH, 2011 WL 766174, at *3 (D. Colo. Feb. 7, 2011) (finding monetary sanctions impractical where the plaintiff "essentially abandoned" the litigation).

Most importantly, dismissing the Nonresponsive Opt-Ins is necessary to guarantee the Named Plaintiffs' evidence is actually representative of the collective. This is critical to the integrity of any trial based on representative proof. Dismissal is the only sanction that can effectively address the consequence of the Nonresponsive Opt-Ins' refusal to prosecute their claims.

### 6.    The two Named Plaintiffs who failed to respond should be dismissed for similar reasons.

The refusal by Named Plaintiffs Ruby Tsao and Jolessa Wade to answer seven basic discovery requests is emblematic of the Nonresponsive Opt-Ins' indifference to a dispute that has languished in litigation for nearly six years. A collective representative is expected to invest more time and effort into the prosecution of a case than the typical opt-in plaintiff. The refusal of Plaintiffs Tsao and Wade to engage in discovery, and their counsel's failure to secure their participation, is particularly telling.

Moreover, these are the very individuals against whom the opt-ins will be judged for purposes of determining whether they are properly joined in this action. The absence of any substantive discovery responses from Plaintiffs Tsao and Wade is prejudicial to Chipotle. Without those responses, Chipotle is hindered in its ability to fully evaluate its pending motion

15

for misjoinder and the application of Fed. R. Civ. P. 20. These two Named Plaintiffs must be dismissed for similar reasons.

**B.      For similar reasons, the Nonresponsive Opt-Ins should be dismissed from the collective pursuant to Rule 37(d) for their refusal to respond to the interrogatories.**

Courts hold "very broad discretion to use [discovery] sanctions where necessary to insure not only that lawyers and parties refrain from contumacious behavior . . . but that they fulfill their high duty to insure the expeditious and sound management of the preparation of cases for trial." *Matter of Baker*, 744 F.2d 1438, 1440 (10th Cir. 1984). Sanctions under Rule 37(d) are appropriate where, as here, a party has "failed completely to answer the interrogatories." *Cont'l Ins. Co.*, 110 F.R.D. at 682. Those sanctions are "immediate" and "no previous court order is necessary." *Id.* at 683.

The refusal to respond need not be willful; rather, "[e]ven a negligent failure to serve answers comes within the province of Rule 37(d)." *Id.* The willfulness of a refusal to respond is "taken into consideration with respect to the sanctions imposed." *Id.* "[T]o be 'willful' the failure need not necessarily be accompanied by wrongful intent. It is sufficient if it is conscious or intentional, not accidental or involuntary." *Id.* (quoting *Robinson v. Transamerica Ins. Co.*, 368 F.2d 37, 39 (10th Cir. 1966)); *see, e.g., Anderberg v. Sitewise Corp.*, Civ. Action No. 15-cv-00501-CBS, 2016 WL 1090021, at *3 (D. Colo. Mar. 21, 2016) (finding failure to request extension, demonstrate need for extension, or offer explanation for non-compliance to be "willful" under Rule 37).

Here, 5,198 Nonresponsive Opt-Ins failed completely to respond to the interrogatories. Neither the Nonresponsive Opt-Ins nor their counsel have proffered good cause for their lack of participation in this action. Their counsel has made no effort whatsoever to obtain extensions of

16

time on their behalf in which to further respond. The appropriate sanction for the Nonresponsive

Opt-Ins' abandonment of their claims is dismissal, as demonstrated above. *See, e.g., Witherspoon*

*v. Roadway Exp., Inc.*, 142 F.R.D. 492, 494 (D. Kan. June 24, 1992) (ordering dismissal under

Rule 37 for failure to cooperate with discovery); *Anderberg*, 2016 WL 1090021, at \*3-4 (same);

*see also Duarte v. PPG Indus., Inc.*, No. 09-1366-JTM, 2011 WL 1097799, at \*1 (D. Kan. Mar.

22, 2011) (conceding dismissal under Rule 37 appropriate for opt-ins "who have chosen not to

participate further").

     Upon dismissal under Rule 37, the moving party is entitled to an award of attorney's fees

incurred as a result of the other party's failure to respond to discovery. Fed. R. Civ. P. 37(d)(3).

This monetary sanction may be imposed against the nonresponsive party, his attorney, or both.

*Id.*

     Here, the monetary sanction should be imposed against solely Plaintiffs' counsel. *See*

*Doporto v. Chan Kim*, CV 10-0145 JCH/WPL, 2012 WL 13076187, at \*2-3 (D.N.M. Oct. 4,

2012) (discussing authority to sanction attorney). The Nonresponsive Opt-Ins' counsel allowed

the Nonresponsive Opt-Ins to forsake their discovery obligations without explanation and failed

to present good cause as to why the Nonresponsive Opt-Ins could not timely respond to

discovery, as instructed by the Special Master. (*See* Ex. C, 11/6/19 Tr., 18:15-23.) Therefore,

Chipotle is entitled to an award of attorney's fees against opposing counsel.

