## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-02612-JLK

LEAH TURNER, ARACELI GUTIERREZ, MARKEITTA
FORD, JOLESSA WADE, DANYA GRANADO, BRETT
CHARLES, AND RUBY TSAO Individually and On Behalf
of All Others Similarly Situated,

      Plaintiffs,

v.

CHIPOTLE MEXICAN GRILL, INC.,

      Defendant.

---

### PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE CONFIDENTIAL JAMS MATERIALS

---

Plaintiffs Leah Turner, Araceli Gutierrez, Markeitta Ford, Jolessa Wade, Danya Granado, Brett Charles, and Ruby Tsao (collectively "Plaintiffs") respectfully submit the following in opposition to Defendant Chipotle Mexican Grill, Inc.'s ("Chipotle's") Motion to Strike Confidential JAMS Materials ("Motion") [ECF No. 324].

### INTRODUCTION

In response to Chipotle's argument that the Plaintiffs' Motion for Leave to Take Discovery on Spoliation was "nothing more than a fishing expedition on which this Court should not permit them to embark" [ECF 282 at 2], Plaintiffs submitted several decisions by JAMS arbitrators—all former federal and state court judges—who concluded that Chipotle was had improperly destroyed relevant evidence in the form of store surveillance video and alarm records. Each of those decisions

was rendered in an arbitration involving a former opt-in plaintiff who was severed from this case at Chipotle's request in August 2018, and they were largely based on Chipotle's breach of its duty to preserve evidence *owed to the collective in this case.*

In this Motion, Chipotle asks the Court to strike these decisions from the record based on its erroneous claim that "Chipotle and the Arbitration Opt-ins agreed to engage in confidential arbitration." [Dkt. 324 at 7]. That is simply wrong. While arbitrations are private proceedings but they are not inherently confidential. Nowhere does the mandatory arbitration agreement drafted by Chipotle include a confidentiality provision of any kind. Chipotle's only basis for its claim is Rule 26(a) of the JAMS Employment Arbitration Rules & Procedures, which provides that "***JAMS and the Arbitrator*** shall maintain the confidential nature of the Arbitration proceeding..." (emphasis added). That rule, however, simply precludes the arbitration provider from divulging details of the proceeding; it has no applicability to the parties. Indeed, Chipotle's misapprehension of the JAMS rules is not only belied by the plain text but has also been expressly rejected by JAMS arbitrators charged with interpreting the Arbitration Agreement. "Chipotle's apparent assumption that general confidentiality requirements preclude any disclosure of discovery materials, much less of an arbitration proceeding itself, for potential use in other cases, is belied by a rich body of caselaw." *See* Exhibit A. (Order by Judge Dolinger in *Hopkins v. Chipotle Mexican Grill, Inc*., JAMS Ref No. 1425027542.).

Further undermining Chipotle's position here is that in the Related Arbitrations, Chipotle sought the entry of a protective order *it drafted* in every arbitration resulting from the dismissal of the *Turner* arbitration plaintiffs. These protective orders allow Chipotle to designate any document as confidential and thereby prevent disclosure of the documents until the arbitrator rules on the

confidentiality claim. Not a single document that is the subject of Chipotle's present motion was ever marked confidential under the applicable protective orders. In fact, Chipotle regularly submits decisions by JAMS arbitrators in collateral arbitrations when the decisions favor Chipotle – a practice that would be impermissible under its own contention that the decisions are entirely confidential. *See*, *e.g.* , Exhibit __ (brief and exhibits submitted by Chipotle in JAMS Arbitration). Thus, Chipotle both drafted the operative protective orders, which require a confidentiality designation to prevent public disclosure of documents and has – by its own conduct – conceded on dozens of occasions that decisions by JAMS arbitrators are not confidential. Notably, Chipotle identifies no confidential information contained in the decisions, arguing instead that their source – a private arbitration – shelters the decisions from public disclosure.

For these reasons, Chipotle's request to strike the JAMS opinions should be denied.

## **ARGUMENT**

### A. Chipotle misinterprets the JAMS Employment Rules, which prevent JAMS, but not the parties, from publicly disclosing orders issued in arbitrations.

