IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-02612-JLK

LEAH TURNER, ARACELI GUTIERREZ, MARKEITTA FORD,
JOLESSA WADE, DANYA GRANADO, BRETT CHARLES, and
RUBY TSAO

Individually and on behalf of others
similarly situated

    Plaintiffs

v.

CHIPOTLE MEXICAN GRILL, INC.

    Defendant

## CHIPOTLE MEXICAN GRILL, INC.'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE CONFIDENTIAL JAMS MATERIALS

Defendant Chipotle Mexican Grill, Inc. (Chipotle), through undersigned counsel, respectfully states as follows in support of its Motion to Strike Confidential JAMS Materials (Motion) (Dkt. 324):

### INTRODUCTION

Plaintiffs' opposition to Chipotle's Motion solidifies that Plaintiffs' counsel see the hundreds of individual arbitrations that resulted from this Court's dismissal of the Arbitration Opt-Ins as a well of discovery to leverage for use in this collective action and avoid the phased discovery ordered by this Court. Plaintiffs' counsel—who also represent the individual arbitration claimants—see no harm in freely disclosing information (whether relevant to this

action or not) disclosed in those confidential and private arbitration proceedings in public filings here. Ultimately, Plaintiffs' position—if accepted here—would eviscerate the confidential nature of the arbitrations, and ratify Plaintiffs' tactic of using the arbitrations as a means of unilaterally submitting confidential and irrelevant documents in blatant disregard of the phased discovery ordered by this Court. Chipotle's Motion should therefore be granted.

## ARGUMENT

### A.   JAMS Employment Rules provide that the arbitrations are confidential.

#### 1.   JAMS Rule 26 states clearly that the proceedings are confidential.

Plaintiffs first argue that the arbitration proceedings are not confidential. Instead, they claim, the confidentiality restrictions bind only the arbitration provider—JAMS—and the individual arbitrators. This position is untenable. It strips out critical language from JAMS Rule 26, which governs the confidentiality of the proceedings. That rule states that "JAMS and the Arbitrator shall maintain <u>the confidential nature of the Arbitration proceeding</u> and the Award, including the Hearing, except as necessary in connection with a judicial challenge to or enforcement of an Award, or unless otherwise required by law or judicial decision." (Dkt. 324-2, JAMS Rule 26(a) (emphasis added).) If that rule meant that parties to the arbitration could freely disclose any information produced in the proceedings, the Rule would not refer to "the <u>confidential nature</u> of the Arbitration proceeding[.]" (*Id*. (emphasis added).) If parties to confidential arbitration proceedings could freely disclose and publicize the proceedings and the information disclosed therein, the "nature" of the arbitrations would be anything but confidential.

Plaintiffs offer <u>nothing</u> in defense of their counsels' actions here, or to refute that *Ready Transportation, Inc. v. AAR Manufacturing, Inc.*, 627 F.3d 402 (9th Cir. 2010), is instructive.

Rather, Plaintiffs' gloss over the fact that it is not the parties to the arbitrations (i.e., the Arbitration Opt-Ins) who are breaching JAMS Rule 26; it is their counsel. (Dkt. 335 at 3 (arguing Rule 26 places no restriction on a party's disclosures).) Indeed, the Arbitration Opt-Ins are uninvolved in this collective action. And there is nothing to indicate that any of the Arbitration Opt-Ins are even aware that orders from their respective arbitrations are being used in publicly filed proceedings. This only further demonstrates the impropriety of the disclosures here.

Further, and unsurprisingly, Plaintiffs cite no precedential authority in support of their position that Rule 26(a)'s confidentially protections do not apply to parties. Rather, under JAMS Rule 26(a), the arbitrator rulings are simply confidential by nature, and may not be disclosed except "as necessary in connection with a judicial challenge to or enforcement of an Award, or unless otherwise required by law or judicial decision." (Emphasis added). This interpretation finds ample support in federal district court decisions.

In *Moton v. Maplebear Inc.*, the court addressed the plaintiff's argument that the confidential nature of employment arbitrations under the JAMS Rules rendered his claims under the Fair Labor Standards Act ("FLSA") non-arbitrable, because settlements of such claims require the approval of the Department of Labor. No. 15 CIV. 8879 (CM), 2016 WL 616343, at *9 (S.D.N.Y. Feb. 9, 2016). In dispensing with the plaintiff's argument, the court noted that the JAMS Rules explicitly anticipate that, "while the proceedings and award are otherwise confidential in nature, the parties may disclose information regarding the arbitration 'as necessary in connection with a judicial challenge to or enforcement of an Award, or [if] otherwise required by law or judicial decision.'" *Id*. (quoting JAMS Rule 26(a)) (emphasis added).