## C.    The dismissal should be with prejudice.

     Under either Rule 41 or Rule 37, the court has discretion to order a dismissal with

prejudice. *See Ecclesiastes*, 497 F.3d at 1143 (applying Rule 41); *Ehrenhaus*, 965 F.2d at 921

(applying Rule 37). The court does not abuse that discretion if the dismissal with prejudice is

made after full consideration of the relevant factors. *See Banks v. Katzenmeyer*, 680 Fed. App'x

721, 724 (10th Cir. 2017). As detailed above, the factors weigh in favor of dismissal. "Courts

have routinely imposed dismissal with prejudice as a sanction for similar discovery violations in

[Fair Labor Standards Act] collective actions." *Goode v. Nuance Commc'ns, Inc.*, Case No. 17-

CV-472-GKF-JFJ, 2019 WL 6771752, at *2 (N.D. Okla. Nov. 27, 2019) (collecting cases)

(dismissing nonresponsive opt-in plaintiffs from collective with prejudice). Thus, dismissal of

the Nonresponsive Opt-Ins should likewise be with prejudice.

**D.     The Untimely Opt-Ins responses should be deemed untimely, and the Untimely Opt-Ins dismissed along with the Nonresponsive Opt-Ins.**

The 404 Untimely Opt-Ins identified on Exhibit E should also be dismissed. Rule 6 of the

Federal Rules of Civil Procedure provides that when "an act [] must be done within a specified

time," an extension of time may be made after the time has expired only on a showing of

"excusable neglect." Fed. R. Civ. P. 6(b)(1)(B); *see also* Ex. C, 11/6/2019 Tr., 18:15-23 ("[A]bsent

that extreme showing of good cause and/or excusable neglect subject to further consideration by a

special master, then any response thereafter would be disallowed.").

A finding of excusable neglect depends on four factors: "[1] the danger of prejudice to the

[non-moving party], [2] the length of the delay and its potential impact on judicial proceedings,

[3] the reason for the delay, including whether it was within the reasonable control of the movant,

and [4] whether the movant acted in good faith." *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1253

(10th Cir. 2017) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380,

395, (1993) (citation omitted)). "The most important factor is the third; an inadequate explanation

for delay may, by itself, be sufficient to reject a finding of excusable neglect." *Id.*

Here, despite being represented by counsel, the Untimely Opt-Ins have made <u>no effort</u> whatsoever to justify their untimely responses—they simply served them without further explanation. That alone constitutes an "inadequate explanation" for their delay, and is more than sufficient to reject any of their responses as timely filed for purposes of remaining parties to this collective action. Moreover, as demonstrated by the over 1,500 timely responses, it was possible to receive and respond to the interrogatories in a timely fashion.

Accordingly, because there is not (and cannot) be an adequate explanation for the delay, the Untimely Opt-Ins responses should be deemed untimely. And, because an untimely response then becomes the equivalent of no response, these 404 Untimely Opt-Ins should be dismissed with prejudice for all the reasons set forth above.

## <u>CONCLUSION</u>

For the aforementioned reasons, Chipotle requests that the Nonresponsive Opt-Ins identified in Exhibit D and the Untimely Opt-Ins identified on Exhibit E be immediately dismissed with prejudice from this collective, and attorney's fees incurred in bringing this motion awarded against solely Plaintiffs' counsel.


Dated: February 5, 2020

Respectfully Submitted,

MESSNER REEVES LLP

*s/ Kendra N. Beckwith*

Kendra N. Beckwith, #40154
Michelle Harden, #36682
John K. Shunk, #16204
Tanner J. Walls, #41534

19

Allison J. Dodd, #43835
Adam M. Royval, #43836
1430 Wynkoop Street, Suite 300
Denver, Colorado 80202
Telephone:  (303) 623-1800
E-mail: kbeckwith@messner.com
E-mail: mharden@messner.com
E-mail: jshunk@messner.com
E-mail: twalls@messner.com
E-mail: adodd@messner.com
E-mail: aroyval@messner.com

DLA PIPER LLP (US)
Levi Heath, CA Bar No. 220854
2000 Avenue of the Stars, Suite 400
Los Angeles, CA 90067
Telephone: (310) 595-3000
Levi.Heath@dlapiper.com

*Attorneys for Defendant Chipotle Mexican Grill, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2020, I electronically filed and served the foregoing **DEFENDANT CHIPOTLE MEXICAN GRILL, INC.'S MOTION TO DISMISS NONRESPONSIVE AND UNTIMELY OPT-INS PURSUANT TO FED. R. CIV. P. 37(d) AND 41(b)** via the CM/ECF system which will send notification of such filing to all counsel of record listed on CM/ECF system, including:

- Adam S. Levy, adamslevy@comcast.net

- Andrew C. Quisenberry, andrew.quisenberry@coloradolaw.net

- Darrin L. Schanker, dschanker@coloradolaw.net

- Julie A. Sakura, jsakura@hinklelawfirm.com

- Kent M. Williams, williamslawmn@gmail.com

- Kevin E. Geibel, kgiebel@ggwklaw.com

- Michael E. Jacobs, mjacobs@hinklelawfirm.com

- Robert J. Gralewski, Jr., bgralewski@kmllp.com

- Thomas M. Hnasko, thnasko@hinklelawfirm.com

*/s/ Kendra N. Beckwith*