Chipotle rests its entire argument on the faulty premise that "In no uncertain terms, JAMS Rules dictate that JAMS arbitrations are confidential." [ECF No. 324 at 7].  In support, Chipotle cites to no other authority than JAMS Employment Rule 26(a). *Id.* The rule, however, places no restriction on a *party's* ability to publicly disclose documents obtained in arbitration. The rule states only that "*JAMS* and the *Arbitrator* shall maintain the confidential *nature* of the Arbitration proceeding and the Award, including the Hearing, except as necessary in connection with a judicial challenge to or enforcement of an Award, or unless otherwise required by law or judicial decision." JAMS Rule 26(a). The following section of the rule, JAMS Rule 26(b), removes any doubt that subsection (a) imposes no duty on the parties to hold arbitration materials confidential. Modeled

after Fed. R. Civ. P. 26(c)(1)(G), JAMS Rule 26(b) states that "the Arbitrator may issue orders to protect the confidentiality of proprietary information, trade secrets, or other sensitive information." This provision would of course be rendered superfluous by Chipotle's interpretation of JAMS Rule 26(a). *See, e.g., Pennsylvania Dept. of Public Welfare v. Davenport,* 495 U.S. 552, 562 (1990) ("Our cases express a deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment.") (superseded by statute on other grounds); *National Casualty Company v. Western Express,* 356 F.Supp.3d 1288, 1302 (W.D. Okla. 2018) ("We will not interpret an insurance policy to render any part superfluous…") (citation omitted); *see also* Antonin Scalia and Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 174 (Thomson/West Pub. 2012) (describing surplusage cannon).

Recognizing this reality, Chipotle has sought protective orders in each arbitration commenced as a result of the dismissal of the arbitration plaintiffs in this case. The form protective order that was entered in the initial wave of arbitrations allows either party to designate documents as confidential. None of the arbitral decisions submitted to the Court that Chipotle now seeks to strike were marked as confidential under the applicable protective orders and Chipotle does not argue that they were. There is therefore no basis in the JAMS Rules, or in the applicable protective orders, for Chipotle's position that the orders are confidential – they are not.

Moreover, this argument, as amplified above, has been rejected by JAMS arbitrators themselves. *See* Exhibit A, Dolinger Order. And Chipotle routinely makes use of JAMS orders in collateral arbitrations when it suits the company to do so. If Chipotle was truly convinced that these arbitrations are *per se* confidential, then any use outside of the proceeding in which the order was rendered would be impermissible; Chipotle should be estopped from taking such an

4

inconsistent and self-serving position. *See* 99 A.L.R. 5th 65 ("Judicial estoppel arises when a party attempts to assert, in a judicial or quasi–judicial proceeding, a position contrary to a position taken by that party in a prior judicial or quasi–judicial proceeding.").

**B. Chipotle's argument is based entirely on the faulty premise that the arbitrations are inherently confidential – this position is unsupported by the law.**

From the faulty premise that decisions by JAMS arbitrators are confidential, Chipotle marches to its inevitable conclusion that these embarrassing decisions must be stricken from the record. [ECF No. 324 at 8]. The authority provided by Chipotle, however, is readily distinguishable because each cited case was based on some provision – not present here – that explicitly provided for confidentiality of the documents the party sought to introduce.

In *Donelon v. Herbert Clough Inc*.[1], which Chipotle cites for the proposition that failing to grant its motion "would effectively require the Court to ignore the rules that governed the confidential arbitration," [ECF No. 324 at 6] the decision to not allow the use of arbitration materials was based on a confidentiality provision contained in the agreement to arbitrate:

> all briefs, depositions and hearing transcripts generated in the course of this arbitration, documents created for the arbitration or produced in the proceedings by the opposing party or third-parties, final award and any interim decisions, correspondence, oral discussions and information exchanged in connection with the proceedings (hereinafter collectively referred to as "Arbitration Information") will be kept confidential. This Confidentiality Agreement will remain in effect even after the conclusion of the arbitration proceedings.

*Id.* at *2.

Chipotle conveniently omits the basis of the decision because no such language is present here.

---

[1] No. 03-282-A-M2, 2006 WL 8436296 (M.D. La. Aug. 18, 2006).

Similarly, in *Pasternak v. Dow Kim*[2], the court based its decision on the governing arbitration rules provided by the International Institute for Conflict Prevention and Resolution, which provide:

> Unless the parties agree otherwise, the parties, the arbitrators and CPR shall treat the proceedings, any related discovery and the decisions of the Tribunal, as confidential, except in connection with judicial proceedings ancillary to the arbitration, such as a judicial challenge to, or enforcement of, an award, and unless otherwise required by law or to protect a legal right of a party. To the extent possible, any specific issues of confidentiality should be raised with and resolved by the Tribunal.