3

Likewise, in *Delta Funding Corp. v. Harris*, the plaintiff argued that her arbitration agreement with the defendant lender was unconscionable because it incorporated confidentiality provisions in the JAMS Rules and other arbitral forum rules. 396 F. Supp. 2d 512, 525 (D.N.J. 2004). Specifically, the plaintiff argued that those confidentially provisions would undermine public policy and thwart the proper functioning of the New Jersey Consumer Fraud Act. *Id*. Rather than rejecting the plaintiff's argument—as the court could easily have done if the arbitration rules did not require confidentiality—the court instead severed the confidentiality provisions in the arbitration rules from the arbitration agreement. *Id*.; *see also Veliz v. Cintas Corp.*, No. C 03-1180 SBA, 2004 WL 2452851, at *15 (N.D. Cal. Apr. 5, 2004), modified on reconsideration, No. 03-01180(SBA), 2005 WL 1048699 (N.D. Cal. May 4, 2005) (denying unconscionability argument based on the confidential nature of AAA proceedings, and holding that "the reasons for confidentiality are designed to protect all parties in a dispute.").

Additionally, in *Symphony FS Ltd. v. Thompson*, the Court made expressly clear that JAMS Rule 26(a) indicates that JAMS proceedings are confidential by nature: "However, JAMS Rule 26(a) explicitly provides that arbitration proceedings and awards shall remain confidential, 'unless otherwise required by law <u>or judicial decision</u>.'" 5:18-CV-3904, 2018 WL 5023638, at *1 (E.D. Pa. Oct. 17, 2018) (emphasis in original).

The courts in *Moton*, *Delta Funding*, and *Symphony FS Ltd.* clearly took for granted the <u>confidential nature</u> of the arbitrations in rendering their decisions—a conclusion which plainly results from the text of JAMS Rule 26(a).

Having failed to cite any authority for their position, Plaintiffs next turn to the argument that if the arbitration proceedings are confidential under JAMS Rule 26(a), that would render

4

subsection (b), which provides that "the Arbitrator may issue orders to protect the confidentiality of proprietary information, trade secrets, or other sensitive information[,]" a nullity. But it would do nothing of the sort. Rather, JAMS Rule 26(b) simply augments the confidentiality protections of JAMS Rule 26(a).

Specifically, JAMS Rule 26(a) plainly states that JAMS arbitration proceedings are, <u>by nature</u>, confidential. In addition to that inherent confidentiality, JAMS Rule 26(b) permits arbitrators to craft tailored protective orders, including to prevent parties to the arbitration from disclosing highly confidential trade secrets and proprietary information obtained in discovery. For example, in matters involving competitors in the same industry, subsection (b) provides arbitrators with the ability to issue so-called "Attorneys' Eyes Only" orders to protect the confidentiality of highly sensitive commercial secrets obtained in discovery. Not only are Plaintiffs wrong that Chipotle's reading of subsection (a) would render subsection (b) superfluous, Plaintiff's own reading would read out the explicit provision in subsection (a) that the arbitration proceedings are confidential.[1]

---

[1] Plaintiffs selectively quote an order by Judge Dolinger in one of the arbitrations as evidence that Chipotle's position "has been rejected by JAMS arbitrators themselves[,]" claiming the decision constitutes validation that Rule 26 does not apply to the parties to a proceeding. (Dkt. 335 at 2.) That order does nothing of the sort. Rather, Judge Dolinger merely concludes that documents produced in an arbitration proceeding may, upon judicial challenge to an award or a showing of need, be produced in other proceedings. (Dkt. 335-1 at pdf pp. 5-6.) This conclusion correctly tracks the language of JAMS Rule 26(a). It does nothing to undermine an interpretation of JAMS Rule 26(a) that JAMS proceedings are by nature confidential and parties may only disclose confidential arbitration materials to challenge or enforce an award, or as otherwise required by law (i.e., upon showing of need).

### 2.     The discoverability of underlying information produced in the arbitrations does not eviscerate the proceedings' confidential nature.

Unable to cite to any authority to support their position, Plaintiffs cite a series of cases dealing with an argument Chipotle never made. Chipotle does not argue that if <u>relevant</u> information is sought within this action through discovery, the mere fact that such information was produced in an arbitration proceeding cloaks the information with immunity from production. Yet that is the only proposition for which *United States v. Panhandle E. Corp.*, 118 F.R.D. 346, 347 (D. Del. 1988), *A.T. v. State Farm Mut. Auto. Ins. Co.*, 989 P.2d 219, 220 (Colo. App. 1999), and *Veleron Holding, B.V. v. Stanley*, No. 12 CIV. 5966 CM, 2014 WL 1569610, at *8 (S.D.N.Y. Apr. 16, 2014), stand.