*Id.* at *3. Chipotle quotes part of the opinion stating that the arbitration rules do not permit discovery of these materials but fails to provide the operative rule to the Court for comparison to JAMS Rule 26.

Thus, without any supporting caselaw, Chipotle is left with the bare contention that JAMS Arbitrations are inherently confidential – a view that has been rejected repeatedly by American courts and legal scholars.[3] "Though it is frequently said that one of the reasons for recourse to arbitration is to avoid publicity, unless the agreement between the parties incorporates such a limitation, each of them is still free to speak publicly about the arbitration."[4]

---

[2] No. 10 CIV.5045(LTS)(JLC), 2013 WL 1729564 (S.D.N.Y. Apr. 22, 2013).

[3] "This view of arbitration hiding business wrongdoing is based on what appears to be a misunderstanding of the confidential nature of arbitration under U.S. law. I use the word 'confidential' because critics of consumer and employment arbitration describe the process as confidential, not because it is confidential. To the contrary, under U.S. law, arbitration is a private process, not a confidential one." (CITE to law review article).

[4] *See, e.g., Metalclad Corp. v. United Mexican States*, ICSID Case No. ARB(AF)/91/1, Decision on a Request by the Respondent for an Order Prohibiting the Claimant from Revealing Information Regarding ICSID Case ARB(AF)/97/, at ¶ 9 (Oct. 27, 1997)). *See also*, CONSUMER FINANCIAL PROTECTION BUREAU, ARBITRATION STUDY: REPORT TO CONGRESS PURSUANT TO DODD-FRANK WALL STREET REFORM AND CONSUMER

The Federal Arbitration Act (FAA) and the Uniform Arbitration Act (UAA) are instructive: neither creates a rule that arbitrations are automatically confidential.[5] Even when parties enter into confidentiality agreements, most courts have refused to allow filing an award under seal even when agreed by the parties.[6] Further, both the FAA and UAA require public disclosure of arbitration awards when a party seeks to confirm or enforce an arbitration award in court.[7]

In determining the scope of confidentiality resulting from arbitration clauses, courts focus on whether materials produced in an arbitration are discoverable in subsequent litigation.[8] In *United States v. Panhandle Eastern Corp*,[9] the plaintiff sought discovery from defendant of "[all] documents relating to the Sonatrach Arbitration," including any papers filed with the arbitrators,

---

PROTECTION ACT § 1028(a), § 4.9, at 21 (2015). (Arbitration is a private although not a confidential process). *See also*, Amy J. Schmitz, Untangling the Privacy Paradox in Arbitration, 54 U. KAN. L. Rev. 1211, 1211 (2006). (Arbitration is private but not confidential …. Arbitration is private in that it is a closed process, but it is not confidential because information revealed during the process may become public).

[5] 9 U.S.C. §§ 1-16 (2015); UNIF. ARB. ACT §§ 1-25 (1956).

[6] *See, e.g., Ovanic Battery Co., Inc. v. Sanyo Elec*. Co., Ltd, No. 14-CV-01637-JD, 2014 WL 2758756, at *3 (N.D. Cal. June 17, 2014) (denying motion to seal arbitration awards as not narrowly tailored); Century Indem. Co. v. AXA Belgium, No. 11 CIV. 7263 JMF, 2012 WL 4354816, at *14 (S.D.N.Y. Sept. 24, 2012) (holding that "the parties have not identified sufficient countervailing factors to overcome the presumption in favor of access"); Global Reinsurance Cor.-U.S. Branch v. Argonaut Ins. Co., No. 07 CIV. 8196 (PKC), 2008 WL 1805459, at *1 (S.D.N.Y. Apr. 21, 2008) (holding that party seeking to have court seal arbitration award failed to overcome presumption of public access).

[7] 9 U.S.C. § 13 (b) (2015); UNIF. ARB. ACT § 15(a)(2) (1956). RUAA appears not to have retained the provision in the UAA requiring filing the award with the court, but the practice may nonetheless remain.

[8] BORN, *supra* note 15, at 2874 ("[V]irtually all U.S. decisions addressing the issue have involved the question of whether a party could resist production of materials from an arbitral proceeding in response to an otherwise valid request for discovery from a third party (rather than the question of whether a party to an arbitration could voluntarily disclose or use materials from an arbitration for its own purposes)."). *See generally* Reuben, *supra* note 10, at 1265-71 (describing cases).