In *Panhandle*, for example, the court denied the defendants' protective order seeking to prevent the disclosure of information produced in an international arbitration because such disclosure would prejudice the defendants' ongoing business relationship with third parties. The court held first that the motion was untimely as it raised confidentiality arguments filed three weeks after the court-ordered compliance date compelling production. 118 F.R.D. at 350-51. The court further noted that the Rules of the Court of Arbitration of the International Chamber of Commerce ("ICC Rules") applied only to the members of the Court of Arbitration, and not to the parties to arbitration proceedings or to the independent arbitration tribunal which conducts those proceedings. *Id*. at 349-50. In other words, the court determined that "as the ICC Rules themselves state: 'The Court of Arbitration does not itself settle disputes. Insofar as the parties shall not have provided otherwise, it appoints, or confirms the appointment of, arbitrators in accordance with the provisions of this Article.' Therefore, the rules governing the internal

functioning of the Court of Arbitration are not applicable here, and provide no support for PEPL's motion." *Id*. at 350.

The ICC rules have no corollary to JAMS Rule 26, which explicitly applies to the arbitration proceeding themselves. Moreover, the issue in *Panhandle* was whether a party could be prevented from obtaining discovery from another party merely because the information sought had been produced earlier in an arbitration proceeding. That is not the issue here, where the question is whether irrelevant and confidential arbitration orders from confidential proceedings should be stricken from the public record.

The decision in *A.T*. is likewise distinguishable. There, State Farm obtained medical information about a psychological disorder of one of its insureds, A.T., during arbitration to settle an uninsured motorist claim. State Farm then used those records while cross-examining A.T., who was also a chiropractor, in a subsequent, unrelated suit in which A.T. was testifying in her professional capacity. 989 P.2d at 220. The Colorado Court of Appeals upheld such use of the medical records. Critically, the Court of Appeals recognized that the district court "found that this arbitration was not conducted under the rules of the American Arbitration Association, which would have provided confidentiality, but rather, under the Uniform Arbitration Act of 1975, § 13–22–201, et seq., C.R.S.1998, which is silent on confidentiality." *Id*. (emphasis added). Here, unlike in *A.T.*, JAMS Rule 26 is not silent on confidentiality; it states explicitly that the nature of the proceedings are confidential.

Finally, *Veleron* lends no support to Plaintiffs' position. There, the court merely rejected the attempt to prevent discovery of information subject to confidentiality rulings made by an arbitrator consistent with arbitration rules in the district court action. 2014 WL 1569610, at *8.

The court noted that "[n]o American court of which I am aware would ever accept that a party to an arbitration was shielded by rules like those of the LCIA from producing documents or evidence in an American lawsuit pursuant to discovery demand or subpoena. . . . Interestingly, as I read the SPA, the arbitrator thinks no differently. He understands and respects that this Court has procedures for discovering documents and never once suggests that any materials produced in the context of the arbitration cannot be discovered here if proper procedures are followed." *Id*.

Plaintiffs' citations to these authorities are inapposite. They address strawmen. The question here is whether Plaintiffs may unilaterally file in the public record materials that are subject to confidentiality restrictions set forth in JAMS Rules, not whether Plaintiffs could properly seek those documents in discovery.

### B. The JAMS decisions are irrelevant.

As discussed above, Plaintiffs' counsel has routinely treated the arbitrations as an avenue to conduct an end-run around the phased discovery ordered by the Court in this lawsuit. The arbitrations are not relevant to this collective action. Any evidence regarding any of the 450 single-claimant wage-and-hour arbitrations—obtained via a confidential arbitration proceeding concerning individual employees who worked at different locations and time periods from the seven Named Plaintiffs in this case—is not, and cannot, be relevant here. *See Bayles v. Am. Med. Response of Colo., Inc*., 950 F. Supp. 1053, 1065 (D. Colo. 1996), on reconsideration, 962 F. Supp. 1346 (D. Colo. 1997) ("Indeed, a collective action is designed to permit the presentation of evidence regarding certain representative plaintiffs that will serve as evidence for the class as a whole.").

This is especially true for the arbitrator decisions regarding spoliation sanctions. Plaintiffs

assert that these arbitrator "decisions are [] persuasive because they apply the same law to the same facts as this Court ultimately will." (Dkt. 335 at 10.) Plaintiffs' argument fails.

Most JAMS arbitrators are <u>not</u> applying the same law to the same facts as this Court would in analyzing a potential spoliation sanction. Rather, these arbitrators are largely disregarding the controlling legal standard under the Federal Rules of Civil Procedure, and instead wielding their own individual brands of justice.

In the JAMS arbitrations, Plaintiffs' spoliation arguments have been hinged on Chipotle's purported duty to preserve video and alarm records in this lawsuit. Fed. R. Civ. P. 37(e) governs any spoliation sanctions premised on those violations for the loss of that electronically stored information (ESI). *Equal Employment Opportunity Comm'n v. JetStream Ground Servs., Inc.*, 878 F.3d 960, 965 (10th Cir. 2017) (Fed. R. Civ. P. 37(e) governs the imposition of sanctions when 'electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery.'" (quoting Fed. R. Civ. P. 37(e))).