[9] 118 F.R.D. 346 (D. Del. 1988).

written statements by witnesses, and hearing transcripts. *Id*. at 348. The court not only granted the request but also refused to issue a protective order to prevent public disclosure of the documents, reasoning that the rule cited by the defendant applied only to the internal operations of the Court of Arbitration of the International Chamber of Commerce and not "to the parties to arbitration proceedings or to the independent arbitration tribunal which conducts those proceedings." *Id*. at 349-50 (citing arbitration rule that "[t]he work of the Court of Arbitration is of a confidential character which must be respected by everyone who participates in that work in whatever capacity.").

Similarly in *Valeron Holding BV v. Morgan Stanley*[10], the court observed that "a private agreement to arbitrate a dispute does not cloak documents and other evidence relevant to that dispute with a 'shield of invisibility' or immunize them either from public disclosure in connection with other, related proceedings or from publication in connection with those other proceedings. *Id*. at 1.[11] State courts have reached the same conclusion. For example, in *A.T. v. State Farm Mut. Auto Ins. Co.*[12], the Colorado Court of Appeals held that "because the arbitration statute provides that an arbitration award can be filed, enforced, and challenged in court, an arbitration record may become an open public record. Therefore, because the plaintiff did not obtain a confidentiality or protective order or agreement, the record was available for use by State Farm in later, separate

---

[10] 2014 WL 1569610, *1, 6-8 (S.D.N.Y. April 16, 2014).

[11] In *Valeron*, the court went on further to say that parties are "not free to immunize materials that are relevant to some other dispute from disclosure in connection with a wholly separate dispute resolution procedure." *Id*.

[12] 989 P.2d 219, 221 (Colo. App. 1999).

litigation."[13] These decisions are no outliers and Chipotle's complete failure to address this relevant authority only underscores the weakness of its position.[14]

### C. The documents demonstrate the relevance of Plaintiffs' requested discovery and should not be stricken.

Chipotle's tactic of attempting to shield relevant information from this Court is improper and part of a longstanding tactic to keep evidence siloed by protective orders and specious claims of confidentiality. Chipotle has attempted to restrict relevant evidence at every turn of this litigation and in the related arbitrations, needlessly - and exponentially - increasing costs. For example, Chipotle has insisted in *every single arbitration* that they would not produce *any documents* without having a protective order in place. Chipotle has gone so far as to disregard their own obligations under JAMS rules to provide relevant evidence voluntarily without having a protective order in place. Once the protective order is entered in the arbitration, Chipotle marks *every single document* it produces as "confidential" without any justification. These allegedly confidential documents include federal labor law posters and employee handbooks disseminated to hundreds of thousands of hourly workers. A related tactic that Chipotle also routinely employs is to claim that documents are irrelevant when they are simply embarrassing to Chipotle.

---

[13] In *A.T.*, plaintiff provided psychological medical records in arbitration that were used in separate litigation against plaintiff during cross-examination.

[14] *Galleon Syndicate Corp. v. Pan Atl. Group*, 637 N.Y.S.2d 104, 105 (N.Y. App. Div. 1996) ("There is no confidentiality privilege precluding disclosure of the material requested as the parties to the arbitration proceeding governed by the Rules of the American Arbitration Association are, in the absence of a confidentiality provision, not prohibited from disclosing documents generated or exchanged during the arbitration since evidentiary material at an arbitration proceeding is not immune from disclosure.*"); Industrotech Constructors, Inc. v. Duke Univ.*, 314 S.E.2d 272, 274 (N.C. App. 1984) ("In the circumstances of the case, then, we must conclude that confidentiality does not require reversal of the court's order [requiring production of the transcripts of a prior arbitration proceeding].").

Now Chipotle contends that the arbitral decisions are irrelevant because they "have no precedential value whatsoever." [ECF No. 324 at 10]. Of course this Court is not bound by decisions of JAMS arbitrators; but the opinions are based on Chipotle's duty to preserve evidence under the Federal Rules of Civil Procedure that was triggered by the filing of the Complaint *in this case* and by a subsequent litigation hold letter sent by counsel for the *Turner* plaintiffs to Chipotle. These decisions are therefore persuasive because they apply the same law to the same facts as this Court ultimately will.