Yet in issuing spoliation rulings against Chipotle, several arbitrators have entirely ignored Fed. R. Civ. P. 37(e)'s prescribed analysis and instead relied on their inherent authority or common law elements to impose spoliation sanctions—despite the Advisory Committee's admonition that the amended Fed. R. Civ. P. 37(e) "forecloses reliance on inherent authority or state law to determine when certain measures should be used." F.R.C.P. 37(e) Advisory Committee's Note to 2015 Amendment.

This foreclosure has been recognized by federal district courts nationwide, which have consistently held that a court may no longer rely on its inherent authority to issue spoliation

9

sanctions for the loss of ESI and instead may only do so based upon the findings specified by Fed. R. Civ. P. 37(e). *See, e.g., Philmar Dairy, LLC v. Armstrong Farms*, 18-CV-0530 SMV/KRS, 2019 WL 3037875, at *2 (D.N.M. July 11, 2019) ("Amended Rule 37(e) forecloses reliance on the Court's inherent authority to sanction for spoliation of ESI."); *Waymo LLC v. Uber Techs., Inc.*, C 17-00939 WHA, 2018 WL 646701, at *14 (N.D. Cal. Jan. 30, 2018) ("Because the evidence in question consists of electronically-stored information, FRCP 37(e), not inherent authority, supplies the controlling legal standard." (citing F.R.C.P. 37(e) Advisory Committee's Note to 2015 Amendment)).

Even so, many JAMS arbitrators have disregarded Fed. R. Civ. P 37(e) and fashioned spoliation sanctions as they see fit—even going so far as to lay out their qualms with the amended Fed. R. Civ. P. 37(e) and expressly declare that they are not bound by it. (Dkt. 317-1 at pdf pp. 55-57.)

Additionally, Plaintiffs fail to acknowledge that many of the arbitrators have reached the opposite conclusion as concerns Plaintiffs' spoliation theory. This proceeding should not devolve into a tally or poll of the conclusions of the various arbitrators in the unrelated arbitrations. These arbitrator decisions therefore have no relevance to this case and should be stricken.

## **CONCLUSION**

For the reasons set forth above and in its Motion, Chipotle requests that the Court grant the Motion, strike Plaintiffs' response from the record, and accept the redacted version of Plaintiffs' response. Alternatively, Chipotle requests that the Court disregard the portions of Plaintiff's response discussing and attaching the arbitration orders and limit access to both the

Response and Declaration for the reasons set forth in Chipotle's Motion to Restrict Access (Dkt. 327).

Dated: August 25, 2020

    Respectfully Submitted,

    MESSNER REEVES LLP

    *s/ Kendra N. Beckwith*
    Kendra N. Beckwith, #40154
    Michelle Harden, #36682
    Tanner J. Walls, #41534
    Allison J. Dodd, #43835
    Kristina M. Wright, #47337
    Darren D. Alberti, #52741
    1430 Wynkoop Street, Suite 300
    Denver, Colorado 80202
    Telephone: (303) 623-1800
    E-mail: kbeckwith@messner.com
    E-mail: mharden@messner.com
    E-mail: twalls@messner.com
    E-mail: adodd@messner.com
    E-mail: kwright@messner.com
    E-mail: dalberti@messner.com

    DLA PIPER LLP (US)
    Levi Heath, CA Bar No. 220854
    2000 Avenue of the Stars, Suite 400
    Los Angeles, CA 90067
    Telephone: (310) 595-3000
    Levi.Heath@dlapiper.com

    ***Attorneys for Defendant Chipotle Mexican Grill, Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that on August 25, 2020, I electronically filed and served the foregoing **CHIPOTLE MEXICAN GRILL, INC.'S OPPOSITION TO PLAINTIFFS' ORAL MOTION SEEKING PRODUCTION PRODUCED IN ARBITRATION MATTERS** via the CM/ECF system which will send notification of such filing to all counsel of record listed on CM/ECF system, including:

- Adam S. Levy, adamslevy@comcast.net

- Andrew C. Quisenberry, andrew.quisenberry@coloradolaw.net

- Darrin L. Schanker, dschanker@coloradolaw.net

- Julie A. Sakura, jsakura@hinklelawfirm.com

- Kent M. Williams, williamslawmn@gmail.com

- Kevin E. Geibel, kgiebel@ggwklaw.com

- Michael E. Jacobs, mjacobs@hinklelawfirm.com

- Robert J. Gralewski, Jr., bgralewski@kmllp.com

- Thomas M. Hnasko, thnasko@hinklelawfirm.com

*/s/ Kendra N. Beckwith*