Moreover, the argument that the JAMS decisions are irrelevant to this Court's ultimate determination of the spoliation issue completely misses the point of why the decisions were filed in the first place. Plaintiffs submitted the decisions *in reply to Chipotle's specious statements that the requested discovery was an unsupported fishing expedition*; the Court can and should consider these opinions as relevant to Plaintiff's request for leave to take discovery.

**D.   No information contained in the JAMS decisions is confidential.**

Notably, Chipotle does not contend that any of the information contained in the response or in Mr. Jacobs' declaration and associated exhibits is confidential in itself.  Rather, Chipotle asserts that the information was produced in violation of a confidentiality agreement but, by its silence, concedes that "Nothing in any of the materials is scandalous, libelous, or highly personal or sensitive in nature" to the extent that sealing the documents is appropriate.  *See Huddleston v. City of Pueblo, Co*., 270 F.R.D. 635, 638 (D. Colo. 2010).  The complete absence of any danger to Chipotle's trade secrets, confidential research, development, or commercial information makes clear that the harm Chipotle seeks to ameliorate is mere embarrassment over its destruction of relevant evidence.  *See* Fed. R. Civ. P. 26(c)(1)(G) (listing information properly protected by

protective order); *see also Richardson v. Gallagher*, No. 10-cv-02097-MSK-CBS, 2012 WL 4359116, at *8 (D. Colo. Sept. 24, 2012) (determining that "embarrassment" is insufficient to qualify as a "clearly defined and serious injury" in favor of restricting public access). Chipotle's request to strike the documents is therefore in conformance with its modus operandi of improper assertions of confidentiality but not with the applicable law.

## CONCLUSION

For the reasons stated above, Chipotle's Motion should be denied. The JAMS decisions are not confidential, are relevant to Plaintiff's request for leave to take discovery, and do not contain any confidential information.

Dated: August 4, 2020.

Respectfully submitted,

*/s/ Andrew C. Quisenberry*
Andrew C. Quisenberry
Darin L. Schanker
BACHUS & SCHANKER, LLC
101 West Colfax Avenue, Suite 650
Denver, CO 80202
Tel: 303.893.9800
Fax: 303.893.9900
andrew.quisenberry@coloradolaw.net
dschanker@coloradolaw.net

| Thomas M. Hnasko<br>Michael E. Jacobs<br>HINKLE SHANOR LLP<br>P.O. Box 2068<br>Santa Fe, NM 87504<br>Tel: 505.982.4554<br>Fax: 505.982.8623<br>thnasko@hinklelawfirm.com<br>mjacobs@hinklelawfirm.com | Kent Williams<br>WILLIAMS LAW FIRM<br>1632 Homestead Trail<br>Long Lake, MN 55356<br>Tel: 612.940.4452<br>williamslawmn@gmail.com |
|---|---|
| Adam S. Levy<br>LAW OFFICE OF ADAM S. LEVY, LLC<br>P.O. Box 88<br>Oreland, PA 19075<br>Tel: 267.994.6952<br>adamslevy@comcast.net | Robert J. Gralewski, Jr.<br>KIRBY MCINERNEY LLP<br>600 B Street, Suite 1900<br>San Diego, CA 92101<br>Tel: 619.398.4340<br>bgralewski@kmllp.com |
| Kevin E. Giebel<br>Giebel and Associates, LLC<br>P.O. Box 414<br>Lake Elmo, MN 55402<br>Tel: 651.236.0729<br>kgiebel@ggwklaw.com | |

*Attorneys for Named and Opt-In Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2020, a true and correct copy of the foregoing **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE CONFIDENTIAL JAMS MATERIALS** was filed and served electronically via CM/ECF and addressed to:

MESSNER REEVES LLP

Kendra N. Beckwith
Michelle Harden
Tanner J. Walls
Allison J. Dodd
Kristina M. Wright
Darren D. Alberti
1430 Wynkoop Street, Suite 300
Denver, Colorado 80202
Tel: 303.623.1800
kbeckwith@messner.com
mharden@messner.com
twalls@messner.com
adodd@messner.com
kwright@messner.com
dalberti@messner.com

DLA PIPER LLP (US)

Levi Heath, CA Bar No. 220854
2000 Avenue of the Stars, Suite 400
Los Angeles, CA 90067
Tel: 310.595.3000
Levi.Heath@dlapiper.com

*Attorneys for Defendant Chipotle Mexican Grill, Inc.*

*/s/ Andrew C. Quisenberry*
Andrew C. Quisenberry